Kenneth H. Brown (CA State Bar No. 100396)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Phone: (415) 263-7000
Fax: (415) 263-7010
Email: kbrown@pszjlaw.com

- and -

Chuck C. Choi
Allison A. Ito
CHOI & ITO, Attorneys at Law
Topa Financial Center
700 Bishop Street, Suite 1107
Honolulu, HI 96813
Phone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com

Attorneys for TrashMasters, LLC; Corridor Capital, LLC; Corridor Capital
Advisors, LLC; Corridor TrashMasters, L.P.; SPB Management, LLC; SPB Waste,
LLC; SPB Capital GP, LLC; SPB Capital Partners, L.P.; SPB Partners, LLC; Craig
Enenstein; L. Geoffrey Greulich; Edward A. Monnier; Jessamyn Davis; Ari D.
Bass; Scott R. Bulloch; Kenneth M. Pressberg

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>ROLLOFFS HAWAII, LLC,<br><br>Debtor. | No. 16-01294<br>(Chapter 7) |

| | |
|---|---|
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>          Plaintiff,<br>    v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH; KENNETH M. PRESSBERG; KRISTIAN GOURLAY; DOUGLAS L. ASAY; DOUGLAS D. ASAY; CHARLES E. LEONARD; BRIAN COLBECK; ROLLOFFS HAWAII, INC.; THE KNG GROUP, LLC; COLBECK CONSULTING LLC; JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE ENTITIES 1-50,<br><br>          Defendants. | Adv. Pro. No. 18-90035<br><br>**MOTION TO DISMISS COMPLAINT; CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS TRASHMASTERS, LLC; CORRIDOR CAPITAL, LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH AND KENNETH M. PRESSBERG IN SUPPORT THEREOF**<br><br>**<u>HEARING</u>**<br>Date:   April 12, 2019<br>Time:  10:00 a.m.<br>Judge:  Hon. Robert J. Faris |

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 2 of 127

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................. 1

II. RELEVANT FACTUAL BACKGROUND ................................................ 4

    A.    Trustee's Extensive Rule 2004 Discovery. ................................. 4

    B.    The Complaint. ........................................................................ 5

III. SUMMARY OF ARGUMENT ............................................................. 6

IV. ARGUMENT ....................................................................................... 11

    A.    Pleading Standards. ................................................................ 11

        1.    Rules 8(a) and 12(b)(6). ............................................. 11

        2.    Rule 9(b). .................................................................. 13

    B.    The Complaint Fails to State Plausible Claims for Relief Based on Fraudulent Transfers (Counts I-LII) ............................................. 14

        1.    Legal Requirements for Fraudulent Transfers. ......................... 16

            a.    Property of the Debtor. .................................................. 16

            b.    Actual Fraudulent Transfers Require Intent to Hinder, Delay, or Defraud. ........................................... 16

                (1)    Particularity Required for Actual Fraudulent Transfers Under Rule 9(b). .................................. 17

                    (a)    Particularity Required on Details of Transfer. ................................................. 18

                    (b)    Particularity Required on Circumstances Constituting Fraud. .......... 19

                        (i)    Badges of Fraud. ............................. 20

                            a)    Insolvency as a Badge of Fraud. ................................... 22

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 19  Filed  02/15/19  Page 3 of 127

|  |  | b) | Insider Status as a Badge of Fraud. | 22 |
|  | (2) |  | Transfers on Account of Antecedent Debt Are Not Actually Fraudulent. | 24 |
| c. |  |  | Constructively Fraudulent Transfers Require Both Lack of Reasonably Equivalent Value and Insolvency. | 25 |
|  | (1) |  | Particularity Required for Pleading Constructively Fraudulent Transfers. | 26 |
|  | (2) |  | Complaint Must Plausibly Allege Lack of Reasonably Equivalent Value. | 27 |
|  |  | (a) | Satisfaction of an Antecedent Debt Is Reasonably Equivalent Value. | 27 |
|  | (3) |  | Insolvency Must Be Plausibly Alleged. | 30 |
|  |  | (a) | Actual Insolvency. | 31 |
|  |  | (i) | Balance-Sheet Test. | 32 |
|  |  | (ii) | Cash Flow Test. | 33 |
|  |  | (b) | Intent to Incur Debts Beyond Ability to Pay. | 34 |
|  |  | (c) | Inadequate Capitalization. | 34 |
| 2. |  |  | Analysis of Issues Relevant to All Alleged Fraudulent Transfers. | 36 |
| a. |  |  | Insolvency Has Not Been Plausibly Alleged. | 36 |
|  | (1) |  | Allegations in the Complaint. | 36 |
|  | (2) |  | Misrepresentations, Material Omissions and Contradictory Admissions by Trustee. | 40 |

U.S. Bankruptcy Court - Hawaii #18-90035 Dkt # 19 Filed 02/15/19 Page 4 of 127

       (a)    No Facts Alleged Sufficient to Suggest Actual Insolvency When Alleged Fraudulent Transfers Were Made...................................................43

       (b)    Intent to Incur Debts Beyond Ability to Pay.........................................................43

       (c)    Inadequate Capitalization.........................44

   b.    Insufficient Allegations of Insider Status With Respect to Transferees....................................................44

3.    The Union Bank Payments Were Not Fraudulent Transfers (Counts I, II, III). .................................................46

   a.    The Union Bank Payments Were Not an Intentional Fraudulent Transfers (Count I)....................48

       (1)    The Complaint Fails to Provide Sufficient Details of the Union Bank Payments. .................48

       (2)    Actual Fraud Is Not Adequately Alleged............48

   b.    The Union Bank Payments Were Not Constructively Fraudulent Transfers (Counts II and III). ...................................................................52

       (1)    Insufficient Details of the Union Bank Payments. ...........................................................52

       (2)    Reasonably Equivalent Value Was Received as a Matter of Law...............................................52

       (3)    Failure to Adequately Allege Insolvency............53

4.    The Advisory Fees Were Not Fraudulent Transfers (Counts IV – XXXVII). ...............................................54

   a.    The Advisory Fees Were Not Intentional Fraudulent Transfers (Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI).................................................54

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 5 of 127

    (1)  Actual Fraud Is Not Adequately Alleged............54

  b.  The Advisory Fees Were Not Constructively Fraudulent Transfers (Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV and XXXVII)..................................................60

    (1)  Reasonably Equivalent Value Was Received as a Matter of Law................................60

    (2)  Failure to Adequately Allege Insolvency............61

5.  The ROHI Payoff Was Not a Fraudulent Transfer (Counts XXXVIII, XXXIX, XL, XLI, XLII, XLIII and XLIV)..................................................62

  a.  The ROHI Payoff Was Not Made With the Debtor's Property. ................................62

  b.  The ROHI Payoff Was Not an Intentional Fraudulent Transfer (Counts XXXVIII, XXXIX and XLIII)..................................................64

    (1)  Actual Fraud Is Not Adequately Alleged............64

  c.  The ROHI Payoff Was Not a Constructively Fraudulent Transfer (Counts XL, XLI, XLII and XLIV). ................................66

    (1)  Failure to Adequately Allege Insolvency............66

6.  The KNG Payoff Was Not a Fraudulent Transfer (Counts XLV, XLVI, XLVII, XLVIII, XLIX, L, and LI)..................................................66

  a.  The KNG Payoff Is Not an Intentional Fraudulent Transfer (Counts XLV, XLVI and L)..................................................68

    (1)  Actual Fraud Is Not Adequately Alleged............68

  b.  The KNG Payoff Was Not a Constructively Fraudulent Transfer (Counts XLVII, XLVIII, XLIX and LI)..................................................70

(1) Reasonably Equivalent Value Was Received as a Matter of Law. .............................. 70

(1) Failure to Adequately Allege Insolvency ............ 72

7. The Colbeck Payments Were Not Fraudulent Transfers (Count LII). ............................................................. 72

     a. Details of Transfers Are Required. ............................. 73

     b. The Colbeck Payments Are Not Intentional Fraudulent Transfers. ..................................................... 74

     c. The Colbeck Payments Were Not Constructively Fraudulent Transfers. ..................................................... 76

         (1) Lack of Reasonably Equivalent Value Is Not Sufficiently Alleged. .......................................... 76

         (1) Failure to Adequately Allege Insolvency ............ 76

C. Causes of Action Derivative of Fraudulent Transfers (Counts LIII - LXI). .................................................................. 77

1. Dismissal of Counts I - LII Eliminates Counts LIII - LXI. ..... 77

2. Group Pleading Cannot Survive a Motion to Dismiss. ............ 79

D. The Counts for Civil Conspiracy to Commit Fraudulent Transfers and Conveyances Fail as a Matter of Law (Counts LIII and LIV. ................................................................... 81

1. The Trustee Lacks Standing to Bring Claims for Civil Conspiracy to Commit Fraudulent Transfers. ......................... 81

     a. The Trustee Lacks Standing to Bring Civil Conspiracy Claims When Debtor Was Co-Conspirator Prepetition. ................................................. 81

     b. The Trustee's Counts for Conspiracy to Commit Fraudulent Transfers and Conveyances is not Permitted by the Bankruptcy Code ............................... 82

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 19  Filed  02/15/19  Page 7 of 127

2.     The Elements of Civil Conspiracy Have Not Been Alleged. ...............................................................84

E.     Plausible Claims for Breaches of Fiduciary Duty Have Not Been Alleged (Counts LV, LVI and LVII). ........................86

     1.     No Defendant Owed Fiduciary Duties to the Debtor Other Than TrashMasters. ......................................86

          (a)     The "Officers and Directors" Do Not Owe Fiduciary Duties to the Debtor. .......88

          (b)     The Corridor Entities and SPB Entities Do Not Owe Fiduciary Duties to the Debtor. ................................90

     2.     The Narrow Fiduciary Duties of Section 428-409 Were Not Breached. ..........................................................91

     3.     Any Alleged Breaches of Duty Were Shareholder Ratified. ..............................................................................92

     4.     The Trust-Fund Doctrine Does not Apply. .............................94

F.     Complaint Does Not State a Plausible Claim for Conspiracy to Breach Fiduciary Duties (Count LVIII). ...........................95

     1.     Dismissal of Counts LV, LVI and LVII Eliminates Count LVIII. ..............................................................................95

     2.     Complaint Fails to Allege Terms of Alleged Conspiracy. ......96

G.     Complaint Fails to State Plausible Claim for Aiding and Abetting Breach Fiduciary Duties (Count LIX). .............................96

     1.     Dismissal of Counts LV, LVI and LVII Eliminates Count LIX. ................................................................................96

     2.     Complaint Fails to Allege Claim for Aiding and Abetting. ...............................................................................97

H.     Complaint Fails to State Plausible Alter-Ego Claim (Count LX). ................................................................................98

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 19  Filed  02/15/19  Page 8 of 127

I.    Complaint Fails to State Plausible Claim for Unjust Enrichment (Count LXI). ....................................................................102

    1.    Unjust Enrichment Does Not Apply to Fraudulent Transfers and Certain Grouped Defendants..........................103

        a.    Unjust Enrichment Claim Fails to the Extent It Seeks to Recover Amounts of Alleged Fraudulent Transfers. ..................................................103

        b.    Unjust Enrichment Claim Fails to the Extent It Seeks to Recover Amount Paid Pursuant to Advisory Agreement...................................................104

        c.    Unjust Enrichment Claims Fail Against Non-Recipients. ...............................................................104

V. CONCLUSION ...............................................................106

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 9 of 127

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Ahcom Ltd. v. Smeding*,
  623 F.3d 1248, 1251 (9th Cir. 2010) ....................................................................98

*Alderwoods (Del.), Inc. v. RightStar Int'l, Inc. (In re Loewen Group Int'l)*,
  No. 05-cv-90130, 2009 Bankr. LEXIS 3571 (Bankr. D. Haw. Nov. 3, 2009) ....78

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  842 F. Supp. 2d 1216 (C.D. Cal. 2012) ................................................................21

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ............................................................................81

*Asarco LLC v. Ams. Mining Corp.*,
  396 B.R. 278 (S.D. Tex. 2008) .............................................................................33

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ....................................................................................... 13, 27

*Balboa v. Haw. Care & Cleaning, Inc.*,
  105 F. Supp. 3d 1165 (D. Haw. 2015) ................................................................103

Balistreri v. Pacifica Police Dep't.,
  901 F.2d 696 (9th Cir. 1988) ................................................................................12

*Barber v. Dunbar (In re Dunbar)*,
  313 B.R. 430 (Bankr. C.D. Ill. 2004) ...................................................................29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 12, 13, 27, 85

*Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*,
  587 B.R. 445 (Bankr. D. Del. 2018) .....................................................................89

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
  780 F. Supp. 2d 1061 (D. Haw. 2011) ................................................................104

*Bridge Holding, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, LLC)*,
  388 B.R. 548 (Bankr. D. Del. 2008) .....................................................................91

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 10 of 127

*Bridgepoint Constr. Servs. v. Lassetter,*
No. 16-cv-00078, 2016 U.S. Dist. LEXIS 93895 (D. Ariz. July 19, 2016).. 95, 96

*Buchwald v. The Renco Grp., Inc. (In re Magnesium Corp. of Am.),*
399 B.R. 722 (Bankr. S.D.N.Y. 2009) ...............................................................83

*Butler v. Loomer (In re Loomer),*
222 B.R. 618 (Bankr. D. Neb. 1998)..................................................................29

*Chase & Sanborn Corp.,*
813 F.2d 1177 (11th Cir. 1987).........................................................................63

*Combs v. Case Bigelow & Lombardi,*
No. 28773, 2010 Haw. App. LEXIS 25, 2010 WL 370275 (Jan. 27, 2010)........87

*Conley v. Gibson,*
355 U.S. 41 (1957) ............................................................................................12

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997) .............................................................................19

*Credit Managers Ass'n v. Fed. Co.,*
629 F. Supp. 175 (C.D. Cal. 1985)....................................................................34

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.),*
42 F.3d 1541 (9th Cir. 1994) .............................................................................19

*Decker v. Tramiel (In re JTS Corp.),*
617 F.3d 1102 (9th Cir. 2010) ...........................................................................27

*Doleman v. Meiji Mut. Life Ins. Co.,*
727 F.2d 1480 (9th Cir. 1984)............................................................................84

*Dowden v. First Sec. Bank (In re Mid-South Auto Brokers),*
290 B.R. 658 (Bankr. E.D. Ark. 2003)................................................................29

*Ehrenberg v. Roussos (In re Roussos),*
No. 15-ap-01404, 2016 Bankr. LEXIS 3454 (Bankr. C.D. Cal. Sep. 22, 2016)..81

*Enron Corp. v. Granite Constr. Co. (In re Enron Corp.),*
No. 03-ap-93172, 2006 Bankr. LEXIS 4650 (Bankr. S.D.N.Y. May 11, 2006) .63

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 11 of 127

*Espinoza v. Bank of Am., N.A.*,
No. 10-cv-6 JLS (AJB), 2010 U.S. Dist. LEXIS 49048 (S.D. Cal. May 17, 2010)
.................................................................................................95

*Estate of Daily v. Lilipuna Assoc.*,
81 F.3d 167 (table), 1996 U.S. App. LEXIS 20678 (9th Cir. 1996).................101

*Estate of Daily v. Title Guaranty Escrow Serv.*,
178 B.R. 837 (D. Haw. 1995)............................................................101

*Fid. Bond & Mortg. Co. v. Brand (In re Fid. Bond & Mortg. Co.)*,
371 B.R. 708 (E.D. Pa. 2007)..............................................................36

*Field v. Wells Fargo Bank, N.A. (In re Mortg. Store, Inc.)*,
No. 12-ap-90066, 2015 Bankr. LEXIS 1556 (Bankr. D. Haw. May 7, 2015).....31

*Fullman v. Graddick*,
739 F.2d 553 (11th Cir. 1984)............................................................85

*GATX Corp. v. Addington*,
879 F. Supp. 2d 633 (E.D. Ky. 2012)...................................................83

*Gaughan v. Edward Dittlof Revocable Trustee (In re Costas)*,
555 F.3d 790 (9th Cir. 2009).............................................................16

Giacometti v. Arton Berm., Ltd. (In re Sukamto Sia),
349 B.R. 640 (Bankr. D. Haw. 2006)................................... 12, 81, 84

*Gold v. Winget (In re NM Holdings Co.)*,
407 B.R. 232 (Bankr. E.D. Mich. 2009) ...........................................18

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*,
491 B.R. 747 (Bankr. W.D. La. 2013) ...................................... passim

*Grochocinski v. Zeigler (In re Zeigler)*,
320 B.R. 362 (Bankr. N.D. Ill. 2005)................................................21

*GSM Wireless, Inc. v. Honarkar (In re GSM Wireless, Inc.)*,
No. 12-ap-01350, 2013 Bankr. LEXIS 3298 (Bankr. C.D. Cal. April 5, 2013) .31, 33, 92

*Gugino v. Nelmap, LLC (In re Wallace)*,
No. 12-ap-07056, 2013 Bankr. LEXIS 1609 (Bankr. D. Idaho Apr. 17, 2013) ..18

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 12 of 127

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*,
  916 F.2d 528 (9th Cir. 1990) ......................................................................... 16, 17

*Hoffman v. Adelman (In re SCI Real Estate Invs., LLC)*,
  No. 13-ap-1175, 2013 Bankr. LEXIS 1780 (Bankr. C.D. Cal. May 1, 2013) .....19

*Holmes v. Johnson & Johnson*,
  617 F. App'x 639 (9th Cir. 2015) ......................................................................14

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.*,
  419 B.R. 749 (M.D. Tenn. 2009) .......................................................................84

*In re Dill*,
  731 F.2d 629 (9th Cir. 1984) .............................................................................33

*In re Ridgeway*,
  No. 16-bk-10643, 2018 Bankr. LEXIS 531 (Bankr. E.D. La. Feb. 27, 2018) .....23

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ................................................................................28

*In re Sharp Int'l. Corp.*,
  302 B.R. 760 (E.D.N.Y. 2003) ..........................................................................21

*In re THQ Inc.*,
  No. 2-13398, 2016 Bankr. LEXIS 1774 (Bankr. D. Del. Apr. 18, 2016) ............30

*Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)*,
  373 B.R. 283 (Bankr. S.D.N.Y. 2007) ...............................................................35

*Isuzu Motors America, LLC v. Jackson*,
  No. 13-cv-00306, 2014 U.S. Dist. LEXIS 117930 (D. Haw. Aug. 25, 2014) .....26

*J.P. Morgan Trust Co. Nat'l Ass'n v. Cleberg (In re Farmland Indus., Inc.)*,
  335 B.R. 398 (Bankr. W.D. Mo. 2005) ...............................................................79

*Jackson v. Star Sprinkler Corp. of Fla.*,
  575 F.2d 1223 (8th Cir. 1978) ...........................................................................83

*Joseph v. Frank (In re Troll Communs., LLC)*,
  385 B.R. 110 (Bankr. D. Del. 2008) ...................................................................32

*Kantor v. BigTip, Inc.*,
   No. 15-cv-1871, 2018 U.S. Dist. LEXIS 57265 (W. D. Wash. April 3, 2018) ...98

*Kauai Scuba Center, Inc. v. Lexington Ins. Co.*,
   No. 11-cv-00573, 2012 U.S. Dist. LEXIS 19668 (D. Haw. Feb. 16, 2012) ......101

*Kekona v. Abastillas*,
   113 Haw. 174, 150 P.3d 823 (2006) ....................................................................17

*Klein v. Tabatchnick*,
   610 F.2d 1043 ......................................................................................................83

*Kotoshirodo v. Hancock (In re Lull)*,
   No. 07-ap-90072, 2009 Bankr. LEXIS 2316 (Bankr. D. Haw. 2009) ................71

*Krol v. Wilcek (In re H. King & Assocs.)*,
   295 B.R. 246 (Bankr. N.D. Ill. 2003) .................................................................83

*LaChapelle v. Dong Kwan Kim*,
   No. 15-cv-02195, 2015 U.S. Dist. LEXIS 161801 (Bankr. C.D. Cal. Dec. 2,
   2015) ................................................................................................. 26, 27, 34

*Leslie v. Bartamian (In re Mihranian)*,
   No. 16-1378, 2017 Bankr. LEXIS 1802 (B.A.P. 9th Cir. June 26, 2017) ...........16

*Liberty Tool, & Manufacturing v. Vortex Fishing Systems (In re Vortex Fishing
   Systems)*,
   277 F.3d 1057 (9th Cir. 2002) ............................................................................33

*Liebmann v. Pucci (In re Ampat S. Corp.)*,
   128 B.R. 405 (Bankr. D. Md. 1991) ...................................................................83

*Lindholm v. Holtz*,
   221 Ill. App. 3d 330 (2d Dist. 1991) ..................................................................21

*Mansha Consulting LLC v. Alakai*,
   No. 16-cv-00582, 2017 U.S. Dist. LEXIS 135407 (D. Haw. Aug. 23, 2017) .....94

*Marshack v. Wells Fargo Bank (In re Walters)*,
   163 B.R. 575 (Bankr. C.D. Cal. 1994) ......................................................... 52, 71

*Martin v. Phillips (In re Butcher)*,
   58 Bankr. 128 (Bankr. E.D. Tenn. 1986) ...........................................................29

*Meister v. Jamison (In re Jamison)*,
   21 B.R. 380 (Bankr. D. Conn. 1982)....................................................29

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
   945 F.2d 635 (3d Cir. 1991) .........................................................35

*Menashe v. Bank of New York*,
   850 F. Supp. 2d 1120 (D. Haw. 2012) ..........................................95

*Menjivar v. Wells Fargo Bank, N.A. (In re Menjivar)*,
   No. 12-ap-1608, 2014 Bankr. LEXIS 371 (B.A.P. 9th Cir. Jan. 28, 2014) .........28

*Midway Games, Inc.*,
   428 B.R. 303 (Bankr. D. Del. 2010).............................................32

*Miller & Lux, Inc. v. Anderson*,
   318 F.2d 831 (9th Cir. 1963) .......................................................92

*Miller v. Dow (In re Lexington Oil & Gas Ltd.)*,
   423 B.R. 353 (Bankr. E.D. Okla. 2010) .......................................84

*Moody v. Sec. Pac. Bus. Credit, Inc.*,
   971 F. 2d 1056 (3d Cir. 1992) .....................................................34

Moore v. Kayport Package Express, Inc.,
   885 F.2d 531 (9th Cir. 1989) .......................................................14

*Moss v. United States Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .......................................................13

*Mukamal v. Bakes,*
   383 B.R. 798 (S.D. Fla. 2007).....................................................79

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ...........................................................18

*Nishibun v. Prepress Sols.*,
   111 F.3d 138 (table), 1997 U.S. App. LEXIS 6678 (9th Cir. 1997)...................17

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*,
   340 B.R. 1 (Bankr. E.D.N.Y. 2006) ............................................22

*Nisselson v. Softbank AM Corp. (In re Marketxt Holding Corp.),*
    361 B.R. 369 (Bankr. S.D.N.Y. 2007) ................................................................25

*O'Toole v. Karnani (In re Trinsum Grp., Inc.),*
    460 B.R. 379 (Bankr. S.D.N.Y. 2011) ................................................................28

*Official Comm. v. Am. Tower Corp. (In re Verestar, Inc.),*
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ................................................................21

*Official Comm. v. Blomen (In re Hydrogen, L.L.C.),*
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................89

*Official Comm. v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC),*
    590 B.R. 211 (Bankr. D. Del. 2018) ..................................................................90

*Official Comm. v. Credit Suisse (In re Champion Enters.),*
    No. 10-ap-50514, 2010 Bankr. LEXIS 2720 (Bankr. D. Del. Sept. 1, 2010) ......28

Official Comm. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am.,
    Inc.),
    405 B.R. 527 (Bankr. D. Del. 2009) ..................................................................82

*Official Comm. v. JP Morgan Chase Bank (In re M. Fabrikant & Sons, Inc.),*
    394 B.R. 721 (Bankr. S.D.N.Y. 2008) ................................................................18

*Official Comm. v. United States Nat'l Bank (In re Suffola, Inc.),*
    2 F.3d 977 (9th Cir. 1993) ................................................................................71

*Official Comm. v. Wachovia Bank, N.A. (In re Heilig-Meyers Co.),*
    297 B.R. 46 (Bankr. E.D. Va. 2003) ..................................................................29

*Oginsky v. Paragon Props. of Costa Rica Ltd. Liab. Co.,*
    784 F. Supp. 2d 1353 (S.D. Fla. 2011) ..............................................................98

*Ovation Toys Co., Ltd. v. Only Hearts Club,*
    675 F. App'x. 721 (9th Cir. 2017) ..................................................................100

*Paracor Fin., Inc. v. GE Capital Corp.,*
    96 F.3d 1151 (9th Cir. 1996) ..........................................................................104

*Ray v. Garland (In re Martin),*
    Nos. 08-52631, 10-5059, 2011 Bankr. LEXIS 4830 (Bankr. E.D. Tenn. Dec. 8,
    2011) ................................................................................................................82

*Residential Funding Co., LLC v. InterLinc Mortg. Servs., LLC (In re RFC & ResCap Liquidating Trust Litig.)*,
No. 13-cv-3541, 2017 U.S. Dist. LEXIS 63058 (D. Minn. April 25, 2017)........31

*Robert's Haw. School Bus, Inc. v. Laupahoehoe*,
91 Haw. 224 (1999) ................................................................99

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ................................................19

*Schilling v. Montalvo (In re Montalvo)*,
324 B.R. 619 (Bankr. W.D. Ky. 2005)......................................29

*Schlossberg v. Abell (In re Abell)*,
549 B.R. 631 (Bankr. D. Md. 2016)..........................................82

*Schmidt v. Fid. Nat'l Title Ins. Co.*,
No. 07-cv-00356, 2009 U.S. Dist. LEXIS 139285 (D. Haw. Sept. 30, 2009).....23

*Schmidt v. HSC, Inc.*,
136 Haw. 158 (App. 2015) ......................................................17

*Searcy v. Knight (In re Am. Int'l Refinery)*,
402 B.R. 728 (Bankr. W.D. La. 2008) ......................................79

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) .............................................. 14, 19

*Shearson Lehman Hutton, Inc., v. Venners*,
165 F.3d 912 (table), 1998 U.S. App. LEXIS 28005 (4th Cir. 1998).................79

*Sherman v. FSC Realty LLC (In re Brentwood-Lexford Partners)*,
292 B.R. 255 (Bankr. N.D. Tex. 2003) ....................................83

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................21

*Smyth v. Kaufman*,
114 F.2d 40 (2d Cir. 1940) .............................................. 63, 64

*So. New Eng. Tel. Co. v. Sahara & Arden, Inc.*,
No. 09-cv-00534, 2010 U.S. Dist. LEXIS 51178 (D. Nev. May 18, 2010).........51

*Sol. Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
548 B.R. 300 (Bankr. C.D. Cal. 2016) ..................................................34

*Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*,
346 B.R. 798 (B.A.P. 8th Cir. 2006) ...................................................28

*Stoebner v. Opportunity Fin., LLC*,
562 B.R. 368 (D. Minn. 2016) ...........................................................30

*Strawbridge v. Sugar Mt. Resort, Inc.*,
243 F. Supp. 2d 472 (W.D.N.C. 2003)................................................78

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..............................................................79

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...........................................................................19

*Tow v. Bulmahn*,
No. 15-cv-3141, 2016 U.S. Dist. LEXIS 57396 (E.D. La. Apr. 29, 2016)..........85

*Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs.)*,
980 F.2d 792 (1st Cir. 1992) ..............................................................71

*Tropicana Entm't, LLC*,
520 B.R. 455 (Bankr. D. Del. 2014)....................................................30

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
191 A.D.2d 86, (N.Y. Sup. 1993)........................................................28

*United States v. Arthur*,
No. 10-cv-01561, 2011 U.S. Dist. LEXIS 105611 (E.D. Mo. Sept. 19, 2011) ...17

*United States v. Boyce*,
38 F. Supp. 3d 1135 (C.D. Cal. 2014)..................................................51

*United States v. Lebeau*,
No. 17-cv-1046, 2017 U.S. Dist. LEXIS 202655 (S.D. Cal. Dec. 8, 2017) ........17

*United States v. Martin*,
No. 13-cv-00503, 2015 U.S. Dist. LEXIS 98982 (D. Haw. May 29, 2015)........22

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 18 of 127

*United States v. Smith*,
   No. 99-cv-974, 2008 U.S. Dist. LEXIS 96869 (S.D. Ohio Nov. 19, 2008).........51

*Valvanis v. Milgroom*,
   529 F. Supp. 2d 1190 (D. Haw. 2007) ........................................................... 17, 26

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 14, 18

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),*
   567 B.R. 55 (Bankr. S.D.N.Y. 2017) ..................................................................35

*Wyle v. C.H. Rider & Family (In re United Energy Corp.),*
   944 F.2d 589 (9th Cir. 1991) ................................................................................29

Wyle v. Howard (In re Hamilton Taft & Co.),
   176 B.R. 895 (Bankr. N.D. Cal. 1995)..................................................................82

## STATE CASES

*800 S. Wells Commercial LLC v. Cadden*,
    103 N.E.3d 875 (Ill. App. 2018)...........................................................................89

*Achiles v. Cajigal*,
   39 Haw. 493 (1952) ....................................................................................... 16, 20

*Andejo Corp. v. South St. Seaport Ltd. P'ship*,
   836 N.Y.S.2d 571 (2007) ...................................................................................100

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
   26 Cal. Rptr. 806 (Ct. App. 1962) ........................................................................99

*California Feed Co. v. Club Stables Co.*,
   10 Haw. 209 (1896)................................................................................................94

*Calipjo v. Purdy*,
   141 Haw. 279 (table), 2017 Haw. App. LEXIS 498 (Ct. App. 2017)..................99

*Chung v. Animal Clinic, Inc.*,
   63 Haw. 642 P.2d 721 (1981) ...............................................................................99

*CML V, LLC v. Bax*,
   28 A.3d 1037 (Del. 2010).....................................................................................89

*Collins v. Union Federal Savings & Loan Association*,
   99 Nev. 284 (1983) ................................................................................84

*Combs v. Case Bigelow & Lombardi*,
   No. 28773, 2010 Haw. App. LEXIS 25, 2010 WL 370275 (2010) ....................97

*Davis v. Four Seasons Hotel Ltd.*,
   122 Haw. 423, 228 P.3d 303 (2010)....................................................99

*Ellis v. Crockett*,
   51 Haw. 45, 451 P.2d 814 (1969)........................................................95

*Farmer v. Hickam Fed. Credit Union*,
   No. 27868, 2010 Haw. App. LEXIS 39 (Feb. 2, 2010) ........................................84

*Molokai Servs. v. Hodgins*,
   No. 15-0000464, 2018 Haw. App. LEXIS 92 (Feb. 28, 2018) ...........................97

*Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the U.S., Inc.* (*In re Phillips*),
   139 P.3d 639 (Colo. 2006) ...............................................................101

*Porter v. Hu*,
   116 Haw. 42, 169 P.3d 994 (Ct. App. 2007).....................................................103

*Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Inv'rs, Inc.*,
   985 N.Y.S.2d 54 (2014) ...................................................................100

*Swift v. Swift*,
   138 Haw. 52 (table), 2016 Haw. App. LEXIX 316 (Ct. App. 2016)...................86

*Weinberg v. Mauch*,
   78 Haw. 40 (1995).........................................................................95

## FEDERAL STATUTES AND RULES

11 U.S.C. § 101 .......................................................................................23

11 U.S.C. § 102 .......................................................................................30

11 U.S.C. § 548 .......................................................................................17

11 U.S.C. § 548(d)(2)(A) ........................................................................61

11 U.S.C. § 550 .................................................................................................84

28 U.S.C. § 3304 ...................................................................................... passim

Fed. R. Civ. P. 12(b)(6) .....................................................................................12

Fed. R. Civ. P. 8(a) ...........................................................................................11

Fed. R. Civ. P. 9(b) ................................................................... 14, 17, 21, 26

## STATE STATUTES AND RULES

Haw. Rev. Stat. § 428-409 ................................................... 86, 87, 91, 94

Haw. Rev. Stat. § 651C .......................................................... 16, 25, 30

Haw. Rev. Stat. § 651C-3 ...................................................... 28, 61

Haw. Rev. Stat. § 651C-4(a)(1) ..........................................................16

Haw. Rev. Stat. § 651C-4(b) .............................................................20

## TREATISES

2 *Collier on Bankruptcy* ¶ 101.09 (16th ed. 2019) ...........................................23

5 *Collier on Bankruptcy* ¶ 548.05 (16th ed. 2019) ...........................................26

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, defendants TrashMasters, LLC; Corridor Capital, LLC; Corridor Capital Advisors, LLC; Corridor TrashMasters, L.P.; SPB Management, LLC; SPB Waste, LLC; SPB Capital GP, LLC; SPB Capital Partners, L.P.; SPB Partners, LLC; Craig Enenstein; L. Geoffrey Greulich; Edward A. Monnier; Jessamyn Davis; Ari D. Bass; Scott R. Bulloch and Kenneth M. Pressberg (collectively, "Defendants") hereby move to dismiss all counts (each, a "Count") of that certain Complaint (the "Complaint")[1] filed by the trustee for the Rolloffs Hawaii LLC estate (the "Trustee" or "Plaintiff") in the above-captioned adversary proceeding.

# I.
# PRELIMINARY STATEMENT

This suit arises out of the failure of Rolloffs Hawaii, LLC (the "Debtor"), which operated a waste collection and disposal business in Hawaii from May 2009 to the end of 2016. Despite the best efforts of the Debtor's management, the Debtor filed a voluntary chapter 11 petition in December 2016 after the City & County of Honolulu materially altered its required payment terms for use of a

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

landfill from payment net 60 days after invoice to payment net 30 days after invoice, which resulted in an immediate additional cash requirement of $1.25 million and a material increase in net debt. While the failure of the Debtor was caused by unforeseeable factors outside the control of any Defendant, the Trustee brings the instant action seeking to hold the Debtor's equity holder, advisors, and former officers and purported directors of the Debtor along with members of the Debtor's parent company, entities affiliated with them, and their management personally liable.

Based on conclusory, contradictory, and some demonstrably false allegations, the Trustee alleges that the Debtor was, from inception, a fraudulent vehicle for the members of the parent entity (TrashMasters) to extract value ahead of creditors, notwithstanding that the equity holders invested *and lost* over $11 million; no distributions were ever made to TrashMasters or its members; the Debtor operated as a going concern for well over seven years, paying its creditors in the ordinary course of business; and institutional lenders were willing to make substantial loans to the Debtor, with better terms as time went on, as late as 2015.

The Complaint does not meet the most basic pleading requirements under the Federal Rules of Civil Procedure and applicable law. Each of the fraudulent transfer counts (Counts I-LII), seeking to recover five categories of payments as actual and constructively fraudulent transfers, fails on multiple grounds, including:

2

(1) failure to meet the heightened specificity requirements for each actual fraudulent transfer count; (2) failure to allege actual intent to delay, defraud, or hinder creditors beyond bare legal conclusions quoting the statute; and (3) failure to sufficiently allege insolvency or lack of reasonably equivalent value with respect to the constructively fraudulent transfer counts, which is also fatal, as a practical matter, to the actual fraudulent transfer counts. Moreover, with respect to the Counts challenging the Union Bank Payments (Counts I-III), the KNG Payoff (Counts XLV- LI), and the Advisory Fees (Counts IV-XXXVII), the Complaint acknowledges facts that irrefutably establish reasonably equivalent value.

Without the fraudulent transfer counts, the Trustee's remaining counts (Counts LIII-LXI) for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy, unjust enrichment, and alter ego all fail; however, even if there were underlying fraudulent transfers, these Counts would all fail for multiple reasons, including that the Trustee fails to allege which defendants were officers and directors of the Debtor or facts that establish that any Defendant other than TrashMasters owed fiduciary duties to the Debtor or its creditors, and relies entirely on impermissible "group pleading" allegations with respect to all the officer and director defendants rather than specifying what wrongful conduct each Defendant took part in, as the Trustee is required to do. It is well settled that claims for conspiracy to commit fraudulent transfers (Count LIII) may not be brought by a

3

bankruptcy trustee. The alter ego claim (LX) fails because the Trustee seeks to have all defendants found to be alter egos of all other Defendants without pleading facts to support such relief and seeks to impose the doctrine of reverse alter ego, which is not recognized in Hawaii. Finally, the unjust enrichment claim (LXI) fails because fails the Trustee has not pleaded facts stating what was conferred upon each Defendant that they unlawfully retained.

## II.
## RELEVANT FACTUAL BACKGROUND

### A.  Trustee's Extensive Rule 2004 Discovery.

The Trustee has already conducted extensive discovery against many of the Defendants as well as non-defendant third parties, such as the Debtor's accountants.[2] Subpoenas seeking essentially all documents concerning the Debtor and its relationship to the Defendants were served on TrashMasters, the Corridor Entities, the SPB Entities, ROHI, Bass, Enenstein, Monnier, Greulich and Doug L. Asay.

On May 4, 2018, TrashMasters, the Corridor Entities, and the SPB Entities filed their *Motion to Quash Subpoenas or, in the Alternative, for Protective Order* [Bankr. Dkt. No. 387].  The Trustee responded by filing a motion to compel

---

[2] *See*, *e.g.*, *Subpoena for Rule 2004 Examination upon the Custodian of Records of Green, Hasson & Janks* [Bankr. Dkt. No. 367].

4

responses to the subpoenas, and an opposition to the motion to quash [Bankr. Dkt. No. 394], followed by additional briefing by the parties [Bankr. Dkt. Nos. 428, 432]. The parties negotiated the *Trustee's Search Protocol and Terms for Electronic Data Responsive to the Trustee's BR 2004 Requests to TrashMasters, LLC, Corridor Capital, LLC and SPB Partners* dated August 28, 2018. The Court ordered that production be completed by October 5, 2018 [Bankr. Dkt. No. 468]. Thereafter, TrashMasters, the Corridor Entities and the SPB Entities produced over 164,000 documents consisting of over 400,000 pages to the Trustee, which included virtually all of the documents and data already in their possession created prior to the bankruptcy filing relating to the Debtor, including emails. *See* Declaration of Kenneth Brown ("Brown Decl."), ¶¶ 4, 5.

**B. The Complaint.**

On December 7, 2018, the Trustee filed his sixty-one count, 126-page Complaint to recover allegedly fraudulent transfers and damages purportedly relating to the alleged fraudulent transfers on multiple theories: conspiracy to commit fraudulent transfers, breach of fiduciary duties, conspiracy to breach fiduciary duties, aiding and abetting breach of fiduciary duties, alter ego, and unjust enrichment.

The allegations of the Complaint are discussed below in connection with the legal arguments.

5

## III.

## <u>SUMMARY OF ARGUMENT</u>

Each of Counts I through LXI fails for multiple reasons, as set forth in detail

in Section IV of this Motion, as follows:

| Count | Description | Transfer | Defendant(s) | **Reasons for Dismissal** <u>*(dismissal with prejudice noted in italics and underlined)*</u> |
|---|---|---|---|---|
| I | Actual Fraudulent Transfer | Union Bank Payments | TrashMasters, ROHI | 1. Failure to allege details of transfers (IV.B.3.a(1) at 48)<br><br>2. Failure to allege actual fraud or badges of fraud (IV.B.3.a(2) at 48) |
| II, III | Constructive Fraudulent Transfer | Union Bank Payments | TrashMasters, ROHI | 1. Failure to allege details of Union Bank Payments (IV.B.3.b(1) at 52)<br><br>*2. Reasonably Equivalent Value Received as a matter of law (IV.B.3.b(2) at 52)*<br><br>3. Failure to allege insolvency (IV.B.2.a at 30) |
| IV, VII | Actual Fraudulent Transfer | 2009-2011 Advisory Fees | Corridor Capital, SPB Management | 1. Failure to allege actual fraud or badges of fraud (IV.B.4.a(1) at 54) |
| V, VI, VIII, IX | Constructive Fraudulent Transfer | 2009-2011 Advisory Fees | Corridor Capital, SPB Management | *1. Reasonably Equivalent Value Received as a matter of law (IV.B.4.b(1) at 60)*<br><br>2. Failure to allege insolvency (IV.B.2.a at 30) |

6

| Count | Description | Transfer | Defendant(s) | Reasons for Dismissal (*dismissal with prejudice noted in italics and underlined*) |
|---|---|---|---|---|
| X, XI, XV, XXIV, XXV, XXIX | Actual Fraudulent Transfer | 2012 Advisory Fees | Corridor Capital, SPB Management | 1. Failure to allege actual fraud or badges of fraud (IV.B.4.a(1) at 54) |
| XII, XIII, XIV, XVI, XXVI, XXVII, XXVIII, XXX | Constructive Fraudulent Transfer | 2012 Advisory Fees | Corridor Capital, SPB Management | *1. Reasonably Equivalent Value Received as a matter of law (IV.B.4.b(1) at 60)* <br> 2. Failure to allege insolvency (IV.B.2.a at 30) |
| XVII, XVIII, XXII, XXXI, XXXII, XXXVI | Actual Fraudulent Transfer | 2013/2014 Advisory Fees | Corridor Capital, SPB Management | 1. Failure to allege actual fraud or badges of fraud (IV.B.4.a(1) at 54) |
| XIX, XX, XXI, XXIII, XXXIII, XXXIV, XXXV, XXXVII | Constructive Fraudulent Transfer | 2013/2014 Advisory Fees | Corridor Capital, SPB Management | *1. Reasonably Equivalent Value Received as a matter of law (IV.B.4.b(1) at 60)* <br> 2. Failure to allege insolvency (IV.B.2.a at 30) |
| XXXVIII XXXIX, XLIII | Actual Fraudulent Transfer | ROHI Payoff | TrashMasters, ROHI | *1. Transfer not of Debtor's Property (IV.B.5.a at 62)* <br> 2. Failure to allege actual fraud or badges of fraud (IV.B.5.b(1) at 64) |

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 28 of 127

| Count | Description | Transfer | Defendant(s) | **Reasons for Dismissal** *(dismissal with prejudice noted in italics and underlined)* |
|---|---|---|---|---|
| XL, XLI, XLII, XLIV | Constructive Fraudulent Transfer | ROHI Payoff | TrashMasters, ROHI | *1. Transfer not of Debtor's Property (IV.B.5.a at 62)*<br><br>2. Failure to allege insolvency (IV.B.2.a at 30) |
| XLV, XLVI, L | Actual Fraudulent Transfer | KNG Payoff | TrashMasters, KNG | 1. Failure to allege actual fraud or badges of fraud (IV.B.6.a(1) at 68) |
| XLVII, XLVIII, XLIX, LI | Constructive Fraudulent Transfer | KNG Payoff | TrashMasters, KNG | *1. Reasonably Equivalent Value Received as a matter of law (IV.B.6.b(1) at 70)*<br><br>2. Failure to allege insolvency (IV.B.2.a at 30) |
| LII | Actual and Constructive Fraudulent Transfers | Colbeck Payments | Colbeck, Colbeck Consulting, TrashMasters | 1. Failure to allege details of transfers (IV.B.7.a at 73)<br><br>2. Failure to allege actual fraud or badges of fraud (IV.B.7.b at 74)<br><br>3. Failure to allege lack of reasonably equivalent value (IV.B.7.c(1) at 76)<br><br>4. Failure to allege insolvency (IV.B.2.a at 30) |

8

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 29 of 127

| Count | Description | Transfer | Defendant(s) | **Reasons for Dismissal** *(dismissal with prejudice noted in italics and underlined)* |
|---|---|---|---|---|
| | | | | *Counts LIII-LXI are derivative, in whole or in part, of Counts I-LII and fail to the extent Counts I-LI are dismissed (IV.C.1 at 77)* |
| LIII, LIV | Civil Conspiracy to Commit Fraudulent Conveyances and Transfers | Fraudulent conveyances[3] and fraudulent transfers[4] | Grouped Defendants[5] | 1. Impermissible group pleading (IV.C.2 at 79) *2. Lack of standing as Debtor co-conspirator (IV.D.1 at 81)* *3. Lack of standing for Trustee to pursue claims (IV.D.1.a at 81)* 4. Failure to allege elements (IV.D.2 at 84) |
| LV, LVI, LVII | Breach of Fiduciary Duties | All Transfers, Advisory Agreement and Advisory Fees | Grouped Defendants | 1. Impermissible group pleading (IV.C.2 at 79) *2. As to Officers Directors, Corridor Entities, SPB Entities, no duties owed (IV.E.1 at 86)* 3. Failure to allege breaches (IV.E.2 at 91) *4. Any breaches were ratified while Debtor solvent (IV.E.3 at 92)* 5. Failure to allege hopeless |

[3] Set forth in Counts X, XXIV, XXXI, XXXVIII, and XLV.

[4] Set forth in Counts I-IX, XIXXIII, XXV-XXX, XXXII-XXXVII, XXXIX-XLIV, and XLVI-LII.

[5] Defined in Section IV.C.2 at 61 as TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities.

9

| Count | Description | Transfer | Defendant(s) | Reasons for Dismissal *(dismissal with prejudice noted in italics and underlined)* |
|---|---|---|---|---|
|  |  |  |  | insolvency (IV.E.4 at 94) |
| LVIII | Civil Conspiracy to Breach Fiduciary Duties | All Transfers | Grouped Defendants | 1. If Counts LV-LVII are dismissed, Count LVIII must be dismissed (IV.F.1 at 95)<br><br>2. Impermissible group pleading (IV.C.2 at 79)<br><br>3. Failure to allege conspiracy (IV.F.2 at 96) |
| LVIX | Aiding and Abetting a Breach of Fiduciary Duties | All Transfers | Grouped Defendants | 1. If Counts LV-LVII are dismissed, Count LVIII must be dismissed (IV.G.1 at 96)<br><br>2. Impermissible group pleading (IV.C.2 at 79)<br><br>3. Failure to allege aiding and abetting (IV.G.2 at 97) |
| LX | Alter Ego | All Transfers | Officers and Directors, Corridor Entities, SPB Entities | 1. Impermissible group pleading (IV.C.2 at 79)<br><br>2. Failure to allege alter ego (IV.H at 98) |

10

| Count | Description | Transfer | Defendant(s) | **Reasons for Dismissal** *(dismissal with prejudice noted in italics and underlined)* |
|-------|-------------|----------|--------------|---------------------------------------------------------------------------------------|
| LXI | Unjust Enrichment | All Transfers | All Defendants | 1. Impermissible group pleading (IV.C.2 at 79) <br><br> *2. Unjust enrichment cannot supplement statutory regime (IV.I.1.a at 103)*[6] <br><br> *3. Unjust enrichment does not apply where contract exists (IV.I.1.b at 104)*[7] <br><br> 4. Failure to allege benefit conferred (IV.I.1.c at 104)[8] |

**IV.**

**ARGUMENT**

A.  **Pleading Standards.**

1.  **Rules 8(a) and 12(b)(6).**

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by

Federal Rule of Bankruptcy Procedure 7008, requires a claim for relief contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "'give the defendant fair

---

[6] As to amounts on account of fraudulent transfer.

[7] As to amounts on account of advisory fees.

[8] As to Corridor Capital Advisors; Corridor TrashMasters; SPB Waste; SPB Capital GP, LLC; SPB Capital Partners, L.P.; SPB Partners; and each of the Officers and Directors other than Colbeck.

11

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint, including, inter alia, whether the plaintiff has met the requirements of Rule 8(a)(2). Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988); *see also Giacometti v. Arton Berm., Ltd. (In re Sukamto Sia)*, 349 B.R. 640, 648 (Bankr. D. Haw. 2006).

A court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12

the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted; quoting *Twombly*,
550 U.S. at 570). "The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a defendant has
acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint
pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short
of the line between possibility and plausibility of entitlement to relief.'" *Id.*
(quoting *Twombly*, 550 U.S. at 557).

"[T]o survive a motion to dismiss, the non-conclusory 'factual content,' and
reasonable inferences from that content, must be plausibly suggestive of a claim
entitling the plaintiff to relief." Moss *v. United States Secret Serv.*, 572 F.3d 962,
969 (9th Cir. 2009).[9]

## 2. Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by
Federal Rule of Bankruptcy Procedure 7009, provides: "In alleging fraud or

---

[9] In deciding a motion to dismiss, a court may consider documents attached to the
complaint, documents incorporated by reference in the complaint, or matters of
judicial notice, without converting the motion to dismiss into a motion for
summary judgment. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998
(9th Cir. 2018) (documents incorporated by reference into complaint are properly
considered in a motion to dismiss).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed   02/15/19   Page 34 of 127

mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Failure to satisfy the specificity requirement results in dismissal. *See Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989).

Rule 9(b) requires fraud allegations to specify "'the who, what, when, where, and how of the misconduct charged.'" *Holmes v. Johnson & Johnson*, 617 F. App'x 639, 644 (9th Cir. 2015) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

The Trustee fails to satisfy these standards. The Complaint fails to include essential factual allegations, but instead relies on conclusory statements to support implausible claims.

**B.** **The Complaint Fails to State Plausible Claims for Relief Based on Fraudulent Transfers (Counts I-LII).**

The first fifty-two Counts seek to avoid and recover five separate categories of payments made between May 2009 and July 2014 (each, an "Alleged Fraudulent

14

Transfer").[10]  Each of the Alleged Fraudulent Transfers is alleged to be avoidable

as both an actual and constructively fraudulent transfer, as follows:

| Challenged Transfer | Actual Fraud Counts | Constructive Fraud Counts | Defendants |
|---|---|---|---|
| 1.  Union Bank Payments | Count I | Counts II, III | ROHI, TrashMasters |
| 2.  Advisory Fees | | | |
|    a.  2009-2011 Corridor Advisory Fees | Count IV | Counts V, VI | Corridor Capital |
|    b.  2009-2011 SPB Advisory Fees | Count VII | Counts VIII, IX | SPB Management |
|    c.  2012 Corridor Advisory Fees | Counts X, XI, XV | Counts XII, XIII, XIV, XVI | Corridor Capital |
|    d.  2013/2014 Corridor Advisory Fees | Counts XVII, XVIII, XXII | Counts XIX, XX, XXI, XXIII | Corridor Capital |
|    e.  2012 SPB Advisory Fees | Counts XXIV, XXV, XXIX | Counts XXVI, XXVII, XXVIII, XXX | SPB Management |
|    f.  2013/2014 SPB Advisory Fees | Counts XXXI, XXXII, XXXVI | Counts XXXIII, XXXIV, XXXV, XXXVII | SPB Management |
| 3.  ROHI Payoff | Counts XXXVIII, XXXIX, XLIII | Counts XL, XLI, XLII, XLIV | ROHI, TrashMasters |
| 4.  KNG Payoff | Counts XLV, XLVI, L | Counts XLVII, XLVIII, XLIX, LI | KNG, TrashMasters |
| 5.  Colbeck Payments | Count LII | Count LII | Colbeck, |

---

[10] Except for the 2013 and 2014 Advisory Fees and the Colbeck Payments, all the challenged transfers are alleged to have occurred prior to the end of 2012. The Trustee does not provide the dates for the alleged Colbeck Payments, although the Complaint alleges Colbeck was hired in July 2014 (Complaint ¶ 167).

15

| Challenged Transfer | Actual Fraud Counts | Constructive Fraud Counts | Defendants |
|---|---|---|---|
| | | | Colbeck Consulting, TrashMasters |

### 1. Legal Requirements for Fraudulent Transfers.

#### a. Property of the Debtor.

A transfer of the *debtor's* property "is a prerequisite for a fraudulent transfer action." *Leslie v. Bartamian (In re Mihranian)*, No. 16-1378, 2017 Bankr. LEXIS 1802, at *11 (B.A.P. 9th Cir. June 26, 2017); *see also Gaughan v. Edward Dittlof Revocable Trustee (In re Costas)*, 555 F.3d 790, 792-93 (9th Cir. 2009) (generally stating property interest requirement).

#### b. Actual Fraudulent Transfers Require Intent to Hinder, Delay, or Defraud.

Under the Hawaii Uniform Fraudulent Transfer Act ("HUFTA"), Haw. Rev. Stat. §§ 651C-1 – 651C-10; the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3304-3308; and Hawaii common law, transfers made to hinder, delay, or defraud creditors are avoidable. *See* Haw. Rev. Stat. § 651C-4(a)(1); 28 U.S.C. § 3304(b)(1)(A); *Achiles v. Cajigal*, 39 Haw. 493, 496 (1952).[11]

---

[11] Hawaiian common law is redundant of HUFTA. As explained by the Ninth Circuit, the common law of Hawaii was incorporated into sections 4(a)(1) and 8 of HUFTA. *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990). HUFTA may have superseded Hawaiian common law. *See Valvanis v. Milgroom*, No. 06-00144, 2009 U.S. Dist.

16

HUFTA, FDCPA and Hawaiian common law are substantially similar to one another, as well as to section 548 of the Bankruptcy Code, and cases construing any of them laws are persuasive authority with respect to the other.[12]

### (1) Particularity Required for Actual Fraudulent Transfers Under Rule 9(b).

Because claims for intentionally fraudulent transfers sound in fraud, the Trustee is required to plead the circumstances constituting fraud with particularity in order to satisfy the heightened pleading standards of Rule 9(b), under Hawaii common law, Haw. Rev. Stat. § 651C-4(a)(1) and 28 U.S.C. § 3304(b)(1)(A).[13]

---

LEXIS 45707, at *22 n.8 (D. Haw. June 1, 2009) (citing *Kekona v. Abastillas*, 113 Haw. 174, 182, 150 P.3d 823, 831 (2006), and noting that the appeals court stated that the common law preferential transfer rule was superseded by HUFTA).

[12] *See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990) (cases construing Bankruptcy Code counterparts to HUFTA and Hawaiian common law are persuasive authority due to the similarity of the laws); *Schmidt v. HSC, Inc.*, 136 Haw. 158, 165 (App. 2015) (looking to law of other UFTA states in interpreting HUFTA); *United States v. Arthur*, No. 10-cv-01561, 2011 U.S. Dist. LEXIS 105611, at *9 (E.D. Mo. Sept. 19, 2011) (looking to UFTA cases in interpreting the requirements of the FDCPA).

[13] *Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1198 (D. Haw. 2007) (applying Rule 9(b) standard to fraudulent transfers brought under Haw. Rev. Stat. § 651C-4(a)(1)); *United States v. Lebeau*, No. 17-cv-1046, 2017 U.S. Dist. LEXIS 202655, at *14 (S.D. Cal. Dec. 8, 2017) (applying Rule 9(b) standard to fraudulent transfers brought under 28 U.S.C. § 3304(b)); *Nishibun v. Prepress Sols.*, 111 F.3d 138 (table), 1997 U.S. App. LEXIS 6678, at *2 (9th Cir. 1997) (complaint alleging intent to hinder, delay, or defraud must meet particularity requirements of Rule 9(b)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 38 of 127

### (a) Particularity Required on Details of Transfer.

Under Rule 9(b), the plaintiff's fraudulent transfer allegations must include "'the who, what, when, where, and how of the misconduct charged.'" *Gugino v. Nelmap, LLC (In re Wallace)*, No. 12-ap-07056, 2013 Bankr. LEXIS 1609, at *13 (Bankr. D. Idaho Apr. 17, 2013) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

The Trustee must allege the following, for each transfer:

- the date of the transfer;

- the amount of the transfer;

- the name of the transferor;

- the name of the initial transferee; and

- the consideration paid, if any, for the transfer.

*Gold v. Winget (In re NM Holdings Co.)*, 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009) ("'Allegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim.'") (quoting *Official Comm. v. JP Morgan Chase Bank (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008)).[14]

_____

[14] *See also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("complaint must specify such facts as the times, dates, places, benefits received"); *Nishibun v.*

### (b) Particularity Required on Circumstances Constituting Fraud.

Mere recitation that a transfer was made with actual intent to hinder, delay, or defraud is insufficient. *See Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)[15] ("'conclusory allegations of fraud . . . punctuated by a handful of neutral facts'" are insufficient) (quoting *Semegen*, 780 F.2d at 731). A complaint must set forth facts from which an inference of scienter could be drawn. *See Hoffman v. Adelman (In re SCI Real Estate Invs., LLC)*, No. 13-ap-1175, 2013 Bankr. LEXIS 1780, at *13 (Bankr. C.D. Cal. May 1, 2013) (citing *Cooper v. Pickett*, 137 F.3d 616, 628 (9th Cir. 1997)).

The strong inference of the transferor's fraudulent intent must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. . . . [I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 323 (2007).

---

*Prepress Sols.*, 111 F.3d 138 (table), 1997 U.S. App. LEXIS 6678, at * (9th Cir. 1997) (dismissal is appropriate where a complaint for actual fraudulent transfers fails to allege details of the transaction, including the assets' value and the consideration for the transfer).

[15] Superseded by statute on other grounds as stated in *S.E.C. v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).

19

### (i)    Badges of Fraud.

Allegations from which scienter may be inferred are known as "badges of fraud," and are listed at Haw. Rev. Stat. § 651C-4(b): (i) transfer to an insider; (ii) debtor retains possession or control of property after the transfer; (iii) concealment of transfer; (iv) threat of suit prior to transfer; (v) transfer of substantially all debtor's assets; (vi) debtor absconds; (vii) debtor had removed or concealed assets; (viii) lack of reasonably equivalent value received by debtor; (ix) debtor was insolvent or became insolvent shortly after transfer made; (x) transfer occurred shortly before or after substantial debt was incurred; and (xi) debtor transfers essential assets of business to a lienor who transfers assets to an insider of the debtor. *See* Haw. Rev. Stat. § 651C-4(b); *see also* 28 U.S.C. § 3304(b) (substantively identical badges of fraud listed in statutory text of FDCPA); *Achiles*, 39 Haw. at 497 (listing eight badges of fraud relevant to Hawaii common law fraudulent transfer analysis).[16]

_____

[16] Badges of fraud under Hawaiian common law are: (1) the transferor is indebted or insolvent; (2) the conveyance is general, i.e., that the debtor's entire estate is diminished, thereby leaving him insolvent; (3) consideration for the conveyance is absent; (4) the conveyance is secret and concealed; (5) the conveyance is made to a family member or to one of close relationship; (6) the conveyance is made while a suit against the debtor is pending or threatening; (7) the transferee takes the property in trust for the debtor; (8) the debtor remains in possession, reserves the use and benefit, and deals with the property as his own. *See Achiles,* 39 Haw. at 497.

20

Badges of fraud, while not conclusive, "help to 'focus the inquiry on the circumstances that suggest a *conveyance* was made with fraudulent intent, *viz.* with the purpose of placing a debtor's assets out of the reach of creditors.'" *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (quoting *In re Sharp Int'l. Corp.*, 302 B.R. 760, 784 (E.D.N.Y. 2003)).

The inquiry is whether alleged badges of fraud, taken together, lead to the conclusion that fraud existed. While one badge might suffice if it were sufficiently probative of intent to disadvantage creditors, "'proof of some, or even all,'" of the badges may not show intent. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1229 (C.D. Cal. 2012) (quoting *Lindholm v. Holtz*, 221 Ill. App. 3d 330, 334 (2d Dist. 1991) and citing *Grochocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 378 (Bankr. N.D. Ill. 2005) (six factors insufficient to give rise to inference of actual intent when none of the six factors contradict an alternative innocent explanation for the transfers)).

Further, Rule 9(b) requires that allegations of intent to delay, hinder, or defraud creditors specifically relate to the transaction that the plaintiff seeks to avoid. *See Official Comm. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006) (dismissing those intentional fraudulent transfer

21

claims for which plaintiff failed to adequately connect the badges of fraud to the transaction in question).[17]

### a) Insolvency as a Badge of Fraud.

Insolvency is one of the badges of fraud from which intent may be drawn in combination with other badges of fraud (and is heavily relied upon by the Trustee). The sufficiency of the Trustee's allegations of insolvency is discussed, *infra*, at Section IV.B.2.a, page 36. However, insolvency, even if adequately pleaded, is not a badge of fraud when the challenged payments were, as here, made on account of antecedent debt. *See Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 767-68 (Bankr. W.D. La. 2013).

### b) Insider Status as a Badge of Fraud.

Whether a transfer was made to an insider is one of the badges of fraud from which intent may be drawn. Courts applying Hawaiian law look to the HUFTA definition of insider, section 651C-1, to analyze whether a transferee is an insider for purposes of the "badges of fraud" analysis. *See United States v. Martin*, No. 13-cv-00503, 2015 U.S. Dist. LEXIS 98982, *18 (D. Haw. May 29, 2015);

---

[17] *See also Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 39 (Bankr. E.D.N.Y. 2006) (dismissing fraudulent conveyance claim where plaintiff adequately pleaded general intent to defraud future creditors, but failed to add sufficiently particularized allegations that the transfers were made in furtherance of that fraud).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed   02/15/19   Page 43 of 127

*Schmidt v. Fid. Nat'l Title Ins. Co.*, No. 07-cv-00356, 2009 U.S. Dist. LEXIS

139285, *21-22 (D. Haw. Sept. 30, 2009).  HUFTA defines an insider as including:

> (2) If the debtor is a corporation:[18]
>
>> (A) A director of the debtor;
>>
>> (B) An officer of the debtor;
>>
>> (C) A person in control of the debtor;
>>
>> (D) A partnership in which the debtor is a general partner;
>>
>> (E) A general partner in a partnership described in subparagraph (D); or
>>
>> (F) A relative of a general partner, director, officer, or person in control of the debtor;
>
> (4) An affiliate,[19] or an insider of an affiliate as if the affiliate were the debtor; and

---

[18] LLCs are treated as corporations for purposes of insider analysis under the Bankruptcy Code. *See* 2 *Collier on Bankruptcy* ¶ 101.09 (16th ed. 2019); *In re Ridgeway*, No. 16-bk-10643, 2018 Bankr. LEXIS 531, at *6 n.17 (Bankr. E.D. La. Feb. 27, 2018).  The HUFTA definition of insider tracks the definition in the Bankruptcy Code at section 101(31). *See* 11 U.S.C. § 101(31).

[19] HUFTA defines an affiliate as:

> (1) A person who directly or indirectly owns, controls, or holds with power to vote, twenty or more per cent of the outstanding voting securities of the debtor, other than a person who holds the securities:
>
>> (A) As a fiduciary or agent without sole discretionary power to vote the securities; or
>>
>> (B) Solely to secure a debt, if the person has not in fact exercised the power to vote;

23

(5) A managing agent of the debtor.

Haw. Rev. Stat. § 651C-1.  However, insider status, even if adequately pleaded, is not a badge of fraud when the challenged payments were, as here, made on account of antecedent debt.  *See Goodman*, 491 B.R. at 767.

### (2) Transfers on Account of Antecedent Debt Are Not Actually Fraudulent.

When transfers are made on account of an antecedent debt, even to an insider while the transferor is insolvent, the transfers are not avoidable as actually fraudulent unless the plaintiff pleads "facts (as opposed to conclusions) explaining

---

(2) A corporation, twenty or more per cent of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by a person who directly or indirectly owns, controls, or holds with power to vote, twenty or more per cent of the outstanding voting securities of the debtor, other than a person who holds the securities:

(A) As a fiduciary or agent without sole discretionary power to vote the securities; or

(B) Solely to secure a debt, if the person has not in fact exercised the power to vote;

(3) A person whose business is operated by the debtor under a lease or other agreement, or a person substantially all of whose assets are controlled by the debtor; or

(4) A person who operates the debtor's business under a lease or other agreement or controls substantially all of the debtor's assets.

Haw. Rev. Stat. § 651C-1.

24

how the[] transfers, which satisfied an antecedent debt, could have impacted [the debtor's] solvency." *Goodman*, 491 B.R. at 767; *Nisselson v. Softbank AM Corp. (In re Marketxt Holding Corp.)*, 361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007) (payment pursuant to pre-existing obligation is not a prima facie scheme to hinder or delay other creditors).

> ### c. Constructively Fraudulent Transfers Require Both Lack of Reasonably Equivalent Value and Insolvency.

The elements of a constructively fraudulent transfer are set forth in Haw. Rev. Stat. §§ 651C-4(a)(2) and 651C-5 and 28 U.S.C. §§ 3304(a)(1), (2) and 3304(b)(1)(B). Notwithstanding distinctions as to sections that apply to present and future creditors of the debtor or only present creditors, the constructively fraudulent—transfer tests can be summarized as follows: a transaction may be avoided as a constructively fraudulent transfer if the debtor received less than reasonably equivalent value in exchange for such transfer and at the time was either: (i) actually insolvent or became insolvent as a result of the transfer ("Actual Insolvency") in that at fair valuation, the sum of the debtor's debts at fair valuation were greater than the sum of the debtor's assets, which may be presumed if the debtor was generally not paying debts as they came due; (ii) left with unreasonably small capital in relation to that business or transaction ("Inadequate Capitalization"); or (iii) intended to incur or believed it would incur debts beyond

25

its ability to repay after the transaction ("Intent to Incur Debt").[20] Regardless of which of these tests is utilized, "at its core, 'a constructive fraudulent transfer [claim] has two elements: reasonable equivalent value and [some version of] insolvency.'" *LaChapelle v. Dong Kwan Kim*, No. 15-cv-02195, 2015 U.S. Dist. LEXIS 161801, at *21 (Bankr. C.D. Cal. Dec. 2, 2015) (quoting *Allstate Ins. Co.*, 842 F. Supp. 2d at 1224).

### (1) Particularity Required for Pleading Constructively Fraudulent Transfers.

Cases within the Ninth Circuit addressing the applicability of Rule 9 to constructively fraudulent transfers under HUFTA have applied the Rule 9(b) standard. *See*, *e.g.*, *Isuzu Motors America, LLC v. Jackson*, No. 13-cv-00306, 2014 U.S. Dist. LEXIS 117930, at *5 (D. Haw. Aug. 25, 2014) (applying Rule 9 standard to constructively fraudulent transfer); *Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1198 (D. Haw. 2007) (applying Rule 9 standard to both actual and constructively fraudulent transfers). Under either the particularity standard of Rule 9 (Section IV.B.1.b(1) at 17) or the pleading standard of Rule 8, set forth in

---

[20] 5 *Collier on Bankruptcy* ¶ 548.05 (16th ed. 2019); Haw. Rev. Stat. § 651C-4(a)(2); 28 U.S.C. § 3304(b)(1)(B) (identical test to Haw. Rev. Stat. § 651C-4(a)(2), but as to the United States); *id.* § 651C-5; 28 U.S.C. § 3304(a)(1), (2) (identical test to Haw. Rev. Stat. § 651C-5 but with respect to a debt to the United States).

26

*Twombly* and *Iqbal* (Section IV.A.1 at 11), a complaint must set forth more than conclusory allegations of reasonably equivalent value and insolvency and allege facts that plausibly point to liability. *See LaChapelle*, 2015 U.S. Dist. LEXIS 161801, at *21 (dismissing complaint for failing to allege actual facts, in contrast to mere conclusions, in support of elements of constructively fraudulent transfer); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d at 1224 (a complaint must plead something more than facts that are both consistent with liability but also with nonculpable action).

### (2) Complaint Must Plausibly Allege Lack of Reasonably Equivalent Value.

A mere recital of the legal conclusion that a transfer was made without reasonably equivalent value is not sufficient to withstand a motion to dismiss. *LaChapelle*, 2015 U.S. Dist. LEXIS 161801, at *21; *Allstate Ins. Co.*, 842 F. Supp. 2d at 1225.

Reasonably equivalent value under the UFTA is measured objectively, from the perspective of the transferor's creditors. *See Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010).

### (a) Satisfaction of an Antecedent Debt Is Reasonably Equivalent Value.

As a matter of law, value is given for payments made on account of an antecedent debt. "Value is given for a transfer or an obligation if in exchange for

27

the transfer or obligation property is transferred or an antecedent debt is secured or satisfied." Haw. Rev. Stat. § 651C-3; *see also Menjivar v. Wells Fargo Bank, N.A. (In re Menjivar)*, No. 12-ap-1608, 2014 Bankr. LEXIS 371, at *23 (B.A.P. 9th Cir. Jan. 28, 2014) (dismissing count with prejudice and stating "it is not plausible that the satisfaction of antecedent debt . . . did not constitute reasonably equivalent value"); *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 388-89 (Bankr. S.D.N.Y. 2011) (granting defendant's motion to dismiss constructively fraudulent transfer claim because transfers were payments for an antecedent debt and were presumptively made for value); *In re Sharp Int'l Corp.*, 403 F.3d 43, 54-55 (2d Cir. 2005) ("'[A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another.'") (quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 90-91, (N.Y. Sup. 1993)); *Official Comm. v. Credit Suisse (In re Champion Enters.)*, No. 10-ap-50514, 2010 Bankr. LEXIS 2720, at *61 (Bankr. D. Del. Sept. 1, 2010) ("security interests granted by [debtor] in respect of an antecedent debt . . . like repayment of antecedent debt . . . are necessarily fair consideration.").[21] In *Wyle v. C.H. Rider & Family (In re*

_____

[21] *See also Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.)*, 346 B.R. 798, 804-05 (B.A.P. 8th Cir. 2006) (concluding that the debtor's satisfaction of an existing promissory note by payment thereof constituted reasonably equivalent

28

*United Energy Corp.*), 944 F.2d 589, 597 (9th Cir. 1991), the Ninth Circuit

emphasized that, in contrast to the policies underlying preferential transfers, the

analysis in fraudulent transfers is "'directed at what the debtor surrendered and

what the debtor received irrespective of what any third party may have gained or

lost.'" *Id.* (finding that Ponzi scheme investors received reasonably equivalent

value to extent of payments received from scheme organizer; investors' rights to

restitution "were proportionately reduced by the power payments they

received") (quoting *Martin v. Phillips (In re Butcher)*, 58 Bankr. 128, 130 (Bankr.

E.D. Tenn. 1986)).

---

value and was not an avoidable fraudulent conveyance); *Schilling v. Montalvo (In re Montalvo)*, 324 B.R. 619, 623 (Bankr. W.D. Ky. 2005) (finding that the debtor received reasonably equivalent value in exchange for two monthly loan payments made to his father as reimbursements for paying the debtor's existing unsecured bank loan); *Barber v. Dunbar (In re Dunbar)*, 313 B.R. 430, 439 (Bankr. C.D. Ill. 2004); *Official Comm. v. Wachovia Bank, N.A. (In re Heilig-Meyers Co.)*, 297 B.R. 46, 51-52 (Bankr. E.D. Va. 2003); *Dowden v. First Sec. Bank (In re Mid-South Auto Brokers)*, 290 B.R. 658, 665 (Bankr. E.D. Ark. 2003); *Butler v. Loomer (In re Loomer)*, 222 B.R. 618 (Bankr. D. Neb. 1998); *Marshack*, 163 B.R. at 581 (emphasizing that the debtor received reasonably equivalent value in exchange for payments made on account of the debtor's own personal debt owed to Wells Fargo because "each of the Debtor's payments resulted in a dollar-for-dollar reduction in [the] Debtor's liability under the initial Guaranty"); *Meister v. Jamison (In re Jamison)*, 21 B.R. 380, 381-82 (Bankr. D. Conn. 1982) (holding that the debtor received reasonably equivalent value in exchange for the loan repayments on a previously executed promissory note, recognizing that "[t]here was no depletion of the debtor's estate since each payment was matched by an equivalent reduction in the *debtor's* debt.").

29

Moreover, the payment of a debt secured by the debtor's assets is not an estate-depleting transfer that harms creditors; the debtor receives reasonably equivalent value as the result of the dollar-for-dollar reduction in the amount of the lien on its assets. This is apparent from the statutory definitions in HUFTA and the Bankruptcy Code. Haw. Rev. Stat. §§ 651C-3(a) (transfer on account of antecedent debt is for value); 651C-1 ("Debt means liability on a claim" and "Claim means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured"); 11 U.S.C. § 102(2) ("Claim against the debtor includes claim against property of the debtor").

### (3)    Insolvency Must Be Plausibly Alleged.

To state a claim under HUFTA or FDCPA, the Trustee must plead Actual Insolvency, Inadequate Capitalization, or Intent to Incur Debt (Section IV.B.1.c at 25). Conclusory allegations of insolvency are not sufficient to meet the Rule 8(a) burden.  *See*, *e.g*., *Stoebner v. Opportunity Fin., LLC*, 562 B.R. 368, 390 (D. Minn. 2016); *In re THQ Inc*., No. 2-13398, 2016 Bankr. LEXIS 1774, at *4 (Bankr. D. Del. Apr. 18, 2016); *In re Tropicana Entm't, LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014).

30

### (a) Actual Insolvency.

HUFTA defines insolvency under the "balance-sheet" test, which is presumed if the "cash-flow" test is sufficiently alleged. *See* Haw. Rev. Stat. § 651C-2(a) and (b); *Field v. Wells Fargo Bank, N.A. (In re Mortg. Store, Inc.)*, No. 12-ap-90066, 2015 Bankr. LEXIS 1556, at *6 (Bankr. D. Haw. May 7, 2015) (Faris, J.). Under the balance-sheet test, "a debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Haw. Rev. Stat. § 651C-2(a). In determining whether a debtor's liabilities exceed the assets, intangible balance sheet assets, such as goodwill, which may have no market value (either on a liquidation or going concern basis) generally, should be excluded from the calculation. *See GSM Wireless, Inc. v. Honarkar (In re GSM Wireless, Inc.)*, No. 12-ap-01350, 2013 Bankr. LEXIS 3298, *78-82 (Bankr. C.D. Cal. April 5, 2013) (interpreting the analogous provision of California's UFTA). The cash-flow test provides a presumption of insolvency for "a debtor who is generally not paying debts as they become due."

The complaint must sufficiently allege "actual insolvency at the time of the allegedly fraudulent transfer." *Residential Funding Co., LLC v. InterLinc Mortg. Servs., LLC (In re RFC & ResCap Liquidating Trust Litig.)*, No. 13-cv-3541, 2017 U.S. Dist. LEXIS 63058, at *22 (D. Minn. April 25, 2017).

31

### (i)     Balance-Sheet Test.

Under the balance-sheet test, to survive a motion to dismiss, a complaint must "provide sufficient factual information for the [c]ourt to infer that the [d]ebtors were insolvent at the time of the transfers":

> Generally, there must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place.

*O'Toole*, 460 B.R. at 394 (citing *Joseph v. Frank (In re Troll Communs., LLC)*, 385 B.R. 110, 123-24 (Bankr. D. Del. 2008); *In re Midway Games, Inc.*, 428 B.R. 303, 321 (Bankr. D. Del. 2010)). Net-income figures and net cash-flow figures are insufficient to support the element of insolvency. *Id.* (complaints "fail to sufficiently plead insolvency as required under Delaware law because the financial data provided is inadequate for a court to reasonably infer that the Debtors were insolvent or rendered insolvent from the transfers in question."). In addition, a balance-sheet analysis must be done with respect to time at each transfer. *See In re RFC & ResCap Liquidating Trust Litig.*, 2017 U.S. Dist. LEXIS 63058, at *22-23 (a balance-sheet showing insolvency eighteen months prior to the alleged transfer insufficient to show insolvency at a later point in time).

32

### (ii)    Cash Flow Test.

The factors that support a presumption of insolvency based on nonpayment of debt are: (i) the number of debts, (ii) the proportion of those debts not being paid, (iii) the duration of the non-payment, (iv) the existence of bona fide disputes or other special circumstances, (v) the amount of delinquency, (vi) the materiality of nonpayment and (vii) the nature of the debtor's conduct of its financial affairs. *GSM Wireless*, 2013 Bankr. LEXIS 3298, *66; *Asarco LLC v. Ams. Mining Corp*., 396 B.R. 278, 402 (S.D. Tex. 2008).

In *GSM*, the bankruptcy court noted that this inquiry is in line with case law developed under section 303(h)(1) of the Bankruptcy Code relating to involuntary bankruptcies. *GSM*, 2013 Bankr. LEXIS 3298, at *65 n.5 (referencing *Liberty Tool, & Manufacturing v. Vortex Fishing Systems (In re Vortex Fishing Systems)*, 277 F.3d 1057, 1072 (9th Cir. 2002)) . In *Vortex*, the Ninth Circuit adopted a "totality of the circumstances" test for determining if a debtor is generally not paying its debts as they become due under section 303(h). The Ninth Circuit held that "[a] finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debts structure than merely establishing the existence of a few unpaid debts.'" *Id*. at 1072 (quoting *In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984)).

33

### (b) Intent to Incur Debts Beyond Ability to Pay.

Conclusory allegations of intent to incur debts beyond a debtor's ability to pay are insufficient. *See LaChapelle*, 2015 U.S. Dist. LEXIS 161801, at *21 (dismissing fraudulent transfer claims based on conclusory allegations of intent to incur debts beyond the ability to pay).[22]

### (c) Inadequate Capitalization.

Conclusory statements of inadequate capitalization are insufficient to survive a motion to dismiss. *Id.* at *22 (court dismissed fraudulent transfer claims where only conclusory allegation of inadequate capitalization was made)

In *Moody v. Sec. Pac. Bus. Credit, Inc.,* 971 F. 2d 1056 (3d Cir. 1992), the Third Circuit analyzed a leveraged buyout to determine whether advances and obligations were avoidable fraudulent transfers, and specifically whether the transaction left the debtor with unreasonably small capital. *Id.* at 1069-75. In the absence of controlling Pennsylvania law, the lower court looked to a district court case from California, *Credit Managers Ass'n v. Fed. Co.,* 629 F. Supp. 175 (C.D. Cal. 1985), and determined that the focus of inquiry regarding the adequacy of capital in a leveraged buyout should be on the reasonableness of the parties' cash

---

[22] *See Sol. Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.),* 548 B.R. 300, 331-34 (Bankr. C.D. Cal. 2016), for an example of the factual detail required to survive a motion to dismiss.

34

flow projections, *which include the availability of credit*. *Moody,* 971 F. 2d at 1072 (citing *Credit Managers Ass'n,* 629 F. Supp. at 185-86). The *Moody* court explained that "'the ability to borrow money has considerable value in the commercial world,'" and refusal to consider credit with respect to the adequacy of capital would render all leveraged buyouts voidable. *Id.* at 1072-73 (debtor suffered serious financial problems, but was not left with unreasonably small capital nor rendered equitably insolvent by transaction; judgment in favor of defendants affirmed) (quoting *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991)).

The ability to obtain a third-party loan reflects objective confidence in a debtor's financial condition, and particularly in this segment of the marketplace, the integrity of the management and ownership; moreover, a third-party loan is always based on a lender's due diligence and analysis of the industry and specific factual circumstances pertaining to the debtor. *See*, *e.g.*, *Credit Managers Ass'n*, 629 F. Supp. at 186-87 (lender willing to lend substantial sums before and after transaction; debtor projections were wrong but debtor had sufficient capital to operate); *Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC),* 373 B.R. 283, 349 (Bankr. S.D.N.Y. 2007) (fact that debtor closed on three syndicated bank loans was an indication of both solvency and capital adequacy); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),* 567 B.R. 55, 142 (Bankr. S.D.N.Y. 2017)

35

(projections were not unreasonable and plaintiff failed to establish unreasonably small capital where financing banks committed substantial money to debtor after diligent review of transaction by scores of people), *aff'd in part*, *vacated and remanded in part*, both *on other issues*, 585 B.R. 41 (S.D.N.Y. 2018).

Further, the amount of time a company continues to operate after a disputed transfer is considered in determining whether the debtor was inadequately capitalized at the time of the transfer. *See*, *e.g.*, *Fid. Bond & Mortg. Co. v. Brand (In re Fid. Bond & Mortg. Co.),* 371 B.R. 708, 728 (E.D. Pa. 2007) (determination of "unreasonably small capital" includes length of time company continues to operate after disputed transfer; adequate capital where debtor paid lender interest and did not file petition until fourteen months after merger).

### 2. Analysis of Issues Relevant to All Alleged Fraudulent Transfers.

The extent to which the Trustee sufficiently alleged facts relating to each Alleged Fraudulent Transfer Count is set forth, *infra*, at Section IV.B.3, 4, 5, 6, and 7, pages 46-72. However, solvency and insider status are applicable to all transfers and the inadequacy in the Trustee's allegations of both is addressed here.

### a. Insolvency Has Not Been Plausibly Alleged.

### (1) Allegations in the Complaint.

The Complaint alleges the following relating to insolvency generally:

36

130. In or about December 2011, the Debtor defaulted upon its obligations and/or covenants to Union Bank.

131. The Debtor had suffered losses and was experiencing cash flow issues.

132. Union Bank was reluctant to extend the Debtor additional credit and asked that it be taken out by another lender.

133. The Officers and Directors, the Corridor Entities, and the SPB Entities sought financing from various other lenders.

134. The Officers and Directors, the Corridor Entities, and the SPB Entities initially decided to obtain "take-out" financing from Fifth Third Bank.

135. Just prior to closing, Fifth Third Bank backed out and would not approve the proposed financing.

136. The Debtors' financial condition was determined to have been weak, and the proposed Fifth Third Bank Loan had a lower-than-standard "problem loan" rating.

183. Upon information and belief, the Debtor was undercapitalized and therefore insolvent at the date of inception.

184. Upon information and belief, shortly after inception, the Debtor was generally not paying its debts as they became due, and is presumed insolvent.

185. The Officers and Directors, the Corridor Entities, and the SPB Entities, deepened the Debtor's insolvency, spending the Debtor's money, encumbering the Debtor's assets, and incurring additional loan obligations, interest and fees and/or debt for which the Debtor and TrashMasters was unable, and would never be able, to repay.

186. These loan obligations included "hard" money loans with high interest rates.

37

187. Because the proceeds of these loans were used to pay others, the Debtor did not have sufficient assets or cash flow to service the 2012 Convergent Loan, the 2012 ASB Credit Agreement, and the 2015 ASB Refinance.

188. Because of the Debtor's insolvency and cash-flow issues, the Debtor was unable to timely replace its trucks, equipment, and other capital assets and the Officers and Directors, the Corridor Entities, and the SPB Entities elected to put the Debtor in bankruptcy.

189. At all relevant times, the City & County of Honolulu (the "C&C") was an unsecured pre-petition creditor of the Debtor.

190. The Debtor was regularly 60-90 days delinquent on its account with the C&C for tipping fees.

191. In 2014, the Honolulu City Council adopted Ordinance No. 14-13, which took effect on June 20, 2014.

192. Honolulu Ordinance 14-13 amended Section 9-4-3 of the Revised Ordinances of Honolulu 1990, as amended, and changed the payment terms for tipping fees to the C&C from 60 days to 30 days.

193. The Debtor and the Defendants had knowledge of Ordinance No. 14-13.

194. The Debtor did not pay the delinquent amounts it owed to the C&C.

195. The C&C has filed a proof of claim in the Debtor's bankruptcy case for tipping fees in the amount of $3,111,730.72.

196. The Internal Revenue Service has filed a proof of claim in the Debtor's bankruptcy case for FICA and partnership taxes and penalties in the amount of $100,208.32.

197. The State of Hawaii Department of Taxation has filed a proof of claim in the Debtor's bankruptcy case for general

38

excise taxes and county surcharges in the amount of
$108,970.72.

Complaint ¶¶ 130-36, 183-97.

Additionally, the Trustee makes repetitious conclusory allegations of

insolvency, unreasonably small capital and intent to incur debts beyond the

Debtor's ability to pay in connection with each Alleged Fraudulent Transfer.[23]

_____

[23] For each Alleged Fraudulent Transfer, the Complaint alleges actual insolvency,
undercapitalization, and the intent to incur debts, as follows:

- Union Bank Payments: ¶¶ 208, 215, 222 (actual insolvency), ¶¶ 216, 223
  (undercapitalization), ¶¶ 217, 224 (intent to incur debt);

- 2009-2011 Advisory Fees: ¶¶ 234, 239, 246, 258, 263, 270 (actual
  insolvency); ¶¶ 240, 247, 264, 271 (undercapitalization); ¶¶ 241, 248, 265,
  272 (intent to incur debt);

- 2012 Advisory Fees: ¶¶ 296, 301, 308, 313, 319, 324, 390, 396, 403, 408,
  414, 419 (actual insolvency); ¶¶ 302, 325, 397, 420 (undercapitalization);
  ¶¶ 303, 326, 398, 421 (intent to incur debt);

- 2013/2014 Advisory Fees: ¶¶ 336, 343, 352, 356, 363, 368 (actual
  insolvency: ¶¶ 347, 369, 442, 464 (undercapitalization); ¶¶ 348, 370, 443,
  465 (intent to incur debt);

- ROHI Payoff: ¶¶ 482, 491, 495, 502, 507 (actual insolvency); ¶¶ 486, 508
  (undercapitalization); ¶¶ 487, 509 (intent to incur debt);

- KNG Payoff: ¶¶ 524, 531, 540, 544, 551, 556 (actual insolvency); ¶¶ 535,
  557 (undercapitalization); ¶¶ 536, 558 (intent to incur debt); and

- Colbeck Payments: ¶ 570 (actual insolvency); ¶ 571 (undercapitalization);
  ¶ 572 (intent to incur debt).

39

### (2) Misrepresentations, Material Omissions and Contradictory Admissions by Trustee.

The Trustee misstates the terms of the 2015 ASB Refinance, to support his false narrative that the only loans available to the Debtor were "'hard' money loans with high interest rates" (Complaint ¶ 186) and implying that the Debtor's financial position was continually deteriorating. For example, the Trustee makes the following demonstrably false allegations:

> 176. The 2015 ASB Note accrued interest during the first year at the rate of 8% per annum.

> 177. After the first year, interest on the 2015 ASB Note increased by an additional 4% over the prior year for each year thereafter.

*Id*. ¶ 176-77. In reality, the interest rate applicable to the 2015 ASB Refinance was 4.15%, not 8% - 24%.[24] And while the Debtor did utilize the high interest rate 2012 Convergent Loan as a *short term solution for a fraction* of its debt, that was *in conjunction with* the 3.65% 2012 ASB Credit Agreement and was only used temporarily.[25] In fact, the Debtor was routinely able to and did access capital at

_____

[24] 2015 ASB Note, at § 2. A true copy of the 2015 ASB Note, referred to at ¶ 175 of the Complaint, is attached to the Declaration of Ari Bass (the "Bass Decl.") as Exhibit E.

[25] *See* 2012 Convergent Loan Agreement at § 1.1; 2012 ASB Term Loan, at § 1. A true copy of the 2012 Convergent Loan Agreement, referred to at ¶ 147 of the Complaint, is attached to the Bass Decl. as Exhibit F-1. A true copy of the 2012

40

progressively lower interest rates, refinancing the ROHI and KNG debt with lower priced debt in 2012; and then again refinancing the 2012 Convergent Loan with the far lower priced 2015 ASB Refinance.[26]

In addition to outright misstatements, critical omissions from the Trustee's insolvency allegations include:

- The Trustee does not (and cannot) allege the Debtor was in payment default (in contrast to a covenant default) on its obligations to Union Bank in December 2011 (¶ 130);

- The only other references to specific time periods are the conclusory allegations that "the Debtor did not have sufficient assets or cash flow to service the 2012 Convergent Loan, the 2012 ASB Credit Agreement, and the 2015 ASB Refinance" (¶ 187). However, the Trustee has not alleged that the Debtor defaulted on either the 2012 Convergent Loan or the 2012 ASB Credit Agreement; rather he admits they were "taken out" by the 2015 ASB Refinance (¶¶ 179-181);

- The Trustee fails to allege when the debt to C&C was incurred or when the Debtor allegedly defaulted on its obligations to C&C but admits the change in the ordinance which created the delinquency did not become effective until June 20, 2014 (¶ 112,191); and

- The Trustee does not state when the debt to the State of Hawaii arose because the proof of claim filed by the state shows that no amounts

---

ASB Term Loan, referred to at ¶ 141 of the Complaint, is attached to the Bass Decl. as Exhibit G.

[26] The Debtor refinanced the 8% ROHI Note (¶ 71) and 12% KNG Note (¶ 124) under the 2012 Convergent Loan Agreement and 2012 ASB Term Loan (footnote 25). The 2015 ASB Refinance refinanced the 2012 Convergent Loan at 4.15% (footnote 24).

41

became due prior to November 2016,[27] long after the last Alleged Fraudulent Transfers occurred.

In addition, other allegations in the Complaint contradict the Trustee's conclusory statements of insolvency, conceding that the Debtor had access to capital until early 2015 and was current on the 2015 ASB Refinance through the Petition Date (¶¶ 78-85: May 2009 Union Bank $500,000 Revolving Credit and $4.5 Million Term Loan; ¶¶ 138-46: June 2012 ASB Credit Agreement consisting of $1 Million Revolving Line of Credit and $4.3 Million Term Loan; ¶¶ 147-62: June 2012 Convergent Loan for $2.5 Million; ¶¶ 172-82: January 2015 ASB Refinance; and ¶ 182 ("Debtor paid, until the Petition Date, the payments due with respect to the 2015 ASB Refinance . . . .")).

Finally, on May 14, 2018, the Trustee filed his motion to compel Rule 2004 discovery against certain of the Defendants.[28]  The Trustee's motion to compel included the *Declaration of Simon Klevansky* and Exhibit A thereto, which consists of the Consolidating Balance Sheets from the audited financial statements of TrashMasters and the Debtor for 2009-2014 and the preliminary draft from 2015.

---

[27] A true copy of proof of claim 46-1 filed by the State of Hawaii and referenced at paragraph 196 of the Complaint is attached as Exhibit A to the Brown Decl.

[28] A true copy of the Trustee's motion to compel is filed as Bankr. Dkt. No. 394 and attached as Exhibit C to the Bass Decl. for the Court's reference.

42

*These balance sheets of the Debtor all clearly show the Debtor was solvent on a balance sheet basis through at least the end 2012 even when all intangible assets such as goodwill are eliminated.* The chart attached as Exhibit D to the Bass Decl. reformatting the data in the balance sheets illustrates this.[29]

### (a) No Facts Alleged Sufficient to Suggest Actual Insolvency When Alleged Fraudulent Transfers Were Made.

The Trustee has alleged no facts to support balance-sheet insolvency at the time of any of the Alleged Fraudulent Transfers. Rather, the Trustee relies on the allegation that a *single* creditor was regularly paid on a *regularly* late basis, without specifying the time period of the alleged delinquencies or whether the creditor even insisted on payment within invoice terms. The Trustee fails to allege when the alleged delinquent debt became delinquent (Complaint ¶¶ 190-195). This is not enough to support even an inference that the Debtor was *generally* not paying its debts as they became due (Section IV.B.1.c(3)(a) at 31).

### (b) Intent to Incur Debts Beyond Ability to Pay.

The Complaint fails to allege any facts showing the Debtor incurred debts beyond its ability to pay when any of the Alleged Fraudulent Transfers occurred.

---

[29] The methodology for the creation of this chart is explained in Bass Decl. at ¶ 6.

43

### (c) Inadequate Capitalization.

The Complaint concedes the Debtor had ready access to capital from inception in 2009 to at least early 2015. The Debtor borrowed funds or refinanced on four separate occasions—first with Union Bank in May 2009, and then with ASB and Convergent in June 2012, and subsequently refinanced the loan with ASB and Convergent with ASB in January 2015. The Trustee's conclusory allegations that the Debtor was "undercapitalized and therefore insolvent" is rendered implausible by the Trustee's own account, which is inconsistent with the conclusory statements that the Debtor was undercapitalized from inception (Section IV.B.1.c(3)(c) at 34).

### b. Insufficient Allegations of Insider Status With Respect to Transferees.

The Complaint seeks to recover from the following Defendants, who are alleged to be insiders[30] in the following actual fraudulent transfer Counts:

| Alleged Insider | Transfers | Counts (Actual Fraud) |
|---|---|---|
| TrashMasters | Union Bank Payments | Count I |
| | ROHI Payoff | Counts XXXVIII, XXXIX, XLIII |
| | KNG Payoff | Counts XLV, XLVI, L |

---

[30] *See* Complaint ¶ 218 (TrashMasters, ROHI); ¶ 528 (KNG); ¶ 91 (Corridor Capital); ¶ 93 (SPB Waste).

44

| ROHI | Union Bank Payments | Count I |
|------|---------------------|---------|
|      | ROHI Payoff | Counts XXXVIII, XXXIX, XLIII |
| KNG | KNG Payoff | Counts XLV, XLVI, L |
| Corridor Capital | Corridor Advisory Fees | Counts IV, X, XI, XV, XVII, XVIII, XXII |
| SPB Management | SPB Advisory Fees | Counts VII, XXIV, XXV, XXIX, XXXI, XXXII, XXXVI |

The relevance of their insider status is only as a badge of fraud set forth, *supra*, Section IV.B.1.b(1)(b)(i)b) at 22.

Except for TrashMasters, no facts are alleged that support insider status under Haw. Rev. Stat. § 651C-1. ROHI and KNG are alleged to be members of TrashMasters, but are not alleged to be 20% beneficial owners of the Debtor (Complaint ¶ 51, 54) or to have controlled the Debtor. The Complaint does not allege a relationship that would constitute an insider relationship of Corridor Capital or SPB Management.[31]

---

[31] The Complaint alleges:

> As the members that held the majority membership interests in TrashMasters, the Corridor Entities (through Corridor TrashMasters), and the SPB Entities (through SPB Waste) primarily controlled and directed the Debtor's affairs.

*Id.* ¶ 56. However, Corridor Capital and SPB Management, although they are included in the Complaint's definition of "Corridor Entities or "SPB Entities" (¶¶ 7, 13) were not alleged to be (nor were they) members or owners of the Debtor

45

Notably, however, TrashMasters is not alleged to be a transferee of any of the Alleged Fraudulent Transfers; rather, the Complaint alleges that for certain transfers, TrashMasters (whose sole asset was the Debtor) was the party for whose benefit the transfer was made.

### 3. The Union Bank Payments Were Not Fraudulent Transfers (Counts I, II, III).

The Complaint alleges the Debtor made the Union Bank Payments in the collective amount of $1,553,571.10 between May 2009 and June 2012, but does not provide the alleged dates of the payments (Complaint ¶ 85). The Trustee seeks to recover these transfers from TrashMasters and ROHI as actual fraudulent transfers (Count I) and constructively fraudulent transfers (Counts II and III).

The Trustee concedes that the Union Bank Payments were made on account of a debt owed by the Debtor (the UB Term Loan dated May 1, 2009, in the amount of $4,500,000), secured by all of the Debtor's assets and that was used to acquire the assets of ROHI for the Debtor and to acquire the Maricopa assets for TrashMasters Arizona: (i) both the Debtor and TrashMasters were borrowers and primary obligors under on the UB Term Loan (*id.* ¶ 78); (ii) the acquisition of the assets of ROHI and Maricopa by TrashMasters were financed with the UB Term

_____

or TrashMasters, nor is a single fact alleged showing how they allegedly controlled the Debtor.

46

Loan (*id.* ¶ 204); (iii) the purchase prices for the ROHI assets and Maricopa assets were $10,000,000[32] (*id.* ¶ 68) and $1,714,031 (*id.* ¶ 75), respectively; (iv) TrashMasters contributed the assets acquired from ROHI to the Debtor, and contributed the assets acquired from Maricopa to TrashMasters Arizona on May 1, 2009, pursuant to the 2009 Contribution Agreement (*id.* ¶ 117)[33]; (v) Union Bank was granted a security interest in essentially all of the assets of the Debtor (*id.* ¶ 81) and TrashMasters Arizona (*id.* ¶ 82) as collateral for the UB Term Loan; and (vi) the Union Bank Payments by the Debtor were made on account of the UB Term Loan (*id.* ¶¶ 85, 206). The Complaint does not challenge the grant of the Union Bank security interest in the Debtor's assets as an avoidable transfer or the UB Term Loan is an avoidable obligation. [34]

---

[32] This amount included a holdback on account of the "Army-Navy Contract Payment," which was ultimately not paid pursuant to Section 2.8 of the ROHI APA. A true copy of the ROHI APA, referred to at ¶ 67 of the Complaint, is attached to the Bass Decl. as Exhibit H.

[33] A true copy of the 2009 Contribution Agreement, referred to at ¶ 117 of the Complaint, is attached to the Bass Decl. as Exhibit I.

[34] Although the Trustee knows that the net proceeds of the sale of the Maricopa assets were used (i) to acquire the KNG assets for the Debtor, (ii) to fund the construction of a new transfer station facility on Oahu for the Debtor, and (iii) as working capital for the Debtor (*Declaration of Craig Enenstein in Support of Motion to Quash* [Bankr. Dkt. No. 387-2 filed on May 4, 2018], Exhibit A at 3), the Trustee fails to disclose this.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 68 of 127

### a. The Union Bank Payments Were Not an Intentional Fraudulent Transfers (Count I).

#### (1) The Complaint Fails to Provide Sufficient Details of the Union Bank Payments.

The Trustee must allege, for each transfer, the dates and amount of each specific transfer, as well as the consideration paid (Section IV.B.1.b(1)(a) at 18).

The Complaint provides an aggregate amount of Union Bank Payments over a three-year range, but does not identify specific transfers at issue as required under Rule 9(b). Count I should be dismissed on this basis.

#### (2) Actual Fraud Is Not Adequately Alleged.

The Trustee has not alleged specific facts from which a strong inference of intent to hinder, delay, or defraud can be drawn in light of plausible opposing inferences (Section IV.B.1.b(1)(b) at 19). In addition to the conclusory recitation of the legal standard that the Union Bank Payments were made with the actual intent to hinder, delay, or defraud the Debtor's creditors (Complaint ¶ 207), only the following allegations are made with respect to Count I:

> 199. Defendants, and in particular the Officers and Directors, set up and structured a variety of related companies, including shell and holding companies, to invest in and acquire the assets of ROHI, Maricopa, and KNG and to advise and/or manage said companies.

> 200. In doing so, the Officers and Directors intended to create a company that incurred debt, but had no revenue to pay the debt, and to insulate themselves from liability and creditors.

48

201. The Officers and Directors intended to further their own interests, and to assure themselves a return out of the operating revenue of the companies ahead of creditors, and did so irrespective of the Debtor's and/or TrashMasters' financial condition.

202. At the same time, the Officers and Directors undercapitalized the companies they set up, and in particular the Debtor and TrashMasters.

203. The Officers and Directors also fully leveraged the assets of the Debtor to secure, guarantee, and pay the debt obligations of TrashMasters and TrashMasters Arizona.

204. Certain proceeds of the 2009 UB Term Loan were used to pay TrashMasters' obligations pursuant to the ROHI APA and the Maricopa APA, as well as other fees and expenses related to said acquisitions, the Union Bank credit facility, and TrashMasters.

Complaint, ¶¶ 199-204. The Trustee concedes that the Union Bank Payments were made on account of the Debtor's antecedent debt and that the Debtor therefore received dollar-for-dollar value for the Union Bank Payments as a matter of law (Section IV.B.3.b(2) at 52). None of the Trustee's allegations contradicts this alternative innocent, nonfraudulent purpose for the transfers (Section IV.B.1.b(1)(b)(i) at 20). Moreover, paragraphs 199 through 204 do not support fraudulent intent because the Trustee has failed to connect them with the Union Bank Payments (Section IV.B.1.b(1)(b)(i) at 20).

49

The Complaint alleges insolvency (¶¶ 208-09) and insider status (¶ 205)[35] as badges of fraud with respect to Count I.[36]  Insolvency has not been adequately alleged (Section IV.B.2.a at 36), and, even if adequately pleaded, is not a badge of fraud when the challenged payments were, as here, made on account of antecedent debt (Section IV.B.1.b(1)(b)(i)a at 22).  ROHI and Maricopa are not adequately alleged to be insiders (Section IV.B.2.b at 44), and, even if insider status is adequately pleaded, does not constitute a badge of fraud when the challenged payments were, as here, made on account of antecedent debt (Section IV.B.1.b(1)(b)(i)b at 22).  Finally, TrashMasters's insider status is insufficient to show fraudulent intent where the Union Bank payments were made on account of antecedent debt (Section IV.B.1.b(1)(b)(i)b at 22).

No plausible inference of fraud can be drawn from the fact the Union Bank Payments were made shortly after the Debtor incurred the UB Term Loan and UB

––––––––––––––––––––

[35] The Complaint does not use "insider" language, but states that: "The Debtor's payment of the Union Bank Payments was made specifically for the benefit of TrashMasters, ROHI, Maricopa, and TrashMasters Arizona." Complaint ¶ 205. Later, in a different Count, the Complaint alleges that TrashMasters, ROHI, and Maricopa are insiders. *Id.* ¶ 218.

[36] Lack of reasonably equivalent value is not raised in Count I, although it is alleged in the context of constructively fraudulent transfers (Section IV.B.3.b(2) at 39). Even if it were alleged to be a badge of fraud for purposes of determining intent in Count I, reasonably equivalent value was received as a matter of law. *Id.*

50

Revolving Credit obligations (Complaint ¶ 210).[37] The incurrence of this debt

shortly after payments were made on the *same* debt cannot be a plausible badge of

fraud. If it were, all payments of debt would be associated with that badge of fraud.

Moreover, the Trustee admits that the 2012 ASB Credit Agreement was used to

refinance the debt to Union Bank and that all obligations to Union Bank were paid.

(Complaint ¶ 144.) Therefore, the debt ostensibly incurred shortly after the Union

Bank Payments, alleged by the Trustee to create in inference of fraud, was paid in

full.

Because there are no specific facts of actual fraud alleged and the purported

badges of fraud are illusory, dismissal of Count I is required.

---

[37] This "badge" has no application here. In the few cases where it is found to exist, it is in the context of a *substantial debt to the creditor-plaintiff* incurred proximate in time with the transfer *which debt remains unpaid*, evidencing that the debtor sought to avoid payment on that obligation. *See*, *e.g.*, *United States v. Boyce*, 38 F. Supp. 3d 1135, 1157 (C.D. Cal. 2014) (fraud inferred when taxpayers transferred property as gift to another entity one month before IRS issued deficiency notices); *United States v. Smith*, No. 99-cv-974, 2008 U.S. Dist. LEXIS 96869, at *21 (S.D. Ohio Nov. 19, 2008) (same); *So. New Eng. Tel. Co. v. Sahara & Arden, Inc.*, No. 09-cv-00534, 2010 U.S. Dist. LEXIS 51178, at *27 (D. Nev. May 18, 2010) (transfer of property from debtor to related entities six months before prejudgment attachment remedy issued in favor of creditor-plaintiff was badge of fraud).

51

### b. The Union Bank Payments Were Not Constructively Fraudulent Transfers (Counts II and III).

#### (1) Insufficient Details of the Union Bank Payments.

The Complaint provides only an aggregate amount of Union Bank Payments over a three-year range, but fails to allege any specific transfers at issue (Section IV.B.1.b(1)(a) at 18, applicable to constructively fraudulent transfers as set forth in Section IV.B.1.c(1) at 26). Counts II and III must be dismissed for failure to provide specific dates and amounts.

#### (2) Reasonably Equivalent Value Was Received as a Matter of Law.

A mere recital of the legal conclusion that that a transfer was made without reasonably equivalent value is not sufficient to withstand a motion to dismiss (Section IV.B.1.c(2) at 27). Yet, that is all the Trustee alleges: "the Union Bank Payments were made without receiving a reasonably equivalent value in exchange for said payments" (Complaint ¶ 213.)

As a matter of law, the Debtor received reasonably equivalent value for the Union Bank Payments because they were made on account of its antecedent debt.[38]

---

[38] *See* Section IV.B.1.c(2)(a) at 22. The Trustee concedes that both the Debtor and TrashMasters were principal obligors on the UB Term Loan and therefore the Union Bank Payments were made on account of the Debtor's own liability. *Marshack v. Wells Fargo Bank (In re Walters)*, 163 B.R. 575, 580 (Bankr. C.D. Cal. 1994) (payments made by debtor on obligation with co-obligor are made on account of the debtor's liability).

52

Moreover, the Union Bank Payments were not estate depleting transfers that harmed creditors because the Union Bank debt was secured by the essentially all of the Debtor's assets. Therefore, the Debtor received reasonably equivalent value in exchange for the Union Bank Payments, irrespective of whether the payments are alleged to have benefited other parties as well. The Trustee's admission that Union Bank Payments were on account of a loan secured by essentially all of the Debtor's assets (Complaint ¶ 81) is fatal to his claims to avoid the Union Bank Payments (Section IV.B.1.c(2)(a) at 27-24).

The Trustee's failure to plead facts showing lack of reasonably equivalent value and his admission of facts establishing, as a matter of law, that the Debtor received reasonably equivalent value compels dismissal of Counts II and III, with prejudice.

### (3) Failure to Adequately Allege Insolvency.

The Trustee has failed to plausibly allege actual insolvency, inadequate capitalization, or intent to incur debts beyond the ability to pay between May 2009 and June 2012 when the Union Bank Payments are alleged to have been made (Section IV.B.2.a at 36). Therefore, Counts II and III must be dismissed.

53

### 4. The Advisory Fees Were Not Fraudulent Transfers (Counts IV – XXXVII).

The Complaint alleges Corridor Capital and SPB Management were paid $1,849,131.62 in Advisory Fees between October 2, 2009, and May 2, 2014, and provides the date and amount of each specific alleged transfer (¶¶ 100-112). The Trustee seeks to recover these transfers from Corridor Capital and SPB Management as actual fraudulent transfers (Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI) and constructively fraudulent transfers (Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV and XXXVII).

#### a. The Advisory Fees Were Not Intentional Fraudulent Transfers (Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI).

##### (1) Actual Fraud Is Not Adequately Alleged.

The Trustee has not alleged specific facts from which a strong inference of intent to hinder, delay, or defraud can be drawn in light of plausible opposing inferences (Section IV.B.1.b(1)(b) at 19). Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI allege a combination of the following:

- The Officers and Directors in structuring the Advisory Agreement assured themselves a return out of the Debtor's operating revenue, ahead of the Debtor's creditors, and irrespective of the Debtor's financial condition.

54

- The Debtor's payment of the [] Advisory Fees was made at the direction of the Officers and Directors, the Corridor Entities, and the SPB Entities.

- The Debtor's payment of the [] Advisory Fees was made with the actual intent to hinder, delay, or defraud the Debtor's creditors.

- The Debtor was insolvent or became insolvent shortly after the payment of the [] Advisory Fees.

- [The transferee] and [its related entities] were insiders of the Debtor.

- The Debtor's payment of the [] Advisory Fees was made shortly before [and/or after] the Debtor incurred the [] Loan obligation.[39]

The fraudulent intent allegations set forth in the Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI ignore that the Advisory Fees were paid on account of an unchallenged debt incurred by the Debtor under the Advisory Agreement. None of the Trustee's allegations

---

[39] Complaint ¶¶ 228, 233-35 (as to Count IV – 2009-2011 Corridor Advisory Fees); ¶¶ 252, 257-59 (as to Count VII – 2009-2011 SPB Advisory Fees); ¶¶ 293-296 (as to Count XI – 2012 Corridor Advisory Fees); ¶¶ 316-319 (as to Count XV – 2012 Corridor Advisory Fees); ¶¶ 333-336 (as to Count XVII – 2013/2014 Corridor Advisory Fees); ¶¶ 339-343 (as to Count XVIII – 2013/2014 Corridor Advisory Fees); ¶¶ 359-363 (as to Count XXII – 2013/2014 Corridor Advisory Fees); ¶¶ 388-391 (as to Count XXV – 2012 SPB Advisory Fees); ¶¶ 411-414 (as to Count XXIX – 2012 SPB Advisory Fees); ¶¶ 427-431 (as to Count XXXI – 2013/2014 Corridor Advisory Fees); ¶¶ 434-438 (as to Count XXXII – 2013/2014 Corridor Advisory Fees); ¶¶ 454-458 (as to Count XXXVI – 2013/2014 Corridor Advisory Fees). The counts under Hawaiian common law, Counts X (2012 Corridor Advisory Fees) and XXIV (2012 SPB Advisory Fees), contain slightly different allegations, which mostly appear to relate to the payment of the Advisory Fees out of the proceeds of the 2012 Convergent Loan.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 76 of 127

contradicts this alternative innocent, nonfraudulent purpose for the transfers (Section IV.B.1.b(1)(b)(i) at 20).

The Trustee concedes that all of the Advisory Fees were paid on account of antecedent debt incurred under the Advisory Agreement.[40] The Trustee has not (and cannot) allege that the Advisory Fees were not required to be made under the Advisory Agreement, or were not made in accordance with the Advisory Agreement. The Complaint does not challenge the Advisory Agreement itself as an avoidable obligation.

In *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747 (Bankr. W.D. La. 2013), the bankruptcy court considered remarkably similar facts and dismissed the trustee's actual and constructively fraudulent transfer claims to avoid payments made to insiders under consulting agreements. The heart of the court's decision granting the motion to dismiss the claims was that the payments were made to satisfy an antecedent debt incurred under the consulting agreements that had not been challenged as avoidable.

_____

[40] The Trustee acknowledges that the Debtor entered into the Advisory Agreement with SPB Management and Corridor Capital on May 9, 2009 (Complaint ¶ 86). A true copy of the Advisory Agreement, referred to at ¶ 86 of the Complaint, is attached to the Bass Decl. as Exhibit J.

56

In *Goodman*, the trustee alleged that an insider of the debtor required the debtor to enter into a professional services agreement ("PSA") and consulting services agreement ("CSA"). These agreements provided that the insider would provide professional advice and assist in evaluating potential acquisitions in exchange for an annual management fee of $500,000 as well as other fees set forth in the agreements. According to the trustee, the insider "provided no value to [the debtor] for these arrangements." *Goodman*, 491 B.R. at 758. The trustee alleged that the agreements "were an artifice used to funnel money from [the debtor] to other arms of the [insider's] enterprise." *Id.*

The bankruptcy court held the trustee had not adequately pleaded a claim for actual fraudulent transfers:

> Here, the Trustee has pled facts showing that the transfers were made to an insider and that [the debtor] was insolvent before and after the transfers, but pleads no facts (as opposed to conclusions) explaining how these transfers, which satisfied an antecedent debt, could have impacted [the debtor's] solvency. With respect to "lack or inadequacy of consideration," these payments were made to satisfy antecedent debts and . . . resulted in the receipt of reasonably equivalent value by definition. The Trustee also has not pled facts showing that [debtor] retained "possession, benefit or use" of the funds paid pursuant to the CSA and the PSA. Nor does the Complaint include facts showing that the transfers resulted from a course of conduct undertaken after [debtor] incurred debt, began to encounter financial difficulties, or after the threat of lawsuits. To the contrary, the timing of the payments from 2007 to 2009 appears consistent with the yearly payment obligations of the CSA and PSA as opposed to the financial condition of [the

57

debtor]. There also are no allegations of threatened litigation at the time of the challenged transfers. Finally, the general chronology of the payments is more consistent with a debtor attempting to comply with its contractual obligations than attempting to delay, hinder, or defraud creditors. In sum, the Trustee has not met the burden required under Rule 9(b) to plead actual fraud in connection with the transfers pursuant to the CSA and the PSA.

*Goodman*, 491 B.R. at 767-768 (citations omitted).

The bankruptcy court found the existence of multiple badges of fraud (insolvency and insider transfers) and still found no inference of intent to hinder, delay, or defraud. Here, the Trustee's conclusory alleged badges of fraud are illusory. Reasonably equivalent value was received as a matter of law (Section IV.B.4.b(1) at 60), insolvency has not been adequately alleged (Section IV.B.2.a at 36), and, even if adequately pleaded, is not a badge of fraud when the challenged payments were, as here, made on account of antecedent debt (Section IV.B.1.b(1)(b)(i)a) at 22), and the insider status of Corridor Capital and SPB Management have not been adequately alleged (Section IV.B.2.b at 44).

Nor do the allegations that Advisory Fees were paid shortly after the Debtor incurred the 2012 Convergent Loan Obligations (Complaint ¶¶ 295, 312, 318, 323, 376, 391, 395, 407, 413, 431 and 438) support an inference of fraud.[41] The Trustee

---

[41] *See* footnote 37, *supra*.

58

admits the 2012 Convergent Loan was fully paid in 2015, well prior to the

Debtor's bankruptcy filing (*id*. ¶ 181) so the debt ostensibly incurred shortly before

the transfer was paid in full. The same is true for the allegations that the 2013 and

2014 Advisory Fees were made shortly after the 2012 ASB Credit Agreement and

shortly before the 2015 ASB Refinance (*id*. ¶¶335, 342, 362, 367, 457 and 462).

The Trustee admits the 2012 ASB Credit Agreement was refinanced with the 2015

ASB Refinance and the debt incurred under ASB 2012 Credit Agreement did not

exist when the Debtor filed its bankruptcy petition. Therefore the debt ostensibly

incurred shortly before the payment of the 2013 and 2014 Advisory Fees, alleged

by the Trustee to create an inference of fraud, was paid in full. Moreover, the 2013

Advisory Fees were allegedly paid on May 20, 2013 (*id*. ¶ 111) and the 2014

Advisory Fees were allegedly paid on May 2, 2014 (*id*. ¶ 112). The 2015 ASB

Refinance is alleged to have occurred on January 28, 2015-21 months after the

payment of the 2013 Advisory Fee and 9 months after the payment of the 2014

Advisory Fee—hardly proximate enough in time to be legitimately characterized

as "shortly before."

Because the Advisory Fees were paid in general accordance with pre-set

dates and conditions under the express terms of the Advisory Agreement set in

May 2009, Advisory Agreement §5, no inferences of fraud can be drawn from the

timing of the payments. *See Goodman*, 491 B.R. at 768.

Because there are no specific facts of actual fraud alleged and the purported badges of fraud are illusory, dismissal of Counts IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII and XXXVI is required.

### b. The Advisory Fees Were Not Constructively Fraudulent Transfers (Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV and XXXVII).

#### (1) Reasonably Equivalent Value Was Received as a Matter of Law.

A mere recital of the legal conclusion that that a transfer was made without reasonably equivalent value is not sufficient to withstand a motion to dismiss (Section IV.B.1.c(2) at 27). The Complaint contains no specific facts on this issue relying only on the conclusory statement that: "the [] Advisory Fees were made without receiving a reasonably equivalent value in exchange for said fees." Complaint, ¶¶ 238, 245, 262, 269, 299, 307, 311, 322, 346, 351, 355, 366, 394, 402, 406, 417, 441, 446, 450, 461.

The *Goodman* decision contains an extensive and well-reasoned analysis of this issue and holds that payments made under consulting agreements were not constructive fraudulent transfers because they were made on account of antecedent debt:

> The Trustee's argument with respect to avoiding these payments as constructive fraudulent transfers runs into the immediate problem that the payments were made to satisfy an

60

antecedent debt—the contractual obligations imposed by the CSA and PSA. By definition, [the debtor] received reasonably equivalent value from the satisfaction of its contractual obligations under these agreements. Given the definition of value in section 548, courts have uniformly held that such payments are not avoidable as constructively fraudulent transfers. Here, the PSA and CSA defined and fixed [the debtor's] obligation to pay specific lump sum management fees of approximately $500,000 per year as well as other fees, expense reimbursements, and commissions. As a result, the Trustee cannot avoid these individual payments as constructive fraudulent transfers under section 548[42] based on the facts pled in the Complaint.

*Goodman*, 491 B.R. at 766 (citations omitted).

The Trustee's failure to plead facts showing lack of reasonably equivalent value and his admission of facts establishing, as a matter of law, that the Debtor received reasonably equivalent value compels dismissal of Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV and XXXVII, with prejudice.

### (2)    Failure to Adequately Allege Insolvency.

The Trustee has failed to plausibly allege actual insolvency, inadequate capitalization, or an intent to incur debts beyond the ability to pay between October 2009 and May 2014 when the Advisory Fees are alleged to have been paid

---

[42] Bankruptcy Code section 548(d)(2)(A) and Haw. Rev. Stat. section 651C-3 are in sum and substance the same both defining the satisfaction of antecedent debt as "value."

(Section IV.B.2.a at 36). Therefore, Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV and XXXVII must be dismissed.

### 5. The ROHI Payoff Was Not a Fraudulent Transfer (Counts XXXVIII, XXXIX, XL, XLI, XLII, XLIII and XLIV).

The Complaint alleges that on or about June 27, 2012, the Debtor paid ROHI $752,448.96, the amount then outstanding on the ROHI Note (¶¶ 469, 470). The Trustee concedes that the ROHI Payoff was in payment of the ROHI Note was part of the financing used to acquire ROHI's assets for the Debtor (Complaint ¶¶ 67, 68, 70 and 117). The Trustee seeks to recover these transfers from ROHI and TrashMasters as both an actual fraudulent transfer (Counts XXXVIII, XXXIX and XLIII) and a constructively fraudulent transfer (Counts XL, XLI, XLII and XLIV).

#### a. The ROHI Payoff Was Not Made With the Debtor's Property.

A transfer can only be avoided as fraudulent if the transfer was of the debtor's property that otherwise would have been property of the estate (Section IV.B.1.a at 16).

The Trustee concedes that the ROHI Payoff was made solely with the proceeds of the 2012 Convergent Loan under which both the Debtor *and TrashMasters* were borrowers and co-obligors (Complaint ¶¶ 147-49, 472). Because the loan proceeds were jointly owned by the Debtor and TrashMasters, the

62

Trustee must allege the Debtor's dominion over those funds such that they would have been otherwise available to the Debtor's creditors. *See In re Chase & Sanborn Corp*., 813 F.2d 1177, 1180 (11th Cir. 1987) (in fraudulent-transfer analysis, debtor must have "sufficient control over the funds to warrant a finding that the funds were the debtor corporation's property"); *Enron Corp. v. Granite Constr. Co. (In re Enron Corp.)*, No. 03-ap-93172, 2006 Bankr. LEXIS 4650, at *17 (Bankr. S.D.N.Y. May 11, 2006) ("For purposes of sections 547(b) and 548(a) of the Bankruptcy Code, it is the transferor's control of the funds in the account and not the actual ownership that is dispositive"); *see also Smyth v. Kaufman*, 114 F.2d 40, 42 (2d Cir. 1940) (in preference analysis, funds provided "from one who lends to the bankrupt only for the specific purpose of paying a certain creditor" will not constitute voidable preference).

The Complaint and the 2012 Convergent Loan Agreement referenced therein show the proceeds of the 2012 Convergent Loan used to make the ROHI Payoff were never in the Debtor's custody or control and were not property of the Debtor. The 2012 Convergent Loan Agreement states: "The proceeds from the Loan shall be used only as described in the Sources and Uses Schedule set forth in Section 2.6 of the Disclosure Schedule." 2012 Convergent Loan Agreement § 2.6. The Sources and Uses Schedule requires that $752,488.96 (the exact amount of the ROHI

63

Payoff) of the loan proceeds shall be used for "Junior Debt." *Id*.[43]  The Trustee

has not alleged that the funds loaned by Convergent were ever in the Debtor's

control and the documents referenced by the Trustee show the funds were required

to be paid directly to ROHI for the ROHI Payoff.

Because the Trustee has failed to sufficiently allege that the ROHI Payoff

was made with the Debtor's property, Counts XXXVIII, XXXIX, XL, XLI, XLII,

XLIII, XLIV must be dismissed.

### b. The ROHI Payoff Was Not an Intentional Fraudulent Transfer (Counts XXXVIII, XXXIX and XLIII).

#### (1) Actual Fraud Is Not Adequately Alleged.

The Trustee has not alleged specific facts from which a strong inference of

intent to hinder, delay, or defraud can be drawn in light of plausible opposing

inferences (Section IV.B.1.b(1)(b) at 19).  Counts XXXVIII, XXXIX and XLIII

allege the following:

> 470. The $752,448.96 payment was for the outstanding amount TrashMasters owed ROHI pursuant to the ROHI Note (the "ROHI Payoff").

> 471. The Debtor was not indebted to ROHI for the ROHI Note.

> 472. The Debtor's payment of the ROHI Payoff was made from proceeds of the 2012 Convergent Loan.

---

[43] A true copy of the 2012 Convergent Loan Agreement and Schedule 2.6 thereto is attached to the Bass Decl. as Exhibit F-1 and Exhibit F-2, respectively.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 85 of 127

473. The 2012 Convergent Loan was made for the benefit of ROHI and TrashMasters.

474. The 2012 Convergent Loan and the ROHI Payoff was made with the intent to hinder, delay, and defraud creditors.

475. ROHI did not provide adequate or good consideration in exchange to the Debtor for the ROHI Payoff.

476. ROHI was an insider of the Debtor.

477. ROHI had direct knowledge that the Debtor was insolvent or was made insolvent as a result of the ROHI Payoff.

Complaint ¶¶ 470-477. The allegations set forth in the Counts XXXVIII, XXXIX and XLIII ignore that the ROHI Payoff was made as part of a refinancing in 2012 of the Debtor's and TrashMaster's secured bank debt.

While there are conclusory allegations of badges of fraud, insolvency has not been adequately alleged (Section IV.B.2.a at 36). In addition, no plausible inference of fraud can be drawn from the fact the ROHI Payoff was part of the 2012 refinancing because the ROHI Payoff was a requirement of that refinancing (Section IV.B.5.a at 62). Moreover, the Trustee admits that the ROHI Payoff was made with the proceeds of the 2012 Convergent Loan (Complaint ¶ 417) which was fully paid well prior to the Debtor's bankruptcy filing (*id*. ¶ 181) so the debt ostensibly incurred shortly before the transfer was paid in full.

65

Further, although TrashMasters is alleged to be an insider, no facts are alleged to support ROHI's (the transferee's) purported insider status, (Section IV.B.2.b at 44).

Because there are no specific facts of actual fraud alleged and the purported badges of fraud are illusory, Counts XXXVIII, XXXIX and XLIII must be dismissed.

### c. The ROHI Payoff Was Not a Constructively Fraudulent Transfer (Counts XL, XLI, XLII and XLIV).

#### (1) Failure to Adequately Allege Insolvency.

The Trustee has failed to plausibly allege actual insolvency, inadequate capitalization, or intent to incur debts beyond the ability to pay on or about June 27, 2012, when the ROHI Payoff is alleged to have been made (Section IV.B.2.a at 36). Therefore, Counts XL, XLI, XLII and XLIV must be dismissed.

### 6. The KNG Payoff Was Not a Fraudulent Transfer (Counts XLV, XLVI, XLVII, XLVIII, XLIX, L, and LI).

The Complaint alleges that on or about June 27, 2012, the Debtor paid KNG $1,525,127.49, on account of the KNG Note. TrashMasters was the primarily obligor on the KNG Note and the Debtor was the guarantor (Complaint ¶¶ 513-515). The Trustee seeks to recover these transfers from KNG and TrashMasters, as both an actual fraudulent transfer (Counts XLV, XLVI and L) and a constructively fraudulent transfer (Counts XLVII, XLVIII, XLIX and LI).

66

The Trustee concedes that the KNG Payoff was in payment of the KNG Note, which was part of the financing used to acquire the KNG's assets for the Debtor, and that the KNG Payoff was paid on account of the Debtor's secured antecedent debt incurred under the Secured Guaranty[44] (referred to as the KNG Guaranty, Complaint ¶ 126): (i) TrashMasters acquired the assets of KNG pursuant to the terms of the KNG APA dated August 13, 2010, for a purchase price of $6,300,000 (*id*. ¶¶ 120 and 122); (ii) part of the consideration for the acquisition of the KNG assets by TrashMasters was the KNG Note made by TrashMasters to KNG in the principal amount of $1,500,000 (*id*. ¶ 123); (iii) pursuant to the terms of the Secured Guaranty of August 13, 2010, the Debtor guaranteed the payment of the KNG Note and granted KNG a security interest in its equipment (*id*. ¶ 126); (iv) the Secured Guaranty expressly provides that the Debtor received value from the extension of credit under the KNG Note (Secured Guaranty, ¶C); (v) the assets acquired from KNG were transferred to the Debtor on August 13, 2010 pursuant to the terms of the 2010 Contribution Agreement[45] (Complaint ¶ 128); (vi) the KNG Payoff was made on account of the KNG Note (*id*. ¶ 514); (vii) the KNG Payoff

---

[44] A true copy of the KNG Guaranty, referred to at ¶ 126 of the Complaint, is attached as Exhibit K to the Bass Decl.

[45] A true copy of the 2010 Contribution Agreement, referred to at ¶ 128 of the Complaint, is attached as Exhibit L to the Bass Decl.

67

was made with the proceeds of the 2012 ASB Credit Agreement (*id*. ¶ 517); and (viii) the funds advanced under the ASB Credit Agreement were loaned to the Debtor and TrashMasters and both were borrowers under the ASB Credit Agreement (*id*. ¶ 140). The KNG Note, Secured Guaranty, grant of the security interest in the Debtor's equipment to KNG and ASB Credit Agreement are not challenged as avoidable transfers or obligations.

### a. The KNG Payoff Is Not an Intentional Fraudulent Transfer (Counts XLV, XLVI and L).

#### (1) Actual Fraud Is Not Adequately Alleged.

The Trustee has not alleged specific facts from which a strong inference of intent to hinder, delay, or defraud can be drawn in light of plausible opposing inferences (Section IV.B.1.b(1)(b) at 19). Counts XLV, XLVI and L allege the following:

> 514. The $1,525,127.49 payment was for the outstanding amount TrashMasters owed KNG pursuant to the KNG Promissory Note (the "KNG Payoff").

> 515. The Debtor was not primarily indebted to KNG for the KNG Promissory Note.

> 516. The Debtor received no value on account of its furnishing KNG the KNG Secured Guaranty.

> 517. The Debtor's payment of the KNG Payoff was made from proceeds of the 2012 ASB Credit Agreement.

> 518. The 2012 ASB Credit Agreement was made for the benefit of KNG and TrashMasters.

68

519. The 2012 ASB Credit Agreement and KNG Payoff were made with the intent to hinder, delay and defraud creditors.

520. KNG and Mr. Gourlay were insiders of the Debtor.

521. Mr. Gourlay and KNG had knowledge that the proceeds of the 2012 ASB Credit Agreement would be used to pay the KNG Payoff.

522. Mr. Gourlay and KNG had knowledge that the KNG Promissory Note was an obligation of TrashMasters and not an obligation of the Debtor.

523. KNG did not provide adequate or good consideration to the Debtor in exchange for the KNG Payoff.

Complaint ¶ 514-23.

The fraudulent-intent allegations relating to Counts XLV, XLVI and L ignore that the KNG Payoff was made on account of a secured antecedent debt incurred by the Debtor under the KNG Guaranty. None of the Trustee's allegations contradicts this alternative innocent, nonfraudulent purpose for the transfer (Section IV.B.1.b(1)(b)(i) at 20).

While there are conclusory allegations of badges of fraud, reasonably equivalent value was received as a matter of law (Section IV.B.6.b(1) at 70) and insolvency has not been adequately alleged (Section IV.B.2.a at 36); even if adequately pleaded, insolvency is not a badge of fraud when the challenged payments were, as here, made on account of antecedent debt (Section IV.B.1.b(1)(b)(i)a at 22). In addition, no plausible inference of fraud can be

69

drawn from the fact the KNG Payoff was as part of the 2012 refinancing because the KNG Payoff was a requirement of that refinancing (Section IV.B.5.a at 62). Moreover, the Trustee admits that the KNG Payoff was made with the proceeds of the 2012 ASB Credit Agreement (Complaint ¶ 517), which itself was refinanced with the 2015 ASB Refinance so the debt to ASB under the 2012 Credit Agreement did not exist when the Debtor filed its bankruptcy petition.

Because there are no specific facts of actual fraud alleged and the purported badges of fraud are illusory, Counts XLV, XLVI and L must be dismissed.

### b. The KNG Payoff Was Not a Constructively Fraudulent Transfer (Counts XLVII, XLVIII, XLIX and LI).

#### (1) Reasonably Equivalent Value Was Received as a Matter of Law.

A mere recital of the legal conclusion that that a transfer was made without reasonably equivalent value is not sufficient to withstand a motion to dismiss (Section IV.B.1.c(2) at 27). Yet, that is all the Trustee alleges: "the Debtor paid the KNG Payoff without receiving a reasonably equivalent value in exchange for the payment of the KNG Payoff." (Complaint ¶ 534).

As a matter of law, dollar-for-dollar value is given for payments on account of an antecedent debt (Section IV.B.1.c(2)(a) at 27). The Trustee concedes that the Debtor guaranteed the KNG Note pursuant to the KNG Guaranty. The KNG

70

Guaranty was a secured antecedent debt of the Debtor.[46]  The Trustee's allegation

that the Debtor received no value in exchange for the KNG Payoff is irrefutably

controverted by the Trustee's own admissions that establish the Debtor received a

dollar-for-dollar reduction on its secured guaranty obligation as a result of the

KNG Payoff.  The Trustee does not dispute that the Debtor was liable under the

KNG Guaranty.  Therefore, the dollar-for-dollar reduction in the Debtor's liability

on the KNG Guaranty constitutes reasonably equivalent value for the KNG Payoff.

*See Marshack v. Wells Fargo Bank (In re Walters)*, 163 B.R. 575, 581 (Bankr.

C.D. Cal. 1994) (debtor's payments on guaranty were made on account of his own

personal antecedent debt and therefore he received reasonably equivalent value for

the payments; reduction of guaranty liability constitutes reasonably equivalent

value under both the Bankruptcy Code and California's version of UFTA).[47]

---

[46] The KNG Guaranty was an actual rather than a contingent liability of the Debtor because the Complaint admits that TrashMasters had no revenue, the Debtor was its only income producing assets, and the KNG Note could not be paid by TrashMasters (Complaint ¶¶ 40-42).

[47] *See*, *e.g*., *Official Unsecured Creditors Comm. v. United States Nat'l Bank (In re Suffola, Inc.)*, 2 F.3d 977, 984 (9th Cir. 1993) (direct payment on antecedent debt results in corresponding dollar-for-dollar benefit to guarantor because liability on guaranty is reduced) (quoting *Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs.)*, 980 F.2d 792, 796 (1st Cir. 1992)); *Kotoshirodo v. Hancock (In re Lull)*, No. 07-ap-90072, 2009 Bankr. LEXIS 2316, at *1, *13 (Bankr. D. Haw. 2009) (same).

71

Additionally, as discussed in connection with Union Bank Payoff (Section IV.B.3 at 46), the Debtor had granted KNG a security interest in its equipment to secure the KNG Guaranty. The KNG Payoff reduced the amount of Debtor's secured debt and is therefore not an estate-depleting transfer because the payment reduced not only the amount of the antecedent debt, but also the value of KNG's lien on the Debtor's assets dollar for dollar (Section IV.B.1.c(2)(a) at 27).

Counts XLVII, XLVIII, XLIX and LI should be dismissed with prejudice, because lack of reasonably equivalent value cannot be pleaded as a matter of law.

### (1) Failure to Adequately Allege Insolvency.

The Trustee has failed to plausibly allege actual insolvency, inadequate capitalization, or intent to incur debts beyond the ability to pay on or about June 27, 2012, when the KNG Payoff is alleged to have been made (Section IV.B.2.a at 36). Therefore, Counts XLVII, XLVIII, XLIX and LI must be dismissed.

### 7. The Colbeck Payments Were Not Fraudulent Transfers (Count LII).

The Complaint alleges: (i) on or about July 30, 2014, TrashMasters and Mr. Colbeck entered into a Consulting Agreement under which Colbeck agreed to act as TrashMaster's interim chief operating officer (Complaint ¶¶ 167-168); (ii) the Debtor made unidentified Colbeck Payments pursuant to the terms of the Colbeck Consulting Agreement in the amount of $6,000 per week (no other information is

72

provided as to date or amount of the payments) (id. ¶¶ 169, 170).  The Trustee

seeks to avoid these unidentified payments as both actual fraudulent transfers and

constructively fraudulent transfers (Count LII).

Additionally, the Trustee has filed a separate, but related complaint against

TrashMasters, Colbeck and Colbeck Consulting ("TrashMasters/Colbeck

Complaint") that appears to challenge some of the same payments and makes flatly

contradictory allegations.[48]  The TrashMasters/Colbeck Complaint seeks to recover

$24,000 of the payments alleged to have been made to Colbeck as preferential and

fraudulent transfers and based on unjust enrichment.  The TrashMasters/Colbeck

Complaint alleges that Brian Colbeck served as the Debtor's interim Chief

Executive Officer under the terms of the Consulting Agreement

(TrashMasters/Colbeck Complaint ¶¶ 5, 15-17).

### a.    Details of Transfers Are Required.

Under Rule 9(b), the Trustee must allege, for each transfer, the dates and

amount of each specific transfer (Section IV.B.1.b(1)(a) at 18).  The Complaint

---

[48] A true copy of the complaint filed on December 6, 2018, styled *Field v. TrashMasters, LLC, Colbeck Consulting LLC and Brian Colbeck,* Adversary Proceeding No. 18-90034 [Dkt. No. 1], is attached to the Brown Decl. as Exhibit B.

73

fails to provide any particularization as to the specific transfers at issue. Count LII should be dismissed on this basis.

The Trustee impermissibly lumps a series of transfers, with the dates and number of transfers unknown, into a single count, alleging both constructive and actual fraudulent transfers.

### b. The Colbeck Payments Are Not Intentional Fraudulent Transfers.

The Trustee has not alleged specific facts from which a strong inference of intent to hinder, delay, or defraud can be drawn in light of plausible opposing inferences (Section IV.B.1.b(1)(b) at 19). Count LII alleges:

> 562. TrashMasters engaged Colbeck under the Consulting Agreement for the benefit of TrashMasters.
>
> 563. The Debtor was not obligated to Colbeck or Colbeck Consulting under the Consulting Agreement.
>
> 564. The Colbeck Payments were made for the benefit of TrashMasters, Colbeck, and Colbeck Consulting.
>
> 565. Colbeck and Colbeck Consulting were alter egos of each other.
>
> 566. The Debtor's payment of the Colbeck Payments was made with actual intent to hinder, delay, or defraud the Debtor's creditors.
>
> 567. In addition or, in the alternative, the Debtor made the Colbeck Payments to Colbeck, and/or Colbeck Consulting without receiving a reasonably equivalent value in exchange for said consulting fee payments.

74

568. The remaining assets of the Debtor were unreasonably small in relation to the payment of the Colbeck Payments.

569. The Debtor's payment of the Colbeck Payments was made when the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

570. The Debtor was insolvent at the time or became insolvent as a result of the Colbeck Payments.

Complaint ¶¶ 562-70.

These allegations do not state a plausible claim for an actual fraudulent transfer. The Trustee acknowledges that TrashMasters was the Debtor's sole member and manager and that the Debtor was TrashMasters' sole asset (*id.* ¶¶ 40, 41, 43[49]).  No facts are alleged that would even create an inference that the Consulting Agreement was not an arm's length transaction and the Trustee admits in the TrashMasters/Colbeck Complaint that Mr. Colbeck was hired to provide services to the Debtor.  Moreover, since the Debtor was the operating entity and TrashMasters the holding company, any services relating to "operations" provided by a Chief Operating Officer had to have been on behalf of the Debtor.

---

[49] The Amended and Restated Limited Liability Company Agreement of Rolloffs Hawaii, LLC, referred to at paragraph 43 of the Complaint, is attached to the Bass Decl. as Exhibit M and shows TrashMasters as the Debtor's sole member and manager.

75

Count LII, to the extent it asserts a claim to avoid the Colbeck Payments as an actual fraudulent transfer, must be dismissed because facts showing intent to hinder, delay or defraud have not been alleged, nor can they be plausibly inferred.

### c. The Colbeck Payments Were Not Constructively Fraudulent Transfers.

#### (1) Lack of Reasonably Equivalent Value Is Not Sufficiently Alleged.

The Trustee's conclusory allegation that the Debtor did not receive reasonably equivalent value in exchange for the Colbeck Payments is neither sufficient nor plausible. Moreover, the allegation is contradicted by the Trustee's admission (and the reality) that Mr. Colbeck performed his services as Chief Operating Officer for the Debtor and for the Debtor's benefit since the Debtor was the sole asset of TrashMasters and the operating entity. Accordingly, Count LII, to the extent it claims a constructively fraudulent transfer, should be dismissed on this basis.

#### (1) Failure to Adequately Allege Insolvency.

The Trustee has failed to plausibly allege actual insolvency, inadequate capitalization, or an intent to incur debts beyond the ability to pay around July 2014, when Colbeck is alleged to have been hired (Section IV.B.2.a at 36). Therefore, Count LII must be dismissed.

76

**C.** **Causes of Action Derivative of Fraudulent Transfers (Counts LIII - LXI).**

   **1.** **Dismissal of Counts I - LII Eliminates Counts LIII - LXI.**

In an effort to hold the Officers and Directors, Corridor Entities, and SPB Entities liable for fraudulent-transfer claims against TrashMasters, ROHI, KNG, Corridor Capital, SPB Management and Colbeck Consulting (Counts I-LII), the following smorgasbord of related, overlapping causes of action is alleged:

| Count | Description | Underlying Transactions | Defendants |
|-------|-------------|-------------------------|------------|
| LIII | Civil Conspiracy to Commit Fraudulent Conveyances | Fraudulent conveyances set forth in Counts X, XXIV, XXXI, XXXVIII, and XLV | TrashMasters, Officers and Directors, Corridor Entities, and SPB Entities |
| LIV | Civil Conspiracy to Commit Fraudulent Transfers | Fraudulent transfers set forth in Counts I-IX, XIXXIII, XXV-XXX, XXXII-XXXVII, XXXIX-XLIV, and XLVI-LII | TrashMasters, Officers and Directors, Corridor Entities, and SPB Entities |
| LV | Breach of Fiduciary Duty - Fraudulent Conveyances and Transfers | All Transfers | TrashMasters, Officers and Directors, Corridor Entities, SPB Entities |
| LVI | Breach of Duty of Loyalty | Advisory Agreement and Advisory Fees | TrashMasters, Officers and Directors, Corridor Entities, SPB Entities |
| LVII | Breach of Duty of Care | Advisory Agreement and Advisory Fees | TrashMasters, Officers and Directors, Corridor Entities, SPB |

77

| Count | Description | Underlying Transactions | Defendants |
|---|---|---|---|
| | | | Entities |
| LVIII | Civil Conspiracy to Breach Fiduciary Duties | All Transfers | TrashMasters, Officers and Directors, Corridor Entities, SPB Entities |
| LVIX | Aiding and Abetting a Breach of Fiduciary Duties | All Transfers | TrashMasters, Officers and Directors, Corridor Entities, SPB Entities |
| LX | Alter Ego | All Transfers | Officers and Directors, Corridor Entities, SPB Entities |
| LXI | Unjust Enrichment | All Transfers | All Defendants |

Counts LIII through LXI are derivative, in whole or in part, of the underlying fraudulent-transfer claims. These derivative claims all fail if the fraudulent-transfer actions are dismissed. *See*, *e.g., Alderwoods (Del.), Inc. v. RightStar Int'l, Inc. (In re Loewen Group Int'l)*, No. 05-cv-90130, 2009 Bankr. LEXIS 3571, at *8 (Bankr. D. Haw. Nov. 3, 2009) (Faris, J.) ("The civil conspiracy claim stands or falls depending on the disposition of the fraudulent transfer claim."); *Strawbridge v. Sugar Mt. Resort, Inc.*, 243 F. Supp. 2d 472, 479 (W.D.N.C. 2003) (alter ego, in general, is "'a method of imposing liability on an

underlying cause of action'") (quoting *Shearson Lehman Hutton, Inc., v. Venners*, 165 F.3d 912 (table), 1998 U.S. App. LEXIS 28005, at *5 (4th Cir. 1998)).

If Counts I through LII are dismissed, Counts LIII through LXI must be dismissed as well because they do not stand without the underlying fraudulent transfers.

### 2. Group Pleading Cannot Survive a Motion to Dismiss.

The Trustee's "group pleading" is not permissible here. *See*, *e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (complaint cannot "lump multiple defendants together" in alleging civil conspiracy); *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 739 (Bankr. W.D. La. 2008) (dismissing complaint alleging, *inter alia*, breach of fiduciary duty where complaint employed group pleading and failed to identify each defendant's role in wrongful conduct). The Trustee relies entirely on group pleading throughout Counts LIII through LXI.

The problem with "group pleading" is that breach of fiduciary duty and related claims are "determined on an individual—rather than a collective—basis." *J.P. Morgan Trust Co. Nat'l Ass'n v. Cleberg (In re Farmland Indus., Inc.)*, 335 B.R. 398, 410 (Bankr. W.D. Mo. 2005) (dismissing claims against individual director where there were no "specific allegations" of wrongdoing by that defendant); *Mukamal v. Bakes,* 383 B.R. 798, 827 (S.D. Fla. 2007) (dismissing breach-of-fiduciary duty claims because the complaint failed to "allege

79

individualized allegations as to each [defendant] from which an assessment can be made under the applicable criteria").

The Complaint contains no context that would allow an inference that the actions ascribed to any one of the defendants were undertaken collectively. Indeed, the Complaint fails to allege a single specific action by any individual Defendant.

Counts LIII through LXI rely on group allegations against TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities (collectively, the "Grouped Defendants") even though these defendants are not similarly situated. Additionally, only group allegations are made against the Officers and Directors, Corridor Entities, and SPB Entities even though the Officers and Directors consist of twelve individuals (each of whom had different roles at different entities at different times), the Corridor Entities consist of three different entities (all with different ownership and management structures and relationships with the Debtor), and the SPB Entities consist of five different entities (all with different ownership and management structures and relationships to the Debtor).  It is implausible that all the Grouped Defendants engaged in the same acts at the same times, although this is what the Complaint alleges.

Finally, the Complaint groups together the alleged fraudulent transfers (which form the primary basis for Counts LII through LXI) without differentiating

80

as to dates, or how the Defendants were benefited by or self-interested in each of the alleged fraudulent transfers.[50]

Counts LIII through LXI must be dismissed because they are based entirely on impermissible group pleading.

**D.** **The Counts for Civil Conspiracy to Commit Fraudulent Transfers and Conveyances Fail as a Matter of Law (Counts LIII and LIV.**

    **1.** **The Trustee Lacks Standing to Bring Claims for Civil Conspiracy to Commit Fraudulent Transfers.**

        **a.** **The Trustee Lacks Standing to Bring Civil Conspiracy Claims When Debtor Was Co-Conspirator Prepetition.**

The Trustee lacks standing to prosecute the civil conspiracy counts. As this court has held, when the debtor is one of the co-conspirators, a bankruptcy trustee only has standing to bring claims for civil conspiracy to the extent the activities of the conspirators occurred postpetition. *See In re Sukamto Sia*, 349 B.R. at 655 (dismissing claims on account of prepetition conspiracies for lack of standing on the basis of *in pari delicto*).[51] Here, the Debtor is repeatedly alleged to have

---

[50] Where the alleged conspiracy or breach of fiduciary duty involves fraud, the pleadings must also satisfy Rule 9(b)'s heightened pleading requirements. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007) ("[A]s the district court noted, where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity.").

[51] *See also Ehrenberg v. Roussos (In re Roussos)*, No. 15-ap-01404, 2016 Bankr. LEXIS 3454, at *33-34 (Bankr. C.D. Cal. Sep. 22, 2016) (citing *Sia* with approval); *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 665-68 (Bankr. D. Md.

collaborated in the alleged fraud and wrongdoing with respect to all of the alleged actual fraudulent transfers and associated transactions (¶¶ 207, 233, 257, 281, 293, 316, 333, 339, 359, 378, 388, 411, 428 434, 454, 474, 480, 498, 519, 527,547 and 566).

Accordingly, Counts LIII and LIV should be dismissed with prejudice due to the Trustee's lack of standing to bring such claims.

> **b.** **The Trustee's Counts for Conspiracy to Commit Fraudulent Transfers and Conveyances is not Permitted by the Bankruptcy Code.**

"[T]he authorities are . . . clear that there is no such thing as liability for . . . conspiracy to commit a fraudulent transfer as a matter of federal law under the [Bankruptcy] Code." *Official Comm. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 549 (Bankr. D. Del. 2009) (emphasis added); *Wyle v. Howard (In re Hamilton Taft & Co.)*, 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995), *aff'd*, 196 B.R. 532 (N.D. Cal. 1995), *aff'd*, 114 F.3d 991 (9th Cir. 1997) (a bankruptcy trustee is only authorized to pursue state law actions the

---

2016) (dismissing count for conspiracy to commit fraudulent transfer because trustee is barred from bringing claims where debtor was a co-conspirator in prepetition activity); *Ray v. Garland (In re Martin)*, Nos. 08-52631, 10-5059, 2011 Bankr. LEXIS 4830, at *11-15 (Bankr. E.D. Tenn. Dec. 8, 2011) (discussing rationale behind these holdings at length, collecting cases and noting courts have consistently held that there is no such thing as liability for conspiracy to commit a fraudulent transfer as a matter of federal law under the Code).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 103 of 127

Code expressly allows the trustee to pursue, and the authority to assert a creditor's state law causes of action related to fraudulent conveyances is limited solely to avoidance)).[52] Moreover, whether any state law recognizes such a claim is irrelevant where the claims are brought by a bankruptcy trustee. *Id.*

The Trustee cannot invoke state-law remedies to circumvent or undermine the remedy legislated by Congress for the avoidance of a fraudulent transfer. *See In Sherman v. FSC Realty LLC (In re Brentwood-Lexford Partners)*, 292 B.R. 255 (Bankr. N.D. Tex. 2003), the court rejected trustee's claim for damages from an alleged civil conspiracy to violate the Texas Uniform Fraudulent Transfer Act, and held that the trustee's remedy for an avoided transfer is provided solely by section

---

[52] *Jackson v. Star Sprinkler Corp. of Fla.*, 575 F.2d 1223, 1234 (8th Cir. 1978) (same)); *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 648-50 (E.D. Ky. 2012) (same); *see also Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 293 (Bankr. N.D. Ill. 2003) ("[A] trustee cannot succeed in an action brought under § 548 against a party who has not received any property or benefit from either the debtor or the debtor's transferee, immediate or mediate."); *Liebmann v. Pucci (In re Ampat S. Corp.)*, 128 B.R. 405, 411 (Bankr. D. Md. 1991) (holding that the trustee could not succeed in an action against a defendant that did not receive the property transferred); *Schlossberg*, 549 B.R. at 665-68 (dismissing trustee's claim for conspiracy to commit fraudulent transfers under state law as prohibited by Bankruptcy Code); *accord, Buchwald v. The Renco Grp., Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 771 (Bankr. S.D.N.Y. 2009) (citing *Klein v. Tabatchnick*, 610 F.2d 1043, 1048 n.171 (2d Cir. 1979) (construing predecessor language under former Bankruptcy Act, stating that district court acted properly in dismissing claim against individual who did not hold or receive allegedly fraudulently transferred property)).

83

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed   02/15/19   Page 104 of 127

550 of the Bankruptcy Code. To allow any other recovery "could lead to a result that expands remedies beyond § 550" and "the court cannot invoke state law remedies to circumvent or undermine the specific remedy legislated by Congress for the avoidance of a fraudulent transfer." *Id.* at 275; *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc*., 419 B.R. 749, 760 (M.D. Tenn. 2009) (adopting reasoning in *Sherman*); *Miller v. Dow (In re Lexington Oil & Gas Ltd.)*, 423 B.R. 353, 376 (Bankr. E.D. Okla. 2010) (same).

Counts LIII and LVIV for conspiracy to commit fraudulent transfers and conveyances are not legally cognizable and must be dismissed with prejudice.

### 2. The Elements of Civil Conspiracy Have Not Been Alleged.

A cause of action for civil conspiracy is recognized in Hawaii. *See In re Sukamto Sia*, 349 B.R. at 655 . The Ninth Circuit Court of Appeals, applying Hawaii state law, has defined civil conspiracy as "'a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *Doleman v. Meiji Mut. Life Ins. Co*., 727 F.2d 1480, 1482 n.3 (9th Cir. 1984), quoting *Collins v. Union Federal Savings & Loan Association*, 99 Nev. 284, 288 (1983). In addition, for a civil conspiracy claim to be valid, an underlying tort must be shown. *See Farmer v. Hickam Fed. Credit Union*, No. 27868, 2010 Haw. App. LEXIS 39, at *45 (Feb. 2, 2010).

84

Conspiracy claims must include enough specificity regarding the time, place, and persons involved in making the conspiratorial agreement, and to show that an actual agreement was reached. *See Twombly*, 550 U.S. at 565 n.10 (a defendant responding to conspiracy claims "would have little idea where to begin" if the pleadings "mentioned no specific time, place, or person involved in the alleged conspiracies"); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

The Complaint alleges only that TrashMasters and the Officers and Directors were integral in managing the Debtor (¶¶ 573-87 [Count LIII], ¶ 590-604 [Count LIV]), but no specific facts are alleged showing an agreement to engage in fraudulent or illegal conduct.[53] Rather, only a conclusory allegation is made that "an agreement existed between and among TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities to make the fraudulent [transfers and conveyances]" (¶¶587, 604). The Corridor Entities and SPB Entities' only alleged involvement in the alleged conspiracy is that because the

_____

[53] Constructively fraudulent transfers cannot form the basis of a civil conspiracy claim *Tow v. Bulmahn*, No. 15-cv-3141, 2016 U.S. Dist. LEXIS 57396, at *91 (E.D. La. Apr. 29, 2016) (conspiracy to commit a constructively fraudulent transfer is not an actionable claim, even when not brought by a bankruptcy trustee, because constructive fraud is not an intentional wrong).

Officers and Directors were allegedly involved, the Corridor Entities and SPB Entities were also involved.

Accordingly, Counts LIII and LIV should be dismissed because the Trustee has not adequately alleged the existence of a conspiracy among any of the Grouped Defendants.

**E.  Plausible Claims for Breaches of Fiduciary Duty Have Not Been Alleged (Counts LV, LVI and LVII).**

The breach of fiduciary duty claims require the Trustee to plausibly allege the following three elements: (i) the existence of a duty arising from a fiduciary relationship, (ii) a failure to observe such duty, and (3) injury proximately resulting therefrom.  *See Swift v. Swift*, 138 Haw. 52 (table), 2016 Haw. App. LEXIS 316, at *9 (Ct. App. 2016).

**1.  No Defendant Owed Fiduciary Duties to the Debtor Other Than TrashMasters.**

Because the Debtor is a manager-managed limited liability company ("LLC"), the only basis for the existence of a fiduciary duty owed to the Debtor is Haw. Rev. Stat. §§ 428-409(h), which narrowly defines the scope of fiduciary duties owed to a manager-managed LLC such as the Debtor.[54] Section 428-409(h)

_____

[54] While fiduciary duties can also arise out of certain relationships such as trustee and beneficiary, or attorney and client, these relationships are not pleaded and are clearly not the basis for the purported fiduciary duties alleged in the Complaint.

86

imposes on a manager (or member who exercises the rights of a manager) of an LLC narrowed "versions" of the duties of loyalty and care imposed on officers and directors of a corporation. The duty of loyalty includes only accounting for property, profits, or benefits; refraining from dealing with the company as an adverse party; and refraining from competing with the company. *See* Haw Rev. Stat. § 428-409 (h)). The duty of care is limited to solely to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. *See* Haw. Rev. Stat. § 428-409(c) (applicable by Haw. Rev. Stat. § 428-409 (h)).

Section 428-409(h) only imposes fiduciary duties on managers of a manager-managed LLC such as the Debtor:

> (1) A member who is not also a manager owes no duty to the company or to the other members solely by reason of being a member;

> (2) A manager is held to the same standards of conduct prescribed for members in subsections (b) to (f).

---

*See Combs v. Case Bigelow & Lombardi*, No. 28773, 2010 Haw. App. LEXIS 25, at *22 (Haw. App. Jan. 27, 2010) . While some courts have applied the "trust fund doctrine" in the corporate context to allow creditors to assert direct claims for breach of fiduciary duty, even if the Trustee had standing to assert such a claim, the requirements of that doctrine have not and cannot be plead (Section IV.E.4 at 73).

TrashMasters was the sole member and manager of the Debtor.[55]  No defendant

other than TrashMasters is alleged to be a manager (or a member) of the Debtor.

Therefore, the Trustee has failed to state facts showing the existence of a fiduciary

duty owed to the Debtor by any defendant other than TrashMasters.

### (a)    The "Officers and Directors" Do Not Owe Fiduciary Duties to the Debtor.

The Complaint does not set forth a factual basis for the existence of

fiduciary duties of the purported Officer and Director Defendants.  The Trustee has

not even made a straightforward allegation that any defendant was an officer or

director of the Debtor. Rather, the Complaint obfuscates this by alleging for each

of the Officers and Directors that he or she "was as an *officer and/or director of the*

Debtor *and/or TrashMasters*" (¶¶ 14-25) (emphasis added).  This is an implicit

admission that the Trustee is unable to allege that the Defendants were officers and

directors of the Debtor, in contrast to TrashMasters.  In fact, the Trustee

acknowledges that some of the Officer and Director Defendants were "not officers

and/or directors of the Debtor" (¶ 642).

There is no statutory or other basis for imposing fiduciary duties on

purported "officers and directors," to the extent they are not managers of the

---

[55] Footnote 49, *supra*.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 109 of 127

Debtor (or members of the Debtor acting as managers).  In fact, an officer of an LLC does not owe fiduciary duties based on status as an officer.  *See 800 S. Wells Commercial LLC v. Cadden*, 103 N.E.3d 875, 884-85 (Ill. App. 2018) (LLCs are statutorily formed and governed and corporate fiduciary duties do not apply; the LLC statute speaks precisely to the issue of who owes what duties to the company, and finding defendant's role as an officer irrelevant under LLC statue that does not expressly impose fiduciary duties on officers).[56]

In addition, officers and directors of a parent company (here, TrashMasters) do not owe fiduciary duties to a subsidiary (here, the Debtor).  *See Official Comm. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 347-48 (Bankr. S.D.N.Y. 2010) ("weight of authority around the country holds that the directors of a parent corporation owe *no* fiduciary duties to a wholly-owned subsidiary" and that there

---

[56] Courts resist analogizing corporate law with LLC law in the fiduciary duty context because LLC statutes and operating agreements strictly prescribe fiduciary duties and abilities to recover on account of breaches thereof.  *See CML V, LLC v. Bax*, 28 A.3d 1037, 1041-43 (Del. 2010) (creditors cannot bring derivative suits against LLC fiduciaries because the LLC statute only allows members to bring such lawsuits derivatively); *Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 466-67 (Bankr. D. Del. 2018) (same).  While some LLC agreements may establish fiduciary duties owed by officers and directors, that is not alleged (nor is it the case) here. Research has not revealed Hawaiian law on this issue.

89

is "no basis for the proposition that those Defendants who had been officers and/or directors of solely the Parent owe any fiduciary duty to the [corporation-debtor]") (emphasis in original); *Official Comm. v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC),* 590 B.R. 211, 272 (Bankr. D. Del. 2018) ("directors of a parent corporation do not owe fiduciary duties to subsidiary corporations").

Accordingly, none of the Officer and Director Defendants owed fiduciary duties to the Debtor (the Debtor had no directors, and officers owe no duties) or as officers and directors of TrashMasters (no duties to Debtor by purported officers and directors of TrashMasters as parent of Debtor).

### (b) The Corridor Entities and SPB Entities Do Not Owe Fiduciary Duties to the Debtor.

There is no statutory or other basis for imposing fiduciary duties on the Corridor Entities or the SPB Entities because none of them are alleged to be managers or members of the Debtor. In fact, only Corridor TrashMasters, LP and SPB Waste, LLC are even alleged to be members of TrashMasters (Complaint ¶¶ 48, 50).

Because the Trustee has failed to allege facts showing the existence of a fiduciary duty owed by any defendant other than TrashMasters, Counts LV, LVI and LVII must be dismissed with respect to the all Grouped Defendants except TrashMasters.

90

## 2. The Narrow Fiduciary Duties of Section 428-409 Were Not Breached.

A complaint fails to state a claim against an alleged fiduciary for breach of fiduciary duty when it fails to allege facts demonstrating that (1) the fiduciary took part in the challenged conduct and (2) failed to demonstrate the due care attendant to its particular office in doing so. *See Bridge Holding, Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, LLC)*, 388 B.R. 548, 573 (Bankr. D. Del. 2008).

The Complaint alleges the following as breaches of those duties:

- directing and authorizing the fraudulent conveyances and fraudulent transfers set forth in Counts I-LII for their own benefit and to the detriment of creditors, and incurring loans and causing the Debtor's assets to be encumbered for that purpose (¶¶ 610-12, 621-22, 627-630).

- structuring the organization of the Debtor, TrashMasters and certain of the Corridor Entities and the SPB Entities for their own benefit to insulate them from liability (¶ 618).

- sitting on all sides of the Advisory Agreement, which was unfair and overcompensated the Officers and Directors, the Corridor Entities and the SPB Entities (¶¶ 619-21).

- expanding the Company's debt, leveraging its assets and prolonging the corporate life of the Debtor (¶¶ 613, 631).

TrashMasters does not violate the duty of loyalty or care "merely because [TrashMasters'] conduct furthers [TrashMasters'] own interest." Haw. Rev. Stat. § 428-409 (e) (manager of a manager-managed LLC "does not violate a duty or obligation under this chapter or under the operating agreement merely because the [manager's] conduct furthers the [manager's] own interest"). This is especially true

91

here, where the alleged fraudulent transfers were made on account of an antecedent debt, and the loans and guaranties at issue were on account of loans taken out to purchase assets that were contributed to the Debtor, or to refinance such obligations.

### 3.    Any Alleged Breaches of Duty Were Shareholder Ratified.

While the Debtor was solvent, TrashMasters (as the sole member and manager of the Debtor) was free to dispose of the Debtor's assets as it chose and ratified any actions in furtherance thereof. *See Miller & Lux, Inc. v. Anderson*, 318 F.2d 831, 838 (9th Cir. 1963) (holding that when "corporation is hurt, or destroyed, by the intended conduct of the owners of its shares, [it] gives rise to no legal claims, either in the shareholders, or in the corporation as a legal entity"); *GSM Wireless*, 2013 Bankr. LEXIS 3298, at *130 ("impossible" for directors and officers to be held liable for breach their fiduciary duties when shareholders owning 100% of corporate stock approved of each transactions and company was not insolvent).

The acts that form the basis for the breach-of-duty claims are the Debtor's entry into the Advisory Agreement in May 2009 (Complaint ¶¶ 619-622), the alleged fraudulent transfers (Count LV), and multiple transactions that form the basis for the Alleged Fraudulent Transfer claims: "[Grouped Defendants] breached their duty of care to the debtor by, among other things converting property of the

92

Debtor and having the Debtor secure, guaranty and take on additional debt and expenses to pay for, among other things, the debt of TrashMasters and the subject Advisory Fees." (¶ 627). With the exception of the payments made under the Colbeck Consulting and the 2015 ASB Refinancing (which refinanced the Debtor's existing secured debt under the 2012 Convergent Loan and the ASB 2012 Credit Agreement), all of the transactions that form the basis of the breach-of-duty claims occurred prior to the end of 2012. The Complaint does not adequately allege insolvency at any point in time, and does not contain a single specific factual allegation from which insolvency could be inferred prior to year-end 2012 (Section IV.B.2.a at 36). Moreover, the consolidating balance sheets from the audited financial statements submitted to the Court by the Trustee show that the Debtor was solvent through 2012 (Section IV.B.2.a(2) at 40). The Trustee fails to explain how the 2015 ASB Refinancing or the Colbeck Consulting Agreement and related payments can be the basis for breach-of-duty claims and his conclusory allegations that they are is implausible.

Accordingly, Counts LV, LVI, and LVII must be dismissed with prejudice because the Trustee has not alleged facts showing insolvency existed when the acts giving rise to the alleged breaches of duty occurred.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 114 of 127

### 4. The Trust-Fund Doctrine Does not Apply.

Any argument that fiduciary duties are owed beyond those set forth at Haw. Rev. Stat. § 428-409 must fail. While some courts have applied the "trust fund doctrine" in the corporate context to allow creditors to assert direct claims for breach of fiduciary duty, the requirements of that doctrine have not been pleaded. In *Mansha Consulting LLC v. Alakai*, No. 16-cv-00582, 2017 U.S. Dist. LEXIS 135407, at *24-25, 31 (D. Haw. Aug. 23, 2017), the Hawaii district court noted that the trust-fund doctrine only apples after a corporation becomes "'hopelessly insolvent and unable to carry out objects for which it is created'" (quoting *California Feed Co. v. Club Stables Co.*, 10 Haw. 209, 212 (1896) and "determines to discontinue the prosecution of business" ). The court in *Mansha* dismissed a creditor's claim that failed to allege that the corporation had determined to discontinue its business at the time of the alleged breach of duty.

The Trustee has not (and cannot) allege that the Debtor had determined to discontinue its business or that it was "hopelessly insolvent" at the time of the alleged breaches and therefore cannot state a claim for breach of duty under the trust fund doctrine.

94

**F.** **Complaint Does Not State a Plausible Claim for Conspiracy to Breach Fiduciary Duties (Count LVIII).**

**1.** **Dismissal of Counts LV, LVI and LVII Eliminates Count LVIII.**

Count LVIII alleges the Grouped Defendants conspired to breach the fiduciary duties alleged in Counts LV, LVI and LVII. Civil conspiracy is a derivative claim (Section IV.C.1 at 77). Accordingly, if Counts LV, LVI and LVII are dismissed, Count LVIII must be dismissed because it cannot stand without the underlying breaches of fiduciary duties. [57]

In addition, a claim for conspiracy to breach fiduciary duties fails as a matter of law unless the alleged co-conspirators owe fiduciary duties.[58] *See Bridgepoint Constr. Servs. v. Lassetter*, No. 16-cv-00078, 2016 U.S. Dist. LEXIS 93895, at *8

_____

[57] *Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1138 (D. Haw. 2012) (where there is no underlying actual claim, the civil conspiracy claim to breach fiduciary duties must fail); *Weinberg v. Mauch,* 78 Haw. 40, 890 P.2d 277 (1995) ("'there can be no civil claim based upon a conspiracy alone'" and underlying actionable claim must be alleged), quoting *Ellis v. Crockett*, 51 Haw. 45, 57, 451 P.2d 814, 822-823 (1969).

[58] *Bridgepoint Constr. Servs. v. Lassetter*, No. 16-cv-00078, 2016 U.S. Dist. LEXIS 93895, at *8 (D. Ariz. July 19, 2016) (applying California law and stating: "Liability arising from conspiracy assumes that the co-conspirator is legally capable of committing the underlying tort or that he or she owes a duty to plaintiff recognized by law. A non-fiduciary cannot conspire to breach a duty owed only by a fiduciary.") (citations omitted); *Espinoza v. Bank of Am., N.A.*, No. 10-cv-6 JLS (AJB), 2010 U.S. Dist. LEXIS 49048, at *10 (S.D. Cal. May 17, 2010) (non-fiduciary cannot conspire to breach a duty only owned by a fiduciary).

95

(D. Ariz. July 19, 2016).  As set forth above, TrashMasters is the only party that owed fiduciary duties to the Debtor, and TrashMasters cannot conspire with itself. If Counts LV, LVI, and LVII are dismissed as to the Grouped Defendants other than TrashMasters, Count LVIII must also be dismissed.

### 2. Complaint Fails to Allege Terms of Alleged Conspiracy.

As set forth in greater detail in Section IV.D.2 at 84, civil conspiracy is defined as a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another that results in damage, and requires that a complaint include enough specificity regarding the time, place, and persons involved in making the conspiratorial agreement, and to show that an actual agreement was reached.

The Complaint only offers the conclusory allegation that the "Officers and Directors were in agreement and conspired among and between each other and TrashMasters, the Corridor Entities, and the SPB Entities to breach their fiduciary duties to the Debtor" (¶ 635).  There are no allegations of facts suggesting a conspiracy existed and Count LVIII must be dismissed.

### G. Complaint Fails to State Plausible Claim for Aiding and Abetting Breach Fiduciary Duties (Count LIX).

### 1. Dismissal of Counts LV, LVI and LVII Eliminates Count LIX.

Count LIX appears to allege that any of the Grouped Defendants that were not officers and directors of the Debtor aided and abetted those of the Officers and

96

Directors who were officers and directors of the Debtor in breaching their fiduciary duties (Complaint ¶¶ 641-42). Aiding and abetting breach of fiduciary duties requires an actionable underlying claim for breach of fiduciary duties. *See Molokai Servs. v. Hodgins*, No. 15-0000464, 2018 Haw. App. LEXIS 92, at *26 (Feb. 28, 2018). Therefore, Count LIX must be dismissed if Counts LV, LVI and LVII are dismissed.

### 2. Complaint Fails to Allege Claim for Aiding and Abetting.

"'A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach.'" *Id.* at *26 (quoting *Combs v. Case Bigelow & Lombardi*, No. 28773, 2010 Haw. App. LEXIS 25, at *21 (2010)).

The Trustee's aiding-and-abetting allegations are nothing more than bare bones conclusions that:

> 641. TrashMasters, the Corridor Entities and the SPB Entities gave substantial assistance or encouragement to the Officers and Directors to breach their fiduciary duties in Counts LV-LVII.

> 642. [T]o the extent individual Officers and Directors were not officers and/or directors of the Debtor, said individual Officers and Directors gave substantial assistance or encouragement to the other [Grouped Defendants] to breach their fiduciary duties.

Complaint ¶¶ 641-42.

97

The Trustee does not allege any facts demonstrating how any Defendant gave "substantial assistance or encouragement," what that assistance or encouragement was, and how it was a "substantial factor" in causing the Officers and Directors to breach their fiduciary duties. The Trustee has not identified which Officers and Directors were not officers and directors of the Debtor (or otherwise did not owe an alleged fiduciary to the Debtor), so it is impossible for any Defendant to determine whether the Trustee is even alleging this Count against them. Accordingly, Count LIX must be dismissed.

## H.    Complaint Fails to State Plausible Alter-Ego Claim (Count LX).

Alter ego is not a separate cause of action, but a remedy to impose liability on others if an underlying claim exists. "There is no such thing as a substantive alter ego claim." *Ahcom Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) (citing California law). Federal courts generally find that "[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." *Kantor v. BigTip, Inc.*, No. 15-cv-1871, 2018 U.S. Dist. LEXIS 57265, at *22 (W. D. Wash. April 3, 2018) (quoting *Oginsky v. Paragon Props. of Costa Rica Ltd. Liab. Co.*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011)).

A corporation will be deemed the alter ego of another "'where recognition of the corporate fiction would bring about injustice and inequity or when there is

98

evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim.'" *Robert's Haw. School Bus, Inc. v. Laupahoehoe*, 91 Haw. 224, 241-42 (1999)[59] (quoting *Chung v. Animal Clinic, Inc*., 63 Haw. 642, 645, 636 P.2d 721, 723 (1981)).  Courts apply the alter-ego doctrine with great caution and reluctance, requiring exceptional circumstances before disregarding the corporate form. *Id.* at 241.

A claim of alter ego requires: (1) the corporation is not only influenced and governed by that person, but that there is such a unity of interest that the individuality, or separateness, of such person and corporation has ceased,[60] and (2) that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. *Id*. at 242 (citing *Associated Vendors, Inc. v. Oakland Meat Co., Inc*., 26 Cal. Rptr. 806, 813 (Ct. App. 1962)).

---

[59] Superseded by statute on other grounds as stated in *Davis v. Four Seasons Hotel Ltd*., 122 Haw. 423, 429, 228 P.3d 303, 309 (2010).

[60] Indeed, "Hawai'i courts have been reluctant to disregard the corporate entity," including in circumstances where the stock is owned by a single shareholder, unless a recognition of the corporate fiction would bring about injustice or the corporate fiction has been used to perpetrate a fraud.  *See Roberts Haw. School Bus. Inc.*, 91 Haw. at 241, n.12; *Calipjo v. Purdy*, 141 Haw. 279 (table), 2017 Haw. App. LEXIS 498, at * 5-6 (Ct. App. 2017).

99

Alter-ego claims cannot survive a motion to dismiss where unity of interest and ownership are stated only in conclusory terms with little or no supporting facts and plaintiff did not articulate "any inequity that would result by refusing to apply alter ego liability." *Ovation Toys Co., Ltd. v. Only Hearts Club*, 675 F. App'x. 721, 724 (9th Cir. 2017) (applying California law); *Saivest Empreendimentos Imobiliarios E. Participacoes, Ltda v. Elman Inv'rs, Inc.*, 985 N.Y.S.2d 54, 57 (2014) (alter-ego claims must be dismissed where they are supported only by conclusory allegations of undercapitalization, intermingling of assets, and individual dominating the company); *Andejo Corp. v. South St. Seaport Ltd. P'ship*, 836 N.Y.S.2d 571, 572 (2007) (dismissing alter-ego claim based on conclusory statements that the parent-entity defendants dominated and controlled their subsidiaries).

Count LX alleges that:

> "the Corridor Entities and the SPB Entities were alter egos of TrashMasters and the Officers and Directors and each other and each acted as an agent for one another" (¶ 647);

> "[r]ecognition of the separate corporate fictions of each of the individual Officer and Directors, each of the Corridor Entities, and each of the SPB Entities, and TrashMasters will bring about an injustice and inequity to the Debtor and the Debtor's creditors" (¶ 650); and

> "each of the individual Officers and Directors, each of the Corridor Entities, each of the SPB Entities, [] are jointly and severally liable for the legal obligations of each of the Officers

100

and Directors and TrashMasters" on the basis of alter ego (¶ 651).

The Complaint seeks a determination that all of the defendants are alter egos of TrashMasters *and each other* without alleging facts showing any defendant had the requisite unity of interest with TrashMasters, let alone with each other. Moreover, by seeking a determination that all the defendants are alter egos of each other, the Trustee is asking the Court to apply the doctrine of "reverse alter ego" which is not permissible under Hawaii law.[61] By seeking a determination that all

---

[61] While traditional veil piercing seeks to hold an individual (or corporate) shareholder liable for the acts of a corporation, reverse piercing imposes liability on a corporation for the obligations of an individual shareholder. In other words, the creditor seeks to pierce the corporate veil to impose liability on the corporation in order to satisfy the debt of an individual shareholder. In simple terms, reverse alter ego involves piercing "down" rather than piercing "up." *Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the U.S., Inc.* (*In re Phillips*), 139 P.3d 639, 645 (Colo. 2006). Reverse alter ego has not been adopted in Hawaii. *Kauai Scuba Center, Inc. v. Lexington Ins. Co.*, No. 11-cv-00573, 2012 U.S. Dist. LEXIS 19668 (D. Haw. Feb. 16, 2012) (dismissing "reverse piercing" claim and noting "the Hawaii Supreme Court has not adopted the theory of reverse piercing the corporate veil"); *Estate of Daily v. Lilipuna Assoc.*, 81 F.3d 167 (table), 1996 U.S. App. LEXIS 20678 (9th Cir. 1996) (unpublished decision in which the Ninth Circuit affirmed the district court's adoption of the Hawaii bankruptcy court's recommendation/ conclusion that the trustee's "reverse alter ego claim must fail, because no such claim had been or was expected to be recognized in Hawaii state courts"); *Estate of Daily v. Title Guaranty Escrow Serv.,* 178 B.R. 837, 844 (D. Haw. 1995) (opining that the Hawaii Supreme Court would not create a 'new' cause of action in the form of reverse alter ego in light of the Hawaii Supreme Court's historical reluctance to pierce the corporate veil, and because "alternative remedies, such as avoidance of fraudulent conveyances,

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed   02/15/19   Page 122 of 127

the defendants are alter egos of each other, the Trustee is seeking to impose liability upon entities for the liability of its owners.  This attempt to pierce "down" rather than "up" is a classic example of prohibited reverse veil piercing.

The Trustee also seeks a determination that the SBP Entities and the Corridor Entities are alter egos of each other without alleging a single fact that there is any shared ownership or management between them.  The same is true with respect to the contention that the Officers and Director are alter egos of both the SPB Entities and the Corridor Entitles.  There are no facts that enable the Court or any of the defendants to determine which Officers and Directors are alleged to be alter egos of which SPB Entity or which Corridor Entity and on what basis.

Finally, the Complaint does not allege facts showing how an injustice will arise if all the defendants are not found to be alter egos of each other, or why such a determination is a necessary supplement to the 60 other claims in the Complaint.  Thus, the Court should dismiss Count LX.

## I.    <u>Complaint Fails to State Plausible Claim for Unjust Enrichment (Count LXI).</u>

To recover on an unjust enrichment claim, a plaintiff must prove the defendant: (1) received a benefit without adequate legal basis and (2) unjustly

---

conversion and reaching principals through agents are already available in Hawaii courts").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 19   Filed  02/15/19   Page 123 of 127

retained the benefit at the expense of the plaintiff.  *See Balboa v. Haw. Care &*

*Cleaning, Inc*., 105 F. Supp. 3d 1165, 1174 (D. Haw. 2015).

Unjust enrichment is an equitable remedy that may only be invoked when

legal remedies are inadequate.  *See Porter v. Hu*, 116 Haw. 42, 55, 169 P.3d 994,

1007  (Ct. App. 2007).  The Trustee acknowledges that he believes he has multiple

other remedies (the other 60 Counts); if these claims fail, there is no basis for

appending an unjust enrichment claim to his already lengthy complaint.

Accordingly, Count LXI should be dismissed.

     **1.**     **Unjust Enrichment Does Not Apply to Fraudulent Transfers and Certain Grouped Defendants.**

        **a.**     **Unjust Enrichment Claim Fails to the Extent It Seeks to Recover Amounts of Alleged Fraudulent Transfers.**

To the extent the unjust enrichment claim seeks to impose liability for the

Alleged Fraudulent Transfers brought under HUFTA or FDCPA, the claims has

been effectively displaced by the statute.[62]  An unjust enrichment claim cannot be

sustained, in this instance, when it is used to supplement the statutory regime.  *See*

*Porter v. Hu*, 116 Haw. at 55.  Accordingly, Count LXI must be dismissed to the

extent the unjust enrichment claim seeks to impose liability for the Alleged

_____

[62] As set forth in footnote 11, *supra*, HUFTA may supersede the Alleged
Fraudulent Transfers brought under Hawaii common law.

Fraudulent Transfers as there is an adequate statutory remedy to recover fraudulent transfers.

### b. Unjust Enrichment Claim Fails to the Extent It Seeks to Recover Amount Paid Pursuant to Advisory Agreement.

The unjust enrichment claim fails to the extent it seeks to recover amounts paid pursuant to a contract. The theory of unjust enrichment does not apply where a contract governs the relationship between the parties. *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (under California and New York law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties"). Accordingly, Count LXI must be dismissed to the extent the unjust enrichment claim seeks to impose liability relating to the Advisory Fees.

### c. Unjust Enrichment Claims Fail Against Non-Recipients.

An unjust enrichment claim cannot survive a motion to dismiss without specific factual allegations that "state[] precisely what is conferred upon the [defendants] which they unlawfully retained." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1073 (D. Haw. 2011) (dismissing unjust enrichment claim because there were "simply insufficient facts to a claim for relief that is plausible on its face").

Plaintiff alleges that "Defendants have benefited from value belonging to the Debtor and have been unjustly enriched to the detriment of the Debtor" (Complaint ¶ 653) but failed to identify the benefit given to Corridor Capital Advisors, Corridor TrashMasters, SPB Waste, SPB Capital GP, LLC, SPB Capital Partners, L.P., SPB Partners, and each of the Officers and Directors other than Colbeck (the "Non-Recipient Defendants").  Accordingly, Count LXI must be dismissed as to the Non-Recipient Defendants.  Further, the Complaint fails to identify how the retention of any such unidentified benefit was unjust.  The Complaint only makes a conclusory allegation that the Defendants have been unjustly enriched to the detriment of the Debtor (¶ 653).

# V.

## CONCLUSION

WHEREFORE, based upon the foregoing, Defendants respectfully request

that the Complaint be dismissed for the reasons set forth herein.


DATED: February 15, 2019        /s/ Chuck C. Choi
                                Kenneth H. Brown (CA State Bar No.
                                100396)
                                Pachulski Stang Ziehl & Jones LLP
                                150 California Street, 15th Floor
                                San Francisco, CA 94111
                                Phone: (415) 263-7000
                                Fax: (415) 263-7010
                                Email: kbrown@pszjlaw.com

                                -and-

                                Chuck C. Choi
                                Allison A. Ito
                                CHOI & ITO
                                Topa Financial Center
                                700 Bishop Street, Suite 1107
                                Honolulu, HI 96813
                                Phone: (808) 533-1877
                                Fax: (808) 566-6900

                                Attorneys for TrashMasters, LLC, Corridor
                                Capital, LLC, Corridor Capital Advisors,
                                LLC, Corridor TrashMasters, L.P., SPB
                                Management, LLC, SPB Waste, LLC, SPB
                                Capital GP, LLC, SPB Capital Partners,
                                L.P., SPB Partners, LLC, Craig Enenstein,
                                L. Geoffrey Greulich, Edward A. Monnier,
                                Jessamyn Davis, Ari D. Bass, Scott R.
                                Bulloch, and Kenneth M. Pressberg

106