KLEVANSKY PIPER, LLP
A Limited Liability Law Partnership

SIMON KLEVANSKY                3217-0
ALIKA L. PIPER                 6949-0
ELAINE T. CHOW                 10377-0
CARISA LIMA KA'ALA DUFFY       7372-0
841 Bishop Street, Suite 1707
Honolulu, Hawaii 96813
Telephone:  (808) 536-0200
Facsimile:  (808) 237-5759
E-Mail: sklevansky@kplawhawaii.com
        apiper@kplawhawaii.com
        echow@kplawhawaii.com
        kduffy@kplawhawaii.com

Attorneys for Trustee Dane S. Field

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ROLLOFFS HAWAII, LLC,<br><br>                Debtor. | Case No. 16-01294<br>(Chapter 7) |
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>                Plaintiff,<br><br>        v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB | Adversary Proceeding No. 18-90035<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, FILED ON FEBRUARY 15, 2019; EXHIBITS "1"-"16"; DECLARATION OF SIMON KLEVANSKY**<br><br><u>Hearing</u><br>Date:   April 12, 2019<br>Time:   2:00 p.m.<br>Judge:  Hon. Robert J. Faris |

115347_9.docx

| | |
|---|---|
| WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH; KENNETH M. PRESSBERG; KRISTIAN GOURLAY; DOUGLAS L. ASAY; DOUGLAS D. ASAY; CHARLES E. LEONARD; BRIAN COLBECK; ROLLOFFS HAWAII, INC.; THE KNG GROUP, LLC; COLBECK CONSULTING LLC; JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE ENTITIES 1-50,<br><br>      Defendants. | Related Document Nos. 19, 20, 21, 25, 29 |

## PLAINTIFF'S OPPOSITION TO
## <u>MOTION TO DISMISS, FILED ON FEBRUARY 15, 2019</u>

[This space is intentionally left blank.]

U.S. Bankruptcy Court - Hawaii  #18-90035 Dkt # 30 Filed 03/19/19 Page 2 of 122

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................... vi

I.       INTRODUCTION ........................................................ 2

II.      BACKGROUND ......................................................... 4

    A.   The Syndicator Defendants Controlled TrashMasters and
         the Debtor .................................................... 4

    B.   The Syndicator Defendants' Fraudulent Scheme ................. 6

    C.   The Debtor was Insolvent at Inception ....................... 10

    D.   The Syndicator Defendants Received $1,849,131 in
         Advisory Fees, for Which the Debtor Received Little or
         No Value, and Were Accrued Because the Debtor was
         Unable to Pay Them on a Timely Basis, and were
         Eventually Paid from the Proceeds of a Hard Money Loan ...... 12

    E.   The Colbeck Consulting Agreement was Between
         TrashMasters and Colbeck Consulting ........................ 15

    F.   The Trustee Initiated Early Discovery in this Case, and on
         February 4, 2019, Served Requests for Production of
         Documents, on the Syndicator Defendants, However
         Discovery by Stipulated Order is Currently Stayed in the
         Case ....................................................... 17

III.     LEGAL ARGUMENT .................................................... 18

    A.   Fed. R. Civ. P. 12(b)(6) Standard ........................... 19

    B.   The Complaint Meets the Fed. R. Civ. P. 8 "Short and
         Plain Statement of the Claim" Pleading Standard ............ 22

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 3 of 122

C.  The Trustee Has Sufficiently Pled With Particularity Its Intentional Fraudulent Conveyance and Transfer Claims In the Complaint .......................................................... 23

1.  The Complaint adequately sets forth the fraudulent scheme of the Syndicator Defendants ...................................... 26

2.  The Complaint states plausible claims for intentional and constructive fraud ................................................ 28

    a.  The Complaint meets the intentional fraud pleading standard for Haw. Rev. Stat. § 651C-4(a)(1) claims........... 28

    b.  The Complaint meets the intentional fraud pleading standard for common law fraudulent conveyance claims ................................................................. 30

3.  The Complaint adequately pleads constructive fraud claims under Haw. Rev. Stat. § 651C-4(a)(2) and § 651C-5 .................................................................. 32

4.  The Syndicators Defendants' Additional Bases Upon Which They Contend the Fraudulent Conveyance and Fraudulent Transfer Counts Do Not State a Claim Lack Merit .................................................................. 34

    a.  The payments at issue were not made on account of antecedent debt of the Debtor ................................... 35

    b.  The Debtor did not receive reasonably equivalent value for the payments it made on TrashMasters' debt ............................................................... 40

    c.  The Trustee has sufficiently pled the Debtor's insolvency in the Complaint ..................................... 43

        (i)  The Debtor's continued its business for 6 years on the backs of its creditors ........................... 47

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 4 of 122

(ii)  The Syndicator Defendants used a hard money loan to pay a portion of their advisory fees and in 2012 it was clear the Debtor had a "problem loan" rating ................................................................. 48

5.  The Syndicator Defendants improperly introduce and rely upon audited, but inaccurate, financial statements of the Debtor to dispute the Debtor's insolvency ................... 50

6.  The Trustee has adequately pled insider status as to the Syndicator Defendants ............................................. 54

D.  In Light of the Syndicator Defendants' Control of the Debtor and TrashMasters, the Complaint Provides Sufficient Detail as to the Transfers the Trustee Seeks to Avoid ............................................................................. 59

E.  Group Pleading is Permitted in this Case as the Officers, Directors, and Entities are Closely Related.................................. 60

1.  The SPB Officers and Directors and the Corridor Officers and Directors are a narrowly defined group of officers and directors who managed and controlled the Debtor's business and financial affairs, and financial statements in particular, thus group pleading as to these defendants is permitted ................................................... 62

2.  The Corridor Entities and the SPB Entities are closely related companies, each of which through their same principals had direct involvement with the Debtor in general and its financial statements and affairs in particular, thus group pleading as to these defendants is permitted .............................................................. 63

F.  The Breach of Fiduciary Duties Claims (Counts LV, LVI, and LVII) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Breach of Fiduciary Duty Claims Lack Merit ............................................... 64

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 5 of 122

1. The Debtor was insolvent from inception and each of the Syndicator Defendants are liable for the breach of fiduciary duty claims .................................................. 64

2. Count LV adequately states claims for breach of fiduciary duty against the Syndicator Defendants .................. 72

3. The Debtor and TrashMasters were insolvent, thus, ratification of any avoidable transfer gives rise to a breach of a fiduciary duty claim ............................................. 75

G. The Conspiracy Claims (Counts LVIII, LIV, and LVIII) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Conspiracy to Commit Fraudulent Conveyances, Transfers, and Breaches of Fiduciary Duties Lack Merit .......................................... 75

1. The Trustee has standing to bring civil conspiracy claims on behalf of the Debtor .................................................. 76

2. The Trustee is permitted to bring civil conspiracy to commit fraudulent conveyances and transfers claims.............. 80

3. The Trustee has sufficiently pled the civil conspiracy to commit fraudulent conveyances and transfers and civil conspiracy to commit breaches of fiduciary duties claims........................................................................ 81

H. The Aiding and Abetting Breach of Fiduciary Duties Claim (Count LVIX) is Adequately Pled, and the Syndicator Defendants' Contentions Lack Merit.......................... 83

I. The Alter Ego Claims (Count LX) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Alter Ego Claim Lack Merit.................................... 86

iv

J.    The Unjust Enrichment Claim (Count LXI) is Adequately Pled, and the Syndicator Defendants' Contentions Regarding the Alternative Unjust Enrichment Claim Lack Merit .................................................................................. 90

K.    The Dismissal of Claims as to Other Defendants Should be Denied as the Claims are Properly Pled and Plausible and No Legal Briefing Has Been Submitted With Respect to the Additional Defendants........................................................... 92

L.    The Trustee Requests Leave to Amend the Complaint................. 94

IV.    CONCLUSION.................................................................................... 96

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 7 of 122

# TABLE OF AUTHORITIES

Page

**CASES**

Achiles v. Cajigal,
    39 Haw. 493 (1952) ........................................................ 31, 37

In re AgFeed USA, LLC,
    546 B.R. 318 (Bankr. D. Del. 2016) ............................... 25

In re Agricultural Research and Technology Group, Inc.,
    916 F.2d 528 (1990) ....................................................... 24, 31

In re American Properties, Inc.,
    14 B.R. 637 (D. Kan. 1981) ............................................ 24

Angell v. Ber Car, Inc.,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) ......................... 33

ASARCO LLC v. Americas Mining Corp.,
    396 B.R. 278 (S.D. Tex. 2013) ...................................... 90

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ....................................................... 22-23

Audette ex rel. Concepts Am., Inc. v. Kasemir (In re Concepts
Am., Inc.),
    No. 14 B 34232, 2018 WL 1174900
    (Bankr. N.D. Ill. Mar. 1, 2018) ..................................... 79, 81

Banco Popular N. Am. v. Gandi,
    184 N.J. 161, 876 A.2d 253 (2005) ............................... 80 n.30

Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics,
Inc.),
    187 B.R. 315 (Bankr. C.D.Cal. 1995) .......................... 53 n.21

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ....................................................... 22

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 8 of 122

In re Bowers,
    16 B.R. 298 (Bankr. D. Conn. 1981)............................................. 47 n.18

Boyer v. Crown Stock Distribution, Inc.,
    587 F.3d 787 (7th Cir. 2009) ........................................ 7 n.6, 37, 38, 47, 48, 49

Briggs v. Sanford,
    219 Mass 572 (1914) ........................................................ 31

The California Feed Co. v. The Club Stables Co.,
    10 Haw. 209 (1898) ......................................................... 74

Cancan Development, LLC v. Manno,
    C.A. No. 6429-VCL, 2015 WL 3400789
    (Del. Ch. May 27, 2015)............................................... 90

Carpenters Pension Trust v. Lindquist Family LLC,
    No. C-13-01063 DMR, 2014 WL 1569195
    (N.D. Cal. 2014) .......................................................... 68-69

Cendant Corp. v. Shelton,
    474 F. Sup. 2d 377 (D. Conn. 2007) ......................... 33

Charys Liquidating Trust v. McMahan Sec. Co.,
    443 B.R. 628, 632 n.2 (2010) ..................................... 33

Chicago, M & St. P.R. Co. v. Minneapolis Civil and Commerce
Assn.,
    247 U.S. 490 (1918).................................................... 71

Citicorp North America, Inc. v. Official Comm. of Unsecured
Creditors (In re TOUSA, Inc.),
    680 F.3d 1298 (11th Cir. 2012) ................................. 42 n.17

Claybrook v. Morris (In re Scott Acquisitions Corp.),
    344 B.R. 283 (Bankr. D. Del. 2006)........................... 22

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 9 of 122

Connell v. Shallo (In re Die Fliedermaus LLC),
    323 B.R. 101 (Bankr. S.D.N.Y. 2005) ........................  44

Cook, Perkiss and Liehe, Inc. v. N. Cal.Collection Servs., Inc.,
    911 F.2d 242 (9th Cir. 2007) ........................................  94

County of Santa Crux, Cal. v. Ashcroft,
    314 F. Supp. 2d 1000 (N.D. Cal. 2004).....................  21-22

Dalton v. Meister,
    71 Wis.2d 504, 239 N.W.2d 9 (1976) .........................  80 n.30

Danning v. Lavine,
    572 F.2d 1386 (9th Cir. 1978) .....................................  45

Diaz v. Int'l Longshore and Warehouse Union, Local 13,
    474 F.3d 1202 (9th Cir. 2007) .....................................  94

Doe v. United States,
    58 F.3d 494 (9th Cir. 1995) .........................................  94

Doleman v. Meiji Life Ins. Co.,
    727 F.2d 1480, 1482 n.3 (9th Cir. 1984) ...................  82

Drabkin v. L&L Constr. Assocs. (In re Latin Inv. Corp.),
    168 B.R. 1 (Bankr. D.D.C. 1993)................................  80

Durette v. Aloha Plastic Recycling, Inc.
    105 Haw. 490, 100 P.3d 60 (2004).............................  91

FirstMerit Bank, N.A. v. Hosseini,
    No. 14 C 8749, 2015 WL 4243484
    (N.D. Ill. July 13, 2015)..............................................  82

First Nat'l City Bank v. Banco Para El Comercio Exterior de
Cuba,
    462 U.S. 611 (1983)....................................................  89

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 10 of 122

Flood v. Miller,
    35 Fed. Appx. 701 (2002)..............................................  61

In re Food Gallery at Valleybrook,
    222 B.R. 480 (Bankr. W.D. Penn. 1998)....................  46-47 n.18

Galbraith v. City of Santa Clara,
    307 F.3d 1119 (9th Cir. 2002) ....................................  20

Giacometti v. Arton Bermuda Ltd. (In re Sia),
    349 B.R. 655 (Bankr. D.Haw. 2006)...........................  77

Gilligan v. Jamco Dev. Corp.,
    108 F.3d 246 (9th Cir. 1997) .......................................  22

In re Glen Fed, Inc. Securities Litigation.,
    42 F.3d 1541 (9th Cir. 1994) .......................................  29

Gold v. Winget (In re NM Holdings Co., LLC),
    407 B.R. 232 (Bankr. E.D. Mich. 2009)....................  33, 43

Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research
and Management, Inc.),
    BAP No. CC-15-1081-KiTaKu, 2015 WL 8483728
    (9th Cir. B.A.P. 2015)..................................................  33

Goodman v. H.I.G. Capital, LLC,
    491 B.R. 747 (Bankr. W.D. La 2013) ........................  35, 36, 37

Grubin ex rel. Food Mgt. Grp. v. Rattet (In re Food Mgt. Grp.),
    380 B.R. 677 (Bankr.S.D.N.Y. 2008) ........................  79

Hayes v. Palm Seedlings Partners-A (In re Agricultural
Research and Technology Group),
    916 F.2d 528 (9th Cir. 1990) .......................................  29

Kekona v. Abastillas,
    113 Haw 174, (2006) ...................................................  32

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 11 of 122

Page

Khoja v. Orexigen Therapeutics, Inc.,
    899 F.3d 988 (9th Cir. 2018) ........................................ 20 n.15,
    21

Kotoshirodo v. Brennan (In re Lull),
    Civ. No. 11-00349 SOM-BMK, 2011 WL 6941487
    (D. Haw. December 30, 2011)........................................ 57

Lee v. City of L.A.,
    250 F.3d 668 (9th Cir. 2001) ........................................ 20

Lewis v. Brobeck (In re Brobeck),
    No. 03-21784, 2008 WL 5650052
    (Bankr. E.D. Tenn. Nov. 6, 2008) ................................ 76

LFC Marketing Grp, Inc. v. Loomis,
    116 Nev. 896 (Nev. 2000) ............................................ 89

Lopez v. Smith,
    203 F.3d 1122 (9th Cir. 2000) ...................................... 94

Lum v. Kwong,
    39 Haw. 532 (1952) ..................................................... 82

Mansha Consulting LLC v. Alakai,
    Civ. No. 16-00582 ACK-RLP, 2017 WL 3659163
    (D.    Haw. 2017) ......................................................... 70, 75

Manzarek v. St. Paul Fire & Marine Ins. Co.,
    519 F.3d 1025 (9th Cir. 2008) ...................................... 20

McElhanon v. Hing,
    151 Ariz. 403, 728 P.2d 273 (1986) ............................ 80 n.30

Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervy's
Holdings, LLC),
    426 B.R. 488 (Bankr. D. Del. 2010).......................... 20 n.15

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 12 of 122

Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Services, Inc.),
    384 B.R. 66 (Bankr. D. Del. 2008)............................................. 81

Miller v. Schuman (In re Schuman),
    81 B.R. 583 (9th Cir. BAP 1987) ................................................ 58

Miller Avenue Professional and Promotion Services, Inc. v. Brady (In re Enter. Acquisition Partners, Inc.),
    319 B.R. 626 (Bankr. 9th Cir. 2004) .......................................... 57, 58

Moddha Interactive, Inc. v. Philips Electronics North America Corp.,
    92 F. Supp. 3d. 982 (D. Haw. 2015)........................................... 19, 93

Molokai Services Inc. v. Hodgins,
    No. CAAP-15-0000464, 2018 WL 1083050
    (Haw. Ct. App. Feb. 28, 2018) ................................................. 84

Montgomery v. eTreppid Technologies, LLC),
    548 F. Supp. 2d 117 (D. Nev. 2008) .......................................... 69

Moore v. Kayport Package Exp., Inc.,
    885 F.2d 531 (1989) ............................................................. 24, 26, 60

Nat'l Org. for Women v. Scheidler,
    510 U.S. 249, 114 S.Ct. 798 (1994) .......................................... 22

Navarro v. Block,
    250 F. 3d 729 (9th Cir. 2001) .................................................. 19

Neilson v. Union Bank of California, N.A.,
    290 F.Supp.2d 1101 (C.D. Cal. 2003)........................................ 84, 85

NetJets Aviation, Inc. v. LHC Communications, LLC,
    537 F.3d 168 (2nd Cir. 2008)................................................... 71

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 13 of 122

Nisselson v. Ford Motor Company (In re Monahan Ford Corp. of Flushing),
    340 B.R. 1 (Bankr. E.D.N.Y. 2006) ............................................ 37

Official Comm. of Unsecured Creditors of Fedders North America, Inc. v. Goldman Sachs Credit Partners (In re Fedders North America, Inc.),
    405 B.R. 527 (Bankr.D.Del.2009)............................................... 25

The Official Committee of Unsecured Creditors of High Strength Steel, Inc. ex rel. High Strength Steel v. Lozinski (In re High Strength Steel, Inc.),
    269 B.R. 560 (Bankr. D. Del 2001)............................................ 68, 74, 75

Orr v. Kinderhill Corp.,
    991 F.2d 31 (2nd Cir. 1993)........................................................... 34

Paloian ex rel. Debtor's Estate v. Greenfield (In re Rest. Dev. Group, Inc.),
    397 B.R. 891 (Bankr. N.D. Ill. 2008) ........................................ 80-81, 80 n.30

Porter v. Hu,
    116 Haw. 42, 169 P.3d 994 (Haw. App. 2007) ......................... 91, 91-92 n.31

Puri v. Khalsa,
    674 Fed. Appx. 679 (9th Cir. 2017) .......................................... 29

Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.,
    91 Hawaii 224, 982 P.2d 853 n. 28 (1999)................................. 82

In re Roco Corp.,
    701 F.2d 978 (1st Cir. 1983) ..................................................... 24

Rosen v. Gemini Title & Escrow (In re Hoang),
    449 B.R. 850 (Bankr. D. Md. 2011)........................................... 79

Santana v. Holiday Inns, Inc.,
    686 F.2d, 736 (9th Cir. 1982) ................................................... 95

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 14 of 122

Scarver v. Patel (In re Haven Trust Bancorp, Inc.),
    461 B.R. 910 (Bankr. N.D. GA. 2011)........................................ 33, 44, 46

Schlossberg v. Abell (In re Abell),
    549 B.R. at 665 (Bankr. D. Md. 2016)........................................ 78

Schmidt v. Fidelity National Title Insurance Co.,
    Civ. No. 07-00356 HG-LEK, 2009 WL 10676787, at *9
    (D. Haw. Sept. 30, 2009)............................................................. 78

Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's
Furniture),
    175 B.R. 560 (Bankr.E.D.Pa.1994)............................................ 25

Silverman v. Meister Seelig & Fein (In re Agape World, Inc.),
    467 B.R. 556 (Bankr. E.D.N..Y 2012)........................................ 25

Sky Cable, LLC v. DIRECT TV,
    886 F. 3d 375 (4th Cir. 2018)........................................ 89

Smith v. Arthur Anderson LLP,
    175 F. Supp. 2d 1180 (D. Ariz. 2001),
    affirmed, 421 F.3d 989 (9th Cir. 2005)........................................ 25

Spring Real Estate, LLC v. Echo/RT Holdings, LLC,
    C.A. No. 7994-VCN, C.A. No. 7994-VCN,
    2016 WL 769586 (Del. Ch. Feb. 18, 2016)................................ 90

Supermail Cargo, Inc. v. United States,
    68 F.3d 1204 (9th Cir. 1995)........................................ 93

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007)........................................ 20

Television Events & Mktg., Inc. v. AMCON Distributing Co.,
    484 F. Supp. 2d 1124 (D. Haw. 2006)........................................ 95

Trustee for the DBSI Estate Litigation Trust v. AFA Financial
Group (In re DBSI, Inc.),
     477 B.R. 504 (Bankr. D. Del. 2012)............................................ 25

United States v. Bestfoods,
     524 U.S. 51 (1998)....................................................................... 71

United States v. United Healthcare Ins. Co.,
     848 F.3d 1161 (9th Cir. 2016) ..................................................... 61

U.S. Bank, N.A. v. The Village at Lakeridge, LLC (In re
Village at Lakeridge, LLC),
     814 F.3d 993 (9th Cir. 2006) ....................................................... 57

In re USACafes, L.P. Litigation,
     600 A.2d 43 (Del. Ch. 1991) ....................................................... 67

Valvanis v. Milgroom,                                                         24, 28, 29,
     529 F.Supp. 2d 1190 (D. Haw. 2007).........................................  31, 33

Valvanis v. Migroom,
     Civ. No. 06-00144 JMS-KSC, 2009 WL 1561571
     (June 1, 2009) .............................................................................. 30-31

Woll v. Tandem Computers Inc.,
     818 F.2d 1433 (9th Cir. 1987) ..................................................... 29

## STATUTES

### Federal

28 U.S.C. §3302.............................................................................. 10 n.8

### Bankruptcy Code

11 U.S.C. §101................................................................................ 57

11 U.S.C. §101(31) ........................................................................ 57, 58

11 U.S.C. § 303(h)(1) .................................................................... 46 n.18

11 U.S.C. § 541 ............................................................................ 81

11 U.S.C. § 544 ............................................................................ 36, 80

11 U.S.C. § 544(b) ....................................................................... 29, 93

11 U.S.C. § 548 ............................................................................ 24, 36

11 U.S.C. § 548(a)(1)(A) ............................................................. 36

11 U.S.C. § 548(a)(1)(B) ............................................................. 44

11 U.S.C. § 550 ............................................................................ 80

Hawaii Revised Statutes

Haw. Rev. Stat. § 423-103(b)(2) ................................................. 65 n.26

Haw. Rev. Stat. § 423-103(b)(3) ................................................. 65 n.26

Haw. Rev. Stat. § 428 .................................................................. 64

Haw. Rev. Stat. § 428-103(a) ...................................................... 65 n.26

Haw. Rev. Stat. § 428-409 ........................................................... 72

Haw. Rev. Stat. § 428-409(b) ...................................................... 73

Haw. Rev. Stat. § 428-409(b)(1) ................................................. 68,
68 n.28

Haw. Rev. Stat. § 428-409(c) ...................................................... 73

Haw. Rev. Stat. § 651C-1 ............................................................ 54, 57

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed   03/19/19   Page 17 of 122

Haw. Rev. Stat. § 651C-2(a)..................................................... 10, 10 n.8, 45, 50

Haw. Rev. Stat. § 651C-2(b) .................................................... 45

Haw. Rev. Stat. § 651C-4(a)..................................................... 33

Haw. Rev. Stat. § 651C-4(a)(1).................................................. 26, 28, 29, 30

Haw. Rev. Stat. § 651C-4(a)(2).................................................. 26, 32, 33, 34

Haw. Rev. Stat. § 651C-4(b)(1).................................................. 37

Haw. Rev. Stat. § 651C-5........................................................ 32

Haw. Rev. Stat. § 651C-5(a)..................................................... 26, 33, 34

Haw. Rev. Stat. § 651C-10....................................................... 32

**RULES**

Federal Rules of Civil Procedure

Fed. R. Civ. P. 8................................................................. 18, 22, 23, 34

Fed. R. Civ. P. 8(a) ............................................................ 22

Fed. R. Civ. P. 8(a)(2) ......................................................... 22

Fed. R. Civ. P. 8(d)(2) ......................................................... 91

Fed. R. Civ. P. 9(b)............................................................. 18, 24, 25, 26, 28, 29, 30, 32, 33, 34

Fed. R. Civ. P. 12(b)(6) ..................................................... 19, 20

Fed. R. Civ. P. 15 ............................................................. 94

Fed. R. Civ. P. 15(a) ........................................................ 94, 96

Fed. R. Civ. P. 26(f) .......................................................... 18

## **OTHER AUTHORITIES**

4A. Scott & W. Fratcher, The Law of Trusts § 326.3 (4th ed. 1989) ......................................................... 68

5 Collier on Bankruptcy § 548.03[6] ....................................... 34

15A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §7369 (rev. vol. 2009) ......................... 70

15 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d. ed. 2018) ................................................... 95

Douglas G. Baird, Element of Bankruptcy (4th ed. 2006) ........................ 37

Glenn, Fraudulent Conveyances and Preferences, rev. ed., vol. 1, § 270 ................................................................... 31

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 19 of 122

**PLAINTIFF'S OPPOSITION TO**
**MOTION TO DISMISS, FILED ON FEBRUARY 15, 2019**

Plaintiff DANE S. FIELD (the "Plaintiff" or "Trustee"), Chapter 7

trustee of the bankruptcy estate of Rolloffs Hawaii, LLC (the "Debtor"), by and

through his attorneys of record, hereby files this memorandum in opposition to the

Motion to Dismiss, filed on February 15, 2019 by the following Defendants:

(i) TrashMasters, LLC ("TrashMasters"); (ii) Corridor Capital LLC ("Corridor

Capital"); (iii) Corridor Capital Advisors, LLC ("Corridor Advisors");

(iv) Corridor TrashMasters, L.P. ("Corridor TM"); (v) SPB Management, LLC

("SPB Management"); (vi) SPB Waste, LLC ("SPB Waste"); (vii) SPB Capital

GP, LLC ("SPB Capital GP"); (viii) SPB Capital Partners, L.P. ("SPB Capital

Partners"); (ix) SPB Partners, LLC ("SPB Partners"); (x) Craig Enenstein ("Mr.

Enenstein"); (xi) L. Geoffrey Greulich ("Mr. Greulich"); (xii) Edward A. Monnier

("Mr. Monnier"); (xiii) Jessamyn Davis ("Ms. Davis"); (xiv) Ari D. Bass ("Mr.

Bass"); (xv) Scott R. Bulloch ("Mr. Bulloch"); and (xvi) Kenneth M. Pressberg

("Mr. Pressberg") (collectively the "Syndicator Defendants")[1], the Joinder to the

_____

[1]    Collectively, Corridor Capital, Corridor Advisors, and Corridor TM are
referred to herein as the "Corridor Entities".

Collectively, SPB Management, SPB Waste, SPB Capital GP, SPB Capital
Partners, and SPB Partners are referred to herein as the "SPB Entities".

Collectively, Mr. Enenstein, Mr. Greulich, Mr. Monnier, and Ms. Davis are
referred to herein as the "Corridor Officer and Directors".

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 20 of 122

Motion of Defendant Rolloffs Hawaii, Inc., filed on February 22, 2019 [Dkt. #25], and Defendant Kristian Gourlay and The KNG Group, LLC's Joinder, filed on March 4, 2019 [Dkt. #29].

Capitalized terms used and not defined herein have the same meaning as that assigned in the Complaint, filed on December 7, 2018 [Dkt #1].

## I. INTRODUCTION

This is a case in which the private equity Syndicator Defendants, who had no experience in the refuse business, desire to escape liability for refuse companies they formed and controlled, undercapitalized at inception, took money from, and ran to the ground. The Syndicator Defendants knowingly and intentionally overstated the value of the Debtor's assets, understated the Debtor's debts, encumbered the Debtor's assets for the benefit of TrashMasters and others, used the Debtor's funds to pay the debts of TrashMasters, incurred additional loan obligations, interest, fees and debt for which the Debtor and TrashMasters, were unable to repay, and would never be able to repay, and caused the Debtor to be undercapitalized and insolvent from inception. Moreover, the Syndicator Officers

---

Collectively, Mr. Bass, Mr. Bulloch, and Mr. Pressberg are referred to herein as the "SPB Officers and Directors".

Collectively, the Corridor Officers and Directors and the SPB Officers and Directors are sometimes referred to herein as the "Syndicator Officers and Directors".

and Directors specifically intended to and did further their own interests, to assure themselves a return out of operating revenue of the Debtor ahead of creditors, and did so irrespective of the financial condition of the Debtor or TrashMasters.

In their Motion, the Syndicator Defendants cast blame on the City & County of Honolulu ("C&C"), which was a creditor of the Debtor from the Debtor's inception. Motion at 1-2. The change in payment terms complained of, however, not only took effect on June 20, 2014 (Complaint ¶ 191), two years before the Debtor filed its bankruptcy petition. It also did not change the fact that the Debtor accrued liability for tipping fees to the C&C from inception, the Debtor was never able to pay the full amount owed to the C&C, and the C&C was therefore a trade creditor of the Debtor from day one. The C&C, which are the taxpayers of Honolulu, ultimately financed the Syndicator Defendant's fraudulent scheme to the tune of $3.1M, as well as the payment of $1,849,131 in Advisory Fees to SPB Management and Corridor Capital.

Now, in their Motion to Dismiss, the Syndicator Defendants contend their conduct is excusable because they contend the Debtor was solvent at all relevant times according to purportedly audited financial statements. The Trustee disputes the financial statements and demonstrates their unreliability. In any event, the financial statements are not properly before the Court.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 22 of 122

## II. BACKGROUND

As set forth in the Complaint, the Syndicator Defendants described as Officers and Directors in the Complaint consist of individuals associated with two separate groups of private equity companies, the Corridor Entities and the SPB Entities. Each of the Corridor Entities named as defendants were parent or sister companies of Corridor TM. Similarly, each of the SPB Entities named as defendants were parent or sister companies of SPB Waste. The Syndicator Officers and Directors formed these companies for their respective private equity firm investment purposes, as well as their particular investment in TrashMasters. In a similar fashion, each of the individual Corridor Officers and Directors was a principal and/or director of one or more Corridor Entities, and each of the individual SPB Officers and Directors was a principal of one or more SPB Entities. See Complaint ¶¶ 14-20. Certain of the Corridor Officers and Directors and certain of the SPB Officers and Directors served as officers and/or directors of TrashMasters and/or the Debtor. Mr. Gourlay was a board member of TrashMasters. An organization chart provided as a demonstrative exhibit, presenting those relationships, is attached as Exhibit "1", see also footnote 5.

### A. The Syndicator Defendants Controlled TrashMasters and the Debtor

The SPB Entities and the Corridor Entities, through the individually named Corridor Officers and Directors and SPB Officers and Directors managed

and controlled both TrashMasters and the Debtor. They controlled TrashMasters and the Debtor via Corridor TM, SPB Waste, the TrashMasters' Operating Agreement[2], the Advisory Agreement,[3] as well as certain of the Syndicator Officers and Directors holding officer and/or director positions in both TrashMasters and the Debtor. The Syndicator Officers and Directors initiated, participated in, and were directly responsible for, all acquisitions, all loans made, all financial statements, audits, and tax analysis of the Debtor and TrashMasters, the hiring, firing, and compensation of the Debtor's officers, and the general management of the Debtor.[4]

---

[2] Pursuant to the terms of that certain TrashMasters, LLC Fourth Amended & Restated Limited Liability Company Agreement, effective as of February 1, 2011, ("TrashMasters Operating Agreement") certain actions require the approval of Members holding Class A Preferred Units. Exhibit "2" § 4.02. The only members holding Class A Preferred Units are Corridor TM and SPB Waste. Exhibit "2", Schedule A. (Except for Schedule A, the TrashMasters Operating Agreement in effect in 2009 (and included in Exhibit "2") was substantially the same as the 2011 version.)

[3] The Advisory Agreement provides with respect to services as follows:

> Corridor Capital and SPB shall collectively perform or cause to be performed such services for the Companies and their respective subsidiaries, as agreed by Corridor Capital, SPB and **TrashMasters'** board of directors, which may, but need not include …..

Exhibit "J" to Declaration of Ari Bass in Support of Motion to Dismiss Complaint, filed on February 15, 2019 ("Bass 2/15/19 Decl.")[Dkt No. 21] at 1 ¶ 3 (emphasis added).

[4] For example, Mr. Bass and Mr. Enenstein directly negotiated and were responsible for all aspects of the Asset Purchase Agreements with ROHI, Maricopa, and KNG, including due diligence, the purchase terms and conditions

**B.    The Syndicator Defendants' Fraudulent Scheme**

To facilitate their fraudulent scheme, the Syndicator Officers and Directors formed a conglomerate of companies to advance their own interests. They formed TrashMasters as a parent company, and the Debtor as its wholly-owned subsidiary.  They formed Corridor TM and SPB Waste as special purpose investment companies in which they invested their investors' money.  They formed Corridor Capital and SPB Management as special purpose entities for their own benefit to furnish "advisory" services to TrashMasters, the Debtor and TMAZ and essentially manage and control their investors' investments in both Corridor TM and SPB Waste, as well as in TrashMasters and the Debtor.[5]

---

and financing.  They directly participated in, negotiated and, as the agents for the majority interest holders in TrashMasters, required their approval of the financing agreements with Union Bank, Fifth Third, ASB and Convergent, including the narratives, presentations, and financial statements and tax documents submitted to these lenders.   They also micro-managed the Debtor, requiring the Debtor's officers to report to them directly and from time to time on a daily and weekly basis, instructing the officers when they could draw on the line of credit and pay creditors, when they could buy vehicles, imposed spending restrictions, and directed them on accounting matters, including how they should book expenses. The Trustee has outstanding requests for production of documents served upon the Syndicator Defendants, which seek additional information regarding, among other things, their individual roles and the corporate relationship between and among other Syndicator Defendants.  Responses to those requests, pursuant to a stipulated order have been continued until the pleadings in this case are "final".  See Dkt. No. 18.

[5]    SPB Capital, GP is the sole general partner of SPB Capital Partners.  See Declaration of Ari Bass, filed on July 6, 2018, in Case No. 16-01294 [Dkt #431] ("Bass 7/6/18 Decl.") ¶ 1, a copy of which is attached as Exhibit "3".  SPB Capital

Then, in a series of leveraged buyouts the Syndicator Officers and Directors had <u>TrashMasters</u> (not the Debtor) acquire the assets of other companies at purchase prices that far exceeded the appraised value of the assets, and with loans serviced by the <u>Debtor</u> and secured with the assets TrashMasters acquired and contributed as a capital contribution to the Debtor.[6] The contributions, however, were *equity* contributions credited to TrashMasters. Although TrashMasters was liable to ROHI and the Maricopa sellers for the assets it

Partners is the sole member of SPB Waste. Bass 7/6/18 Decl. ¶ 1. It was through SPB Waste that SPB Capital Partners made its equity investment into TrashMasters. Bass 7/6/18 Decl. ¶ 1. **Mr. Bass** is a principal and chief executive officer of SPB Partners, a principal of SPB Capital, GP, and SBP Management, and a manager of SPB Waste, SPB Partners, and SPB Management. Bass Decl. ¶ 1. SPB Partners is a shell company. Bass Decl. ¶ 1. **Mr. Pressberg** is a managing member of SPB Capital GP, and a manager of SPB Partners, SPB Waste and SPB Management. Mr. Bass was also a director of TrashMasters.

Corridor Advisors is the general partner of Corridor TM. See Declaration of Craig Enenstein, filed on July 6, 2018, in Case No. 16-01294 [Dkt #430] ("Enenstein 7/6/18 Decl.) ¶1, a copy of which is attached as <u>Exhibit "4"</u>. **Mr. Enenstein** was a board member of TrashMasters and an officer and director of TrashMasters and the Debtor, and is (i) the chief executive officer and a managing member of Corridor Advisors, and (ii) the chief executive officer and managing partner of Corridor Capital. **Mr. Greulich** was a board member of TrashMasters and the managing director of operations of Corridor Capital. **Mr. Monnier** was a board member of TrashMasters, and officer of TrashMasters and the Debtor, and the managing director of Corridor Capital. **Ms. Davis** was a board member of TrashMasters, an officer of the Debtor, and chief financial officer of Corridor Capital. Certain of the officers and directors of the Corridor Entities may have served at different times and additional discovery is required to sort through and confirm their capacities and dates of service.

[6] See <u>Boyer v. Crown Stock Distribution, Inc.</u>, 587 F.3d 787, 793 (7th Cir. 2009) ("An LBO can take the form of an asset acquisition[.]") (citations omitted).

acquired, TrashMasters never paid for those assets. Instead, the Syndicator Officers and Directors caused the Debtor (i) to become a borrower (together with TMAZ) on a credit facility from Union Bank and (ii) to service the debt. See Exhibit "5". Thus, the Debtor did not, as the Syndicator Defendants advance, purchase the assets from ROHI and Maricopa, then take out a loan from Union Bank to pay for those assets. Motion at 46-47.

The Syndicator Defendants then simultaneously used inflated asset valuations and understated debt to secure additional loans from other lenders continuing to saddle the Debtor with debt for which TrashMasters was liable and to pay itself (through Corridor Capital and SPB Management) Advisory Fees. Again, because TrashMasters had no operations and was a shell company, it had no independent ability to pay any of its creditors and was insolvent from inception. (It was insolvent from inception because it incurred debt to among others, ROHI, KNG, Corridor Capital, SPB Management, Mr. Colbeck, and Lincoln International, and had no operations or income to pay for it.)

At no time did the Syndicator Defendants themselves "lose" money. They lost their private equity investors' investments and paid themselves $1,849,131.00 in Advisory Fees. They also spent the Debtor's money on professionals they hired on behalf of TrashMasters, including Brian Colbeck of Colbeck Consulting (and Lincoln International), to "ready" the Debtor for sale for

the benefit of the Syndicator Defendants (and KNG and ROHI as members of TrashMasters).

They blame the owners[7] from whom they initially acquired the assets and who formerly ran the day-to-day operations of the Debtor, as well as the C&C for the Debtor's insolvency, when it was their own private equity strategy of flipping businesses and protecting themselves from creditors that caused the Debtor's insolvency and failure. Buying and selling companies is the private equity strategy and all efforts toward its investment matters benefitted the Syndicator Defendants to the detriment of the Debtor's creditors. The Syndicator Defendants intentionally undercapitalized the Debtor and TrashMasters, not wanting to invest more than they felt it required, and focused their efforts on preparing the Debtor for sale attempting to get ASB and C&C to make concessions to prolong the Debtor's business on "life support". The Debtor indeed continued

---

[7]    Doug Asay Sr. ("Mr. Asay, Sr.") and Doug Asay, Jr. ("Mr. Asay, Jr.") along with others owned and managed the Marciopa companies, the assets of which were acquired by TrashMasters in 2009, and contributed as equity to TrashMasters Arizona. Exhibit "6" and "Exhibit "I" to Bass 2/15/19 Decl. Robert and Linda Henriques owned and managed Rolloffs Hawaii, Inc. the assets of which were acquired by TrashMasters and contributed as equity to the Debtor. "Exhibit "H" to Bass 2/15/19 Decl. and "Exhibit "I" to Bass 2/15/19 Decl. Kristian Gourlay ("Mr. Gourlay") and another third party owned KNG, the assets of which were acquired by TrashMasters in 2010, and contributed as equity to the Debtor. Exhibits "7" and "L" to Bass 2/15/19 Decl. Mr. Asay, Sr. and Mr. Asay, Jr. as well as Ms. Henriques and Mr. Gourlay, under the management of the Syndicator Defendants continued to run the day-to-day operations and reported to management.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 28 of 122

its operations longer than it should have, in part, because it did not pay the C&C the $3.1M tipping fees it had accrued, and the Syndicator Defendants created and used audited financial statements that significantly overvalued the Debtor's assets and understated its debt. These actions hindered, delayed, and defrauded the Debtor's creditors.

### C. The Debtor was Insolvent at Inception

The Debtor was insolvent at inception. Haw. Rev. Stat. §651C-2(a) provides that a "debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."[8] Since the time of the Debtor's inception on May 1, 2009, its debts have been greater than all of its assets, at a fair valuation, and thus the Debtor has been insolvent all along.[9]

To finance TrashMasters' acquisition of the ROHI and Maricopa assets, the Syndicator Defendants caused the Debtor and TMAZ to be the borrowers on (i) a term loan in the amount of $4,500,000 from Union Bank, and

---

[8]   The definition of insolvency in Haw. Rev. Stat. § 651C-2(a) is similar to that which is in the Federal Debt Collection Procedure Act. See 28 U.S.C. §3302 ("… a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.").

[9]   As shall be explained in further detail below, insolvency is a question of fact, which cannot be determined on a motion to dismiss. However, because the Syndicator Defendants alleged that the Debtor was solvent, the Trustee notes that the documents upon which the Syndicator Defendants rely are inaccurate to prove the Debtor's solvency, and the Debtor was in fact insolvent since its inception.

(ii) a revolving credit facility in an amount not to exceed $500,000.  See Exhibit "5".  According to the terms of the Union Bank Credit Agreement, each borrower was jointly and severally liable for the payment of all amounts due thereunder.  In other words, the Debtor could be held liable for the entire amount of the debt.

In addition, on May 1, 2009, TrashMasters executed a note for $1,000,000 (the "ROHI Note") to additionally finance its purchase of the ROHI assets.  See Exhibit "8".  Although the ROHI Note is not signed by the Debtor, it is evident that the Syndicator Defendants intended all along for the Debtor to pay the ROHI Note.  Among other things, the Syndicator Defendants used the Debtor's funds to pay amounts owed under the ROHI Note.

Accordingly, at the time of its inception, the Debtor was already liable for up to $5 Million to Union Bank, plus an additional $1,000,000 to ROHI.  This debt exceeded the value of the Debtor's assets which, as of May 1, 2009, were essentially the property and equipment of the Debtor.  Although the Syndicator Defendants attach a summary of the Consolidated Financial Statements "as of December 31, 2009" and thereafter, in an attempt to show the Debtor was solvent, these documents do not provide an accurate picture of the value of the Debtor's assets as of and after May 1, 2009.

Attached hereto as Exhibit "9" is a Forecasted Balance Sheet of TrashMasters dated April 27, 2009, essentially the date of the Debtor's formation,

which shows an estimated value of the property and equipment of Trashmasters, at the end of the 2nd quarter of "year 1" (i.e., June 30, 2009) of $2,873,565, net of accumulated depreciation.  (The forecast extends for a period of years, and the figures do not materially improve.  Further, a portion of these assets were likely allocable to TMAZ, meaning the actual value of the Debtor's assets was probably even lower.)

The Trustee intends to submit further evidence of the Debtor's insolvency as of the inception date at the appropriate time in this case, but it is apparent from this evidence alone that the Debtor was insolvent since its inception. Accordingly, although the Syndicator Defendants may argue that the summary of the Consolidated Balance Sheets which they submitted in support of the Motion purport to show the Debtor was solvent, inaccuracies in their submissions, and inconsistencies with other accountings, establish a question of fact as to the value of the Debtor's assets at inception, which cannot be decided on a motion to dismiss.

**D. The Syndicator Defendants Received $1,849,131 in Advisory Fees, for Which the Debtor Received Little or No Value, and Were Accrued Because the Debtor was Unable to Pay Them on a Timely Basis, and were Eventually Paid from the Proceeds of a Hard Money Loan.**

The Advisory Agreement was between TrashMasters, the Debtor, and TMAZ, on the one hand, and Corridor Capital and SPB Management on the other

hand. The Advisory Agreement was entered into at the Debtor's inception on May 1, 2009, grouped all services provided to the three companies (TrashMasters, the Debtor, and TMAZ,) on the one hand, and all the services provided by both SPB Management and Corridor Capital, on the other hand.[10] It did not distinguish the services furnished to the Debtor alone. Similarly, the Advisory Fees were not segregated and allocated to each company. Instead, it was one set figure based on a percentage of EBITDA across all companies and permitted SPB Management and Corridor Capital to receive Advisory Fees even if the companies were insolvent. The Syndicator Officers and Directors then made the Debtor pay for all of the Advisory Fees either directly from the Debtor's cash flow, or from proceeds of loans it caused the Debtor to incur and service. In particular, the Syndicator Defendants caused the Debtor to be liable on the Union Bank, ASB, and Convergent loans, even though the loan proceeds were used to pay TrashMasters' debt.

The actual payments made in connection with the Advisory Agreement were also suspect as they were pre-paid and based on an EBITDA calculation that permitted Corridor Capital and SPB Management to be paid

---

[10] For example, TrashMasters, and not the Debtor, purchased the ROHI, Maricopa and KNG assets. There was no accounting for the services furnished each entity, yet the Debtor paid for all advisory fees.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 32 of 122

Advisory Fees even when the Debtor was insolvent, which indeed happened. Further, the Debtor had its own CEO, CFO and Director of Maintenance, who reported directly to "management" known to them as "Corridor" and "SPB" and their principles. The board of directors of TrashMasters (who were compensated and reimbursed their travel expenses to attend board meetings) consisted of Mr. Enenstein, Mr. Gruelich, Mr. Monnier, and Ms. Davis, on behalf of Corridor TM, and Mr. Bass, Mr. Bulloch, and Mr. Pressberg on behalf of SPB Waste. However the Syndicator Defendants permitted Corridor Capital and SPB Management to furnish these additional "advisory services" from inception for their own investment benefit and to further their private equity firm's (Corridor Advisors and SPB Capital GP, SPB Capital Partners, and SPB Partners) objectives of buying and selling businesses, to the detriment of the Debtor and the Debtor's creditors.[11]

Moreover, the 2011 Advisory Fees (for the period May 1, 2011 to April 30, 2012) were actually accrued and only a portion ($100,000) paid in October 2011, rather than on May 1, 2011 when due. The remaining portion ($230,750) of the 2011 Advisory Fees were accrued and paid out late in June 2012

---

[11] The Advisory Agreement was made for the benefit of Corridor Capital, SPB Management, and perhaps the members of TrashMasters, and specifically SPB Waste and Corridor TM. These advisory services furthered the Syndicator Defendants' schedule of paying themselves (as insiders) first, and for investment purposes positioning the Debtor for re-sale, which is the reason they hired Lincoln International and Mr. Colbeck and caused the Debtor to pay Colbeck Consulting and Mr. Colbeck in excess of $417,869.88.

from the proceeds of a hard money loan from Convergent. The Syndicator Officers and Directors caused the Debtor to incur the Convergent hard money loan at a high 16.5% annual interest rate to pay themselves, and specifically Corridor Capital and SPB Management, $578,375 in Advisory Fees! Thus, the Advisory Fees were not as the Syndicator Defendants suggest, regularly paid in accordance with the terms of the Advisory Agreement, and Corridor Capital and SPB Management were ongoing creditors of the Debtor, the debts for which the Debtor and TrashMasters were, in fact, not generally paying as they became due. Motion at 59.

### E. The Colbeck Consulting Agreement was Between TrashMasters and Colbeck Consulting.

To further their fraudulent scheme, and their own interests, the Syndicator Defendants, shortly after they engaged Lincoln International to sell TrashMasters and Rolloffs, caused TrashMasters to engage Brian Colbeck ("Mr. Colbeck") to act as the interim chief operating officer of TrashMasters with primary responsibility for TrashMasters' "financial performance and driving the process of preparing [TrashMasters] for sale which is expected within 18 months."[12] See Complaint ¶¶ 167-68 and Exhibit "B" to Declaration of Kenneth

---

[12] The Colbeck preference action in Adv. P. No. 18-90034 contains a typographical error in paragraph 17 of the complaint when it states that "Pursuant to the terms of the Consulting Agreement, Colbeck … was the Debtor's interim

H. Brown, filed on February 15, 2019 ("Brown Decl.") (§§ 1.1 and 1.3 of Exhibit 1 thereto).  The Debtor was not a party to, and therefore was not liable on account of TrashMasters' Consulting Agreement with Mr. Colbeck.  The Debtor, however, made a substantial number of payments to Colbeck Consulting for Mr. Colbeck's services under the Consulting Agreement.  It is these payments that the Trustee seeks to avoid in this proceeding, and in the separate proceeding (which is limited to transfers made within 90 days of the bankruptcy petition).

Thus far, the Trustee has identified at least $417,869.88 in payments made to Colbeck Consulting, which are set forth in Exhibit "10".  The Trustee intends to conduct discovery upon Mr. Colbeck and others to trace the additional payments the Debtor made to Mr. Colbeck and/or Colbeck Consulting.

---

Chief Executive Officer, primarily responsible for the Debtor's financial performance and driving the process of preparing the Debtor for sale."  The Consulting Agreement defines TrashMasters as the subject "Company" under the agreement, and states in Section 1.3 as follows:

> Consultant agrees to act as the Company's [TrashMasters'] interim Chief Operating Officer, primarily responsible for the Company's [TrashMasters'] performance and driving the process of preparing the Company [TrashMasters] for sale which is expected within 18 months of the Effective Date."

See Exhibit "B" to Brown Decl. (§ 1.3 of Exhibit "1" thereto) The Trustee will amend the Complaint in the adversary proceeding to correct this typographical error.

**F.     The Trustee Initiated Early Discovery in this Case, and on February 4, 2019, Served Requests for Production of Documents, on the Syndicator Defendants, However Discovery by Stipulated Order is Currently Stayed in the Case.**

The Syndicator Defendants maintain they have produced virtually all of the documents and data in their possession relating to the Debtor, which by their count is over 160,000 documents accumulated over 6-7 years, or approximately 22,857-26,666 documents a year.[13] The volume is commensurate with the level of control and management the Syndicator Defendants exercised over the Debtor and TrashMasters, as well as the Syndicator Defendants' first-hand knowledge of the specific fraudulent conduct in which they engaged, and of which, in the Motion, they claim they are unware, and which give rise to the claims in the Complaint. They have, as they admit in the Motion, also refused to produce documents (including emails) created post-petition (even when they have asserted no claim of

---

[13]     In truth, The Syndicator Defendants did not produce their documents, which were the subject of the Trustee's BR 2004 subpoenas upon them, until forced to do so by the court.  See Dkt #468.  Even then, the Syndicator Defendants did not meet the Court imposed October 5, 2018 deadline to do so. See Dkt # 468 and Exhibit "11".  Further, curiously, in paragraph 15 of Mr. Bass' Declaration, filed on July 6, 2018 [Dkt. #431] in Case No. 16-01294, Mr. Bass reports that responding to the Trustee's BR 2004 Request will require his review of only 4,335 documents.  Similarly, in paragraph 14 of Mr. Enenstein's Declaration, filed on July 6, 2018 [Dkt. #430] in Case No. 16-0194, Mr. Enenstein reports that responding to the Trustee's BR 2004 Request will require his review of only 16,275.  Together this amounts to approximately 20,600 documents, which is significantly less than the 160,000 documents reported to the Court.  A vast majority of the documents the Syndicator Defendants produced, and in particular the emails, were duplicates.

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 36 of 122

privilege), refused to participate in a Rule 26(f) conference, and have refused to agree with Trustee's counsel to conduct early discovery in this case. The 16 Requests for Production of Documents the Trustee served upon each of the Syndicator Defendants on February 4, 2019 requests, among other things, documents relating to the Debtor's fixed assets, and the relationship among the Syndicator Defendants role of the officers and directors, and the work they allegedly furnished to the Debtor.[14]

## III.   LEGAL ARGUMENT

The Syndicator Defendants in their Motion request dismissal of all Counts in the Complaint. In doing so, the Syndicator Defendants are improperly seeking to have the Trustee "prove" his claims, rather than merely set forth a "short plain statement" of plausible claims for which the Trustee is entitled to relief, which is all that the Trustee is required to do under Fed. R. Civ. P. 8. Similarly, as to the intentional fraud claims, the Trustee need only plead the claims with particularity under the relaxed Rule 9(b) standard afforded Trustees. Thus, a motion to dismiss is not the proper vehicle to "prove" claims and the Trustee is entitled to conduct discovery in due course (including depositions) to prove the estate's claims and damages at trial.

---

[14]   Two "exemplars" of the Requests for Production of Documents served upon the Syndicator Defendants are attached as Exhibits "12" and "13".

In support of a dismissal of all of the Trustee's claims, the Syndicator Defendants generally contend in the Motion that the fraudulent conveyance and transfer claims fail because (i) the Debtor paid antecedent debt, (ii) the Trustee is unable to allege insolvency because the Debtor's audited financial statements support solvency, other lenders furnished credit facilities to the Debtor, and the Debtor was paying its creditors, (iii) the transfers are not sufficiently detailed, and (iv) the Complaint improperly utilizes group pleading. On the presumed assumption that the fraudulent transfer and conveyance claims fail, the Syndicator Defendants then contend that the remaining breach of fiduciary duties, conspiracy, aiding and abetting, alter ego and unjust enrichment claims also fail.

As is discussed below, these contentions are without merit, and do not support dismissal of the Complaint.

### A. Fed. R. Civ. P. 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a claim.

"A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Moddha Interactive, Inc. v. Philips Electronics North America Corp., 92 F. Supp. 3d 982, 988 (D. Haw. 2015) (citing Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001)). "'In deciding such a motion, all material allegations of the

complaint are accepted as true, as well as all reasonable inferences to be drawn from them."' Id.; Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) (For purposes of ruling on a Fed. R. Civ. P. 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.")

"[A] court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

However, to the extent any facts in documents are "subject to reasonable dispute", the Court will not take judicial notice of those facts.[15] Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001), overruled on other grounds by Galbraith v. City of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). "A fact is not

---

[15] If documents subject to reasonable dispute are considered by the Court, then the Motion would be converted to one for summary judgment and the Trustee is entitled the opportunity to conduct discovery, which is currently stayed in the case, and introduce evidence disputing and discrediting the audited financial statements and any other documents offered by the Syndicator Defendants. See Stipulated Order Respecting: (1) Hearing Date and Briefing Schedule for TrashMasters/Corridor/SPB Defendants, (2) Stay on Discovery, and (3) Trial Date, filed on February 15, 2019 [Dkt # 18]; see also Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but a court cannot take judicial notice of disputed facts contained in such public records); Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervy's Holdings, LLC), 426 B.R. 488, 496 (Bankr. D. Del. 2010) (court may take judicial notice of public records, but may not consider the truth of the information in the records).

subject to reasonable dispute if it is generally known or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Khoja, 899 F.3d at 999 (internal quotation marks omitted) (citation omitted).

The Syndicator Defendants have asked the Court to take judicial notice of the audited financial statements of the Debtor, which were attached to the Trustee's Motion to Compel Responses to the Trustee's Subpoenas for Rule 2004 Examination of TrashMasters, LLC, Corridor Capital LLC, and SPB Partners, filed on May 14, 2018 [Dkt. # 394] in the main bankruptcy case.[16]  As will be discussed in more detail in Section III.C.5. below, the audited financial statements are subject to dispute.  On their face they misstate the Debtor's net worth, and in any event are the subject of ongoing discovery.  Thus, the financial statements are not properly the subject of judicial notice and should be stricken.

In any event, dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  Id.  "Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely."  County of Santa Cruz, Cal. v. Ashcroft,

---

[16]  The financial statements were included by the Trustee as evidence of a $12M debt from TrashMasters to the Debtor in support of its motion to compel the Corridor Entities and the TrashMasters Entities to produce documents.

314 F. Supp. 2d 1000, 1005 (N.D. Cal. 2004) (citing Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997)).

"[A]t this stage of the proceeding the inquiry is not whether the plaintiff will ultimately prevail but only whether the plaintiff is entitled to offer evidence of its claims."  Claybrook v. Morris (In re Scott Acquisitions Corp.), 344 B.R. 283, 290 (Bankr. D. Del. 2006).  "'At the pleadings stage, general allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that the general allegations embrace those specific facts that are necessary to support the claims.'"  Nat'l Org. for Women v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798 (1994) (citations omitted).

### B. The Complaint Meets the Fed. R. Civ. P. 8 "Short and Plain Statement of the Claim" Pleading Standard.

The Trustee has also met the pleading standard for a Complaint as set forth in Fed. R. Civ. P 8(a).

Fed. R. Civ. P. 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  The U.S. Supreme Court has held that Fed. R. Civ. P. 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

U.S. Bankruptcy Court - Hawaii   #18-90035  Dkt # 30   Filed  03/19/19   Page 41 of 122

Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

The instant Complaint meets the Fed. R. Civ. P. 8 standard of a short plain statement showing that the Trustee is entitled to relief. The Complaint identifies each of the defendants, furnishing their general role and relation to other defendants. Complaint ¶¶ 14-30, 36-38, and 60-66. It also sets forth in detail, the formation of the Debtor, TrashMasters, and the fraudulent scheme in which the Syndicator Defendants engaged in, including the TrashMasters' aquisition debt, the loans it caused the Debtor to incur and service for TrashMasters' benefit, and the advisory fees it paid Corridor Capital and SPB Management. Complaint ¶¶ 39-40, 67-85, 86-114, 115-171. The Complaint further generally alleges the Debtors and TrashMasters' insolvency from inception and inability to pay their debts as they became due. Complaint ¶¶ 183-197 All of these allegations support and give rise to the claims made in the Complaint. Thus, all Counts in the Complaint meet the Rule 8 standard.

### C. The Trustee Has Sufficiently Pled With Particularity Its Intentional Fraudulent Conveyance and Transfer Claims In the Complaint.

The Trustee has also sufficiently pled with particularly its "intentional" fraudulent conveyance and transfer claims in the Complaint.

115347_9.docx

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 42 of 122

"A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir.1989)

A court may make a finding of fraudulent intent under 11 U.S.C. § 548 (which is similar to the Hawaii Uniform Fraudulent Transfer Act) on the basis of circumstantial evidence as direct proof will be rarely available. In re Agricultural Research and Technology Group, Inc., 916 F.2d 528, 535 (1990) (quoting In re Roco Corp., 701 F.2d 978, 984 (1st Cir. 1983)). "[K]nowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent." Agricultural Research, 916 F.2d at 535 (citing In re American Properties, Inc., 14 B.R. 637, 643 (D. Kan. 1981)); see Valvanis v. Milgrom, 529 F.Supp. 2d 1190, 1198 (D. Haw. 2007) ("Plaintiffs' general averment that Millgroom transferred the property with actual intent is sufficient for Rule 9(b).") (citation omitted).

> Instances of corporate fraud may also make it difficult to attribute the particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and where possible, the roles of the individual defendants in the misrepresentations.

Moore, 885 F.2d at 540 (emphasis added) (citation omitted).

Further, other bankruptcy courts have held that "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee or a trust formed for the benefit of creditors ... is asserting the fraudulent transfer claims." Smith v. Arthur Anderson LLP, 175 F. Supp. 2d 1180, 1201 (D. Ariz. 2001), affirmed, 421 F.3d 989 (9th Cir. 2005); In re AgFeed USA, LLC, 546 B.R. 318, 328 (Bankr. D. Del. 2016) (quoting Official Comm. of Unsecured Creditors of Fedders North America, Inc. v. Goldman Sachs Credit Partners (In re Fedders North America, Inc.), 405 B.R. 527, 544 (Bankr.D.Del.2009)); see also Trustee for the DBSI Estate Litigation Trust v. AFA Financial Group (In re DBSI, Inc.), 477 B.R. 504 (Bankr. D. Del. 2012).

"This is because a trustee "inevitabl[y] lack[s] knowledge concerning acts of fraud previously committed against the debtor, a third party." AgFeed, 546 B.R. at 328, quoting Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture), 175 B.R. 560, 567–68 (Bankr.E.D.Pa.1994); see also Silverman v. Meister Seelig & Fein (In re Agape World, Inc.), 467 B.R. 556, 569 (Bankr. E.D.N..Y 2012) (where a bankruptcy trustee is the party asserting the actual fraudulent transfer claim, the Second Circuit has adopted a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge).

### 1. The Complaint adequately sets forth the fraudulent scheme of the Syndicator Defendants.

The specific fraudulent conveyances and transfers Counts alleged in the Complaint are detailed in the chart attached as Exhibit "14". (The chart also summarizes potential amendments to the Complaint, which Plaintiff seeks leave of court to amend and/or add.)

The Trustee alleges that each of these transfers constitute "intentional" fraudulent conveyances under common law and/or Haw. Rev. Stat. § 651C-4(a)(1), or in the alternative "constructive" fraudulent transfers under Haw. Rev. Stat. § 651C-4(a)(2) and 5(a). The Complaint sufficiently pleads these claims under both Rule 9(b) and the "relaxed" Rule 9(b) standard afforded Trustees.

First, the Syndicator Defendants as the "masterminds" and the perpetrators of the fraudulent scheme are well aware of the specific conduct they engaged in to give rise to the claims made in the Complaint, including the claims the Trustee seeks leave to amend and add. Their admission as to the volume of documents they have produced, a substantial portion of which includes emails they sent and received, undoubtedly evidences the level of their participation and knowledge of the circumstances constituting the intentional fraud alleged in the Complaint, as well as, their ability to prepare an adequate answer to the allegations. See Moore, 885 F.2d at 540.

Second, the Complaint includes the following allegations that detail the Syndicator Defendants' intent and conduct which hindered, delayed, and defrauded the Debtor's creditors.

> 199. Defendants, and in particular the Officers and Directors, set up and structured a variety of related companies, including shell and holding companies, to invest in and acquire the assets of ROHI, Maricopa, and KNG and to advise and/or manage said companies.
>
> 200. In doing so, the Officers and Directors intended to create a company that incurred debt, but had no revenue to pay the debt, and to insulate themselves from liability and creditors.
>
> 201. The Officers and Directors intended to further their own interests, and to assure themselves a return out of the operating revenue of the companies ahead of creditors, and did so irrespective of the Debtor's and/or TrashMasters' financial condition.
>
> 202. At the same time, the Officers and Directors undercapitalized the companies they set up, and in particular the Debtor and TrashMasters.
>
> 203. The Officers and Directors also fully leveraged the assets of the Debtor to secure, guarantee, and pay the debt obligations of TrashMasters and TrashMasters Arizona.

Complaint ¶¶ 199-203.

In addition to incorporating by reference the above allegation in each Count, each Count also details the specific debt/obligation the Debtor incurred to pay the debt of TrashMasters and others. For example, in Count I, the Union Bank loan, the Debtor's debt service of the loan, as well as the payment of

TrashMasters' debt to ROHI is detailed in paragraphs 204 and 206-08 of the Complaint. The same pattern exists for the remaining intentional fraud Counts.

Thus, the allegations in Paragraphs 199-203 of the Complaint together with the additional detail set forth in each Count meet the Fed. R. Civ. P. 9(b) standard for pleading the underlying fraudulent investment scheme with particularity for the intentional fraud counts, as well as the "relaxed" Rule 9(b) standard afforded the Trustee in this case.

>   **2.**   **The Complaint states plausible claims for intentional and constructive fraud.**

>   >   **a.**   **The Complaint meets the intentional fraud pleading standard for <u>Haw. Rev. Stat. § 651C-4(a)(1)</u> claims.**

To state a claim pursuant to Haw. Rev. Stat. § 651C-4(a)(1), the Trustee must plead that (i) it is a creditor of the Debtor, (ii) that the Debtor transferred the subject property before or after the Trustee's claim arose, and (iii) that the Debtor acted with intent to hinder, delay, or defraud its creditors. <u>See</u> <u>Valvanis</u>, 529 F.Supp. 2d at 1198.

The Trustee need only meet the "who, what, when, where, and how" requirements, and plead facts specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." <u>Valvanis</u>, 529 F. Supp. 2d at 1198; <u>see also</u>

Woll v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987) (statements of the time, place and nature of the alleged fraudulent activities are sufficient).

"Plaintiff's general averment that the [Debtor] transferred the property with actual intent is sufficient for Rule 9(b)." Valvanis, 529 F. Supp. 2d at 1198-99 (citing In re Glenfed, Inc. Securities Litigation., 42 F.3d 1541, 1547 (9th Cir. 1994), superceded by statute on other grounds ("We conclude that plaintiffs may aver scienter … simply by saying that scienter existed.")). "[K]nowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent." Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group), 916 F.2d 528, 535 (9th Cir. 1990).

In addition, "[a]llegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." Puri v. Khalsa, 674 Fed. Appx. 679, 687 (9th Cir. 2017).

With respect to the fraudulent conveyance and Haw. Rev. Stat. § 651C-4(a)(1) claims, in addition to the fraudulent scheme allegations, which are incorporated into each Count, the Trustee has also made additional allegations within each claims to state the claims with particularity.

First, as to all of the relevant Counts, the Trustee has alleged pursuant to 11 U.S.C. §544(b), that the Internal Revenue Service ("IRS"), the State of

Hawaii, and C&C were creditors of the Debtor. The C&C was a trade creditor in 2009, at or near the date of the Debtor's inception. <u>See</u> Complaint ¶ 189 and Exhibit "15". The IRS was a creditor from at least 2010. <u>See</u> Exhibit "16"

  <u>Second</u>, all of the transfers were made from the Debtor during the period May 2009 through September 2016, or both before and after the Trustee's claims arose depending on the particular creditor. <u>See</u> Exhibit "14" and Complaint ¶¶ 206, 229-231, 253-255, 276, 330, 374, 425, 426, 469, and 513.

  <u>Finally</u>, the Debtor, while under the Syndicator Defendants' control, and in particular for purposes of this Motion, under the control of the Syndicator Officers and Directors, intended to hinder, delay and defraud the Debtor's creditors, including the C&C, the IRS, the State of Hawaii and other unsecured creditors. <u>See</u> Complaint ¶¶ 183-188, 199-204, 228, 233, 252, 257, 293, 333, 339, 349, 359, 370, 388, 434, 474, 480, 498, 527, and 566.

  Thus, the Haw. Rev. Stat. § 651C-4(a)(1) intentional fraud claims meet the Fed. R. Civ. P. 9(b) particularity standard. These claims include the following Counts I, IV, VII, XI, XVIII, XXV, XXXII, XXXIX, XLVI, and LII.

  **b. The Complaint meets the intentional fraud pleading standard for <u>common law</u> fraudulent conveyance claims.**

  To state a claim for common law fraudulent conveyance, which is based upon the Statute 13 of Elizabeth, the Trustee must plead that the conveyance

was made with intent to hinder, delay and defraud creditors.  <u>Achiles v. Cajigal</u>, 39 Haw. 493, 496 (1952).

The Complaint meets the intentional fraud pleading standard for common law fraudulent conveyance claims.  Paragraphs 183-188 and 199-203 of the Complaint set forth in detail the fraudulent scheme and the debtor's insolvency, including the transfers made to insiders, which together support a claim that the Syndicator Defendants made transfers from the Debtor with the intent to hinder, delay and defraud the Debtor's creditors.  Further, the Debtor was indeed insolvent when each of these transfers were made.  <u>See</u> Section III.C.5. below.

> In the case of a fraudulent conveyance, <u>if the debtor is insolvent when he makes the gift or the effect of such is to leave him insolvent, there is a fraudulent conveyance as a matter of law</u>.  His debtor's intent, is to hinder delay and defraud the creditors, because of the principle that <u>one is taken to have contemplated the necessary consequences of his own acts</u>.

<u>Achiles</u> 39 Haw. at 498 (1952) (internal quotations omitted and emphasis added), (citing Glenn, Fraudulent Conveyances and Preferences, rev. ed., vol. 1, § 270, p. 460 and <u>Briggs v. Sanford</u>, 219 Mass 572 (1914)).

Finally, the Syndicator Defendants contend that the common law claim of fraudulent conveyance is redundant of the Hawaii Fraudulent Transfer Act ("<u>HUFTA</u>") citing <u>In re Agricultural Research & Technology Group. Inc.</u>, 916 F.2d 528, 534 (9th Cir. 1990) and <u>Valvanis v. Migroom</u>, Civ. No. 06-00144 JMS-

KSC, 2009 WL 1561571 (June 1, 2009). Motion at 16 fn. 11. This contention is without merit. Haw. Rev. Stat. § 651C-10 provides that common law fraudulent conveyance claims "*supplement*" HUFTA and states as follows:

> Unless displaced by the provisions of this chapter, the principals of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Haw. Rev. Stat. § 651C-10; see also Kekona v. Abastillas, 113 Haw 174, 182-183 (2006) (HUFTA does not abrogate the preferential transfer rule in Hawaii).

Thus, the Complaint meets the Fed. R. Civ. P. 9(b) particularity standard with respect to the common law fraudulent conveyance claims set forth in Counts X, XVII, XXIV, XXXI, XXXVIII, and XLV of the Complaint.

### 3. The Complaint adequately pleads constructive fraud claims under Haw. Rev. Stat. § 651C-4(a)(2) and § 651C-5.

To state a claim under Haw. Rev. Stat. § 651C-4(a)(2), the Trustee, in addition to pleading creditor status and the transfers, which he has done, must also plead that the debtor (i) did not received reasonably equivalent value in exchange for the transfer, and (ii) either (a) was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction, or (b) intended to incur or believed or reasonably should have believed that the debtor would incur, debts beyond the

debtor's ability to pay as they became due. Haw. Rev. Stat. § 651C-4(a)(2); see also Valvanis, 529 F. Supp. 2d at 1199.

Haw. Rev. Stat. § 651C-5(a) similarly requires that (i) the Debtor did not receive reasonably equivalent value in exchange for the transfer or obligation, (ii) the Debtor was insolvent at the time of the transfer or obligation, or became insolvent as a result of the transfer, and (iii) there existed an unsecured creditor at the time of the transfer. See Haw. Rev. Stat. § 651C-4(a); see also Valvanis, 529 F. Supp. 2d at 1199.

The heightened fraud pleading standard does not apply to constructive fraud claims under Haw. Rev. Stat. § 651C-4(a)(2) and (5)(a). See Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research and Management, Inc.), BAP No. CC-15-1081-KiTaKu, 2015 WL 8483728, fn 5 (9th Cir. B.A.P. 2015) (Fed. R. Civ. P. 9(b) applies only to intentional fraud and not constructive fraudulent transfer claims) (citing Cendant Corp. v. Shelton, 474 F. Sup. 2d 377, 380 (D. Conn. 2007); Charys Liquidating Trust v. McMahan Sec. Co., 443 B.R. 628, 632 n.2; Angell v. Ber Car, Inc., 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009)); see also Scarver v. Patel (In re Haven Trust Bancorp, Inc.), 461 B.R. 910, 913 (Bankr. N.D. GA. 2011); Gold v. Winget (In re NM Holdings Co., LLC), 407 B.R. 232 (Bankr. E.D. Mich. 2009).

The constructive fraud claims in the Complaint, however, set forth the same level of detail as the intentional fraud claims. Thus, the Complaint adequately sets forth constructive fraud claims under Haw. Rev. Stat. § 651C-4(a)(2) and 651C-5(a) and meet the Fed. R. Civ. P. 8 and 9(b) pleading standards.

### 4. The Syndicators Defendants' Additional Bases Upon Which They Contend the Fraudulent Conveyance and Fraudulent Transfer Counts Do Not State a Claim Lack Merit.

Fraudulent transfer law has always exalted substance over form. 5 Collier on Bankruptcy § 548.03[6]. The real test of a fraudulent conveyance is the unjust diminution of the debtor's estate, thus an allegedly fraudulent conveyance must be evaluated in context, and where a transfer is only a step in the general plan, the plan must be viewed as whole with all its composite implications. Orr v. Kinderhill Corp., 991 F.2d 31, 35-36 (2nd Cir. 1993).

The Syndicator Defendants contend that the following additional bases support their position that the fraudulent conveyance and fraudulent transfer claims set forth in the Complaint do not adequately state a claim for relief: (i) payments upon an antecedent debt are not fraudulent transfers (Motion at 22-24), (ii) payments upon an antecedent debt constitute reasonably equivalent value (Motion at 30-36), (iii) insolvency has not been adequately plead (Motion at 27-30), and (iv) the insider status is not adequately pled (Motion at 44-46).

These additional arguments lack merit.

a. **The payments at issue were not made on account of antecedent debt of the Debtor.**

The Syndicator Defendants contend that insolvency and insider status are not badges of fraud when the challenged payments are made on account of antecedent debt. Motion at 22-25. The crux of the Trustee's Complaint is that the Debtor paid the debt of TrashMasters for which the Debtor had no obligation, or should have had no obligation to pay. The Syndicator Defendants do not dispute that TrashMasters acquired the assets it "contributed" to the Debtor and that the Debtor was made the borrower on the Union Bank Credit Agreement and loan, the proceeds of which were used to finance TrashMasters' acquisition of the ROHI and Maricopa Assets, and that the Debtor paid the loan payments due on the Union Bank loan. See Exhibits "H", "I", "L" to Bass 2/15/19 Decl. and Exhibits "5" – "7" hereto. By TrashMasters' contributing the assets, the Debtor was not made a debtor obligated to reimburse TrashMasters for the assets. The acquisition debt was always the obligation of TrashMasters.

The Syndicator Defendants rely on the case Goodman v. H.I.G. Capital, LLC, 491 B.R. 747, 767-68 (Bankr. W.D. La 2013) for the proposition that payments made on account of antecedent debt are not fraudulent transfers as a matter of law. More specifically, the Syndicator Defendants contend that "[w]hen transfers are made on account of an antecedent debt, even to an insider while the

transferor is insolvent, the transfers are not avoidable as actually fraudulent unless the plaintiff pleads "facts (as opposed to conclusions) explaining how the transfers, which satisfied an antecedent debt, could have impacted [the debtor's] solvency". Motion at 24-25.

At the outset we note that the Syndicator Defendants seek to apply this antecedent debt proposition to the intentional fraudulent transfer and conveyance claims. While the court in the Goodman case dismissed the constructive fraud claims, it did not dismiss the trustee's §548(a)(1)(A) intentional fraud claim to avoid the payments the debtor had made on account of the subject Professional Services Agreement and Consulting Agreement in that case. Goodman, 491 B.R. at 767-768. Instead, with respect to the intentional fraud claims, the court only took issue with the trustee's allegations regarding the debtor's insolvency as a result of the transfers, and in fact permitted the trustee to amend its claim with respect to the payments on the agreements, which rejects the Syndicator Defendants' argument. Goodman, 491 B.R. at 768 (the court will "grant the Trustee leave to re-plead his section 544 and section 548 claims in order to allege additional facts showing that despite Gulf Fleet's pre-existing contractual obligations, Gulf Fleet did not receive reasonably equivalent value for the payments"). Thus, under Goodman, even if a payment is made on an antecedent debt, the trustee can still assert an intentional fraud claim.

This same rationale applies to the Syndicator Defendants' contention that insider status is not a badge of fraud to prove intentional fraudulent transfer or conveyance claims. Motion at 22. Insider status is only one of many badges of fraud that a trustee may use to establish HUFTA and common law fraudulent conveyance claims. Haw. Rev. Stat. § 651C-4(b)(1); <u>Achiles</u>, 39 Haw. at 497 (conveyance made to one of close relationship).

Further, and notwithstanding the <u>Goodman</u> case, courts in other jurisdictions, have stated that the "[f]raudulent conveyance doctrine … is a flexible principle that looks to substance, rather than form, and protects creditors from any transactions the debtor engages in that have the effect of impairing their rights, while ensuring that the debtor can continue to do business and assuring third parties that transactions done with the debtor at arm's length will not be second guessed." <u>Boyer v. Crown Stock Distribution, Inc.</u>, 587 F.3d 787, 793 (7th Cir. 2009) (quoting Douglas G. Baird, Element of Bankruptcy 153-54 (4th ed. 2006)); <u>Nisselson v. Ford Motor Company (In re Monahan Ford Corp. of Flushing)</u>, 340 B.R. 1, 38 (Bankr. E.D.N.Y. 2006) (where a transfer is only a step in the general plan to hinder, delay or defraud creditors, the plan must be viewed as a whole with all its composite implications); <u>Boyer</u>, 587 F.3d at 793 (if the dividends to shareholders, which the Trustee alleged was a fraudulent conveyance was part and

parcel of the transaction that fatally depleted the debtor's assets, it was part and parcel of a fraudulent conveyance, collapsing the transactions).

As the Syndicator Defendants concede in the Motion, they obligated the Debtor on the Union Bank credit facility and the loan proceeds were used to pay TrashMasters' acquisition debt to ROHI and Maricopa. Motion at 46-47. TrashMasters, however, was the sole entity that purchased the ROHI and Maricopa assets. Exhibit "H" to Bass 2/15/19 Decl. and Exhibit "6". The Debtor did not acquire the assets, thus, the acquisition debt was not that of the Debtor, it was the debt of TrashMasters. Therefore, but for the Syndicator Defendants burdening the Debtor with debt and encumbering its assets for their own benefit, the Debtor would have had no antecedent debt. The Debtor's debt service of the Union Bank loan was in substance debt service of TrashMasters' debt, even if the Syndicator Officers and Directors made the Debtor liable as a borrower on the Union Bank credit facility. See Boyer, 587 F.3d at 793 (fraudulent conveyances looks at substance rather than form). Thus, under the Boyer case, the Trustee's constructive fraud claims in respect of the Debtor's payments on the Union Bank loan survive.

However, if the Court is inclined to dismiss any of the Trustee's claims, then the Trustee requests leave to amend the Complaint as follows.

First, as to the Union Bank credit facility, the Syndicator Defendant's decision to make the Debtor (and TMAZ) the "borrowers" on the $4.5M Union Bank Note to finance TrashMasters' acquisition, and use the $4.5M loan proceeds to fund (in part) the Debtor's payment of $6,093,440.55 to ROHI on May 4, 2009 (the "$4.5M ROHI Payoff"), made in connection with TrashMasters' acquisition of the assets of ROHI (and specifically the Asset Purchase Agreement between TrashMasters and ROHI see Exhibit "H" to Bass. 2/15/19 Decl.) is an avoidable transfer for which TrashMasters received the benefit and the Debtor received no value. Thus, the Trustee seeks leave to amend the Complaint to add additional counts related to the avoidance of the $4.5M ROHI Payoff.

Second, as to the constructive fraud Counts II, III, V,VI, VIII, IX, XII, XIII, XIX, XX,XXVI, XXVII, XXXIII, XXXIV, XL, XLI, XLVII, and LII relating to the Advisory Fees, while the Debtor was a party to the Advisory Agreement, so were a number of other parties, including TrashMasters and TMAZ. Where the Advisory Agreement has multiple parties, and the services to be furnished to each entity is not clearly distinguished, but the Debtor paid for all of the Advisory Fees, it is plausible that other parties received at minimum some (and maybe all) of the services, especially when (i) the Debtor had its own officers and the TrashMasters board of directors managed and control the Debtor, and (ii) there was no need for the Debtor to have a third level of management for the Debtor, which is overkill.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 58 of 122

The Advisory Agreement was simply a vehicle for the Syndicator Officers and Directors to extract money from the Debtor to pay themselves more money on top of the management fees their own investors paid them. For these reasons, the Advisory Fees are not an antecedent debt of the Debtor alone. Further, under the circumstances of this case, these facts set forth plausible intentional fraudulent transfer and conveyance claims where the creation of the complained of antecedent debt was part of the fraudulent scheme. Thus, the Trustee's constructive fraud claims relating to the payments made on the Advisory Agreement are sufficiently pled. However, if the Court is declined to dismiss the claims, the Trustee requests leave to amend the Complaint to seek avoidance of both the Advisory Agreement (as it pertains to the Debtor) and the Debtor's payments thereunder.

> **b.    The Debtor did not receive reasonably equivalent value for the payments it made on TrashMasters' debt.**

The Syndicator Defendants also contend that, as a matter of law, value is given for payments made on account of antecedent debt or payment of debt secured by the Debtor's assets. Motion at 27-30. This contention fails. We address the Counts in reverse numerical order.

First, as to the ROHI Payoff and the KNG Payoff, those payments were made to satisfy TrashMasters' promissory notes to ROHI and KNG pursuant to the Asset Purchase Agreements with those parties. The promissory notes should

not have been the Debtor's obligation, though the evidence establishes that the Syndicator Defendants intended from the beginning that the Debtor pay them. They were or should have been solely TrashMasters' obligations. TrashMasters' contribution of the assets it acquired as "equity" into the Debtor does not relieve TrashMasters of its independent contractual obligations to ROHI and KNG. As the ROHI Payoff and the KNG Payoff were not the Debtor's obligations or antecedent debt, the Debtor did not receive reasonably equivalent value for (i) its payments to ROHI and KNG for TrashMasters' acquisition related promissory notes, or (ii) its guaranty of the KNG note.

Second, as to the Colbeck Agreement, that was an agreement made between TrashMasters and Mr. Colbeck. The Debtor was not a party to that Consulting Agreement, and therefore did not have any liability in respect of that agreement. Mr. Colbeck is the sole member of Colbeck Consulting. Further, the Consulting Agreement provided that Mr. Colbeck would serve as interim chief operating officer of TrashMasters, and that he was primarily responsible for TrashMasters' financial performance and driving the process of preparing TrashMasters for sale. To the extent the Debtor paid at least $417,869.88 in fees to Colbeck Consulting and/or Mr. Colbeck on account of the Consulting Agreement, and in particular for Mr. Colbeck to serve as the COO of TrashMasters and to prepare TrashMasters for sale, it not only paid TrashMasters' debt, by the clear

terms of the Consulting Agreement, the Debtor did not receive reasonably equivalent value.[17]

Third, as to the Advisory Fees, they essentially were the fees for which the Syndicator Defendants paid themselves for creating and managing a fraudulent investment scheme to hinder, delay and defraud the Debtor's creditors. The Complaint sufficiently details that while the Debtor, together with TrashMasters and TMAZ, was a party to the Advisory Agreement, the alleged "work" the Syndicator Defendants furnished did not the benefit the Debtor and in fact was for the benefit of TrashMasters and the Syndicator Defendants. There was no allocation of the work among the parties in the Advisory Agreement, and instead, the Debtor was saddled with the entire debt. To the extent the Debtor paid for work directly attributable to TrashMasters (or TMAZ), it did not receive reasonably equivalent value for the Advisory Fees that it alone paid.

Finally, as discussed above, the only potential antecedent debts are the Debtor's payment of (i) the Union Bank loan payments, and (ii) the Advisory Fees. The Union Bank loan was incurred to finance TrashMasters' acquisition of the

---

[17]    To the extent the Syndicator Defendants contend that Mr. Colbeck's efforts benefitted the Debtor, that is an issue of fact that will be determined at trial. See Citicorp North America, Inc. v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298, 1311 (11th Cir. 2012) (it has long been established that whether fair consideration has been given for a transfer is largely a question of fact).

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 61 of 122

ROHI and Marciopa assets. The Syndicator Defendants fraudulently made the Debtor the borrower on the Union Bank loan. The Union Bank loan, in fact, should have been TrashMasters' debt. The Syndicator Defendants knew this because they booked the Union Bank loan on the audited financial statements as a TrashMasters debt. The Debtor received no value for incurring the obligation to Union Bank or paying the loan payments. This is sufficient for an intentional fraudulent transfer/conveyance claim. However, if the Court is inclined to dismiss the claims as alleged, then the Trustee seeks leave of court to clarify that the avoidable transfer is the $4.5M payment the Debtor made to ROHI from the Union Bank loan proceeds to satisfy TrashMasters' acquisition debt to ROHI.

### c. The Trustee has sufficiently pled the Debtor's insolvency in the Complaint.

The Syndicator Defendants contend that the Trustee has not sufficiently pled the Debtor's insolvency in the Complaint. Motion at 30-36. This contention lacks merit.

At the outset we note that a "general allegation of insolvency provides a defendant fair notice of plaintiff's contention and renders sufficient information from which a defendant may create discovery requests in order to defend, as in any civil action." Gold v. Winget, Sr. (In re NM Holdings Co., LLC), 407 B.R. 232, 259 (Bankr. E.D. Mich. 2009) (citation omitted). The question of the Debtor's

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 62 of 122

insolvency involves matters outside the pleading that cannot be considered on a motion to dismiss.

Thus, it is well-settled that the determination of insolvency is a question of fact, which cannot be determined on a motion to dismiss. See Connell v. Shallo (In re Die Fliedermaus LLC), 323 B.R. 101 (Bankr. S.D.N.Y. 2005); see also Scarver v. Patel (In re Haven Trust Bancorp, Inc.), 461 B.R.910, 913 (Bankr. N.D. Ga. 2011) (although the allegations in the complaint mirrored the statutory language in 11 U.S.C. § 548(a)(1)(B), the debtor's insolvency at the time of the transfers remains a fact to be established at trial or at another juncture).

In Fliedermaus, the defendants argued the debtor was solvent at the time of the subject fraudulent transfers, and filed a motion to dismiss. The Court held that the defendants:

> demonstrate that solvency is a factual question by relying on the Debtor's tax returns in support of their proposition. Not only are the tax returns outside of the complaint; the incurrence of a liability for taxes is not equivalent to solvency. The Trustee alleges in the complaint that the Debtor was insolvent from 1997 through the filing of the petition, and that is adequate pleading.

Id. at 106-7 (emphasis added).

Similarly, in the instant case, the Syndicator Defendants' reliance on a summary of the audited financial statements, in an attempt to show the Debtor was

solvent, demonstrates that solvency is a question of fact. The fact that the Trustee stated in the Complaint that the Debtor was insolvent is sufficient to defeat a motion to dismiss.

Also, in <u>Danning v. Lavine</u>, 572 F.2d 1386 (9th Cir. 1978), the <u>Ninth Circuit</u> held that an avoidance complaint which pleads insolvency in only general terms is sufficient to withstand a motion to dismiss. In that case, the bankruptcy trustee filed an avoidance complaint in which he alleged in the fraudulent conveyance count that "[a]t the time of said transfer, [the debtor] was, or was thereby rendered insolvent." <u>Id.</u>, at 1388. The defendant argued this general allegation was insufficient and that the trustee was required to plead specific facts showing insolvency. <u>Id</u>. The Court disagreed and held that the trustee adequately pled insolvency in the Complaint by its general terms.

Under Ninth Circuit case law, the Trustee has adequately pled insolvency in the Complaint. <u>See</u> Complaint ¶¶ 183-188. In the instant case, Hawaii law uses a "balance sheet" definition of insolvency. "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." Haw. Rev. Stat. § 651C-2(a). "A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent". Haw. Rev. Stat. § 651C-2(b). The allegations in the Complaint mirror the statute and state as follows:

183. Upon information and belief, the Debtor was undercapitalized and therefore insolvent at the date of inception.

184. Upon information and belief, shortly after inception, the Debtor was generally not paying its debts as they became due, and is presumed insolvent.

Complaint ¶¶ 183-184; see also In re Haven Trust Bancorp, Inc., 461 B.R. 910 (complaint which contains language that mirrors the statutory language for insolvency is sufficient as the debtor's insolvency at the time of the transfers remains a fact to be established at trial or another juncture).

Further, the Debtor was undercapitalized and insolvent at the date of inception. As explained herein, the Debtor, at its inception, was immediately saddled with $4.5M in debt obligations to Union Bank for a loan, the proceeds of which were used to pay TrashMasters' acquisition costs for the ROHI Assets. The value of the Debtor's assets at the time were less than the debt. These facts alone are sufficient to support a claim that the Debtor was insolvent at the date of inception.

As to the cash flow test for insolvency, the Debtor was accruing the Advisory Fee debt, as well as the debt incurred to the C&C for tipping fees.[18] The

---

[18] Where a debtor, while paying its smaller periodic payments as they become due, is unable, and thus fails, to timely satisfy one or two of its debts that constitute a substantial percentage of its overall obligations can support a finding that a debtor is failing to pay its debts as they become due for purposes of § 303(h)(1). In re Food Gallery at Valleybrook, 222 B.R. 480, 488 (Bankr. W.D.

C&C was the Debtor's largest trade creditor accruing approximately $500,000-$800,000 a month in tipping fees. At the time of the bankruptcy filing, the Debtor had incurred $3,111,730.72 in unpaid debt to the C&C. See Exhibit "15". Thus, the Debtor was not generally paying its debts as they became due.

In any event, insolvency is a question of fact and the Trustee is entitled to conduct discovery and prove at trial that the Debtor was insolvent at inception and generally not paying its debts as they became due.

### (i)     The Debtor's continued its business for 6 years on the backs of its creditors.

The Syndicator Defendants argue that the Debtor continued in business for 6 years, and thus could not have been insolvent. Motion at 36. As will be proven at trial, the Debtor was able to continue its business because the Syndicator Defendants continued their scheme of borrowing money and incurring enormous trade debt (e.g., the C&C). See Boyer, 587 F.3d at 794 ("A firm might

---

Penn. 1998) (case dealing with insolvency as related to an involuntary Chapter 11 petition) (citing In re Bowers, 16 B.R. 298, 303-04) (Bankr. D. Conn. 1981)). "Stated another way, this Court will not condone the efforts of a debtor who seeks to take advantage of the general prohibition on involuntary petitions in single-creditor cases by ensuring payment to all, or most, of its smaller periodic debt to the exclusion of larger long term debt." Food Gallery, 222 B.R. at 488.

The Syndicator Defendants contend in the Motion that the Debtor was paying its debts, including the debts to Union Bank, ASB and Convergent on time. The Debtor, however, was not paying its own creditor, the C&C of Honolulu. Nor was it able to pay the Advisory Fees in 2011, which were accrued until 2012, or the Advisory Fees post 2014.

be insolvent in the bankruptcy sense of negative net worth – its liabilities exceeded its assets … yet it might continue operating as long as it was able to raise enough money to pay its debts as they become due, or even longer if its creditors were forbearing"). In <u>Boyer</u>, the company limped along for 3½ years before collapsing into bankruptcy. <u>Boyer</u>, 587 F.3d at 793.

> ### ii. The Syndicator Defendants used a hard money loan to pay a portion of their advisory fees and in 2012 it was clear the Debtor had a "problem loan" rating.

The Debtor, did not, as the Syndicator Defendants contend, obtain conventional financing from multiple third-party lenders. Motion at 35. Not long after entering into the Union Bank credit facility, the Debtor had defaulted upon its loan covenants to Union Bank and Union Bank told the Syndicator Defendants that they needed to find another lender to refinance the Union Bank loan. <u>See</u> Complaint ¶¶ 130-132 and <u>Exhibit "5"</u> (Second Amendment to Credit Agreement ¶ 1 (waiver of loan covenants)). If there was no problem with the credit facility, Union Bank would not have made such a request. The Syndicator Defendants then sought re-financing from other lenders and settled on Fifth Third Bank. Fifth Third Bank declined to refinance because it determined, contrary to what the Syndicator Defendants contend, the Debtor's financial condition was weak, and the loan had a lower than standard, "problem loan" rating. Complaint ¶¶ 135-36. The 2012 ASB Credit Agreement was for $4.4M with a senior security interest in the

Debtor's assets. The $2.5M 2012 Convergent Loan was unquestionably a hard money loan. Complaint ¶¶ 150-151. The Defendant Syndicators could not have obtained conventional financing for the entire $6.9M that they sought. The circumstances under which ASB later in 2015 further refinanced the Convergent loan are questions of fact that is the subject of ongoing review and discovery. In any event, for the reasons identified in Section III.C.5., the audited financials that the Syndicator Defendants prepared, approved and submitted to lenders grossly overvalued the assets. Thus, the Syndicator Defendants' ability to convince ASB and Convergent Capital (as a hard money lender) to lend the Debtor money is not conclusive evidence of the Debtor's solvency.

The Syndicator Defendants further cast blame on the C&C as well as the Debtor's officers, including Charlie Leonard ("Mr. Leonard"), Mr. Asay, Sr., Mr. Asay, Jr, and Mr. Gourlay, among others for the Debtor's demise. However, "[t]he fact that mistakes by the buyer hastened the company's demise is not a defense. Whether a transfer was fraudulent when made depends on conditions that existed when it was made, not on what happened later to affect the timing of the company's collapse." Boyer, 587 F.3d at 795. "Everyone makes mistakes. That's one reason why businesses need adequate capital to have a good chance of surviving in the Dawinian jungle that we call the market." Boyer, 587 F.3d at 795. The Debtor was undercapitalized from inception and TrashMasters, its controlling

U.S. Bankruptcy Court - Hawaii #18-90035 Dkt # 30 Filed 03/19/19 Page 68 of 122

majority members Corridor TM and SPB Waste did not make sufficient additional cash capital contributions to the Debtor to bring the Debtor's net worth above insolvency.

> **5.**     **The Syndicator Defendants improperly introduce and rely upon audited, but inaccurate, financial statements of the Debtor to dispute the Debtor's insolvency.**

As discussed herein, the Syndicator Defendants improperly introduce the Debtor's audited financial statements to dispute the Debtor's insolvency. Motion at 93.

The financial statements, however, are inaccurate and therefore misleading when used for purposes of determining the net worth analysis of whether the Debtor's debts exceeded its assets, pursuant to Haw. Rev. Stat. § 651C-2(a).  The following analysis, which applies to the financial data set forth in the audited financial statement, as of December 31, 2009 sets forth certain of the inaccuracies and errors in the Balance Sheets, together with inconsistencies between the balance sheets and other Debtor records.  The same analysis can be made for subsequent years to demonstrate that the Debtor was insolvent at the end of each year:

i.     <u>Due From Related Parties</u>:  According to the Balance Sheet in the audited financial statements as of December 31, 2009, the sum of $1,382,698 is listed as an "asset" item as being "Due From Related Parties".  This asset item is

overstated in the financial statements with respect to the Debtor, since it is primarily comprised of amounts that are owed from related entities which have <u>no</u> assets and could never repay the amounts allegedly "due". Because the amounts owed by these entities are not collectible[19], the **"Due From Related Parties" asset is overstated by approximately $1.2 Million** on the Balance Sheet.

ii.    <u>Line of Credit & Current Maturities Debt/Long Term Debt</u>:

There are <u>no</u> amounts listed under "Line of Credit & Current Maturities of Debt" and "Long Term Debt" for the Debtor on the Balance Sheet for the year ended December 31, 2009. The Balance Sheet inaccurately fails to include the Union Bank credit facility as a liability of the Debtor, despite the fact that the Debtor was made liable as a "borrower" for this debt. Instead, the Balance Sheet attributes the debt ($642,857 for Line of Credit and Current Maturities and $3,850,000 for Long Term Debt) to TrashMasters. For an accurate determination of the Debtor's debts, these amounts must be taken into account as liabilities of the Debtor. Thus, the Debtor's **debt is understated by approximately $4.5 Million** as of December 31, 2009 on the Balance Sheet.

---

[19]   Comparison of the columns for the Debtor and its parent, TrashMasters, reveal that the "receivable" on the Debtor's account is from TrashMasters, but TrashMasters' was an empty shell, its only asset from which it might pay the debt was its equity in the Debtor.

iii.    ROHI Debt

As explained above, the Syndicator Defendants treated the Debtor as being liable for the $1,000,000 ROHI Note, as evidenced by their forcing the Debtor to pay this obligation. Because the Syndicator Defendants treated the Debtor as being liable for this debt, although the Debtor should not have been liable to pay it, this debt should be considered in any balance sheet test of the Debtor's solvency. Because the Balance Sheet attributes this debt to TrashMasters, and not the Debtor, the Debtor's **debt is understated by approximately $1 M**, as of December 31, 2009 on the Balance Sheet, for purposes of considering the Debtor's solvency.

iv.    PP&E:

The Balance Sheet as of December 31, 2009 lists the value of PP&E (net) at $6,659,208. However, as explained above, the Syndicator Defendants previously estimated that the value of these assets, in the Forecasted Balance Sheets dated April 27, 2009, attached hereto as Exhibit "9", to be much lower. Indeed as of April 27, 2009, the Syndicator Defendants attributed a value of only $2,873,565 to these assets at acquisition, declining to $2,601,628 as of December 31, 2009[20]. Accordingly, based on these figures, it appears the **PP&E value is**

---

[20]    As of that date the balance sheets relied upon by the Syndicator Defendants show a consolidated PP&E in the amount of $8,154,381, inclusive of

**overstated by approximately $4,057,580** as of December 31, 2009 on the Balance Sheet.

       v.    <u>Effect on Solvency</u>

       According to the summary of the financial statements attached to Mr. Bass' declaration, as of December 31, 2009, the total assets minus total liabilities minus all intangible assets, including goodwill (which the Defendants acknowledge must be deducted to determine solvency[21]), was $7,856,036. To obtain an accurate picture of the Debtor's insolvency as of December 31, 2009, the overstatement of the Debtor's assets by $1.2 Million (for the "Due From Related Parties") and the $4,057,580 (for the PP&E) must be deducted, as well as the $4.5Million from the failure to report the Debtor's Union Bank debt as a liability on the Balance Sheet, and the $1 Million from the failure to report the liability under the ROHI Note as a liability of the Debtor on the Balance Sheet. When these amounts are taken into account, **the Debtor's liabilities exceed the Debtor's**

---

the $6,659,208 attributed to the Debtor, suggesting the $2,601,628 on the forecast actually overstates the figure properly attributable to the Debtor above.

[21]  The Syndicator Defendants are correct to do so. "Goodwill" is not considered to be an asset for the bankruptcy's insolvency calculation. <u>See</u> <u>Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.)</u>, 187 B.R. 315, 330 (Bankr. C.D.Cal. 1995) ("Goodwill cannot be sold to satisfy a creditor's claim. Thus, in a liquidation bankruptcy case it must be disregarded in determining solvency of the debtor at the time of an LBO.") Were it to be considered, the Trustee submits we would, at the time of trial, present evidence that the Debtor was without any such value.

**assets by $2,901,544 as of December 31, 2009, and the Debtor is insolvent** as of that date.

The Syndicator Defendants may argue that these figures in turn are unreliable. But that's not the point. At this juncture, it is sufficient that the figures demonstrate that the Syndicator Defendants' proffer of audited balance sheets as to solvency are disputed, and cannot serve as a basis for dismissal of the Complaint.

> **6.  The Trustee has adequately pled insider status as to the Syndicator Defendants.**

The Trustee has adequately pled insider status as to the Syndicator Defendants. The Syndicator Defendants, on the other hand, contend in the Motion, that the Trustee has inadequately pled facts supporting the insider status of Corridor Capital and SPB Management (the transferees of the Advisory Fees), as well as ROHI and KNG under Haw. Rev. Stat. § 651C-1 because the Complaint does not allege that that these entities are 20% interest holders of the Debtor. Motion at 45. This contention is without.

In the instant case, Mr. Bass in his declaration filed in the main bankruptcy case on July 7, 2016 [Dkt #431], stated under penalty of perjury, that

> 1.  I am a principal of SPB Capital, GP, the entity serving as the sole general partner of, SPB Capital Partners, LP ("SPBCP"). I am also a principal of SPB Management, LLC ("SPBM"), the entity contracted to provide management services to SPBCP and advisory services to TrashMasters, LLC and the Debtor pursuant to the Advisory Agreement dated May 9, 2009. SPBCP

is the sole member of a single purpose entity called SPB Waste, LLC ("SPBW"); it was through SPBW that SPBCP made its equity investment into TrashMasters. SPBW was the second largest interest holder in TrashMasters, LLC; I am a manager of SPBW. I am also a manager of SPB Partners, LLC ("SPB Partners") which has no assets or operation. These entities are collectively referred to as SPB.

Exhibit "3".

Similarly, Mr. Enenstein in his declaration filed in the main bankruptcy case on July 6, 2018 [Dkt #430], stated under penalty of perjury, that:

> 1. I am the Chief Executive Officer of Corridor Capital, LLC and was formerly Managing Member of Corridor Capital Advisors, LLC ("CCA") which served as the General Partner to Corridor TrashMasters LP ("Corridor TrashMasters"). Both CCA and Corridor TrashMasters were wound down in 2017. Until December 2016, when it surrendered all of its member interests in TrashMasters LLC, Corridor TrashMasters was the largest interest holder in TrashMasters, LLC.

Exhibit "4".

Further, the Complaint includes the following general allegations regarding the affiliate status of the Corridor Entities and the SPB Entities:

> 47. During the period May 1, 2009 to the Petition Date, Corridor TrashMasters was a member of TrashMasters.
> 48. In 2012, Corridor TrashMasters owned a 43.3% interest in TrashMasters.
> 49. During the period May 1, 2009 to the Petition Date, SPB Waste was a member of TrashMasters.

50.     In 2012, SPB Waste owned a 21.7% interest in TrashMasters.

…

56.     As the members that held the majority membership interests in TrashMasters, the Corridor Entities (through Corridor TrashMasters), and the SPB Entities (through SPB Waste) primarily controlled and directed the Debtor's affairs.

…

89.     Corridor Capital is an <u>affiliate</u> of Corridor TrashMasters and the other Corridor Entities.

90.     SPB Management is an <u>affiliate</u> of SPB Waste and the other SPB Entities.

…

638.    The Officers and Directors were also principals, managers, and directors of the <u>affiliated</u> Corridor Entities and SPB Entities.

Complaint ¶¶ 47-50, 56, 89-90 and 638 (emphasis added).

Corridor Capital and SPB Management were affiliates of Corridor TM and SPB Waste, respectively, and Corridor TM and SPB Waste controlled both TrashMasters and the Debtor.  <u>See</u> Section III.F.1.  All of the Corridor Entities were essentially a single enterprise owned and controlled by the same core group of individuals, including Mr. Enenstein.  Similarly, all of the SPB Entities were essentially a single enterprise owned and controlled by the same core group of individuals, including Mr. Bass.  Stated differently, the same groups of individuals that controlled the Debtor were the same groups of individuals that controlled

either the Corridor Entities or the SPB Entities.[22]  Thus, these individuals (the "Syndicator Officers and Directors"), together with the Corridor Entities and the SPB Entities qualify as statutory insiders that were "in control of the debtor" under Haw. Rev. Stat. § 651C-1.

Further, the "insider" definition under Haw. Rev. Stat. § 651C-1 is virtually identical to the definition under §101(31) of the Bankruptcy Code, including their opening language which starts with "'insider' includes" and follows with a non-exhaustive list of examples.  When determining insider status under §101, the courts, including the Ninth Circuit B.A.P., have routinely found persons and entities non-statutory insiders.  See Miller Avenue Professional and Promotion Services, Inc. v. Brady (In re Enter. Acquisition Partners, Inc.), 319 B.R. 626 (Bankr. 9th Cir. 2004); see also Kotoshirodo v. Brennan (In re Lull), Civ. No. 11-00349 SOM-BMK, 2011 WL 6941487, at *6 (D. Haw. December 30, 2011) (under § 101(31), "[t]here clearly may [ ] be insiders other than per se insiders listed in 11 U.S.C. § 101(31), the use of the word includes is indicative of Congress' intent not to limit the classification of insiders to the statutory definition") (internal quotation marks omitted); U.S. Bank, N.A. v. The Village at Lakeridge, LLC (In re Village at Lakeridge, LLC), 814 F.3d 993, 1001 (9th Cir. 2006) ("Non-statutory insiders

---

22    Together Corridor TM and SPB Waste held all of the Class A "voting shares" and the majority of the director positions on the TrashMasters board, which controlled the Debtor.  See footnote 27.

are the functional equivalent of statutory insiders and, therefore, must fall within the ambit of § 101(31).").

In <u>Miller</u>, 319 B.R. 626 (Bankr. 9th Cir. 2004), the Ninth Circuit B.A.P. required some showing of control over the debtor to establish that a creditor is a non-statutory insider. The B.A.P. stated

> Although the statutory definition is not limiting, those who do not qualify as per se insiders because they are not within the categories specifically listed in the definitional statute can qualify as insiders <u>only if they meet the test for non-statutory insiders, which requires some showing of control of the debtor</u>. . . . In determining who qualifies as a non-statutory insider, the courts 'focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor . . . A transferee is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length.'

<u>Id</u>. at 633 (emphasis added) (citing <u>Miller v. Schuman (In re Schuman)</u>, 81 B.R. 583, 586 (9th Cir. BAP 1987)).

Under the circumstances of this particular case, the foregoing allegations in the Complaint also sufficiently allege the non-statutory insider status of Corridor Capital and SPB Management and are supported by the sworn declarations of Mr. Enenstein and Mr. Bass. <u>See</u> <u>Exhibits "3" and "4"</u>. Corridor Capital and SPB Management were affiliates of Corridor TM and SPB Waste, respectively, and Corridor TM and SPB Waste controlled both TrashMasters and the Debtor. <u>See</u> footnote 27. Further, all of the Corridor Entities were essentially a

115347_9.docx                                    - 58 -
U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 77 of 122

single enterprise owned and controlled by the same core group of individuals, including Mr. Enenstein. Similarly, all of the SPB Entities were essentially a single enterprise owned and controlled by the same core group of individuals, including Mr. Bass. Thus, the Advisory Agreement, between Corridor Capital and SPB Management, on the one hand, and TrashMasters, the Debtor, and TMAZ, on the other hand, was a product of self-dealing.

In addition, TrashMasters was an affiliate of the Debtor. An insider of an affiliate is also considered an "insider". As a director of TrashMasters, Mr. Gourlay was an insider of TrashMasters, and therefore the Debtor. Mr. Gourlay controlled KNG. The Debtor's payment on the KNG Note for which TrashMasters was liable was made to Mr. Gourlay's company. Thus, KNG is a non-statutory insider of the Debtor.[23]

## D. In Light of the Syndicator Defendants' Control of the Debtor and TrashMasters, the Complaint Provides Sufficient Detail as to the Transfers the Trustee Seeks to Avoid.

The Syndicator Defendants maintain that the following transfers are not pled with sufficient detail and in particular the dates and the amounts of the transfers: (i) the loan payments made to Union Bank, and (ii) the payments made to

---

[23] ROHI was identified as an insider in the Complaint. Evidence may eventually prove it was not an insider, however, as discovery is ongoing, the Trustee wishes to reserve its claim for now and further evaluate ROHI's potential status as an insider based on evidence produced during discovery.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 78 of 122

Colbeck Consulting and/or Brian Colbeck pursuant to the Consulting Agreement. Motion at 52 and 73-74. In this case, where the Syndicator Defendants procured the Union Bank loan and the Consulting Agreement, and themselves caused the Debtor to pay for the obligations the allegation that they do not have sufficient notice of the transfers they directed to have made to defend against the claim is disingenuous and misleading.

Notwithstanding, as the Debtor seeks leave of court to amend the Complaint to add additional Counts relating to the $4.5M Payoff, and to add additional instances of the breaches of fiduciary duties, the Trustee can include a list of the Colbeck payments, and if still applicable a list of the loan payments the Debtor made to Union Bank.

**E.    Group Pleading is Permitted in this Case as the Officers, Directors, and Entities are Closely Related.**

Paragraphs 14-26 of the Complaint set forth the officers and directors of the Debtor and TrashMasters, and where applicable identifies the affiliation of each Defendant with the SPB Entities and the Corridor Entities. <u>Exhibit "1"</u> details their roles and affiliations as uncovered by the Trustee, thus far.

A plaintiff, at minimum, must identify the role of each defendant in the alleged fraudulent scheme. <u>Moore</u>, 885 F.2d at 540 (citation omitted). "There is no flaw in a pleading, however, where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 79 of 122

same conduct." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184

(9th Cir. 2016).

> By way of example, in securities fraud cases,

> where the corporate officers are a narrowly defined group charged with day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violation. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1441 (9th Cir.1987).[3] [I]t is not necessary to show actual participation or the exercise of actual power. Howard, 228 F.3d at 1065.

Flood v. Miller, 35 Fed. Appx. 701, 703 (2002) (internal quotation marks omitted)

(authority over the process of preparing and releasing financial statements to the

public sufficient for a prima facies case of "controlling person" in a securities fraud

case).

Further, where claims of conspiracy, aiding and abetting, and alter ego

are made, and there may be multiple individuals and/or entities liable for the

underlying claims (e.g., breach of fraudulent conveyances and transfer and breach

of fiduciary duties), and a determination of those who owed a duty and breached a

duty has not been made, it makes sense to group those officers, directors, and

related entities not yet determined to be directly liable as the "conspirators",

"aiders and abetters", and "alter egos" as defendants.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 80 of 122

1. **The SPB Officers and Directors and the Corridor Officers and Directors are a narrowly defined group of officers and directors who managed and controlled the Debtor's business and financial affairs, and financial statements in particular, thus group pleading as to these defendants is permitted.**

The Officers and Directors in this case, and in particular the SPB Officers and Directors and the Corridor Officers and Directors are a narrowly defined group of officers and directors who in their individual capacities directly managed and controlled the Debtor's business and financial affairs, and financial statements in particular.[24]  Thus, group pleading is permitted as to these Syndicator Defendants.

Further, the Complaint alleges that certain of the Syndicator Officers and Defendants were officers and/or directors of the Debtor and TrashMasters. Complaint ¶¶ 14-20.  Although the Syndicator Defendants, at this time, are the only holders of that information, the Syndicator Defendants do not offer in the Motion the specific roles of each of those defendants to defeat the claim as to specific parties.  They simply argue that the Complaint does not set forth the particular role of each of the Syndicator Defendants.  At the same time, however, the Syndicator Defendants have refused the Trustee's request for early discovery,

---

[24]  Plaintiff has not named other employees or principals of the SPB and Corridor Entities who assisted, but did not serve as officers or directors of the Debtor, TrashMasters or the SPB and Corridor Entities.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 81 of 122

and discovery by stipulation is currently stayed. Thus, where the allegations are adequately plead in the Complaint, the Syndicator Defendants hold the information as to the narrowly defined group of Corridor Officers and Directors and SPB Officers and Directors, and discovery has not commenced in this case, group pleading is appropriate.

Notwithstanding, in this Opposition the Trustee has set forth additional detail, which if the Court determines is required, the Trustee requests leave to amend the Complaint and include this additional information.

> **2.   The Corridor Entities and the SPB Entities are closely related companies, each of which through their same principals had direct involvement with the Debtor in general and its financial statements and affairs in particular, thus group pleading as to these defendants is permitted.**

The Syndicator Defendants do not dispute that the Corridor Entities are related entities, or that the SPB Entities are related entities. As set forth in the Declarations of Mr. Bass and Mr. Enenstein (Exhibits "3" and "4"), the Corridor and SPB Entities are indeed related entities. Further, in the Trustee's pending Requests for Production of Documents served upon the Syndicator Defendants, the Trustee has requested documents referring or relating to the identity of the members, managers, officer and directors, and employees of each of the Corridor Entities and the SPB Entities as well as each of the Syndicator Officers and Directors. The Syndicator Defendants have objected to the Trustee's request to

conduct discovery as to the relationship of these entities. Accordingly, the Trustee should be permitted to utilize group pleadings as to these defendants until it has had an opportunity to conduct discovery.

**F.** **The Breach of Fiduciary Duties Claims (Counts LV, LVI, and LVII) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Breach of Fiduciary Duty Claims Lack Merit.**

The Syndicator Defendants' various contentions regarding the Trustee's breach of fiduciary duty claims lack merit. These contentions include the following: (i) only TrashMasters owed the Debtor any fiduciary duty, (ii) there was no breach of the duty of care and loyalty as set forth in Haw. Rev. Stat. § 428, and (iii) the Debtor was solvent and therefore ratified any breaches. Motion at 86-94. These arguments are primarily supported with the Syndicator Defendants' prior arguments that the Debtor was solvent and paid antecedent debt, which as discussed earlier in Sections III.C.4.a. and III.C.5., lack merit.

**1.** **The Debtor was insolvent from inception and each of the Syndicator Defendants are liable for the breach of fiduciary duty claims.**

The Syndicator Defendants contend that based on the Hawaii Uniform Limited Liability Company Act, Chapter 428 of the Hawaii Revised Statutes,

TrashMasters was the only defendant that owed fiduciary duties to the Debtor.[25] Opposition at 86-91. This contention lacks merit for the following reasons.

First, pursuant to the terms of the Debtor's operating agreement, the Syndicator Defendants through TrashMasters had full and complete authority, power and discretion to manage and control the Debtor.[26] Paragraph 4 of that certain Amended and Restated Limited Liability Company Agreement of Rolloffs Hawaii, LLC, dated May 1, 2009 (the "Debtor's Operating Agreement") provides as follows:

> **Management.** The business and affairs of the Company will be managed by its Manager. The name of the initial manager shall be TrashMasters, LLC. The Manager will direct, manage and control the business of the Company to the best of its abilities. Except for situations in which the approval of the Member is expressly required by this LLC Agreement or by non-waivable provisions of applicable law, the Manager will have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any

---

[25] The Debtor is a Hawaii limited liability company and is a wholly owned subsidiary of TrashMasters. TrashMasters is a Delaware limited liability company and is the only member as well as the only manager of the Debtor.

[26] Under Hawaii law, subject to certain statutory restrictions, the members of a limited liability company are permitted to enter into an operating agreement to regulate the affairs of the company and the conduct of its business, and to govern the relations among the members, managers, and company. Haw. Rev. Stat. § 428-103(a). Among the things an operating agreement may not do is eliminate the duty of loyalty or unreasonably reduce the duty of care. See Haw. Rev. Stat. § 423-103(b)(2) and (3).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 84 of 122

> and all other acts or activities customary or incident to the management of the Company, and such officers and agents shall such duties and responsibilities as determined by the Manager from time to time. No officer or agent will have authority (general or specific) to act for or bind the Company unless the Manager delegates such authority to such officer or agent, and then only to the extent so delegated by the Manager.

Exhibit "M" to Bass 2/15/19 Decl. ¶ 4 (emphasis added).

Pursuant to the terms of the TrashMasters Operating Agreement, the TrashMasters board of directors is vested with the power to manage TrashMasters. Section 5.01 of the TrashMasters Operating Agreement provides as follows:

> The business of the LLC shall be managed by the Board, which may exercise all powers of the LLC, except as otherwise restricted by law or by this Agreement.

Exhibit "2" (emphasis added).[27]

In addition, the TrashMasters' Operating Agreement, also provides that the following actions require Corridor TM's and SPB Waste's approval:

> (a) The hiring or firing of the Chief Executive Officer and/or President of the Company **or any of its direct or indirect subsidiaries**;
> (b) Approval of any amendment to the annual budget of the Company and/or any of **its direct or indirect subsidiaries** (the "Budget");
> (c) The approval of any capital expenditure by the Company or any of **its direct or indirect subsidiaries** in

---

[27]  In 2009, together Corridor TM and SPB Waste held 4 of the 5 board of director positions. In 2011, together they held 4 of the 7 board of director positions.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 85 of 122

excess of $25,000 individually or $100,000 in the aggregate which is not contemplated by the Budget;

…

(g) Any sale of the Company or **any of its direct or indirect subsidiaries** as an entirety (whether by sale of equity interests, assets, merger, or other similar event and whether in one transaction or a series of related transactions);

(h) Any sale or other disposition of the assets representing 50% or more of the value of the assets of the Company and **its direct and indirect subsidiaries** taken as a whole, as valued in good faith by the Board (as defined in Section 5.10), other than sales in the ordinary course of business or as contemplated by a properly approved Budget;

(i) Any sale or other disposition of any assets that individually or collectively are material to the Company and **its direct and indirect subsidiaries** taken as a whole, other than in the ordinary course of business or as contemplated by a properly approved Budget.

…

(l) the incurrence of any material indebtedness or the consummation of any material debt financing by or involving the Company or **its direct or indirect subsidiaries**.

Exhibit "2" ¶ 4.02 (emphasis added).

In Delaware, the courts have looked to the law of trusts to impose liability on the officers and directors of a company that manages a trust, and hold the officers and directors liable to the trust's beneficiaries. See In re USACafes, L.P. Litigation, 600 A.2d 43 (Del. Ch. 1991) (a director or officer of a trust institution who improperly acquires an interest in the property of a trust administered by the institution is subject to personal liability and are in a fiduciary

relationship with not only the trust, but the beneficiaries of the trust it administers) (citing and quoting, 4A. Scott & W. Fratcher, The Law of Trusts § 326.3, at 304-306 (4th ed. 1989)).  Such trust law appears to support the lesser extension of fiduciaries duties to the trust itself, which by analogy would encompass the situation at hand where TrashMasters manages its wholly owned subsidiary, the Debtor, and the officers and directors of TrashMasters owe a duty to the Debtor, TrashMasters being the only member of the Debtor.  This is so especially when Haw. Rev. Stat. § 428-409(b)(1), includes within the duty of loyalty the duty to "hold as *trustee for it* any property, profit or benefit" derived by TrashMasters in the conduct of the Debtor's business or derived from TrashMasters' use of the Debtor's property.[28]

Second, under Delaware law, once a corporation becomes insolvent, its officers and directors owe unsecured creditors a fiduciary duty.  The Official Committee of Unsecured Creditors of High Strength Steel, Inc. ex rel. High Strength Steel v. Lozinski (In re High Strength Steel, Inc.), 269 B.R. 560, 569 (Bankr. D. Del 2001); see also Carpenters Pension Trust v. Lindquist Family LLC,

---

[28]  Haw. Rev. Stat. § 428-409(b)(1) provides as follows:

> To account to the company and to the hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriate of a company's opportunity. (Emphasis added.)

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 87 of 122

No. C-13-01063 DMR, 2014 WL 1569195, at *3 (N.D. Cal. 2014) ("The Montgomery court found that federal and state courts have generally applied the law of corporations to LLCs for purposes of piercing the corporate veil, the alter ego doctrine, the business judgment rule, and derivative actions…") (citing <u>Montgomery v. eTreppid Technologies, LLC)</u>, 548 F. Supp. 2d 117, 1181 (D. Nev. 2008) (internal quotation marks omitted). That fiduciary duty requires the controlling shareholders and directors of the debtor to maximize the value of the assets for the payment of unsecured creditors. <u>Id</u>. In the instant case, TrashMasters has no business operations. Its only assets were its interests in the Debtor. The Debtor was insolvent. Likewise, TrashMasters was insolvent. The Debtor, however, was also a creditor of TrashMasters.[29] Thus, the officers and directors of TrashMasters owed a duty to the Debtor because it was a creditor of TrashMasters. These officers and directors include Mr. Enenstein, Mr. Greulich, Mr. Monnier, Ms. Davis, Mr. Bass, Mr. Bulloch, Mr. Gourlay, Mr. Asay, Sr., Mr. Leonard, and Mr. Colbeck. <u>See</u> <u>Exhibit "1"</u>.

---

[29]  TrashMasters' accounts reflect a "due to" that is a debt to the Debtor from the beginning of the company's business. Additionally, of course, TrashMasters' imposition of the Union Bank debt on the Debtor to pay for TrashMasters' acquisitions makes Rolloffs a creditor of its parent company, TrashMasters.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 88 of 122

Third, Similar to Delaware, the State of Hawaii also recognizes the trust fund doctrine. See Mansha Consulting LLC v. Alakai, Civ. No. 16-00582 ACK-RLP, 2017 WL 3659163, at *9-11 (D. Haw. 2017) (recognizing application of the trust fund doctrine to cases involving self-dealing). "The trust fund doctrine imposes certain duties on a corporation's directors when the corporation becomes insolvent". Id., at *9. The theory underlying the doctrine is that when a corporation becomes insolvent, the assets of a corporation exist for the benefit of all of its creditors and that thereafter no liens or rights can be created either voluntary or by operation of law whereby one creditor is given an advantage over others. Id., at *9. Thus, under the trust fund doctrine, creditors may look to the personal assets of the directors for breaching their fiduciary duty in improperly distributing the assets of the corporation. Id., at *9 (citing 15A William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §7369 (rev. vol. 2009)). Thus, under Hawaii law, the Debtor's officers and directors may be personally liable for self-dealing under the trust fund doctrine.

In the instant case, Ms. Davis was an officer and secretary of the Debtor. Mr. Enenstein was the secretary and chairman of board of the Debtor. He was also a participant in the Advisory Agreement on behalf of Corridor Capital. Mr. Monnier was an officer of Debtor. Thus, Ms. Davis, Mr. Enenstein, Mr.

Monnier (and other officers or directors of the Debtor, see Exhibit "1") may be held liable for self-dealing under the trust fund doctrine.

Fourth, "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." United States v. Bestfoods, 524 U.S. 51, 62 (1998) (citing Chicago, M & St. P.R. Co. v. Minneapolis Civil and Commerce Assn., 247 U.S. 490, 501 (1918) (principles of corporate separateness "have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose … of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company") (internal quotation marks omitted)); NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168, 176 (2nd Cir. 2008)(given the similar liability shields that are provided by corporations and LLCs to their respective owners, emerging case law illustrates that situations that result in a piercing of the limited liability veil are similar to those that warrant piercing the corporate veil). Piercing TrashMasters' corporate veil would make the following defendants liable (i) SPB Waste, (ii) Corridor TM, (iii) Mr. Asay, Sr., (iv) Mr. Asay, Jr., (v) ROHI,

and (vi) KNG, as well as any officers and directors of TrashMasters.   See Exhibit"1".

Thus, for the reasons set forth above, TrashMasters is not, as the Syndicator Defendants contend, the only company liable for breach of fiduciary duties.   The corporate setup, however, highlights the fraudulent scheme the Syndicator Defendants utilized to attempt to escape liability to the detriment of the Debtor's unsecured creditors.

## 2.   Count LV adequately states claims for breach of fiduciary duty against the Syndicator Defendants.

The Complaint sets forth viable claims of breach of fiduciary duties against the Syndicator Defendants, including the breach of the duty of loyalty and care set forth in Haw. Rev. Stat. § 428-409.

The Complaint sets forth in paragraphs 608-615 for Count LVI, paragraph 625-633 for Count VVII, and paragraphs 634-636 for Count LVII, the conduct the Syndicator Officers and Directors engaged in in breach of their fiduciary duties.

In summary, the Syndicator Officers and Directors, participated in, directed and authorized the Debtor affairs.   In particular, they perpetrated a fraudulent investment scheme, engaged in self-dealing and improperly overstated the value of the Debtor's assets, expanded and understated the Debtor's debt, prolonging the corporate life of the Debtor, encumbered and distributed the

Debtor's assets (including misusing and converting its cash) to ROHI in the ROHI Note payoff, KNG in the KNG Note payoff, and Corridor Capital and SPB Management in the Advisory Fees, who in turn distributed it to its own related companies, or officers and directors. Further, by prolonging the Debtor's corporate life, the Syndicator Officers and Directors caused the Debtor to pay the debts of TrashMasters and make payments to insiders, including KNG, ROHI, Corridor Capital and SPB Management, all to the detriment of the Debtor's creditors, including the C&C (and the taxpayers of Honolulu) which is owed $3.1M.

This conduct was in direct violation of Haw. Rev. Stat. § 428-409(b), which sets forth the duty of loyalty of TrashMasters to hold as "*trustee*" for the Debtor any property, profit, or benefit derived by TrashMasters in the conduct of the Debtor's business, or derived from TrashMasters' use of the Debtor's property. This conduct was also in direct violation of Haw. Rev. Stat. § 428-409(b), which required TrashMasters to refrain from self-dealing, or dealing with the Debtor in the conduct of the Debtor's business, or as, or on behalf of, a party having an interest adverse to the Debtor.

Similarly, this conduct was in direct violation of Haw. Rev. Stat. § 428-409(c), which sets forth the duty of care of TrashMasters in the conduct of the Debtor's business, and provides that TrashMasters must refrain from engaging

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 92 of 122

in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

Further, once the Debtor became insolvent, TrashMasters and the other Syndicator Defendants had interests adverse to the Debtor. <u>See</u> <u>High Strength Steel</u>, 269 B.R. at 569; <u>The California Feed Co. v. The Club Stables Co.</u>, 10 Haw. 209, 212 (1898) (when "a corporation is hopelessly insolvent and unable to carry out objects for which it is created, the directors must be regarded as trustees of the property for the benefit of the creditors and stockholders, and it is then their duty to wind up the affairs of the corporation for the benefit of all concern").

Finally, based upon the foregoing, the trust fund doctrine, and the doctrine of corporate veil piercing/alter ego, the Complaint adequately sets forth claims for breach of fiduciary duty as against TrashMasters, each of the Syndicator Officers and Directors, each of the Corridor Entities and each of the SPB Entities. The Trustee, however, desires to bring additional claims against the Syndicator Defendants for breach of its duty of care in understating the Debtor's debts and overvaluing the Debtor's assets, and hereby requests leave of Court to do so.

### 3. The Debtor and TrashMasters were insolvent, thus, ratification of any avoidable transfer gives rise to a breach of a fiduciary duty claim.

The Syndicator Defendants contend that the Debtor was solvent and that the complained of transfers and conduct were "ratified". The Debtor, however, was <u>not</u> solvent and it is well established that once the Debtor and TrashMasters were insolvent, they owed a duty to the Debtor and its creditors. <u>See High Strength Steel</u>, 269 B.R. at 569; <u>Mansha</u>, 2017 WL 3659163, at *9-11. Thus, ratification of any avoidable transfer while the Debtor or TrashMasters was insolvent gives rise to a breach of fiduciary duty claim and serves to implicate all those who were involved.

### G. The Conspiracy Claims (Counts LVIII, LIV, and LVIII) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Conspiracy to Commit Fraudulent Conveyances, Transfers, and Breaches of Fiduciary Duties Lack Merit

The civil conspiracy claims to commit fraudulent conveyances (Count LII), fraudulent transfers (Count LIV), and breach of fiduciary duties (LVII) are valid and adequately pled. The Syndicator Defendants, however, contend that (i) the Trustee lacks standing to bring the civil conspiracy claims, (ii) the civil conspiracy to commit fraudulent transfers claims are not permitted under the Bankruptcy Code, and (iii) the Complaint does not sufficiently allege the elements of the civil conspiracy to commit fraudulent conveyances and transfers and to

commit breach fiduciary duties claims. Motion at 81-85. Each of these contentions lacks merit.

### 1. The Trustee has standing to bring civil conspiracy claims on behalf of the Debtor.

The Syndicator Defendants erroneously contend that the Trustee lacks standing to bring the civil conspiracy claims because the Debtor was one of the co-conspirators and therefore the doctrine of *in pari delicto* applies. The doctrine of *in pari delicto* is inapplicable here because the Debtor is not an alleged co-conspirator. See Lewis v. Brobeck (In re Brobeck), No. 03-21784, 2008 WL 5650052, at *3 (Bankr. E.D. Tenn. Nov. 6, 2008) ("In the instant case, there is no allegation that the parties were co-conspirators in the same wrongdoing or that Plaintiff participated or cooperated in perpetuating the Debtors' alleged fraud such that the Plaintiff bears equal responsibility for the losses that are the subject of this action. To the contrary, the Plaintiff alleges in the amended complaint that he was the victim of the Debtors' fraudulent schemes[.]").

The Trustee's claims, which incorporates by reference other paragraphs of the Complaint, makes the following allegations with respect to civil conspiracy to commit fraudulent conveyances and transfers:

> 573. TrashMasters and the Officers and Directors were familiar with, had knowledge of, controlled, participated in, were responsible for, and directed the Debtor's affairs, including the Debtor's financial affairs.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed   03/19/19   Page 95 of 122

574. TrashMasters and the Officers and Directors had direct knowledge of and responsibility for the Debtor's financial condition and insolvency.

**575. TrashMasters and the Officers and Directors' conduct caused the Debtor's insolvency.**

…

588. The Debtor and the Debtors' creditors' [sic] suffered damages resulting from the fraudulent conveyances that are traceable to the conspiracy.

…

605. TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities, conspired to breach their fiduciary duties to the Debtor, including their duties as set forth in Counts LV-LVII.

606. TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities benefited from said fraudulent transfers and breach of fiduciary duties.

607. The Debtor and the Debtor's creditors' suffered damages resulting from the fraudulent transfers that are traceable to the conspiracy, which damages, together with applicable interest, shall be determined by the Court.

Complaint ¶¶ 573-575, 588, 590-592, 605-607 (emphasis added).

The Syndicator Defendants rely upon Giacometti v. Arton Bermuda Ltd. (In re Sia), 349 B.R. 655 (Bankr. D.Haw. 2006), for their *in pari delicto* defense. In Sia, the trustee sued the debtor, Sia, for among other things, conspiracy to convert property of the estate. The trustee specifically alleged in the complaint that the debtor was a participant in the conspiracy: "Sia needed the assistance of a bank and bank officials to create the various accounts necessary to his concealment

scheme." <u>See</u> <u>Id</u>. at 647. Because Sia, the debtor, was one of the alleged conspirators, the court applied the doctrine of *in pari delicto* and dismissed the trustee's conspiracy claim.

Similarly, in another case which the Syndicator Defendants cite, <u>In re Abell</u>, the trustee expressly alleged that the debtor "conspired to engage in unlawful, tortious, and fraudulent schemes and enterprises for the purposes of thwarting [the debtor's] creditors and preserving [the debtor's wealth]." <u>See Schlossberg v. Abell (In re Abell)</u>, 549 B.R. at 665 (Bankr. D. Md. 2016).

The Debtor in this case was not a co-conspirator and was never alleged to be one in the Complaint. Instead, the Trustee alleged that TrashMasters, and the Officers and Directors, *caused* the Debtor's insolvency. Complaint ¶ 575. Because TrashMasters and the Officers and Directors had knowledge of the Debtor's insolvency and lacked good faith in accepting the transfers such as the Advisory Fees, the Trustee's claims for conspiracy stand. <u>See Schmidt v. Fidelity National Title Insurance Co.</u>, Civ. No. 07-00356 HG-LEK, 2009 WL 10676787, at *9 (D. Haw. Sept. 30, 2009).

To the extent the Syndicator Defendants additionally argue that their actions were imputed to the Debtor, they are incorrect. "An insider's knowledge or conduct can only be imputed to the corporate entity when that conduct was done for the benefit of the corporation. An exception to the general rule sensibly applies

115347_9.docx

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 97 of 122

when the agent's interests become adverse to the principal." <u>Audette ex rel.</u> <u>Concepts Am., Inc. v. Kasemir (In re Concepts Am., Inc.)</u>, No. 14 B 34232, 2018 WL 1174900, at *5 (Bankr. N.D. Ill. Mar. 1, 2018) (internal quotation marks and citations omitted). Here, the Syndicator Defendants acted adversely and entirely in their own interests in looting the Debtor. As a result, their actions cannot be imputed to the Debtor and *in pari delicto* does not apply.

Moreover, the "sole actor" exception, which is an exception to "adverse interest" exception also does not apply. The sole actor rule applies only "where the principal and agent are one and the same." <u>See</u> <u>Rosen v. Gemini Title</u> <u>& Escrow (In re Hoang)</u>, 449 B.R. 850, 859 (Bankr. D. Md. 2011). However, the sole actor rule is intended to protect innocent third parties such as the estate's creditors. <u>In re Concepts Am., Inc.</u>, 2018 WL 1174900, at *6; <u>see also</u> <u>In re</u> <u>Hoang</u>, 449 B.R. at 859 (denying to apply the "sole actor" exception where the creditor was an innocent third party) (discussing <u>Grubin ex rel. Food Mgt. Grp. v.</u> <u>Rattet (In re Food Mgt. Grp.)</u>, 380 B.R. 677 (Bankr.S.D.N.Y. 2008) (same)). TrashMasters and the Syndicator Officers and Directors are not innocent third parties that are entitled to such protection.

Thus, based on the foregoing, the Trustee has standing to bring the civil conspiracy claims on behalf of the Debtor, and the claims are valid.

### 2. The Trustee is permitted to bring civil conspiracy to commit fraudulent conveyances and transfers claims.

Similarly, the Trustee also has standing to bring a civil conspiracy to commit fraudulent conveyances and transfers claim. The Syndicator Defendants contend that no such claim exists as a matter of federal law under the Code. <u>See</u> Motion at 82-83. However, the cases they rely upon are distinguishable and only address a trustee's ability to bring civil conspiracy and aiding and abetting claims on behalf of *creditors* under sections 544 and 550 of the Code.[30]

Even if it is true that a trustee may not bring such claims on behalf of the *creditors*, bankruptcy courts have permitted a trustee to bring such claims on behalf of the *debtor* pursuant to state law. <u>See</u> <u>Drabkin v. L&L Constr. Assocs. (In re Latin Inv. Corp.)</u>, 168 B.R. 1, 5 (Bankr. D.D.C. 1993) (holding that the "trustee has standing to sue defendants for any damages caused by their participation as co-conspirators or as aiders and abettors in the debtor's principals' fraudulent, as opposed to negligent, breaches of fiduciary duty to the debtor"); <u>Paloian ex rel.</u>

---

[30] The Syndicator Defendants cite to a string of cases in footnote 52 to support their position that there is no claim against conspirators who did not actually receive the property. Contrary to the Syndicator Defendants' argument, states have allowed conspiracy claims for fraudulent conveyances and transfers against those that neither received nor benefitted from such conveyances and transfers. <u>See</u> <u>e.g.</u>, <u>McElhanon v. Hing</u>, 151 Ariz. 403, 728 P.2d 273, 278 (1986); <u>In re Rest. Dev. Grp., Inc.</u>, 397 B.R. at 897; <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 876 A.2d 253, 263 (2005); <u>Dalton v. Meister</u>, 71 Wis.2d 504, 239 N.W.2d 9, 18 (1976).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 99 of 122

Debtor's Estate v. Greenfield (In re Rest. Dev. Group, Inc.), 397 B.R. 891, 896 (Bankr. N.D. Ill. 2008) (denying a motion to dismiss a civil conspiracy to commit actual fraud claim where the trustee supplied the necessary who, what, when, how and why of the alleged fraud and clearly alleged the conspiracy count, which is recognized under state law); Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Services, Inc.), 384 B.R. 66, 76 (Bankr. D. Del. 2008) (finding that the trustee's allegations were sufficiently detailed to state a claim for conspiracy); In re Concepts Am., Inc., 2018 WL 1174900, at *9-10 (denying a motion to dismiss a civil conspiracy to commit fraud claim where the trustee's allegations state a plausible claim for relief).

Hawaii recognizes the cause of action for civil conspiracy to commit fraudulent conveyances and transfers. See Section G.3. below. Furthermore, the Trustee acquired "all interests of the Debtor" as of commencement of the bankruptcy case. See 11 U.S.C. § 541. Thus, the conspiracy to commit fraudulent conveyances and transfers claims belongs to the Debtor and, the Trustee has standing to bring claims that once belonged to the Debtor.

### 3. The Trustee has sufficiently pled the civil conspiracy to commit fraudulent conveyances and transfers and civil conspiracy to commit breaches of fiduciary duties claims.

The Trustee has sufficiently pled the claims for civil conspiracy to commit fraudulent conveyances and transfers and breach of fiduciary duties.

In Hawaii, civil conspiracy is defined as a "combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawaii 224, 252, 982 P.2d 853, 881 n. 28 (1999); Doleman v. Meiji Life Ins. Co., 727 F.2d 1480, 1482 n.3 (9th Cir. 1984).

The Trustee has alleged in the Complaint that the Corridor Entities are controlled by the same group of Corridor Officers and Directors and that the SPB Entities are controlled by the same group of SPB Officers and Directors. Together the Corridor parties and the SPB parties, along with other Officer and Director defendants structured and controlled the affairs of both TrashMasters and the Debtor. Among other things, they directed the fraudulent conveyances and transfers (which the Trustee seeks to avoid) of the Debtor's property to themselves and others, to satisfy TrashMasters' debt, and breached their fiduciary duties to the Debtor. See Lum v. Kwong, 39 Haw. 532, 538 (1952). These underlying claims for fraudulent conveyances and transfers, as well as breach of fiduciary duties, are sufficiently pled in the Complaint, and the civil conspiracy aspect need not be pled with further particularity. See Sections III.C. and III.F. above; see also FirstMerit Bank, N.A. v. Hosseini, No. 14 C 8749, 2015 WL 4243484 at *10 (N.D. Ill. July 13, 2015) (the trustee need not plead with specificity the civil conspiracy claims

where underlying fraudulent transfer and conveyance claims pled with particularity); Thus, the allegations in the Complaint are valid and sufficiently place the Syndicator Defendants on notice of their conspiracy.

For the foregoing reasons, the Trustee's civil conspiracy claims are valid, and the Syndicator's Defendants' contentions lack merit.

## H. The Aiding and Abetting Breach of Fiduciary Duties Claim (Count LVIX) is Adequately Pled, and the Syndicator Defendants' Contentions Lack Merit.

The Syndicator Defendants contend in the Motion that because the Trustee's breach of fiduciary duty claims fail, the Trustee's aiding and abetting breach of fiduciary duties claims fails must also fail. Motion at 96-98. This contention lacks merit.

As previously discussed in Section III.F. above, the Trustee has adequately pled the breach of fiduciary duty claims. To the extent certain defendants are not held liable for those breaches, and those defendants include any of the Syndicator Defendants, then those "not liable" Syndicator Defendants aided and abetted the "liable" Syndicator Defendants in breaching their fiduciary duties. This is so because the Corridor parties and the SPB parties were each single enterprises that together formed a fraudulent investment scheme which facilitated and directed the transfers that the Trustee seeks to avoid in the Complaint and give rise to the Trustee's breach of fiduciary duty claims.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 102 of 122

Under Hawaii law, the elements of an aiding and abetting a breach of fiduciary duties claim are as follows: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." Molokai Services Inc. v. Hodgins, No. CAAP-15-0000464, 2018 WL 1083050, at *8 (Haw. Ct. App. Feb. 28, 2018).

This Court has explained in Sia that:

> The essence of liability for aiding and abetting an intentional tort is that the defendant—
>
> (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

Sia, 349 B.R. at 656 (quoting Neilson v. Union Bank of California, N.A., 290 F.Supp.2d 1101, 1118 (C.D. Cal. 2003)).

In the instant case, the Complaint alleges sufficient facts to establish that the Syndicator Defendants (who did not directly commit the breaches of fiduciary duty to the Debtor) had actual knowledge of the wrong doing, i.e., the other Syndicator Defendants' breach of their fiduciary duties to the Debtor. See footnote 5; see also Neilson, 290 F.Supp.2d at 1118-1122 (finding that the complaint adequately pled the bank's aider and abettor, knowledge of the breach of

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 103 of 122

duty claim where the "complaint details the manner in which the Ponzi scheme operated, describes Slatkin's fraudulent transactions, and outlines the [b]ank's involvement in these activities."). The Trustee specifically alleged that the "Corridor Entities and the SPB Entities gave substantial assistance or encouragement to the Officers and Directors to breach their fiduciary duties in Counts LV-LVII." <u>See</u> Complaint ¶ 641. The Trustee also incorporated by reference other allegations in the Complaint which detailed the Syndicator Defendants' knowledge and direction of, and participation in, the acts which they knew would, and in fact did, constitute a breach of fiduciary duties to the Debtor. Complaint ¶¶ 185-188 and 199-203. Further, the Syndicator Defendants directly benefited from their actions, both by paying themselves Advisory Fees and paying the debts of TrashMasters with the Debtor's funds. <u>See Neilson</u>, 290 F.Supp.2d at 1126-1132 (finding that the allegations of the complaint adequately alleged the substantial assistance element and that financial gain is evidence of knowledge, substantial assistance, or both, in an aiding and abetting breach of fiduciary claim).

Thus, the Trustee has sufficiently alleged a claim for aiding and abetting breach of fiduciary duties in the Complaint and the claim should not be dismissed.

I.      **The Alter Ego Claims (Count LX) are Adequately Pled and the Syndicator Defendants' Contentions Regarding the Alter Ego Claim Lack Merit.**

The Syndicator Defendants generally contend in their Motion that (i) the Complaint does not adequately plead unity of interest and ownership or inequity, and (ii) reverse alter ego is not recognized in Hawaii. Motion at 98-101. These contentions lack merit for the following reasons.

<u>First</u>, the Complaint adequately pleads unity of interest and ownership among the Syndicator Defendants. Relevant allegations in the Complaint, which the Syndicator Defendants conveniently omit from the Motion, provide as follows:

> 36.      Together, the SPB Entities consist of a private equity firm that operates one or more investment funds managed by, among others, Mr. Pressberg, Mr. Bulloch, and Mr. Bass, and also provides certain advisory services.
> 37.      Together, the Corridor Entities consist of a private equity firm that operates one or more investment funds managed (at one time or another) by, among others, Mr. Enenstein, Mr. Greulich, Mr. Monnier, and Ms. Davis, and also provides certain advisory services.
> 38.      The Corridor Entities and the SPB Entities are for profit entities that routinely invest in and engage in the acquisition, sale, and management of companies.
> …
> 89.      Corridor Capital is an affiliate of Corridor TrashMasters and the other Corridor Entities.
> 90.      SPB Management is an affiliate of SPB Waste and the other SPB Entities.

Complaint ¶¶ 36-38 and 89-90.  In addition, as to each of the individual Syndicator Officers and Directors, the Complaint sets forth their affiliation with the Corridor Entities or the SPB Entities.  Complaint ¶¶ 14-20.

Other allegations in the Complaint which the Syndicator Defendants conveniently omit regarding the relationship of the parties and their wrongful conduct, include the following:

> 584.  The Officers and Directors also served in management roles for their respective Corridor Entities and SPB Entities, certain of which entities are parties to the Advisory Agreement.
>
> 585.  The Officers and Directors also served in management roles for their respective Corridor Entities and SPB Entities, certain of which entities had membership interests in TrashMasters, and an interest in the Debtor.
>
> 586.  The Officers and Directors were responsible for and knew of, and therefore the Corridor Entities and the SPB Entities were also responsible for, and knew of, participated in, directed, and/or approved of the fraudulent conveyances set forth in Counts X, XXIV, XXXI, XXXVIII, and XLV.
>
> 587.  An agreement existed between and among TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities to make the fraudulent conveyances set forth in Counts X, XXIV, XXXI, XXXVIII, and XLV.
>
> …
>
> 603.  The Officers and Directors was [sic] responsible for, knew of, and therefore the Corridor Entities and the SPB Entities also knew of, participated in, directed, and/or approved of the fraudulent transfers set forth in Counts I-IX, XI-XXIII, XXV-XXX, XXXII-XXXVII, XXXIX-XLIV, and XLVI-LII.

604. An agreement existed between and among TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities to make the fraudulent transfers set forth in Counts I-IX, XI-XXIII, XXV-XXX, XXXII-XXXVII, XXXIX-XLIV, and XLVI-LII.

…

638. <u>The Officers and Directors were also principals, managers, and directors of the affiliated Corridor Entities and SPB Entities</u>.

639. The Corridor Entities and the SPB Entities were also advisors to the Debtor and TrashMasters.

640. TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities knew the Officers and Directors' conduct constituted a breach of the Officers and Directors' fiduciary duties in Counts LV-LVII.

641. TrashMasters, the Corridor Entities and the SPB Entities gave substantial assistance or encouragement to the Officers and Directors to breach their fiduciary duties in Counts LV-LVII.

642. To the extent individual Officers and Directors were not officers and/or directors of the Debtor, said individual Officers and Directors gave substantial assistance or encouragement to the other Officers and Directors, TrashMasters, the Corridor Entities, and/or the SPB Entities to breach their fiduciary duties in Counts LV-LVII.

Complaint ¶¶ 584-587, 603-604, 638-642 (emphasis added).

All of these allegations were incorporated by reference into the alter ego Count LX. Complaint ¶ 644 ("Plaintiff incorporates by reference and hereby realleges the allegations contained in paragraphs 1 through 643."). These allegations are sufficient to support an alter ego claim under both Delaware and Nevada law, as well as Hawaii law.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 107 of 122

Second, the Trustee is permitted to bring reverse alter ego claims. The "law of the state in which an entity is incorporated generally govern the questions whether a court may pierce an entity's veil". Sky Cable, LLC v. DIRECT TV, 886 F. 3d 375, 386 (4th Cir. 2018), citing First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 621 (1983) ("as a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation").

In the instant case, TrashMasters, which the Trustee alleges is liable for all fraudulent conveyances and transfers (as the party that benefitted from transfers), as well as the breach of fiduciary duties, is a Delaware corporation. The Corridor Entities and the SPB Entities are either Nevada or Delaware companies.

Nevada recognizes the reverse alter ego also referred to as the reverse veil piercing doctrine in some jurisdictions. LFC Marketing Grp, Inc. v. Loomis, 116 Nev. 896, 903-904 (Nev. 2000) ("reverse piercing is appropriate in those limited instances where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted").

The Fourth Circuit has also determined that Delaware courts would recognize reverse alter ego. Sky Cable, 886 F.3d at 387-388 ("Delaware courts have signaled some willingness to apply a theory of reverse veil piercing.") (citing

Spring Real Estate, LLC v. Echo/RT Holdings, LLC, C.A. No. 7994-VCN, C.A. No. 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016)); Cancan Development, LLC v. Manno, C.A. No. 6429-VCL, 2015 WL 3400789, at *22 (Del. Ch. May 27, 2015); see also ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 317 (S.D. Tex. 2013) (district court predicting that a Delaware court would adopt the doctrine of reverse alter ego or reverse veil piercing in a bankruptcy case to find two companies operated as a single economic unit).

Thus, as the Nevada courts recognize reverse alter ego and other courts have determined that Delaware would recognize a reverse alter ego claim, the Syndicator Defendants' contention that the Trustee cannot assert reverse alter ego or reverse veil piercing claims fails.

**J.     The Unjust Enrichment Claim (Count LXI) is Adequately Pled, and the Syndicator Defendants' Contentions Regarding the Alternative Unjust Enrichment Claim Lack Merit.**

The Syndicator Defendants maintain that the alternative Count LXI for unjust enrichment must be dismissed on the basis that (i) it is an equitable remedy and the Trustee has alleged other causes of action, (ii) the avoidance of the Advisory Fees relates to a contract, the Advisory Agreement, and (iii) the Complaint does not sufficiently allege what was conferred upon the Syndicate Defendants and which they unlawfully retained.  Motion at 103-104.

Dismissal of the unjust enrichment claim at this stage of the case is premature. "A valid claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." Porter v. Hu, 116 Haw. 42, 169 P.3d 994 (Haw. App. 2007) (quoting Durette v. Aloha Plastics Recycling, Inc., 105 Hawaii 490, 504, 100 P.3d 60, 74 (2004). There has been no actual determination that the legal remedies sought in the Complaint are adequate, or inadequate, and Fed. R. Civ. P. 8(d)(2) permits the pleading of claims in the alternative.

Further, this is not a breach of contract case; this is an avoidance action with additional claims of conspiracy, alter ego and unjust enrichment. Further, the Porter case to which the Syndicator Defendants cite actually supports the validity of the Trustee's unjust enrichment claim.[31] See Porter, 116 Haw. 42.

---

[31] In Porter, a dispute arose among insurance agents and their former employer after the agents gave notice they were terminating their contract on a certain date and their former employer terminated their contract sooner and retained the books of business the insurance agents had generated. The insurance agents alleged, among other things, claims for breach of contract, tortious interference and unjust enrichment. The jury awarded the insurance agents $1 in breach of contract damages and a substantial unjust enrichment award of $567,104.50, which the insurance agents elected. Porter, 116 Hawaii at 58, 169 P.3d at 1010. The employer appealed and asserted the employment contract between the parties furnished the insurance agents adequate redress, thus, the unjust enrichment claim and therefore damages was inappropriate. The Hawaii Appellate court disagreed with the employer, finding that neither the employment contract, nor the tort claims were adequate remedies and the insurance agents were

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 30  Filed  03/19/19  Page 110 of 122

Moreover, paragraph 654 of the Complaint details the amount as "the value of the transfer(s) and/or obligation(s) by which they benefitted, on account that they were unjustly enriched". This adequately sets forth the amount sought under the unjust enrichment claim. (The claim, however, should also include the damages the Debtor suffered due to the Syndicator Defendants' breach of their fiduciary duties, which the Trustee seeks leave to amend and include in the Complaint.)

Thus, the Syndicator contentions regarding the Trustee's unjust enrichment claim lack merit, and the unjust enrichment claim (Count LXI) should not be dismissed.

**K.     The Dismissal of Claims as to Other Defendants Should be Denied as the Claims are Properly Pled and Plausible and No Legal Briefing Has Been Submitted With Respect to the Additional Defendants.**

To the extent the Syndicator Defendants seek dismissal of the claims made against other defendants in the case, it lacks standing to do so. Although ROHI, KNG, and Mr. Gourlay have filed joinders to the Motion, they fail to brief the matters for the Trustee to adequately respond, and therefore to the extent they seeks dismissal of any claims against them, that request should be denied, at this time, and the parties required to file separate motions.

---

entitled to the unjust enrichment award of damages. <u>Porter</u>, 116 Hawaii at 56, 169 P.3d at 1008.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 30   Filed  03/19/19   Page 111 of 122

Similarly, the Gourlay Defendants further gratuitously state in their joinder that they are entitled to dismissal of all remaining claims barred by the statute of limitations. KNG Joinder at 3. This contention is without merit.

A motion to dismiss based on the running of the statute of limitations period may be granted only if the allegations of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. Moddha Interactive, 92 F. Supp. 3d at 988 (quoting Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995)). A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. Id. at 1207.

The claims of the IRS, the State of Hawaii, and the C&C have not been disputed. The IRS Claim is for the years 2010 through 2016. See Exhibit "16". The C&C has been a trade creditor of the Debtor since inception. Based upon 11 U.S.C § 544(b), and the 10 year look back period for the IRS alone, the Trustee's claims are not barred by the statute of limitations.

In any event, the Gourlay Defendants have provided no legal basis upon which the Court should dismiss the claim against them based on the statute of limitations alone. For this additional reason, their request should be denied at this time, and the Gourlay Defendants required to file a motion.

**L.**     **The Trustee Requests Leave to Amend the Complaint**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant the Trustee leave to amend.  Under Fed. R. Civ. P. 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Id. at 1130 (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

The Ninth Circuit has held that in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.  Cook, Perkiss and Liehe, Inc. v. N. Cal.Collection Servs., Inc., 911 F.2d 242, 247 (9th Cir. 2007).  The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to offer evidence to support the claims.  Diaz v. Int'l Longshore and Warehouse Union, Local 13, 474 F.3d 1202, 1205 (9th Cir. 2007).

To the extent the Court determines that the Complaint is insufficient, the Trustee respectfully requests leave to amend the Complaint to allege the additional facts summarized herein and implicitly set forth in the Complaint, and to amend certain claims as set forth in Exhibit "14".

In addition, the Trustee also requests leave to allege additional claims that relate back to the matters raised herein and set forth in the Complaint. Said claims relate back as the Complaint put the Syndicator Defendants as well as the other defendants in the case on notice of the "particular transaction or set of facts" that the Trustee believes to have caused the complained of injury. Santana v. Holiday Inns, Inc., 686 F.2d, 736, 739 (9th Cir. 1982) ("Once the defendant is in court on a claim arising out of a particular transaction or set of facts, he is not prejudiced if another claim, arising out of the same facts, is added."); Television Events & Mktg., Inc. v. AMCON Distributing Co., 484 F. Supp. 2d 1124 (D. Haw. 2006) ("a court should consider theories supported by alleged facts even if they are not explicitly plead as long as the defendants have notice of the issues in the case"); 15 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d. ed. 2018) ("Many federal courts have concluded that the complaint should not be dismissed merely because the plaintiff's allegations do not support the legal theory he or she intends to proceed on, since the district court is under a duty to examine

the complaint to determine if the allegations provide for relief on any possible legal theory").

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Syndicator Defendants' Motion.  In the alternative, the Trustee requests that the Court, pursuant to Fed. R. Civ. P. 15(a), grant the Trustee leave to amend the Complaint.

DATED: Honolulu, Hawaii, March 19, 2019.

/s/  Simon Klevansky
SIMON KLEVANSKY
ALIKA L. PIPER
ELAINE T. CHOW
CARISA LIMA KA'ALA DUFFY
Attorneys for Plaintiff/Trustee Dane S. Field

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ROLLOFFS HAWAII, LLC,<br><br>     Debtor. | Case No. 16-01294<br>(Chapter 7) |
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>     Plaintiff,<br><br>    v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH; KENNETH M. PRESSBERG; KRISTIAN GOURLAY; DOUGLAS L. ASAY; DOUGLAS D. ASAY; CHARLES E. LEONARD; BRIAN COLBECK; ROLLOFFS HAWAII, INC.; THE KNG GROUP, LLC; COLBECK CONSULTING LLC; JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE ENTITIES 1-50,<br><br>     Defendants. | Adversary Proceeding No. 18-90035<br><br>**DECLARATION OF SIMON KLEVANSKY** |

115347_9.docx

## DECLARATION OF SIMON KLEVANSKY

I, SIMON KLEVANSKY, declare under penalty of perjury, that:

1.     I am a partner with the law firm Klevansky Piper, LLP ("KP Law"), attorneys for Plaintiff Trustee Dane S. Field ("Plaintiff" or "Trustee"), the duly-appointed bankruptcy trustee of the estate of ROLLOFFS HAWAII, LLC ("Debtor").

2.     I am competent to testify to the matters set forth herein and I make this declaration based upon my personal knowledge, and a review of certain documents and records in this case.

3.     The Trustee and KP Law, with the assistance of its hired professionals, took custody of the Debtor's records and obtained certain copies of the Debtor's electronic records in the ordinary course of their respective businesses, in their capacities as a bankruptcy trustee and counsel for a bankruptcy trustee.  These records have been continuously maintained by KP Law (and its hired professionals) in the ordinary course of its law practice.

4.     I make this declaration in support of Plaintiff's Opposition to Motion to Dismiss, Filed on February 15, 2019 (the "Opposition").

5.     Attached to the Opposition as Exhibit "1" is an organization chart that KP Law prepared based on information available to it at this time and is

furnished for informational purposes only, as the information contained therein has not be fully verified and may contain errors and omissions.

      6.     Attached to the Opposition as <u>Exhibit "2"</u> is a true and correct copy of that certain (i) TrashMasters LLC, Fourth Amended & Restated Limited Liability Company Agreement, effective as of February 1, 2011, which the Corridor Entities (as defined in footnote 1 of the Opposition) produced to the Trustee and is bates stamped COR0031-84, and (ii) TrashMasters, LLC Amended & Restated Limited Liability Company, effective May 1, 2009, which the SPB Entities (as defined in footnote 1 of the Opposition) produced to the Trustee and is bates stamped SPB-001181-1234.

      7.     Attached to the Opposition as <u>Exhibit "3"</u> is a true and correct copy of that certain Declaration of Ari Bass in Support of: (I) Opposition to Trustee's Motion to Compel Responses to the Subpoenas of Corridor Capital, LLC and SPB Partners and (II) Reply to Trustee's Opposition to Motion to Quash, or in the Alternative for Protective Order, filed on July 6, 2018, in the main bankruptcy case, Case No. 16-01294 [Dkt #431].

      8.     Attached to the Opposition as <u>Exhibit "4"</u> is a true and correct copy of that certain Declaration of Craig Enenstein in Support of: (I) Opposition to Trustee's Motion to Compel Responses to the Subpoenas of Corridor Capital, LLC and SPB Partners; and (II) Reply to Trustee's Opposition to Motion to Quash, or in

the Alternative for Protectove [sic] Order, filed on July 6, 2018, in the main bankruptcy case, Case No. 16-01294 [Dkt #430].

9.    Attached to the Opposition as <u>Exhibit "5"</u> is a true and correct copy of that certain (i) Credit Agreement by and among Rolloffs Hawaii, LLC and TrashMasters Arizona, LLC collectively, as Borrowers, and Union Bank, N.A., as Lender, dated May 1, 2009, which is bates stamped SPB-001990-2074; (ii) First Amendment to Credit Agreement, dated July 1, 2009, which is bates stamped MUB1352-1356; (iii) Second Amendment to Credit Agreement, dated August 12, 2010, which is bates stamped SPB-002108-2123; (iv) Third Amendment to Credit Agreement, dated November 29, 2011,which is bates stamped SPB-002148-2155; and (v) Fourth Amendment to Credit Agreement, dated May 18, 2012, which is bates stamped MUB00533-539 all of which either the SPB Entities or Union Bank produced to the Trustee.

10.    Attached to the Opposition as <u>Exhibit "6"</u> is a true and correct copy of that certain Asset Purchase Agreement, dated May 1, 2009, among TrashMasters, LLC, Arizona Disposal Services, LLC, Eagle Hauling, Inc., Haul-A-Way, LLC, and certain individual members of the Sellers, which the SPB Entities produced to the Trustee and which is bates stamped SPB00553-602.

11.    Attached to the Opposition as <u>Exhibit "7"</u> is a true and correct copy of that certain Asset Purchase Agreement, dated August 13, 2010, among

TrashMasters, LLC, The KNG Group, LLC, Hawaii Pacific Hydraulics, Inc., and the individual Member of the Sellers, which the SPB Entities produced to KP Law and which is bates stamped SPB00089-223.

12.     Attached to the Opposition as Exhibit "8" is a true and correct copy of that certain TrashMasters, LLC Promissory Note, dated May 1, 2009, in favor of Rolloffs Hawaii, Inc. in the amount of $1,000,000.00, which KP Law obtained from the Debtor's records.

13.     Attached to the Opposition as Exhibit "9" is a true and correct copy of that certain email dated April 27, 2009 from Tom Berry of Green Hasson & Janks, LLP, which attaches that certain "TrashMasters LLC Forecasted Financial Statements First Five Years of Operations", and which email the SPB Entities produced to the Trustee.

14.     Attached to the Opposition as Exhibit "10" is that certain document entitled "Colbeck Consulting Wires", which KP Law prepared and lists $417,869.88 in payments from the Debtor to Colbeck Consulting, during the time period January 21, 2015 through October 31, 2016.  The list only contains the payments that KP Law has identified thus far from the Debtor's records and may not include all payments made.

15.     Attached to the Opposition as Exhibit "11" is a true and correct copy of that certain email string dated October 7, 2018, from Cia H. Mackle of the

law firm Pachulski Stang, Ziehl & Jones LLP, which law firm represents the Syndicator Defendants (as defined in footnote 1 of the Opposition).

16. Attached to the Opposition as <u>Exhibit "12"</u> is a true and correct copy of Plaintiff Dane S. Field's First Request for Production of Documents to Defendant Craig Enenstein; Exhibit "1", dated February 4, 2019.

17. Attached to the Opposition as <u>Exhibit "13"</u> is a true and correct copy of Plaintiff Dane S. Field's First Request for Production of Documents to Defendant SPB Management, LLC; Exhibit "1", dated February 4, 2019.

18. Attached to the Opposition as <u>Exhibit "14"</u> is a true and correct copy of that certain document entitled "Summary of Counts" which KP Law prepared to summarize the claims made in the Complaint and to identify potential amendments thereto.

19. Attached to the Opposition as <u>Exhibit "15"</u> is a true and correct copy of that certain Proof of Claim of the City and County of Honolulu (Claim No. 13, BK No. 16-01294), filed on February 14, 2017.

20. Attached to the Opposition as <u>Exhibit "16"</u> is a true and correct copy of that certain Proof of Claim of the Department of the Treasury – Internal Revenue Service (Claim No. 15, BK No. 16-01294), filed on March 16, 2018.

I, SIMON KLEVANSKY, do declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawaii, March 19, 2019.


/s/  Simon Klevansky
SIMON KLEVANSKY