Kenneth H. Brown (CA State Bar No. 100396)
Cia Mackle (FL State Bar No. 26471)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Phone: (415) 263-7000
Fax: (415) 263-7010
Email: kbrown@pszjlaw.com

- and -

Chuck C. Choi
Allison A. Ito
CHOI & ITO
Topa Financial Center
700 Bishop Street, Suite 1107
Honolulu, HI 96813
Phone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com

Attorneys for TrashMasters, LLC; Corridor
Capital, LLC; Corridor Capital Advisors, LLC;
Corridor TrashMasters, L.P.; SPB Management,
LLC; SPB Waste, LLC; SPB Capital GP, LLC;
SPB Capital Partners, L.P.; SPB Partners, LLC;
Craig Enenstein; L. Geoffrey Greulich; Edward A.
Monnier; Jessamyn Davis; Ari D. Bass; Scott R.
Bulloch; Kenneth M. Pressberg

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | No. 16-01294 |
| | (Chapter 7) |
| ROLLOFFS HAWAII, LLC, | |
| Debtor. | |

| | |
|---|---|
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>Plaintiff,<br><br>v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH; KENNETH M. PRESSBERG; KRISTIAN GOURLAY; DOUGLAS L. ASAY; DOUGLAS D. ASAY; CHARLES E. LEONARD; BRIAN COLBECK; ROLLOFFS HAWAII, INC.; THE KNG GROUP, LLC; COLBECK CONSULTING LLC; JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE ENTITIES 1-50,<br><br>Defendants. | Adv. Pro. No. 18-90035<br><br>**REPLY OF DEFENDANTS TRASHMASTERS, LLC; CORRIDOR CAPITAL, LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH AND KENNETH M. PRESSBERG TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>**[Related Docket Nos. 1, 19, 20, 21, 30]**<br><br>**Hearing:**<br><br>Date:　　April 12, 2019<br>Time:　　10:00 a.m.<br>Judge:　　Hon. Robert J. Faris |

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed 04/05/19  Page 2 of 95

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................1

II. ARGUMENT .........................................................................5

    A.    Each Fraudulent Transfer Count Must Be Dismissed........................5

        1.    The Actual Fraudulent-Transfer Counts Must Be Dismissed as the Trustee Does Not Adequately Plead Fraudulent Intent Under Any Standard (Counts I, IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII, XXXVI, XXXVIII, XXXIX, XLIII, XLV, XLVI, L, LII)..............................................5

        2.    Each Constructively Fraudulent Transfer Count Must Be Dismissed Because Payment of Antecedent Debt Conclusively Establishes Reasonably Equivalent Value and Insolvency Was Never Adequately Alleged. ....................12

            a.    Reasonably Equivalent Value Is Conclusively Established.............................................12

                (1)    Union Bank Payments (Counts II, III). ...............15

                (2)    Advisory Fees (Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII)....................18

                (3)    KNG Payoff (Counts XLVII, XLVIII, XLIX, LI) ............................................19

            b.    The Complaint Does Not Adequately Allege Insolvency (Counts II, III, V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII, XL, XLI, XLII, XLIV, XLVII, XVLIII, XLIX, LI, LII)................................................21

                (1)    The Insolvency Allegations Are Insufficient. ......21

                (2)    Actual Insolvency.............................................23

                      (a)    Balance-Sheet Test.....................................24

                          (i)    The Trustee's Specific Contentions. .....................................29

                              a)    Due From Related Parties. ..............................29

DOCS_LA:321845.10 0
U.S. Bankruptcy Court - Hawaii #18-90035 Dkt # 37 Filed 04/05/19 Page 3 of 95

b) Line of Credit & Current Maturities of Debt/ Long Term Debt and ROHI Debt. ......................................30

c) PP&E (Property, Plant and Equipment). ...................30

(ii) Both the Consolidated and Consolidating Balance Sheets Show the Debtor Was Solvent........31

(b) Cash-Flow Test. ........................................33

(3) Additional Insolvency Allegations.....................34

3. The ROHI Payoff Counts Must Be Dismissed With Prejudice (Counts XXXVIII-XLIV)..................................35

4. The Colbeck Payment Count Must Be Dismissed (Count LII). ...............................................36

B. Derivative Counts.................................................38

1. Derivative Counts Must Be Dismissed on Basis of Group Pleading (Counts LIII – LXI). .............................38

2. Breach-of-Fiduciary-Duty Claims Are Not Cognizable (Counts LV-LVII). ..................................................43

a. Trustee Cannot Allege Any Party Other Than TrashMasters Owed Fiduciary Duties to the Debtor. ...............................................43

b. Fiduciary Duties Are Not Expanded When an Entity Becomes Insolvent................................45

c. Trust-Fund Doctrine Has Not Been Alleged. ...............49

d. Veil Piercing Does Not Confer Fiduciary Duties..........50

e. Breaches of Fiduciary Duties Under Hawaii LLC Statute Have Not Been Pleaded.....................50

f. Actions Were Ratified by TrashMasters. .....................53

3. The Trustee's Conspiracy Claims Must Be Dismissed (Counts LIII, LIV, LVIII). ...........................................53

a. Conspiracy to Commit Fraudulent Transfers (Counts LIII, LIV). ......................................54

(1) Conspiracy to Commit Fraudulent Transfers Is Not a Legally Cognizable Claim....................54

(2) The Trustee Has Not Alleged the Debtor Made Transfers With Actual Intent to Hinder, Delay, or Defraud................................57

ii

(3)    The Complaint Does Not State Claims for Conspiracy to Commit Fraudulent Transfers......58

    b.    Conspiracy to Commit Breaches of Fiduciary Duties (Count LVIII). ....................................61

        (1)    No Co-Conspirators Exist to Breach Fiduciary Duties. ..................................61

        (2)    The Complaint Does Not State Claim for Conspiracy to Breach Fiduciary Duties. ............61

4.    Trustee's Claim for Aiding and Abetting Are Not Adequately Pleaded (Count LVIX). ........................................62

5.    Trustee Fails to Sufficiently Plead an Alter Ego Claim Against the Defendants (Count LX). ......................................65

    a.    The Trustee Fails to Allege Facts Showing Unity of Interest and Ownership Among the Alleged Defendants. ..................................................65

    b.    Hawaii Does Not Recognize a Reverse Alter-Ego Claim and, Even Assuming That Delaware or Nevada Law Applies, the Trustee Fails to State Sufficient Facts to Support a Plausible Claim for Reverse Alter-Ego Liability............................................71

6.    Trustee Fails to Sufficiently Plead an Unjust-Enrichment Claim (Count LXI)......................................................78

    a.    The Unjust Enrichment Claims Must Be Dismissed as to Defendants Against Whom the Trustee Has Adequate Legal Remedies. ............................78

    b.    The Unjust Enrichment Claim Must Be Dismissed Based on Insufficient Facts............................................80

III. CONCLUSION ................................................84

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 5 of 95

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allstate Ins. v. Countrywide Fin. Corp.*,
  842 F. Supp. 2d 1216 (C.D. Cal. 2012) ............................................................35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................21

*Audette v. Kasemir (In re Concepts Am., Inc.)*,
  No. 16-691, 2018 Bankr. LEXIS 602 (Bankr. N.D. Ill. March 1, 2018) ............56

*Barker v. JP Morgan Chase Bank*,
  No. 11-00579, 2016 U.S. Dist. LEXIS 87945 (D. Ore. July 7, 2016) ................42

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................... 21, 59, 65, 80

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
  780 F. Supp. 2d 1061 (D. Haw. 2011) ........................................ 81, 82

*Boyer v. Crown Stock Distribution, Inc.*,
  587 F.3d 787 (7th Cir. 2009) ....................................................... 13, 17

*Caplin v. Marine Midland Grace Tr. Co.*,
  406 U.S. 416 (1972) ......................................................................49

*Danning v. Lavine*,
  572 F.2d 1386 (9th Cir. 1978) .....................................................22

*Deangelis v. Corzine (In re MF Global Holdings Inv. Litig.)*,
  998 F. Supp. 2d 157 (S.D.N.Y. 2014) .........................................73

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*,
  42 F.3d 1541 (9th Cir. 1994) ........................................................ 7, 11

*Drabkin v. L & L Constr. Assocs. (In re Latin Inv. Corp.)*,
  168 B.R. 1 (Bankr. D.D.C. 1993) ................................................55

*Estate of Daily v. Title Guar. Escrow Servs.*,
  178 B.R. 837 (D. Haw. 1995) ......................................................66

*FDIC v. Van Dellen*,
  No. 10-4915, 2012 U.S. Dist. LEXIS 146648 (C.D. Cal. Oct. 5, 2012)..............73

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ....................................................................... 73, 75

*FirstMerit Bank, N.A. v. Hosseini*,
  No. 14-8749, 20145 U.S. Dist. LEXIS 90388
  (N.D. Ill. July 13, 2015) .............................................................. 59, 60

*Flood v. Miller*,
  35 Fed. App'x. 701 (9th Cir. 2002) ..............................................39

iv

*Fullman v. Graddick*,
739 F.2d 553 (11th Cir. 1984) ...........................................................59

*Gierum v. Glick (In re Glick)*,
568 B.R. 634 (Bankr. N.D. Ill. 2017) ....................................... 55, 56

*Gold v. Winget, Sr. (In re NM Holdings Co., LLC)*,
407 B.R. 232 (Bankr. E.D. Mich. 2009) ...........................................22

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*,
491 B.R. 747 (Bankr. W.D. La. 2013) ................................... 13, 14, 44

*Gordon v. Bindra*,
No. 14-01058, 2014 U.S. Dist. LEXIS 77620 (C.D. Cal. June 5, 2014) ............23

*Harco Nat'l Ins. Co. v. Green Farms*,
No. 1131, 1989 Del. Ch. LEXIS 114 (Sept. 19, 1989) .......................................68

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Group, Inc.)*,
916 F.2d 528 (9th Cir. 1990) ........................................................ 9, 10

*In re Am. Props., Inc.*,
14 B.R. 637 (D. Kan. 1981)........................................................10

*In re Dill*,
731 F.2d 629 (9th Cir. 1984) .......................................................33

*In re Fitness Holdings Int'l*,
No. 14-cv-1059, 2014 U.S. Dist. LEXIS 196754 (C.D. Cal. Oct. 9, 2014).........73

*In re THQ Inc.*,
No. 2-13398, 2016 Bankr. LEXIS 1774 (Bankr. D. Del. Apr. 18, 2016) ...........21

*In re Tropicana Entm't, LLC*,
520 B.R. 455 (Bankr. D. Del. 2014).................................................21

*In re Tsai*,
No. 13-27391, 2014 Bankr. LEXIS 1059,
(Bankr. C.D. Cal. Mar. 19, 2014).......................................................23

*Kauai Scuba Center, Inc., v. Lexington Ins. Co.*,
No. 11-00573, 2012 U.S. Dist. LEXIS 19668 (D. Haw. Feb. 16, 2012) ............76

*Liberty Tool & Mfg. v. Vortex Fishing Sys. (In re Vortex Fishing Sys.)*,
277 F.3d 1057 (9th Cir. 2001) ...................................................... 33, 72

*Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*,
435 B.R. 169 (Bankr. S.D.N.Y. 2010) ................................................6

*Mansha Consulting LLC v. Alakai*,
No. 16-00582,
2017 U.S. Dist. LEXIS 135407 (D. Haw. Aug. 23, 2017).......................... 47, 49

*Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Serv., Inc.)*,
384 B.R. 66 (Bankr. D. Del. 2008)....................................................56

*Monsen v. Consolidated Dressed Beef Co., Inc.*,
579 F.2d 793 (3d Cir. 1978) ...........................................................64

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed  04/05/19  Page 7 of 95

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir.1989) ........................................................... 10, 11, 38, 39
*N. Am. Catholic Educ. Programming Found. Inc. v. Gheewalla*,
   930 A.2d 92 (Del. 2007) ........................................................................... 46, 47
*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................. 64
*O'Connell v. Shallo (In re Die Fliedermaus LLC)*,
   323 B.R. 101 (Bankr. S.D.N.Y. 2005) ............................................................. 22
*Official Comm. v. Nilson (In re Woodside Group, LLC)*,
   427 B.R. 817 (Bankr. C.D. Cal. 2010) ............................................................. 72
*Official Committee v. Lozinski (In re High Strength Steel, Inc.)*,
   269 B.R. 560 (Bankr. D. Del 2001) ................................................................. 48
*Official Unsecured Creditors Comm. v. U.S. Nat'l Bank (In re Suffola, Inc.)*,
   2 F.3d 977 (9th Cir. 1993) ............................................................................. 10
*Orr v. Kinderhill Corp.*,
   991 F.2d 31 (2d Cir. 1993) ............................................................................ 13
*Paloian v. Greenfield*,
   397 B.R. 891 (Bankr. N.D. Ill. 2008) .............................................................. 55
*Paracor Fin., Inc. v GE Capital Corp.*,
   96 F.3d 1151 (9th Cir 1996) .......................................................................... 80
*Philadelphia Indemn. Ins. Co. v. Ohana Control Sys.*,
   289 F. Supp. 3d 1141 (D. Haw. 2018) ............................................................. 81
*PNC Bank v. Sterba (In re Sterba)*,
   852 F. 3d 1175 (9th Cir. 2017) ...................................................................... 72
*Riis v. Does*,
   No. 17-CV-03017, 2017 U.S. Dist. LEXIS 185953,
   (D.S.D. Nov. 9, 2017) .................................................................................. 42
*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ......................................................................... 7
*Scarver v. Patel (In re Haven Trust Bancorp, Inc.)*,
   461 B.R.910 (Bankr. N.D. Ga. 2011) .............................................................. 22
*SEC v. Coffey*,
   493 F.2d 1304 (6th Cir 1974) ........................................................................ 64
*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ........................................................................... 7
*Sharp v. Chase Manhattan Bank, N.A. (In re Commercial Fin. Servs., Inc.)*,
   322 B.R. 440 (Bankr. N.D. Okla. 2003) ........................................................... 22
*Sky Cable, LLC v. DIRECTV, Inc.*,
   886 F.3d 375 (4th Cir. 2018) ........................................................................ 73

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed 04/05/19   Page 8 of 95

*Soule v. Hilton Worldwide, Inc.*,
  1 F. Supp. 3d 1084 (D. Haw. 2014) .................................................79
*Stoebner v. Opportunity Fin., LLC*,
  562 B.R. 368 (D. Minn. 2016).......................................................21
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................3, 7
*United States ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011)........................................................40
*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ......................................................38
*Valvanis v. Milgroom*,
  529 F. Supp. 2d 1190 (D. Haw. 2007) ............................................10
*Williams v. Cal. 1st Bank*,
  859 F.2d 664 (9th Cir. 1988) ...................................................49, 54
*Wool v. Tandem Computers Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ......................................................11
*Wyle v. Howard*,
  176 B.R. 895 (Bankr. N.D. Cal. 1995).............................................57

## STATE CASES

*800 S. Wells Commercial LLC v. Cadden*,
  103 N.E.3d 875 (Ill. App. 2018)....................................................43
*Achiles v. Cajigal*,
  39 Haw. 493 (1952) ..................................................................12
*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
  210 Cal. App. 2d 825 (1962) ........................................................66
*Baer v. Amos J. Walker, Inc.*,
  85 Nev. 219 (1969)...................................................................77
*Banco Popular N. Am. v. Gandi*,
  184 N.J. 161 (2005) ..................................................................57
*Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*,
  No. 3658, 2009 Del. Ch. LEXIS 54 (Apr. 20, 2009) ...........................45
*Bovay v. H.M. Byllesby & Co.*,
  38 A.2d 808 (Del. 1944).............................................................48
*Colemans Haw. v. Ching*,
  No. 22879, 2001 Haw. App. LEXIS 93 (April 27 2001) ......................50
*Combs v. Case Bigelow & Lombardi*,
  No 28773, 2010 Haw. App. LEXIS 25 (Jan. 27, 2010) ........................62
*Credit Lyonnais Bank Nederland NV v. Pathe Commc'ns Corp.*,
  17 Del. J. Corp. L. 1099 (Del. Ch. Dec. 30, 1991)..............................48

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed  04/05/19  Page 9 of 95

*Dalton v. Meister,*
  71 Wis. 2d 504 (1976) .........................................................................57

*Durette v. Aloha Plastic Recycling, Inc.*,
  105 Haw. 490 (2004) .........................................................................81

*Evanston Ins. Co. v. Luko,*
  7 Haw. App. 520, 783 P. 2d 293 (1989)..........................................66

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
  No. 15754, 2000 Del. Ch. LEXIS 146, 2000 WL 1476663 (Del. Ch. Sept. 27, 2000) ................................................................................................45

*In re USACafes, L.P. Litig.*,
  600 A.2d 43 (Del. Ch. 1991) ............................................................44

*LFC Mktg. Group, Inc. v. Loomis,*
  116 Nev. 896 (2000).........................................................................69

*Mason v. Network of Wilmington, Inc.*,
  No. 19434, 2005 Del. Ch. LEXIS 99 (July 1, 2005) ........................69

*McElhanon v. Hing,*
  151 Ariz. 403 (1986) ........................................................................57

*Molokai Servs. v. Hodgins*,
  No. 15-0000464, 2018 Haw. App. LEXIS 92 (Feb. 28, 2018) ...........62

*N. Am. Catholic Educ. Programming Found. Inc. v. Gheewalla,*
  930 A.2d 92 (Del. 2007)...................................................................46

*Polaris Indus. Corp. v. Kaplan,*
  103 Nev. 598, 747 P.2d 884 (1987) .................................................70

*Porter v. Hu,*
  116 Haw. 42, P.3d 994 (Haw. App. 2007) .......................................78

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
  115 A.3d 535 (Del. Ch. 2015) ................................................... 47, 48

*Robert's Haw. School Bus, Inc. v. Laupahoehoe,*
  91 Haw. 224 (1999) .................................................................. 66, 68

*Small v. Badenhop*,
  67 Haw. 626 (1985)..........................................................................81

*Trenwick Am. Litig. Trust v. Billett*,
  931 A.2d 438 (Del. 2007)..................................................................46

*Trenwick Am. Litig. Trust v. Ernst & Young*,
  906 A.2d 168 (Del. Ch. 2006) ................................................ 22, 23, 46

*Wallace v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ................................................. 68, 77

*Wenske v. Blue Bell Creameries, Inc.*,
  No. 2017-0699, 2018 Del. Ch. LEXIS 221,
  (Del. Ch. July 6, 2018) .....................................................................45

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 10 of 95

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1610 .................................................................................74
Fed. R. Civ. P. 9(b) .................................................................. 5, 6, 7, 11

## STATE STATUTES AND RULES

2002 Haw. Sess. Laws Act 229, § 2 at 916-17 ..................................66
Haw Rev. Stat. § 428-409(h) ..............................................................50
Haw. Rev. Stat. § 428-409 ........................................................... 51, 52
Nev. Rev. Stat. Ann. § 78.747 ............................................................70
Nev. Rev. Stat. Ann. § 78.747(2)(b) ..................................................78

## TREATISES

Restatement (Second) Conflict of Laws § 302 ...................................72
Restatement (Second) Conflict of Laws § 309 ...................................72
Restatement (Second) Contracts § 289 ..............................................18

Defendants TrashMasters, LLC; Corridor Capital, LLC; Corridor Capital Advisors, LLC; Corridor TrashMasters, L.P.; SPB Management, LLC; SPB Waste, LLC; SPB Capital GP, LLC; SPB Capital Partners, L.P.; SPB Partners, LLC; Craig Enenstein; L. Geoffrey Greulich; Edward A. Monnier; Jessamyn Davis; Ari D. Bass; Scott R. Bulloch and Kenneth M. Pressberg (collectively, "Defendants"[1]), by and through their undersigned counsel, file this reply (the "Reply") to *Plaintiff's Opposition to Motion to Dismiss, Filed on February 15, 2019* [Docket No. 30] (the "Opposition") filed by the trustee for the Rolloffs Hawaii LLC estate (the "Trustee" or "Plaintiff") in the above-captioned adversary proceeding in response to Defendants' *Motion to Dismiss Complaint* [Docket No. 19] (the "Motion to Dismiss").[2] In support of the Reply, Defendants respectfully state as follows:

# I.

## PRELIMINARY STATEMENT

The Opposition to the Motion to Dismiss highlights that the Trustee has not, and cannot, allege facts to support his claims; instead, he relies on broad conclusory statements, group pleading, obfuscation, and misstatements of both facts and applicable law to support his false narrative that a legitimate private-

---

[1] The Trustee refers to Defendants as the "Syndicator Defendants" in the Opposition.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

1

equity investment that failed was, from inception, a calculated, fraudulent scheme to fleece the Debtor's creditors in order to reap advisory fees that ultimately amounted to approximately 16% of the capital contributed to the Debtor. None of the equity holders ever recovered their capital or received any other distributions from the Debtor or TrashMasters.

The first eighteen pages of the Opposition attempt to recast the facts and obscure fatal pleading flaws. The Trustee's "new" allegations in the Opposition double down on the errors, unsupported conclusions, and penchant to ignore or misstate applicable law, rather than to supply actual factual allegations on which cognizable claims may be based. Regardless, the factual allegations at issue are those alleged in the Complaint, not the facts the Trustee says he will allege in an amended complaint, and the Court should not address them in determining if the claims in the Complaint, as presently stated, must be dismissed. To the extent the Trustee is granted leave to amend, and can state new factual allegations beyond bare conclusions without violating Rule 11, the Defendants will address those allegations in a responsive pleading and the Court can consider them.

With respect to each of the actual fraudulent-transfer counts, the Trustee ignores the requirement that he allege facts that give rise to a strong inference of fraudulent intent; instead, he reiterates facts in the Complaint that would be present in most private-equity investments—an investment vehicle, a holding company,

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 13 of 95

and an advisory agreement—to implausibly (and falsely) claim that all the Defendants acted in unison as the "'masterminds' and the perpetrators of a fraudulent scheme" who set up a "conglomerate of companies" to "facilitate their fraudulent scheme" and "advance their own interest." The Complaint alleges no facts suggesting a departure from a standard private-equity transaction,[3] and therefore the Trustee never alleges a theory as "cogent and at least as compelling as any opposing inference of nonfraudulent intent" as required under United States Supreme Court authority,[4] nor does the Opposition indicate the Trustee is able to replead any of the actual fraudulent-transfer counts to accomplish that.

As to the constructive fraudulent-transfer counts, the Opposition ignores the fatal flaw raised in the Motion to Dismiss: Payment on an antecedent debt constitutes reasonably equivalent value as a matter of law, requiring dismissal of the constructive fraudulent-transfer counts with prejudice. The Trustee's only response is that the Debtor *should* not have been liable for its antecedent debt (even though it financed the acquisition of all the assets for the Debtor) without addressing why he did not seek to avoid the underlying obligations. Instead, the

---

[3] The Trustee, for the first time in the Opposition, alleges that TrashMasters acquired the Debtor's assets at "purchase prices that far exceeded the appraised value of the assets." Opposition at 7. This was not alleged in the Complaint, nor are there any facts supplied in the Opposition supporting this assertion. Moreover, private equity investments are bought and sold on the basis of the going concern enterprise value, not the appraised value of the assets.

[4] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 14 of 95

Opposition devotes pages attempting to create a factual dispute as to insolvency by fabricating alternate versions of the Debtor's balance sheets, urging the Court to ignore principals of consolidated accounting, and disregarding the value of the Debtor's assets. While these new "facts" or documents referred to were not alleged in the Complaint and are therefore irrelevant to the Motion to Dismiss, the Court need not consider insolvency to dismiss the constructive fraudulent-transfer claims where the challenged transfers were made on account of antecedent debt.

With one exception, these two fundamental issues (failure to allege fraudulent intent and facts on the face of the Complaint conclusively establishing challenged payments were on account of antecedent debt or otherwise for reasonably equivalent value) and the Trustee's failure to address them in the Opposition require dismissal of each fraudulent-transfer count, and extinguish each of the Trustee's derivative counts for conspiracy, breach of fiduciary duty, aiding and abetting, unjust enrichment, and alter ego, all of which rely on the existence of underlying fraudulent transfers. The sole exception is the ROHI Payoff, which fails because the payment was not made with the Debtor's property.

The vast majority of the derivative counts also fail because the applicable Hawaii LLC statute imposes a fiduciary duty only upon TrashMasters as the manager of the Debtor. Conceding that point rather than contesting it, the Trustee misstates applicable law on breach of duty, and relies on bare conclusions and

4

sweeping group accusations not directed at or attributed to any one Defendant, to claim that all Defendants are liable for multiple torts arising from the alleged fraudulent transfers and related transactions.

The overwhelming weight of authority cited in the Motion to Dismiss, largely unchallenged, and never legitimately challenged, compels dismissal of every count of the Complaint. The additional facts and theories "pleaded" in the Opposition show the Trustee is not entitled to relief under any set of facts or theories that can be alleged on a principled basis.

## II.

## ARGUMENT

**A. Each Fraudulent Transfer Count Must Be Dismissed.**

    **1. The Actual Fraudulent-Transfer Counts Must Be Dismissed as the Trustee Does Not Adequately Plead Fraudulent Intent Under Any Standard (Counts I, IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII, XXXVI, XXXVIII, XXXIX, XLIII, XLV, XLVI, L, LII).**

Each of the actual fraudulent transfer counts fails because the Trustee did not adequately allege fraudulent intent under Rule 9(b) with respect to any of the alleged fraudulent transfers, either based on actual fraudulent intent or the presence of badges of fraud (i.e., circumstantial evidence).

The Trustee argues a bankruptcy trustee is entitled to a relaxed pleading standard under Rule 9(b). *See* Opposition at 25. While bankruptcy trustees may

5

enjoy a relaxed pleading standard under some circumstances, those circumstances are not present here because the Trustee has already conducted comprehensive discovery seeking all documents relating to the prepetition operations of the Debtor and TrashMasters and their relationship to them. In *Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 192 (Bankr. S.D.N.Y. 2010), the court rejected the Trustee's argument where, prior to the filing of the complaint, Rule 2004 discovery allowed access to numerous documents and there was an ample opportunity to investigate: "[t]here is no justification to relax the particularized standard required for intentional fraud claims. The Trust has not made any particularized allegations, which are required for a showing of intentional fraud." *Id*. The Defendants have fully responded to the Trustee's pre-Complaint Rule 2004 discovery (acknowledged in the Opposition).[5] Because the Trustee has already received all of Defendants' documents relating to the Debtor and TrashMasters, he must comply with the heightened Rule 9(b) standard and allege fraud with specificity.

---

[5] *See* Opposition at 17 (volume of documents is so extensive that Trustee claims it is evidence of "the level of control and management the Syndicator Defendants exercised over the Debtor and TrashMasters"); *id*. at 26 ("[Defendants'] admission as to the volume of documents they have produced, a substantial portion of which includes emails they sent and received, undoubtedly evidences the level of their participation and knowledge of the circumstances constituting the intentional fraud alleged in the Complaint.").

6

Whether under the Rule 9(b) standard or a relaxed standard afforded to bankruptcy trustees, the Trustee has not alleged *any facts* from which fraudulent intent can be inferred. The Trustee does not dispute the Supreme Court authority cited in the Motion to Dismiss requiring that a complaint set forth facts that give rise to a strong inference of the transferor's fraudulent intent, which must be "'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. . . . [I]n determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences.'" Motion to Dismiss at 19 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 323 (2007)). Nor does the Trustee counter the Ninth Circuit authority cited in the Motion holding that a mere recitation that a transfer was made with actual intent to hinder, delay, or defraud is insufficient. Motion to Dismiss at 19 (citing *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)[6] ("'conclusory allegations of fraud . . . punctuated by a handful of neutral facts'" are insufficient, quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985))).

Rather, the Trustee suggests that the allegations of the structure of the Debtor and TrashMasters are sufficient to allege fraud. *See* Opposition at 26-27.

---

[6] Superseded by statute on other grounds as stated in *S.E.C. v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed  04/05/19  Page 18 of 95

The facts alleged by the Trustee do not give rise to *any* inference of fraudulent intent; they are consistent with the Defendants structuring a legitimate private-equity investment in an industry-standard manner: the creation of an investment vehicle, the creation of a holding company,[7] a consulting/advisory agreement and advisory fee, and the incurrence of debt, alongside a significant equity investment, to finance the acquisition of assets and ongoing operations.

Further, the allegation that the Debtor was undercapitalized or leveraged does not convert a standard private-equity arrangement into a "fraudulent scheme," particularly where there are no factual allegations in the Complaint that the Debtor was actually undercapitalized.[8] The Complaint provides no facts showing undercapitalization—the face of the Complaint shows the Debtor's repeated ability

---

[7] The Trustee's contention that the creation of TrashMasters, the holding company, was to "incur[] debt, but had no revenue to pay the debt, and to insulate themselves from liability and creditors" defies logic and common sense. *See* Complaint ¶ 200. TrashMasters was created as a holding company whose only assets were its interests in the Debtor and TrashMasters Arizona; it was not created to "to incur debt" it had no ability to pay. The face of the Complaint shows all of the debt held by TrashMasters was used to acquire the assets of the Debtor. Because of this, none of the transfers complained of by the Trustee diminished the Debtor's balance sheet or prejudiced creditors in any way. Ultimately, TrashMasters sold TrashMasters Arizona in June 2010 for more than they were purchased for and all of the proceeds of the sale went to the Debtor. *See* Motion to Dismiss at 47, n.34. If the sole purpose of the Defendants was to enrich certain of them at the expense of the Debtor's creditors, the Defendants would have upstreamed the profits from the sale of TrashMasters Arizona rather than contribute them to the Debtor.

[8] The only allegations of undercapitalization contained in the Complaint were conclusory statements thereof. *See* Complaint ¶¶ 183, 202.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 19 of 95

to obtain institutional financing, and that over $11.1 million[9] of equity was invested in TrashMasters.

Finally, by failing to address the issue, the Trustee effectively concedes that the challenged payments made on account of antecedent debt cannot plausibly be alleged to have been made with the intent to hinder, delay, or defraud creditors. Inferring that payments made on account of antecedent debt are made with the intent to hinder, delay, or defraud creditors is not plausible because creditors are not prejudiced by transfers that do not deplete the estate. The Trustee is unable to cite a single case where payments made on account of antecedent debt have been found to constitute an actually fraudulent transfer.

The cases cited by the Trustee highlight the infirmities of the Trustee's pleading rather than support it. The complaint in *Hayes v. Palm Seedlings Partners-A* (*In re Agric. Research & Tech. Group, Inc.*), 916 F.2d 528, 536 (9th Cir. 1990), related to a Ponzi scheme. Courts universally find actual fraud can be inferred from transfers made as part of a Ponzi scheme: "actual intent to hinder, delay or defraud [] creditors may be inferred from the mere existence of a Ponzi

---

[9] Audited Financial Statements for the years ended 2009-2012, at p. 4, attached as Exhibits N, O, P and Q to the Declaration of Ari Bass in Support of Reply to Trustee's Opposition to Motion to Dismiss, and paragraph 21 thereto.

scheme." *Id.* at 535.[10] In *Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1198 (D. Haw. 2007), the complaint alleged that while litigation was pending against defendant husband, he transferred valuable real property to his wife *for no consideration,* obtained a divorce decree within two weeks of filing for divorce, declared bankruptcy two weeks after the divorce decree, and, after the divorce, the wife supported the husband financially. The court agreed with the bankruptcy court's findings that these allegations were "compelling evidence that [the husband] has engaged in fraudulent real estate and financial transactions with his wife." *Id.* at 1202.[11] These cases only emphasize the insufficiency of the Trustee's allegations regarding fraudulent intent.[12]

---

[10] The Trustee also cites *Agricultural Research* for the proposition that knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent. *916 F.2d.* at 535, citing *In re Am. Props., Inc*., 14 B.R. 637, 643 (D. Kan. 1981)). However, no transaction that pays down antecedent debt can operate to detriment of creditors because the balance sheet of the debtor is not diminished. *Official Unsecured Creditors Comm. v. U.S. Nat'l Bank (In re Suffola, Inc.)*, 2 F.3d 977, 984 (9th Cir. 1993) (direct payment on antecedent debt results in corresponding dollar-for-dollar benefit to guarantor because liability on guaranty is reduced).

[11] The Trustee also cites *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989) (a case involving securities fraud rather than fraudulent transfers), for his quote that "[i]nstances of corporate fraud may also make it difficult to attribute the particular fraudulent conduct to each defendant as an individual." However, the fraudulent transfers challenged by the Trustee are alleged to have been made by the Debtor, not individuals. Further, the actual fraudulent-transfer counts fail not as a result of impermissible group pleading (the issue addressed by the quote relied upon by the Trustee), but because of an absence of facts plausibly suggesting fraudulent intent. *Moore* actually provides additional

The Trustee has not disputed the legal standards presented in the Motion to Dismiss, the Complaint did not allege facts that give rise to a strong inference of the transferor's fraudulent intent, and the cases cited by the Trustee did not support the Trustee's argument that he had met the standards required. Therefore, each of the actual fraudulent-transfer counts must be dismissed, including those based on Hawaiian common law.[13] Further, the Trustee has not

---

support for finding the Trustee's allegations inadequate. *Id.* (in securities fraud context, finding fraud not adequately alleged under Rule 9 because time, place and nature of alleged fraudulent conduct had not been specifically alleged).

[12] The Trustee cites several pre-*Twombly-Iqbal* non-fraudulent transfer cases for general pleading standards regarding fraud—*Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), and *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Securities Litigation)*, 42 F.3d 1541, 1547 (9th Cir.1994). *Wool* alleged fraud and breach of fiduciary duties in violation of federal securities laws and California common law and, even if it were applicable, the Trustee cited it for the proposition that statements of the time, place, and nature of the alleged fraudulent activities are sufficient—a standard he has not met. Further, the entire sentence from *Wool* is: "*While mere conclusory allegations of fraud are insufficient*, statements of the time, place and nature of the alleged fraudulent activities are sufficient." 818 F.2d at 1439 (emphasis added).

The Trustee's quote from *Glenfed* (another securities fraud case), states: "We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed." 42 F.3d at 1547. *Glenfed* actually holds that the complaint must allege specific facts that make it *reasonable to believe such scienter existed. id.*; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[13] The Trustee's failure to allege facts that strongly support an inference of fraudulent intent is equally applicable to the Trustee's common-law fraudulent-transfer counts. The *Achiles* case, cited in the Opposition at 30-31, is inapposite

11

shown any ability to replead these counts in a manner that would evidence fraudulent intent.

**2.    Each Constructively Fraudulent Transfer Count Must Be Dismissed Because Payment of Antecedent Debt Conclusively Establishes Reasonably Equivalent Value and Insolvency Was Never Adequately Alleged.**

**a.    Reasonably Equivalent Value Is Conclusively Established.**

The Trustee has failed to address the dispositive issue that payment of an antecedent debt constitutes reasonably equivalent value as a matter of law. This failure is fatal to the all but two of the ten alleged constructively fraudulent transfers and requires dismissal of Counts II, III, V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII, XLVII, XLVIII, XLIX, and LI.[14]

The Opposition does not challenge that payment of an antecedent debt conclusively establishes reasonably equivalent value as a matter of law and precludes claims for constructively fraudulent transfers.[15] In fact, the Trustee

---

because it was undisputed that the transfer of a half interest in a house was from a husband to his wife, for "no consideration other than the $10, a wholly inadequate consideration." *Achiles v. Cajigal*, 39 Haw. 493, 498 (1952). In addition, the transfer occurred after the defendant had been sued, and shortly prior to judgment thereon. *Id*. at 495.

[14] Only the ROHI Payoff and Colbeck Payments are not, on the face of the Complaint, payments on account of the Debtor's antecedent debt.

[15] *See* Motion to Dismiss at 27-30.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 23 of 95

acknowledges why this is so in the Opposition. Citing *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35-36 (2d Cir. 1993), the Trustee asserts that the "real test of a fraudulent conveyance is the unjust diminution of the debtor's estate."[16] The payment of an antecedent debt is not an estate-depleting transfer because it reduces the amount of debt owed by the debtor dollar for dollar. That is why all fraudulent-transfer statutes define the payment of antecedent debt as value.

*Goodman*, cited in the Motion to Dismiss at 60-61 for its factual similarities with this case, teaches that courts uniformly hold that payments on account of antecedent debt are not avoidable as constructively fraudulent transfers for this reason. *See Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 766-67 (Bankr. W.D. La. 2013). In the Opposition, the Trustee ignores *Goodman* other than to incorrectly suggest Defendants relied upon it only to support dismissal of the actual fraudulent-transfer counts,[17] but does not address

---

[16] The Trustee subsequently cites *Boyer v. Crown Stock Distribution, Inc.*, 587 F.3d 787, 793 (7th Cir. 2009), for the similar and noncontroversial proposition that the fraudulent-conveyance doctrine protects creditors from transactions that have the effect of impairing their rights.

[17] The Trustee erroneously claims the court in *Goodman* "did not dismiss the trustee's 548(a)(1)(A) intentional fraud claims to avoid the payments the debtor had made on account of the subject Professional Services Agreement and Consulting Agreement in that case." Opposition at 36. This is not true and, as made clear from a quote supplied by the Trustee, the court dismissed the intentional fraud counts, but granted the trustee leave to amend such counts. *Id.*; *see Goodman*, 491 B.R. at 768. Further, *Goodman* does provide substantial

13

the fatal issue raised in *Goodman* or Defendant's other cases: With respect to constructive fraudulent-transfer counts, payment on account of an antecedent debt constitutes reasonably equivalent value as a matter of law. Accordingly, for each transfer where an antecedent debt of the Debtor was paid, the related constructive fraudulent-transfer counts must be dismissed.

Unable to challenge this, the Trustee asks the Court to ignore the terms of the debt instruments, determine that the Debtor's debts should *not* have been the Debtor's debts, and to ignore settled law, even though he has not sought to avoid a single underlying obligation incurred by the Debtor as a fraudulent obligation. Further, the Trustee has not cited a single authority to support his position that the mere "decision" to incur an obligation constitutes a fraudulent transfer. Of course, no such authority exists because it would require a court to ignore the requirement that property of the debtor must actually be transferred for a viable fraudulent-transfer claim action to exist.[18] Because each of the Union Bank Payments, Advisory Fees, and KNG Payoff were made on account of antecedent debts owed

---

guidance to this Court with respect to the actual fraudulent transfer counts concluding that claims of "lack or adequacy of consideration" as a badge of fraud should be dismissed when a payment is made on account of antecedent debt.

[18] *See* Opposition at 39 (requesting leave to amend the Complaint to add as a fraudulent transfer the Defendants' decision to make the Debtor a borrower under the Union Bank Credit Agreement).

by the Debtor, the constructive fraudulent-transfer counts related to each of these transfers must be dismissed with prejudice.

### (1) Union Bank Payments (Counts II, III).

The Trustee does not dispute that the Union Bank Credit Agreement was an antecedent debt of the Debtor; rather, he argues it never should have been a debt of the Debtor. *See* Opposition at 35. This argument is not only irrelevant in light of the failure to challenge the Union Bank debt as a fraudulent obligation; it also is based on a false and implausible narrative.

The Trustee claims that TrashMasters purchased the Debtor's assets prior to "contributing" them to the Debtor and therefore the fact that the Debtor is one of the borrowers/obligors on the Union Bank Credit Agreement is evidence of the Defendants' fraudulent scheme. *Id*. at 35. In reality, in simultaneous transactions closing on May 1, 2009, (1) TrashMasters acquired the ROHI assets, (2) TrashMasters contributed those assets to the Debtor, and (3) the Debtor borrowed funds from Union Bank to finance the acquisition of its assets pursuant to the Union Bank Credit Agreement dated May 1, 2009.[19] The Trustee

---

[19] The much smaller Maricopa acquisition occurred at the same time, and the Trustee admits that the proceeds of the Union Bank Credit Agreement were used to finance the ROHI APA and Maricopa APA (Complaint ¶ 204) and the ROHI assets were immediately contributed to the Debtor and the Maricopa assets to TrashMasters Arizona. Upon TrashMasters Arizona's sale in June 2010, the proceeds were used to acquire the KNG assets and other assets for the Debtor and for the Debtors' working capital. *See*, *infra*, n.7.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 26 of 95

acknowledges that as a holding company with no operations or revenue, TrashMasters did not own the operating assets that secured the Union Bank debt, but argues that TrashMasters *should have been* the only borrower solely obligated to Union Bank, and the Debtor should have had no obligations despite owning the assets purchased with that debt and contingent on such assets being collateral and that generated the only revenue available to service the debt. This is tantamount to claiming the Debtor should have received the assets for free and the fact that it did not means its payment of the secured acquisition debt it incurred is a fraudulent transfer. The Trustee's claim that "[t]he acquisition debt was always the obligation of TrashMasters" alone (Opposition at 35) is untrue.[20]

Finally, to the extent the Trustee is suggesting that the Debtor made all of the Union Bank Payments and TrashMasters Arizona made none,[21] the Debtor still received reasonably equivalent value because it was jointly and severally obligated on the Union Bank Credit Agreement (Union Bank Credit Agreement § 7.11[22]) and

---

[20] The Trustee states: "[B]ut for the Syndicator Defendants burdening the Debtor with debt and encumbering its assets . . . , the Debtor would have had no antecedent debt." Opposition at 38. If true, the Debtor either would own no operating assets or would have somehow had to have acquired the assets for free.

[21] The Complaint does not actually allege this; rather, it alleges that the Debtor made "*virtually all* payments due on account of the Union Bank Credit Agreement." Complaint ¶ 84 (emphasis added).

[22] The Union Bank Credit Agreement is attached to the Opposition at Exhibit 5.

16

payments thereon reduced the Debtor's liability for the entire amount it was obligated to pay thereunder.[23]

The Trustee argues that the constructive fraudulent-transfer claims related to the Union Bank Payments survive under *Boyer v. Crown Stock Distribution, Inc.*, 587 F.3d 787, 793 (7th Cir. 2009), because determination of a fraudulent conveyance looks at substance over form. *Boyer* involved the payment of an abnormally high dividend to the company's stockholders as part of a series of transactions resulting in the sale of a company's assets to a buyer for cash, a promissory note, and the payment of a large dividend to the shareholders of the company that sold its assets, which drained the new company of cash. *Id*. at 796. The court's comment on substance over form related to whether to consider the payment of the dividend part of the overall transaction or not. *Id*. at 793. *Boyer* does not hold that an antecedent debt can be disregarded in order to find a lack of reasonably equivalent value, nor does the substance of this transaction warrant a different result.

---

[23] Although the division of payments between TrashMasters Arizona and the Debtor is irrelevant because the Debtor was jointly and severally liable, TrashMasters Arizona was sold in June 2010 (Complaint ¶119) and represented a small fraction of the overall acquisition debt, so any amount attributable to TrashMasters Arizona would have been negligible. Further, upon TrashMasters Arizona's sale, the proceeds were used to acquire the KNG assets and other assets for the Debtor and for the Debtors' working capital, so the Debtor ultimately received all of the benefits of the Union Bank Payments, to the extent any were made on behalf of TrashMasters Arizona. *See*, *supra*, n.7.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 28 of 95

The Trustee concedes that the Union Bank Payments were made on account of an antecedent debt of the Debtor (Opposition at 42-43), which debt the Trustee has not sought to avoid. Accordingly, the constructive fraudulent-transfer counts related to the Union Bank Payments must be dismissed with prejudice.

### (2) Advisory Fees (Counts V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII)

The Trustee does not contest that the Advisory Fee payments were made on account of antecedent debt incurred by the Debtor. *See* Opposition at 42. Accordingly, the constructive fraudulent-transfer counts relating to the Advisory Fees must be dismissed with prejudice.

To the extent the Trustee believes the Advisory Agreement was unfair to the Debtor, the remedy is to avoid the Advisory Agreement itself as a fraudulent obligation, which he has not sought to do.

As with the Union Bank Payments, to the extent the Debtor paid all of the Advisory Fees, while TrashMasters Arizona and TrashMasters, who were also obligated under the Advisory Agreement, paid none, the Debtor still received reasonably equivalent value because it was jointly and severally obligated on the Advisory Agreement[24] and its payments of the Advisory Fees reduced the Debtor's

---

[24] Restatement (Second) of Contracts § 289 (1981) ("Where two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance thereof").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 29 of 95

outstanding obligations under the Advisory Agreement.[25] Accordingly, the constructive fraudulent-transfer counts related to the Advisory Fees must be dismissed with prejudice.

### (3) KNG Payoff (Counts XLVII, XLVIII, XLIX, LI)

The Trustee argues that the KNG Payoff, made on account of the Debtor's Secured Guaranty (referred to by the Trustee as the KNG Guaranty), was not made on account of an antecedent debt of the Debtor because the Debtor was not the primary obligor on the underlying debt, and the Debtor should not have been obligated on the Secured Guaranty. *See* Opposition at 40-41. The Trustee has cited no authority to support his argument that only the payment of antecedent debt by the primary obligor constitutes reasonably equivalent value or to refute the

---

[25] The Advisory Fees were calculated based on the consolidated EBITDA of TrashMasters, TrashMasters Arizona and the Debtor. Although the division of payments between TrashMasters, TrashMasters Arizona and the Debtor is irrelevant because the Debtor was jointly and severally liable, TrashMasters Arizona was sold in June 2010 (Complaint ¶119), and represented a only a small fraction of the combined EBITDA on which the Advisory Fees were calculated, so any amount attributable to TrashMasters Arizona would have been negligible and would only relate to the 2009 and a portion of the 2010 Advisory Fees. Further, upon TrashMasters Arizona's sale, the proceeds were used to acquire the KNG assets and other assets for the Debtor and for the Debtors' working capital, so the Debtor ultimately received all of the benefits of the Advisory Fees, to the extent any were made on behalf of TrashMasters Arizona. *See*, *supra*, n.7. Finally, because any EBITDA of TrashMasters would have derived entirely from its subsidiaries, no legitimate argument exists that TrashMasters, as a holding company without operations or revenue, should have been liable rather than the Debtor.

multiple authorities cited by the Defendants establishing that it is well settled that payment on account of a guaranty constitutes payment of an antecedent debt, and therefore constitutes reasonably equivalent value.[26] If the Trustee believes the Debtor did not receive reasonably equivalent value for furnishing the Secured Guaranty (despite receiving all of the assets purchased in connection therewith), the appropriate remedy is to seek avoidance of the Secured Guaranty.[27] Because the Trustee has not sought to avoid the Secured Guaranty, payment thereon satisfied an antecedent debt, constituted reasonably equivalent value, and precludes a claim of constructive fraudulent-transfer. Accordingly, the constructive fraudulent transfer counts related to the KNG Payoff must be dismissed with prejudice.

Because each of the Union Bank Payments, Advisory Fees, and KNG Payoff were made on account of antecedent debts owed by the Debtor, the constructive

---

[26] *See* Motion to Dismiss at 70-72.

[27] As with the Union Bank Payments, the Trustee's argument that the Debtor should not have had any obligation arising out of the acquisition of the KNG assets is tantamount to arguing that the Debtor was entitled to receive the assets for free. As with the acquisition of the ROHI assets for the Debtor, in simultaneous transactions, the KNG assets were acquired by TrashMasters, transferred to the Debtor, and KNG (the seller) provided financing in the form of the KNG Note and the Debtor provided a Secured Guaranty of TrashMasters' obligations on the KNG Note.

fraudulent-transfer counts related to each of these transfers must be dismissed with prejudice.

> **b.** **The Complaint Does Not Adequately Allege Insolvency (Counts II, III, V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII, XL, XLI, XLII, XLIV, XLVII, XVLIII, XLIX, LI, LII).**

The Trustee's attempt to salvage his counts based on insolvency are based on facts that are not set forth in the Complaint, documents referred to therein, or matters subject to judicial notice. As pleaded, the allegations of insolvency are insufficient to allege insolvency on the part of the Debtor at the time of each transfer. The Court should dismiss these counts on this basis alone. However, if the Court considers matters outside the Complaint, as urged by the Trustee, Defendants believe it is important for the Court to understand the extent to which those matters have been misstated and obfuscated by the Trustee.

> **(1)** **The Insolvency Allegations Are Insufficient.**

General allegations of insolvency are insufficient under *Twombly* and *Iqbal*,[28] as set forth in the Motion to Dismiss.[29] The Trustee relies on *Gold v.*

---

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[29] Motion to Dismiss at 30 (citing *Stoebner v. Opportunity Fin., LLC*, 562 B.R. 368, 390 (D. Minn. 2016) (conclusory allegations of insolvency are not sufficient to meet the Rule 8(a) burden); *In re THQ Inc.*, No. 2-13398, 2016 Bankr. LEXIS 1774, at *4 (Bankr. D. Del. Apr. 18, 2016); *In re Tropicana Entm't, LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (A complaint's "recitation of the words

*Winget, Sr. (In re NM Holdings Co., LLC)*, 407 B.R. 232, 259 (Bankr. E.D. Mich. 2009), for the proposition that a "general allegation of insolvency provides a defendant fair notice." Opposition at 43. However, the quote is from the pre-*Twombly/Iqbal* case of *Sharp v. Chase Manhattan Bank, N.A. (In re Commercial Fin. Servs., Inc.)*, 322 B.R. 440, 450-51 (Bankr. N.D. Okla. 2003), and appears in a block quote in *NM Holdings* relating to application of Rule 9(b) to constructive fraudulent-transfer claims. The Trustee has cited no other post-*Twombly/Iqbal* authority to support his contention that a bare conclusory allegation of insolvency is sufficient post *Twombly/Iqbal* and it is clearly not the law in the Ninth Circuit.[30]

---

'insolvency' or 'financial collapse'—without more—is not enough to support a plausible claim of insolvency. The Court should not accept conclusory statements."); *see also Trenwick Am. Litig. Trust v. Ernst & Young*, 906 A.2d 168, 195 (Del. Ch. 2006) ("mere incantation of the word insolvency does not open the key to discovery" and holding that trustee is required to plead actual facts supporting a rational inference that that the debtor was insolvent at the time of the challenged transactions").

[30] The Trustee's Ninth Circuit authority, *Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978), predates *Twombly* and *Iqbal* and is no longer good law, as does *O'Connel v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101 (Bankr. S.D.N.Y. 2005). *Scarver v. Patel (In re Haven Trust Bancorp, Inc.)*, 461 B.R.910, 913 (Bankr. N.D. Ga. 2011), also relied upon by the Trustee, contained allegations that mirrored the statutory language, but also contained factual in support of its conclusions: "Trustee's complaint also includes factual allegations that lend support to its factual statement that Debtor was insolvent at the time of the transfers or rendered insolvent as a result of such transfers." *Id*.

Insolvency is only a question of fact if it is adequately pleaded. Where, as here, it is not, "the word insolvency does not open the key to discovery."[31] Accordingly, to the extent any cause of action requires an allegation of insolvency,[32] such counts should be dismissed.

### (2) Actual Insolvency.

The applicable tests for actual insolvency require specific allegations, which are absent from the Complaint. Insolvency can be pleaded by either (a) alleging facts showing "that the amount of liabilities exceed the value of the corporation's assets" (i.e., the "balance-sheet test") or (b) alleging facts showing that "a debtor is not paying its debts as they become due." *In re Tsai*, No. 13-27391, 2014 Bankr. LEXIS 1059, at *16-17 (Bankr. C.D. Cal. Mar. 19, 2014); *Gordon v. Bindra*, No. 14-01058, 2014 U.S. Dist. LEXIS 77620, at **19-20 (C.D. Cal. June 5, 2014) (finding that plaintiff had not adequately pleaded insolvency because "simply alleging that [the company] had some outstanding obligations does not establish insolvency without knowing what [its] assets were at the time of the [challenged] payment").

---

[31] *Trenwick,* 906 A.2d at 195.

[32] All constructive fraudulent-transfer counts should be dismissed on this basis, to the extent they are not already dismissed on other grounds. In addition, the breach-of-fiduciary duty claims cannot survive without insolvency.

The Trustee acknowledges that he alleges insolvency in the Complaint by "mirror[ing] the statute and stat[ing] as follows:"

> 183. Upon information and belief, the Debtor was undercapitalized and therefore insolvent at the date of inception.
>
> 184. Upon information and belief, shortly after inception, the Debtor was generally not paying its debts as they became due, and is presumed insolvent.

Opposition at 45-46. As the post-*Twombly* and *Iqbal* cases cited by Defendants make clear, these unadorned allegations that the Debtor was insolvent are insufficient. *See* Motion to Dismiss at 30-36.

### (a) Balance-Sheet Test.

After emphatically stating that the Court may only consider allegations in the Complaint, documents referred to in the Complaint, and matters subject to judicial notice; and citing Ninth Circuit authority in support thereof (Opposition at 20), the Trustee asks the Court to consider a fabricated balance sheet based on facts not alleged in the Complaint and documents not referred to in the Complaint or subject to judicial notice in ruling on the Motion. *See* Opposition at 11, 50-54; Exh. 9. The Court should not yield to this improper request.

If the Court does grant the Trustee leave to amend, to the extent any of the constructive fraudulent-transfer counts are not dismissed with prejudice on the grounds that the Debtor received reasonably equivalent value for the payments, the Trustee can add allegations to the Complaint that can be evaluated by the

24

Defendants; those allegations can either answered or the subject of another motion to dismiss and considered by the Court. However, the Court should not evaluate the Complaint based on facts the Trustee claims he will allege or documents that are not referred in the Complaint and that have been misrepresented to the Court.

As explained in the Declaration of Ari Bass in Support of Defendants' Reply to the Opposition ("Reply Decl."), the Trustee's new "allegations" that the audited financial statements for TrashMasters and Subsidiaries are inaccurate are not even based on the actual audited financial statements. Rather, the Trustee is referring to the *consolidating* balance sheets from the "Supplemental Information" section of the audited financial statements. Trustee's counsel, Simon Klevansky, attached only a portion of each of the "Supplemental Information" sections of the audited financial statements as Exhibit A to his declaration in support of the Trustee's motion to compel discovery responses filed May 14, 2018 [Bankr. Case, Dkt. No. 394] but failed to present the audited financial statements in their entirety. A true copy of Docket Number 394 is attached as Exhibit C to the initial declaration of Ari Bass in support of the Motion to Dismiss [Adv. Case, Dkt. No. 21].

The portions of the Supplemental Information sections attached to Mr. Klevansky's declaration are the "*Consolidating* Balance Sheets." It is the *Consolidated* (in contrast to the *Consolidating*) Balance Sheets that are part of the actual financial statement. *Consolidating* balance sheets represent internal financial

information that is not useful to the interests of third parties because they contain transactions between commonly owned affiliates that are irrelevant to outsiders. The information presented on a *consolidating* balance sheet is incomplete as to the entire financial position of entities like the Debtor and TrashMasters, which are required to present their financial statements on a consolidated basis. The actual financial position is only visible and ascertainable by analyzing the *consolidated* balance sheet. Certain asset and liability accounts in the *consolidating* balance sheet are always overstated or understated because they represent one-sided accounting entries; the other entries reside on another consolidating balance sheet. In the process of consolidation, the internal transactions that create the intercompany payables and receivables are eliminated so that the *consolidated* balance sheet shows only the interests of outsiders/third parties.

The complete Audited Financial Statements of TrashMasters and its Subsidiaries for the years ended 2009-2014 are attached to the Reply Declaration as Exhibits N, O, P, and Q respectively.[33] As the Independent Auditor's Reports on Supplemental Information disclose, the consolidating balance sheets "are presented

---

[33] The Debtor's audited financial statements are not offered because the Court should rely on those audited financials in determining whether the Trustee adequately alleged insolvency—for that determination, the Court only need consider the Trustee's lack of factual allegations. Rather, the financials were referenced to provide context and demonstrate the inability of the Trustee to credibly allege insolvency in any future amended complaint.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 37 of 95

for the purpose of additional analysis and are not a required part of the basic consolidated financial statements." Therefore, TrashMasters chose to disclose more information than required to its lenders, investors, customers, and creditors. This additional information was also subject to audit procedures. *See* Reply Decl., Exh. N at 17.

The actual *Consolidated* Balance Sheets that are part of the financial statement (rather than part of the Supplemental Information) show the consolidated entity was solvent through 2012 by substantial margins even where goodwill is not considered an asset. *See* Reply Decl. ¶¶ 17-20. From June 2010, the membership interests in the Debtor were the only asset of TrashMasters. Therefore, solvency of the consolidated entity demonstrates solvency of the Debtor.

The Trustee's contentions that specific line items of a wholly owned subsidiary such as the Debtor are overstated or understated are inaccurate contextually and ignore universally accepted accounting rules and regulations codifying the creation and presentation of *consolidated* balance sheets. The Trustee is improperly and illogically attempting to create one-sided accounting entries (a violation of the "matching principal" of accounting, created approximately 600 years ago), and is focusing on transactions that are required to be eliminated in consolidation to contend that assets should be eliminated and misstate or misapply

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 38 of 95

liabilities to support a facially false argument that the Debtor was insolvent from inception.

The general concept of consolidating affiliated companies is always the same; intercompany items such as payables, receivables, profits, and losses are eliminated so that consolidated statements show only the interests of outsiders. The consolidated statements reflect the affairs of the parent and subsidiary as a consolidated entity that does not have claims to and from itself. Consequently, all accounts classified as assets on one affiliate's balance sheet for which the originating transaction created a liability on the balance sheet of a second affiliate are eliminated. Failing to eliminate these accounts would violate several fundamental rules of financial reporting. Under the financial presentation standards recognized by GAAP and codified under the Financial Accounting Standards Board's Accounting Standards Codification Topic 810: Consolidation (and its predecessor standards Financial Accounting Standards Board Statement 94: Consolidation of All Majority-owned Subsidiaries), as well as Accounting Research Bulletin 51, ARB 43 and Accounting Principles Board Opinion 18, the financial statements of Rolloffs Hawaii, LLC and TrashMasters, LLC are required to be consolidated.

### (i) **The Trustee's Specific Contentions.**

### a) **Due From Related Parties.**

The Trustee's contention that $1,382,698 shown on the *Consolidating* Balance Sheet for 2009 as Due from Related Parties is overstated (Opposition at 50) not only ignores several GAAP accounting standards but is also contrary to the fundamental rules and purpose of consolidation accounting. In addition, the Trustee is mischaracterizing the amount due from a third party, and then inappropriately applying the concept of collectability. The almost $1.4 million is an intercompany account that is eliminated in consolidation. Even though such transactions eliminate (sum to $0) in the preparation of consolidated financial statements, application of GAAP requires that they are accurately and completely recorded. Indeed, the actual *consolidated* balance sheet (Reply Decl., Exh. N at 2) eliminates this amount. The Trustee's assertion that the almost $1.4 million should be another amount violates GAAP. Failure to record transactions violates the GAAP principals of transparency, accuracy, and completeness. If, as the Trustee suggests, the $1,382,698 due from a related party receivable was reduced by $1.2 million, a series of improper one-sided accounting entries would be required and the matching principal would be violated.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 40 of 95

### b) Line of Credit & Current Maturities of Debt/ Long Term Debt and ROHI Debt.

Under the rules of consolidation accounting, it is impermissible and misleading to evaluate the balance sheet of the Debtor (the consolidated subsidiary) as a standalone entity. Companies required to consolidate present only those assets and liabilities due from or due to outsiders; presenting one-sided, intercompany transactions (payables, receivables, income, and loss) is misleading and violates the GAAP principles of matching, transparency, completeness, and accuracy. The placement of the long-term debt to Union Bank and the ROHI Note at TrashMasters on the *consolidating* balance sheet has no impact on the *consolidated* balance sheet where all of the assets and liabilities to outsiders are required to be consolidated. As the consolidated balance sheet for 2009 shows, the consolidated entity's assets (excluding goodwill) exceeded its liabilities by over $3,000,000.

### c) PP&E (Property, Plant and Equipment).

The Trustee's use of pretransaction closing projected balance sheets as a test of solvency and to discredit the audited financial statements and balance sheets is wholly inappropriate. These pretransaction projected balance sheets were a preclosing diligence request of Union Bank, meant to be *indicative* of the postclosing balance sheets, as evidenced by the fact that they were also compiled, and not audited. After the close of the transaction, as is normal practice, the post-

30

closing balance sheet is prepared that (i) consolidates entities if applicable and (ii) allocates the purchase price in accordance with GAAP across the assets and liabilities of the company. This is an area of particular and intense scrutiny of the audit and tax advisors, and the reason why the consolidated posttransaction-closing balance sheet of the consolidated company is the correct one to analyze, and represents the starting point of the audits required by Union Bank and other lenders. During this process, based on the purchase price of the company, related accounting rules, and the market value of the assets, an additional approximately $4 million of the purchase price of the acquired assets was allocated to PP&E over what was shown in the preclosing forecasted balance sheet.

(ii)    **Both the Consolidated and Consolidating Balance Sheets Show the Debtor Was Solvent.**

Even the 2009 Year End *Consolidating* Balance Sheet attached as part of Exhibit A to Mr. Klevansky's declaration shows the Debtor was clearly solvent if the "due from related party" amount of $1,382,698, goodwill, and Debt Issuance Costs are eliminated as assets and the ROHI Debt ($1,000,000), Union Bank Debt ($3,850,000), and the line item for Current Maturities of Long Term Debt ($642,857) are treated as liabilities of the Debtor as the Trustee argues. This would leave the Debtor with tangible net assets of $8,043,922 (ROH total assets $11,289,511, less due from related Party $1,382,698, less Goodwill $1,862,891, less Debt Issuance Costs $117,210) and liabilities of $7,063,441 (ROH total

31

liabilities $1,570,584, plus Union Bank debt $3,850,000, plus ROHI note $1,000,000, plus Current Maturities of Long Term Debt $642,587). This leaves the Debtor with tangible net worth of $980,481. As explained above, there is no legitimate basis to reduce the amount of PP&E stated in the audited balance sheets based on preclosing forecasts that had not allocated the purchase price of the assets acquired to PP&E.

Exhibit R to the Reply Declaration is a spreadsheet created from the data in the Consolidating Balance Sheet for the year ended 2009, which was attached to the Declaration of Mr. Klevansky. The data under the first heading *"Rolloffs Hawaii, LLC-Audited Consolidating Balance Sheet for the Year Ended 12/31/09"* is taken directly from the consolidating balance sheet except the adjustments shown above have been made. The second heading—*"Testing, Analyses & other Relevant Data. "Test 1: Total assets minus total liabilities"*—shows Members' Equity, which mathematically is the difference between all of the Debtor's assets and liabilities. *"Test 2: Results of Test 1 minus all intangible assets (Goodwill, Intangible assets & Debt issuance costs)"* shows "Tangible Net Worth"; mathematically, Members Equity minus all intangible assets equals Tangible Net Worth. The results show that the Debtor's tangible net worth (assets) substantially exceeded its liabilities for the year ended 2009 even after adjustments made to

address the Trustee's misleading claims that certain items were overstated or understated on the *consolidating* balance sheet.

### (b)   Cash-Flow Test.

The Trustee claims to have alleged cash-flow insolvency by suggesting that the accrual of the Advisory Fee debt,[34] as well as the existence of the proof of claim filed by the City & County of Honolulu ("C&C"), and accrued liabilities associated therewith, suggest the Debtor was not generally paying its debts as they became due. *See* Opposition at 46-47.

Authorities in the Motion to Dismiss make clear that this test "'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts.'" Motion to Dismiss at 33 (citing *Liberty Tool & Mfg. v. Vortex Fishing Sys. (In re Vortex Fishing Sys.)*, 277 F.3d 1057, 1072 (9th Cir. 2001), quoting *In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984)). Further, the Trustee did not allege the time period in which the Debtor was allegedly not paying its debts as they became due.

---

[34] The Trustee's suggestion that the Advisory Fees were not being paid as they came due is especially odd given the Trustee's insistence that recouping the Advisory Fees was the lynchpin of the Debtor's "fraudulent scheme." Further, the payment dates set forth in the Complaint make clear the Debtor was generally paying the Advisory Fees. To the extent the Debtor chose to pay other debts ahead of the Advisory Fees and paid the Advisory Fees after they became due, such action is not consistent with an attempt to hinder, delay, or defraud the Debtor's other creditors and completely undermines the Trustee's theory of the case.

33

Finally, C&C's claim of $3 million (which the Trustee asserts was accruing at approximately $500,000-$800,000[35]) at most suggests the Debtor accrued liabilities to C&C in the months before the Petition Date, and long after any of the challenged transfers were made.[36] Accordingly, the Trustee did not sufficiently allege cash flow insolvency, and certainly did not allege cash flow insolvency as of any relevant date.

### (3) Additional Insolvency Allegations.

Although not a factor in any cited insolvency test, the Trustee argues (without authority) that Convergent's participation in the 2012 refinancing demonstrates insolvency because the interest rate on the loan was 16.5%. *See* Opposition at 48-50. The Trustee ignores that the 2012 Convergent Loan was for only a portion of the refinancing and the far larger portion ($4.3 million) was loaned by ASB at an interest of 3.65%, the overall impact of the 2012 refinancing was to reduce the blended costs of the Debtor's borrowing. *See* Motion to Dismiss at 40-41. If anything, the lower blended cost of the debt associated with the 2012 refinancing suggests the Debtor was in an improved financial position.

The Trustee's contention that insolvency can be inferred from an alleged unspecified covenant default on the Union Bank debt is also without authority. *See*

---

[35] *See* Opposition at 47.

[36] In fact, the Debtor maintained an outstanding balance with C&C that was stable and agreeable to the C&C until 2016.

Opposition at 48. The Trustee has not described the nature of the default or made any connection between it and the Debtor's purported insolvency.

Finally, the fact that the Debtor remained in business until 2016 further belies any suggestion of "insolvency" at the time of the challenged conduct. *See, e.g.*, *Allstate Ins. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1229 (C.D. Cal. 2012) (the fact that the alleged insolvent company "still exist[ed] four years later" undermines insolvency allegations).

Accordingly, each of the constructive fraudulent-transfer counts should be dismissed on the grounds that the Complaint fails to set forth sufficient nonconclusory facts to demonstrate insolvency. Moreover, the Trustee's attempt to offer new allegations fails to demonstrate his ability to allege sufficient facts in an amended complaint.

### 3. The ROHI Payoff Counts Must Be Dismissed With Prejudice (Counts XXXVIII-XLIV).

Defendants do not assert that the ROHI Payoff was made on account of an antecedent debt, as suggested by the Opposition. *See* Opposition at 40-41. Rather, Defendants showed from the face of the Complaint and the documents referenced therein, that that the ROHI Payoff was not made by the Debtor because it was made to ROHI directly from the proceeds of the 2012 Convergent Loan to both TrashMasters and the Debtor. *See* Motion to Dismiss at 62-64. The Trustee has not

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 46 of 95

responded to this fatal flaw and, therefore, all fraudulent transfer counts related to the ROHI Payoff must be dismissed.

### 4. The Colbeck Payment Count Must Be Dismissed (Count LII).

The Defendants do not assert that the Colbeck Payments were made on account of an antecedent debt of the Debtor, as suggested by the Opposition. *See* Opposition at 41-42. Rather, the Motion to Dismiss argued that, inter alia, details of the Colbeck Payments were not provided and the Trustee did not allege sufficient details to state a claim, and further that the constructive fraudulent-transfer counts failed because the Complaint did not adequately allege lack of reasonably equivalent value with respect to the Colbeck Payments. *See* Motion to Dismiss at 72-76.

While the Opposition states the Debtor paid at least $417,869 in fees to Colbeck Consulting and/or Mr. Colbeck,[37] that information is not provided in the Complaint (the Complaint provided no information as to the amount other than referencing $6,000 per week, but did not list the number of alleged weekly payments[38]). In addition, the Complaint does not even allege that the Debtor made all of the Colbeck Payments, stating: "Upon information and belief, the Debtor paid to Colbeck and/or Colbeck Consulting *substantially all* of the payments made

---

[37] Opposition at 15-16.

[38] Complaint ¶ 169.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 47 of 95

in connection with the Consulting Agreement." Complaint ¶ 170 (emphasis added). The Trustee has all of the Debtor's records; there is no justification for his failure to allege details of the Colbeck Payments made by the Debtor.

While the Trustee may be entitled to file an amended complaint to correct his failure to detail the transfers—assuming the Court finds he is able to allege other elements of the claims—the count as set forth in the Complaint related to the Colbeck Payment as currently pleaded must be dismissed.

Similarly, dismissal is required as a result of the Trustee's failure to plausibly allege lack of reasonably equivalent value. (Complaint paragraph 567 contains only a conclusory recitation that the Debtor did not receive reasonably equivalent value.) This allegation is implausible because the Trustee has acknowledged that TrashMasters was a holding company *without operations* or revenue (Complaint ¶ 40) and that Mr. Colbeck was retained an interim Chief *Operating* Officer. Since the Debtor was the only entity with *operations,* Mr. Colbeck's services were provided to the Debtor and properly paid for with revenue generated by the Debtor. Again, the Trustee's position seems to be that Mr. Colbeck was required to work for free for the Debtor because his Consulting Agreement was with TrashMasters rather than the Debtor. However, from the standpoint of the Debtor's creditors, whether Mr. Colbeck was hired by TrashMasters or the Debtor is a difference without a distinction: Either way, his

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 48 of 95

role was to oversee the operations of the Debtor and the value of his services was provided to the Debtor.

Moreover, it is undisputed that Mr. Colbeck was an unrelated third party and the Consulting Contract at issue was made at arms' length, so the Trustee's allegations that the payments were made to hinder, delay, or defraud creditors are without factual support.

Accordingly, Count LII, related to the Colbeck Payments, must be dismissed.

**B.    Derivative Counts.**

**1.    Derivative Counts Must Be Dismissed on Basis of Group Pleading (Counts LIII – LXI).**

The Trustee acknowledges that "a plaintiff, at minimum, must identify the role of each defendant in the alleged fraudulent scheme"[39] and further that group pleading is only permissible to describe "the actions of multiple defendants who are alleged to have engaged in precisely the same conduct."[40]

The Trustee relies on the following quote to support the purported viability of his group pleading:

> where the corporate officers are a narrowly defined group charged with day-to-day operations of a public

---

[39] Opposition at 60 (quoting *Moore*, 885 F.2d at 540).

[40] Opposition at 60-61 (citing *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 49 of 95

corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violation. . . . [I]t is not necessary to show actual participation or the exercise of actual power.

Opposition at 61 (quoting *Flood v. Miller*, 35 Fed. App'x 701, 703 (9th Cir. 2002)). However, *Flood does not address group pleading;* rather, the quote addresses whether being charged with day-to-day operations demonstrates control. In fact, the roles of each Defendant were supplied with precision. *Flood* does not enable this Court to allow the Trustee's group allegations to survive the Motion to Dismiss.

In *Moore*, the court affirmed dismissal of a complaint, alleging "the defendants, and each of them, devised, intended to devise and carried out, a scheme to defraud . . ." because the plaintiff had not identified the time, place, and manner of each fraud plus the role of each defendant in each scheme. *Moore*, 885 F.2d at 540-541. *Moore* clearly does not countenance group pleading.

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016 is of no help to the Trustee because it reiterates the well-settled prohibition against group pleading but notes the existence of a narrow exception where defendants have engaged in precisely the same conduct. Discussing the general rule, the Ninth Circuit in that case clearly states:

'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to

39

> differentiate their allegations when suing more than one
> defendant and inform each defendant separately of the
> allegations surrounding his alleged participation in the
> fraud.'

*United Healthcare*, 848 F.3d at 1184, (quoting *United States v. Corinthian*

*Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011) ).

The Ninth Circuit found the complaint "lack[ed] sufficient detail to satisfy

Rule 9(b)" as to certain of the grouped defendants because plaintiff failed to

"allege particular details of the scheme as applied to [certain] defendants." *Id*., at

1167, 1184.  The court found allegations insufficient where they did not show the

"factual basis" for the allegations, even where the allegations gave defendants

notice of the particular misconduct alleged to constitute the fraud charged so that

they could defend against the charge. "The allegations describe some details of a

generalized scheme, but they provide no details linking these defendants to the

scheme. Such allegations are insufficient under Rule 9(b)." *Id*. at 1182. The court

found the complaint's allegations sufficient against certain other defendants only

where it "offers more than broad allegations lacking supporting detail and provides

a strong factual basis for [plaintiff's] claims." *Id*. at 1181.

The Trustee does not, and cannot, allege that each of the Grouped

Defendants engaged in precisely the same conduct and fails to allege any details of

the scheme as applied to each of the Grouped Defendants as the Ninth Circuit

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 51 of 95

mandates. *United States v. United Healthcare Ins. Co.* therefore requires dismissal of each count relying on group pleading.

The Trustee does not identify the role of each Officer and Director in the alleged fraudulent scheme or allege that the Officers and Directors engaged in precisely the same conduct. In fact, any allegation that they did would be implausible because they had different roles at different entities.

The Trustee's group pleading extends not just to the twelve individuals comprising the Officers and Directors (each of whom had different roles at different entities at different times), the Trustee group pleads the Corridor Entities, (three separate entities with different ownership and management structures and relationships with the Debtor), group pleads the SPB Entities (five separate entities with different ownership and management structures and relationships to the Debtor), and, ultimately, group pleads the twenty individuals and entities that made up all of those groups along with TrashMasters.[41]

---

[41] *See*, *e.g*., Count LIII ("An agreement existed between and among TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities"); Count LIV ("TrashMasters, the Officers and Directors, the Corridor Entities and the SPB Entities benefited from said fraudulent transfers"); Count LV ("TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities engaged in self-dealing"); Count LVI ("TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities directly benefitted from their breach of their duty"); Count LVII ("TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities breached their duty"); Count LVIII ("Officers and Directors were in agreement and conspired among and between each other and TrashMasters, the Corridor Entities, and the SPB Entities to breach their fiduciary

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 52 of 95

The Trustee attempts to hide behind new discovery requests[42] (although the Trustee has already conceded receipt of voluminous discovery[43]), but a plaintiff must know the bases of alleged claims and the parties against whom they are made, before asserting them. *See Barker v. JP Morgan Chase Bank*, No. 11-00579, 2016 U.S. Dist. LEXIS 87945, at *31 (D. Ore. July 7, 2016) (claims formulated as part of a "fishing expedition" to find through discovery what plaintiff does not yet know are not a permissible use of a complaint); *see also Riis v. Does*, No. 17-CV-03017, 2017 U.S. Dist. LEXIS 185953, at *12 (D.S.D. Nov. 9, 2017) (noting the importance of evaluating whether conspiracy allegations are part of a viable claim or simply inserted into the Complaint to facilitate a fishing expedition).

Further, the argument that the Defendants are the "only holders of [] information" that would allow him to adequately plead is absurd.[44] The Trustee has all of the Debtor's records and all of the Defendants' prepetition records relating to

---

duties to the Debtor"); Count LIX ("TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB Entities knew the Officers and Directors' conduct constituted a breach"); Count LX ("The Corridor Entities and the SPB Entities were alter egos of TrashMasters and the Officers and Directors, and each other"); Count LXI ("Defendants have been unjustly enriched").

[42] Opposition at 62.

[43] *See*, *supra*, n. 5.

[44] Opposition at 62.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 53 of 95

the Debtor, including all corporate records, such as board records and minutes, emails, and transaction documents.

Accordingly, each of the derivative counts (Counts LIII – LXI) must be dismissed for impermissible group pleading.

**2.    Breach-of-Fiduciary-Duty Claims Are Not Cognizable (Counts LV-LVII).**

### a.    Trustee Cannot Allege Any Party Other Than TrashMasters Owed Fiduciary Duties to the Debtor.

Fiduciary duties owed to a manager-managed LLC are statutorily prescribed, as set forth in the Motion to Dismiss and, as applied to the Debtor, provide that only TrashMasters owed a fiduciary duty to the Debtor. *See* Motion to Dismiss at 86-90.

In fact, an officer of an LLC does not owe fiduciary duties based on status as an officer. Motion to Dismiss at 89 (citing *800 S. Wells Commercial LLC v. Cadden*, 103 N.E.3d 875, 884-85 (Ill. App. 2018) (LLCs are statutorily formed and governed and corporate fiduciary duties do not apply; the LLC statute speaks precisely to the issue of who owes what duties to the company, and finding defendant's role as an officer irrelevant under LLC statue that does not expressly impose fiduciary duties on officers)).

43

As highlighted in the Motion to Dismiss at 89-90, officers and directors of a parent company (here, officers and directors of TrashMasters) do not owe fiduciary duties to a subsidiary (here, the Debtor).

The Trustee does not address this authority, instead relying on *In re USACafes, L.P. Litig.*, 600 A.2d 43 (Del. Ch. 1991). Opposition at 67-68. *USACafes* cannot be read to impose fiduciary duties to the Debtor upon the officers and directors of TrashMasters. *USACafes* holds that where the officers and directors of a corporate general partner of a limited partnership received *"side payments"* totaling between $15 and $17 million to induce them to sell the assets of the limited partnership at a below-market price and without exposing the assets to the market or otherwise informing themselves of value of the assets, a claim for breach of the duty of loyalty could be pleaded by the limited partners against the officers and directors of the general partnership under "general principals and by analogy to trust law" that prohibit one who controls property of another from using that property for his own benefit and to the detriment of the beneficial owner. *In re USACafes*, 600 A.2d at 46-48.

Moreover, in multiple subsequent decisions, Delaware courts have "sharply limited the reach of *USACafes* to situations where the directors of the parent are engaged in personal self-dealing." *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 779 (Bankr. W.D. La. 2013) (finding no

44

plausible claim that fiduciaries engaged in personal self-dealing, as opposed to acting for the benefit of the private equity company) (citing *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. 15754, 2000 Del. Ch. LEXIS 146, 2000 WL 1476663 at * 12 (Del. Ch. Sept. 27, 2000)); *see also Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699, 2018 Del. Ch. LEXIS 221, *39 (Del. Ch. July 6, 2018) (citing *Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, No. 3658, 2009 Del. Ch. LEXIS 54 (Apr. 20, 2009) ("In practice, the cases applying *USACafes* have not ventured beyond the clear application stated in *USACafes*: 'the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership.'") (quoting *USACafes*, 600 A.2d at 49).

The Trustee has not alleged facts in the Complaint that would bring the officers and directors of TrashMasters within *USACafes*: There are no allegations that the officers and directors of TrashMasters received any payments or other tangible benefits in connection with the alleged fraudulent transfers or otherwise caused those transactions to occur for their personal gain or profit.

### b. Fiduciary Duties Are Not Expanded When an Entity Becomes Insolvent.

The Trustee states because the Debtor was insolvent and the Debtor was a creditor of TrashMasters, the officers and directors of TrashMasters became fiduciaries of the Debtor solely as a result of "insolvency." Opposition at 68-69.

This argument fails for two independent reasons. First, the Debtor is not a creditor of TrashMasters.[45] Second, the Trustee misstates the law in Delaware.

In two seminal decisions, *N. Am. Catholic Educ. Programming Found. Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007), and *Trenwick Am. Litig. Trust v. Ernst & Young*, 906 A.2d 168 (Del. Ch. 2006),[46] Delaware courts have explained that duties owed to a corporation do not change or expand as it nears insolvency or becomes insolvent. Rather, creditors simply become the principal residual beneficiaries of those duties. *See Gheewalla*, 930 A.2d at 101-02.

*Gheewalla* put an end to any notion of shifting duties or a zone of insolvency. Specifically, the court confirmed that directors' duties always run to the corporation, and that creditors become the beneficiaries of these duties only after a corporation actually becomes insolvent. Upon insolvency, the "creditors take the place of the shareholders as the residual beneficiaries of any increase in

---

[45] As set forth in the Reply Declaration and section II.A.2.b(2)(a) of this Reply, the Debtor and TrashMasters were required to present consolidated financial statements and balance sheets; intercompany items such as payables, receivables, profits, and losses are eliminated so that consolidated statements show only the interests of outsiders. The consolidated financial statements reflect the affairs of the parent and subsidiary as a consolidated entity that does not have claims to and from itself. Consequently, all accounts classified as assets on one affiliate's balance sheet for which the originating transaction created a liability on the balance sheet of a second affiliate are eliminated.

[46] Although the opinion in *Trenwick* was authored by the Delaware Court of Chancery, the opinion and its reasoning were expressly affirmed by the Delaware Supreme Court. *See Trenwick Am. Litig. Trust v. Billett*, 931 A.2d 438 (Del. 2007).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 57 of 95

value," which in turn grants creditors standing to bring derivative—but not direct

— actions. *Id*. at 101. The court explained:

> When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: Directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners.

*Id.*

In *Quadrant Structured Prods. Co., Ltd. v. Vertin*, the Delaware Chancery

Court further elaborated:

> *The directors of an insolvent firm do not owe any particular duties to creditors*. They continue to owe fiduciary duties to the corporation for the benefit of all of its residual claimants, a category which now includes creditors. They do not have a duty to shut down the insolvent firm and marshal its assets for distribution to creditors, although they may make a business judgment that this is indeed the best route to maximize the firm's value.

*Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 546-47 (Del. Ch.

2015) (emphasis added; footnotes omitted).

Federal courts in Hawaii recognize that *Gheewalla* and *Quadrant*

established that directors of an insolvent corporation do not owe fiduciary duties to

creditors under Delaware law. *See Mansha Consulting LLC v. Alakai*, No. 16-

00582, 2017 U.S. Dist. LEXIS 135407, at *38 (D. Haw. Aug. 23, 2017) (cited and

relied upon by Trustee, Opposition at 70).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 58 of 95

The sole authority cited by the Trustee in support of his false claim that new fiduciary duties to creditors arise for officers and directors of TrashMasters as a result of the Debtor's purported insolvency is *Official Committee v. Lozinski (In re High Strength Steel, Inc.),* 269 B.R. 560, 569 (Bankr. D. Del 2001). This case precedes *Gheewalla*, *Trenwick* and *Quadrant* by many years and, to the extent the decision can be construed to hold that a corporation's officers and directors owe unsecured creditors fiduciary duties, is no longer the law in Delaware. In fact, *High Strength Steel* cites and relies upon a 1944 Delaware case that is no longer the law in Delaware after *Gheewalla*. [47]

As set forth in the Motion to Dismiss, under Hawaii law, LLC managing members have substantially narrower duties than corporate directors and officers (Motion to Dismiss at 86-87) and there is no basis under Hawaii law to impose

---

[47] Before *Gheewalla* and *Trenwick*, uncertainty existed with respect to whether the fiduciary duties of officers and directors of a corporation expanded in nature and shifted to creditors upon insolvency or in the zone of insolvency. The genesis of the idea that duties might be owed directly to creditors of insolvent firms came from a pre-*Gheewalla* Delaware case, *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808, 813 (Del. 1944) (cited and relied upon by *High Strength Steel*, the sole case cited by the Trustee on the issue), which described the insolvent firm as property "administered in equity as a trust" for creditors. Later, a "famous" footnote in the *Credit Lyonnais* opinion discussed the potentially divergent interests of creditors and shareholders in the "vicinity of insolvency." *Quadrant*, 102 A.3d at 174 (quoting *Credit Lyonnais Bank Nederland NV v. Pathe Commc'ns Corp.*, 17 Del. J. Corp. L. 1099, 1159 n.55 (Del. Ch. Dec. 30, 1991)). These and other decisions led many to conclude that fiduciary duties shift from shareholders to creditors when a corporation slips into insolvency. *Gheewalla* put a clear end to any notion of shifting or expanded duties upon insolvency.

fiduciary duties to the Debtor upon the officers and directors of TrashMasters. *See* Motion to Dismiss at 89-90. As demonstrated above, there is no basis under Delaware law, either.

### c. Trust-Fund Doctrine Has Not Been Alleged.

The Opposition incorrectly asserts that under the "trust fund doctrine," as applied in Hawaii, creditors may look to the personal assets of Ms. Davis, Mr. Enenstein and Mr. Monnier, alleged to be officers or directors of the Debtor, for self-dealing. As set forth in the Motion, the requirements of the trust-fund doctrine have not been pleaded in the Complaint. Motion to Dismiss at 94 (citing *Mansha Consulting LLC v. Alakai*, No. 16-00582, 2017 U.S. Dist. LEXIS 135407, at *24-25, 31 (D. Haw. Aug. 23, 2017) (the trust fund doctrine does not apply until the corporation becomes hopelessly insolvent and unable to carry out objects for which it is created *and determines to discontinue the prosecution of business*)). Because the Trustee did not (and cannot) allege that the Debtor had determined to discontinue its business at the time of any of the challenged transactions, he cannot state cognizable a claim for breach of duty under the trust-fund doctrine.[48]

---

[48] The Trust Fund Doctrine under Hawaii law provides, where the requirements are met, for a fiduciary duty by directors *to creditors* rather than to the corporation. The Trustee lacks standing to bring claims on behalf of creditors. *See Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416 (1972); *Williams v. Cal. 1st Bank,* 859 F.2d 664, 666 (9th Cir. 1988). Therefore, even if the requirements of the Trust Fund Doctrine had been plead, the Trustee would not have standing to bring a claim against the Defendants pursuant to that doctrine.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 60 of 95

### d. Veil Piercing Does Not Confer Fiduciary Duties.

The Trustee suggests that breach-of-fiduciary-duty claims are properly alleged against (i) SPB Waste, (ii) Corridor TM, (iii) Mr. Asay, Sr., (iv) Mr. Asay, Jr., (v) ROHI, and (vi) KNG, as well as any officers and directors of TrashMasters on a veil-piercing theory. Opposition at 71-72.

Veil piercing is a remedy that would allow the Trustee to collect against alter egos of TrashMasters, if TrashMasters were found liable for breach of duty and SPB Waste, Corridor TM, Mr. Asay, Sr., Mr. Asay, Jr., ROHI, KNG, and the officers and directors of TrashMasters were found to be alter egos of TrashMasters. It does not operate to impose fiduciary duties to purported alter egos of a fiduciary and allow the Trustee to state independent claims for breach of duty against persons or entities that do not owe such duties. *See Colemans Haw. v. Ching*, No. 22879, 2001 Haw. App. LEXIS 93, at *10 (April 27 2001).

### e. Breaches of Fiduciary Duties Under Hawaii LLC Statute Have Not Been Pleaded.

The facts alleged in the Complaint do not state claims for breach of fiduciary duties.

In Hawaii, the duty of loyalty owed by a manager to an LLC includes only accounting for property, profits, or benefits; refraining from dealing with the company as an adverse party; and refraining from competing with the company. Haw Rev. Stat. § 428-409(h). The duty of care is limited to solely to refraining

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 61 of 95

from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. *See id*. § 428-409(c) (applicable by Haw. Rev. Stat. § 428-409(h)).

As set forth in the Motion to Dismiss, the Complaint alleges the following as breaches of fiduciary duties:

- directing and authorizing the fraudulent conveyances and fraudulent transfers set forth in Counts I-LII for their own benefit and to the detriment of creditors, and incurring loans and causing the Debtor's assets to be encumbered for that purpose (Complaint ¶¶ 610-12, 621-22, 627-630).

- structuring the organization of the Debtor, TrashMasters and certain of the Corridor Entities and the SPB Entities for their own benefit to insulate them from liability (Complaint ¶ 618).

- sitting on all sides of the Advisory Agreement, which was unfair and overcompensated the Officers and Directors, the Corridor Entities and the SPB Entities (Complaint ¶¶ 619-21).

- expanding the Company's debt, leveraging its assets and prolonging the corporate life of the Debtor (Complaint ¶¶ 613, 631).

Motion to Dismiss at 91-92.

None of these allegations constitutes a breach of the very limited fiduciary duties imposed under the Hawaii LLC statute. Further, Hawaii law is clear that a manager/fiduciary "does not violate a duty or obligation under this chapter or under the operating agreement merely because the [manager's] conduct furthers the [manager's] own interest." Haw. Rev. Stat. § 428-409(e).

51

The Opposition contends that TrashMasters violated the following fiduciary duty:

> To account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity.

Haw. Rev. Stat. § 428-409(b)(1); Opposition at 73. However, this section deals with any property *derived and held by a manager/member of the LLC* rather than property held by the LLC itself. In other words, the manager/member of an LLC, if the manager/member holds the LLC's property, must hold it as a trustee for the LLC. There is no allegation that TrashMasters (or any of the Defendants) held the Debtor's property or profits and did not turn any such property over completely to the Debtor. In fact, each of the alleged fraudulent transfers was alleged by the Trustee to have been *made by the Debtor, with fraudulent intent on the part of the Debtor*.

None of the acts alleged constitute grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. Nor do any of the acts alleged constitute acting as a party having an adverse interest to the Debtor.

Finally, the Trustee states he wishes to amend the Complaint to bring additional claims for "breach of its duty of care in understating the Debtor's debts

52

an overvaluing the Debtor's assets." Opposition at 74. As set forth in the Reply Declaration, there is no principled basis to make this allegation.

**f.    Actions Were Ratified by TrashMasters.**

As set forth in section II.A.2.b, the Complaint does not allege insolvency at any relevant point in time, nor has the Trustee demonstrated that he will be able to allege solvency. Accordingly, any conduct constituting a breach of duty *was* ratified by TrashMasters. *See* Motion to Dismiss at 92-93.

Ultimately, the breach-of-fiduciary-duty claims fail for a multitude reasons: group pleading; only TrashMasters owed the Debtor any fiduciary duties; the Trustee did not allege any actions that constitute a breach of the narrow fiduciary duties owed; and because insolvency was not alleged in the Complaint, all actions were ratified by TrashMasters. The claims must be dismissed with prejudice.

**3.    The Trustee's Conspiracy Claims Must Be Dismissed (Counts LIII, LIV, LVIII).**

The conspiracy counts require the existence of an underlying tort. *See* Motion to Dismiss at 78, 95. Because both the fraudulent-transfer counts and breach-of-fiduciary-duty counts must be dismissed, the Trustee's conspiracy claims also fail.

53

### a. Conspiracy to Commit Fraudulent Transfers (Counts LIII, LIV).

#### (1) Conspiracy to Commit Fraudulent Transfers Is Not a Legally Cognizable Claim.

In opposing dismissal of Counts LIII and LIV for conspiracy to commit fraudulent transfers (Opposition at 75-83), the Trustee ignores "overwhelming" authority holding that parties cannot be liable to a bankruptcy estate for simply participating in a fraudulent transfer, and mischaracterizes the authorities on which he attempts to rely.

Contrary to the Trustee's representation (without authority), the numerous cases holding that a bankruptcy trustee is prohibited from prosecuting claims for conspiracy to commit fraudulent transfers do not distinguish between the trustee's pursuit of such claims on behalf of creditors rather than on behalf of the debtor. The prohibition is against the prosecution of such claims on behalf of the estate. Motion to Dismiss at 82-84. The Trustee conflates the well-settled principle that a bankruptcy trustee lacks standing to bring claims solely on behalf of creditors[49] with the many cases cited by the Defendants holding that a bankruptcy trustee cannot invoke state law remedies to circumvent the sole remedy provided by Congress for the avoidance and recovery of fraudulent transfers under

---

[49] *See Caplin*, 406 U.S. 416 (under Bankruptcy Act, trustee lacked standing to bring a damage action on behalf of bondholders against the agent charged with protecting their interests); *Williams,* 859 F.2d at 665.

Bankruptcy Code sections 544 and 550. The Trustee's argument that these cases only apply when a trustee is bringing claims on behalf of creditors defies logic and common sense; bankruptcy trustees have no standing to bring any claims solely on behalf of creditors, but only have standing to being claims belonging to the debtor under Bankruptcy Code section 541 or pursuant to the trustee's powers under 544. None of the cases cited by Defendants in their Motion at 82-84 draw the distinction the Trustee is urging upon the Court.

Specifically, *Paloian v. Greenfield (In re Restaurant Dev. Grp., Inc.)*, 397 B.R. 891 (Bankr. N.D. Ill. 2008), is the sole case cited by the Trustee in which a bankruptcy court declined to dismiss claims for conspiracy to commit fraudulent transfers. *Paloian* has been roundly criticized by the court that decided it[50] and utterly disregarded—to this day it has never been followed by another court to permit such claims to proceed.

The Trustee's reliance on *Drabkin v. L & L Constr. Assocs. (In re Latin Inv. Corp.)*, 168 B.R. 1, 4 (Bankr. D.D.C. 1993), and *Audette v. Kasemir (In re Concepts Am., Inc.)*, No. 16-691, 2018 Bankr. LEXIS 602, at *3-4 (Bankr. N.D.

---

[50] *Gierum v. Glick (In re Glick)*, 568 B.R. 634, 677 (Bankr. N.D. Ill. 2017) ("*Paloian* is unpersuasive" and observing that the *Paloian* court only considered applicable state law and failed to consider the obstacle that section 550(a) poses to claims against those who merely participate in a fraudulent transfer under sections 548(a) and 544(b). The court held "parties who neither received transferred property nor benefited from a fraudulent transfer in some other way are not subject to liability.").

Ill. March 1, 2018), are of no avail. *Drabkin* deals only with a trustee's standing to bring claims for conspiracy to defraud and does not address a bankruptcy trustee's ability to bring claims for conspiracy to commit fraudulent transfers. Similarly, *In re Concepts* only permitted the trustee's claims for conspiracy to commit fraud (unrelated to a fraudulent transfers) to survive a motion to dismiss. In dismissing claims for aiding and abetting a fraudulent transfer the court made the familiar observation that "'[o]verwhelmingly, courts have concluded that parties cannot be liable for a fraudulent transfer if all they have done is participate in it.'" *Id*. at *34 (quoting *Glick*, 568 B.R. at 677) (section 550 provides that to the extent a transfer is avoided as a fraudulent transfer under section 544 and applicable state law, a trustee's recovery is limited to the property transferred or the value of such property from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee"). The Trustee also cites to *Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Serv., Inc.),* 384 B.R. 66, 76 (Bankr. D. Del. 2008), however, no case with that citation exists. Assuming the Trustee is referring to 384 B.R. 80, this case does not address a bankruptcy trustee's ability to bring claims for conspiracy to commit fraudulent transfers but instead deals with general claims of conspiracy to defraud. *Id*. at 92.

Finally, the Trustee argues that state courts have allowed conspiracy claims for fraudulent transfers, citing *McElhanon v. Hing,* 151 Ariz. 403, 728 P.2d 273, 278 (1986); *Paloian,* 397 B.R. at 897; *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 876 A.2d 253 (2005); and *Dalton v. Meister,* 71 Wis. 2d 504, 239 N.W.2d 9 (1976). None of these cases involves a bankruptcy trustee's attempt to pursue claims for conspiracy to commit fraudulent transfers; therefore, the limited remedy of Bankruptcy Code section 550 was not implicated. As set forth in the Motion to Dismiss at 82-83, the Ninth Circuit has held that whether state law recognizes a claim for conspiracy to commit a fraudulent transfer is irrelevant when the claim is brought by a bankruptcy trustee whose ability to bring claims related to fraudulent transfers under state law is limited by Bankruptcy Code sections 544 and 550, which only permit the trustee to *avoid* a fraudulent transfer and recover from transferees or entities for whose benefit the transfer was made. *Wyle v. Howard,* 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995), *aff'd,* 196 B.R. 532 (N.D. Cal. 1995), *aff'd,* 114 F.3d 991 (9th Cir. 1997).

### (2) The Trustee Has Not Alleged the Debtor Made Transfers With Actual Intent to Hinder, Delay, or Defraud.

The Motion to Dismiss explains that the Trustee's claims for conspiracy to commit fraudulent transfers also fail because the Debtor was alleged to have not only participated in the alleged fraudulent transfer, but was the party who *made* the alleged fraudulent transfers *with actual intent to hinder, delay, or defraud its*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 68 of 95

*creditors*, and the doctrine of *in pari delicto* applies when the Debtor is a co-conspirator. *See* Motion to Dismiss at 81-82 (citing Complaint ¶¶ 207, 233, 257, 281, 293, 316, 333, 339, 359, 378, 388, 411, 428 434, 454, 474, 480, 498, 519, 527, 547 and 566).

The Trustee now argues in the Opposition that the Debtor was not an alleged co-conspirator, recasting the counts as a conspiracy to cause the Debtor's insolvency. *See* Opposition at 78 ("The Debtor in this case was not a co-conspirator and was never alleged to be one in the Complaint. Instead, the Trustee alleged that TrashMasters, and the Officers and Directors, *caused* the Debtor's insolvency."). However, the counts are for conspiracy to commit fraudulent transfers, not conspiracy to commit insolvency.[51]

### (3) The Complaint Does Not State Claims for Conspiracy to Commit Fraudulent Transfers.

The Opposition reiterates that the conspiracy to commit fraudulent-transfer counts are based on the conclusory allegation that the Grouped Defendants "directed the fraudulent conveyances and transfers" and suggests this conclusory

---

[51] The Trustee further attempts to obfuscate his multiple allegations of actual fraudulent intent on the part of the Debtor, arguing that Defendants cannot argue that any of its actions were imputed to the Debtor. Defendants do not and have not attempted to argue that *in pari delicto* applies because of conduct *imputed* to the Debtor; *in pari delicto* applies because the Complaint alleges the Debtor *actually* made the transfers with fraudulent intent.

58

allegation is sufficient to allege conspiracy. It is not. *See* Motion to Dismiss at 84-86.

The Trustee argues that if he has pleaded the underlying claims for fraudulent conveyances and transfers with sufficiency, the civil conspiracy aspect need not be pleaded with further particularity. *See* Opposition at 82 (citing *FirstMerit Bank, N.A. v. Hosseini*, No. 14-8749, 20145 U.S. Dist. LEXIS 90388, at \*30 (N.D. Ill. July 13, 2015).

The Trustee's position contradicts Supreme Court authority, cited in the Motion to Dismiss, holding that conspiracy claims must include enough specificity regarding the time, place, and persons involved in making the conspiratorial agreement, and to show that an actual agreement was reached. *See Twombly*, 550 U.S. at 565 n.10 (a defendant responding to conspiracy claims "would have little idea where to begin" if the pleadings "mentioned no specific time, place, or person involved in the alleged conspiracies"); *see also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Further, the alleged facts in *Hosseini* went far beyond mere the vague conclusory allegations in the Complaint. The allegations of the alleged fraud, by their nature, demonstrated a conspiracy: Party 1 experienced financial

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed  04/05/19  Page 70 of 95

difficulties. To evade an existing debt, he transferred real property as part of a fraudulent scheme: the property was transferred from Party 1 to Party 2, then from Party 2 to Party 3, and then to Party 1's sister-in-law, while Party 2 made payments to Party 1's brother-in-law at the direction of Party 3. The conspiracy allegation explained the role of the co-conspirators (Party 2, and the trustee of Party 3) and their actions in transferring the property and directing payments. Specifically, the Complaint alleged that "Defendants agreed with each other, including with [Party 1], to perpetrate the Scheme on [Party 1's] creditors, including primarily FirstMerit. . . The Scheme was effectuated by (a) [Party 1] fraudulently transferring his interests in [Party 2] in violation of the IUFTA, (b) [Party 2] paying and continuing to pay [Party 1's brother-in-law] to cheat and contravene FirstMerit, and (c) [Party 2] transferring the 2250 Property to [Party 1's sister-in-law] to cheat and contravene FirstMerit." *Hosseini,* 2015 U.S. Dist. LEXIS 90388, at *30. The Complaint further alleged how the scheme was carried out. *Id*. at **30-31.

Among other things, the complaint in *Hosseini* detailed the specific involvement of each alleged co-conspirator. In contrast, the Trustee's Complaint merely alleges that the Grouped Defendants directed the fraudulent transfers— there are no facts alleged showing what actions were undertaken by any individual or entity comprising the Grouped Defendants or even showing how

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 37  Filed  04/05/19  Page 71 of 95

any one of them had authority or ability to direct any of the alleged fraudulent transfers.

The Trustee's reliance on *Hosseini* does not support his contention that he has sufficiently pleaded the fraudulent-transfer conspiracy counts, and the counts for conspiracy to commit fraudulent transfers must be dismissed.

### b. Conspiracy to Commit Breaches of Fiduciary Duties (Count LVIII).

#### (1) No Co-Conspirators Exist to Breach Fiduciary Duties.

A claim for conspiracy to breach fiduciary duties fails as a matter of law unless the alleged co-conspirators owe fiduciary duties. *See* Motion to Dismiss at 95-96.

As set forth above and in the Motion to Dismiss, TrashMasters is the only party that owed fiduciary duties to the Debtor, and TrashMasters cannot conspire with itself. Further, the Opposition could not establish the existence of a fiduciary duty on the part of any party other than TrashMasters.

#### (2) The Complaint Does Not State Claim for Conspiracy to Breach Fiduciary Duties.

As set forth in the Motion to Dismiss, the Complaint only offers the conclusory allegation that the "Officers and Directors were in agreement and conspired among and between each other and TrashMasters, the Corridor Entities, and the SPB Entities to breach their fiduciary duties to the Debtor."

61

Complaint ¶ 635. There are no allegations of facts suggesting a conspiracy existed and the Trustee cites no cases to support an argument that he has adequately pleaded a claim for conspiracy to breach fiduciary duties. Accordingly, this count must be dismissed.

### 4. Trustee's Claim for Aiding and Abetting Are Not Adequately Pleaded (Count LVIX).

As set forth in the Motion, and as noted previously by this Court, any claim for aiding and abetting a breach of fiduciary duty requires the existence of an underlying tort. *See* Motion to Dismiss at 96-97 (citing *Molokai Servs. v. Hodgins*, No. 15-0000464, 2018 Haw. App. LEXIS 92, at *26 (Feb. 28, 2018)). Because the breach-of-fiduciary-duty counts must be dismissed, the Trustee's aiding-and-abetting claim so too must fail.

As set forth in the Motion to Dismiss, and acknowledged by the Trustee, the elements of an aiding and abetting a breach-of-fiduciary duties claim are as follows: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Molokai Servs.*, 2018 Haw. App. LEXIS 92, at *26 (quoting *Combs v. Case Bigelow & Lombardi*, No 28773, 2010 Haw. App. LEXIS 25 (Jan. 27, 2010)).

The Trustee's aiding-and-abetting allegations are nothing more than bare bones conclusions:

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 73 of 95

> 641. TrashMasters, the Corridor Entities and the SPB
> Entities gave substantial assistance or encouragement to
> the Officers and Directors to breach their fiduciary duties
> in Counts LV-LVII.
>
> 642. [T]o the extent individual Officers and Directors
> were not officers and/or directors of the Debtor, said
> individual Officers and Directors gave substantial
> assistance or encouragement to the other [Grouped
> Defendants] to breach their fiduciary duties.

Complaint ¶¶ 641-42.

The Motion to Dismiss shows that that the Trustee does not allege facts in the Complaint demonstrating how any Defendant gave "substantial assistance or encouragement," what that assistance or encouragement was, and how it was a "substantial factor" in causing the Officers and Directors to breach their fiduciary duties. Further, the Trustee has not identified which Officers and Directors were not officers and directors of the Debtor (or otherwise did not owe an alleged fiduciary to the Debtor), so it is impossible for any Defendant to determine whether the Trustee is even alleging this Count against them.

The Opposition replies that:

> Trustee specifically alleged that the "Corridor Entities
> and the SPB Entities gave substantial assistance or
> encouragement to the Officers and Directors to breach
> their fiduciary duties in Counts LV-LVII."

Opposition at 85 (citing Complaint ¶ 641). The Trustee offers no support therefor, instead citing to unidentified acts of "participation"—which do not meet the applicable pleading standard. *Id.*

The Trustee argues financial gain can demonstrate knowledge of and substantial assistance in aiding and abetting a breach-of-fiduciary-duty claim. *Id.* (citing *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1126-1132 (C.D. Cal. 2003)). In that case, however, the court discussed financial gain in the context of whether it is a required element of an aiding-and-abetting claim. The district court determined it was not, but may be a factor in assessing knowledge or substantial assistance. Cases cited in *Neilson* make clear that financial gain is not a direct substitute for alleging knowledge or substantial assistance. *See Neilson*, 290 F. Supp. 2d at 1128 (citing *Monsen v. Consolidated Dressed Beef Co., Inc.*, 579 F.2d 793, 799 (3d Cir. 1978) ("'The requirement of knowledge may be less strict where the alleged aider and abettor derives benefits from the wrongdoing. Nevertheless, even in such a situation, 'the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety.'" (quoting *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir 1974)). However, because the Trustee has not alleged financial gain on the part of each of the Grouped Defendants, a bare conclusory allegation of financial gain does not supplant the requirement that the Trustee allege knowing participation.

64

Accordingly, Count LIX must be dismissed, and the Trustee should not be permitted to replead this count, because he clearly has no factual allegations in support thereof.

### 5. Trustee Fails to Sufficiently Plead an Alter Ego Claim Against the Defendants (Count LX).

The Trustee argues that (1) the Complaint adequately pleads the "unity of interest and ownership among the Syndicator Defendants," and (2) while Hawaii does not recognize a claim for reverse veil piercing, the Trustee may bring a reverse alter-ego claim under Delaware or Nevada law made applicable by internal affairs doctrine. *See* Opposition at 86. Both arguments fail.

#### a. The Trustee Fails to Allege Facts Showing Unity of Interest and Ownership Among the Alleged Defendants.

The Complaint asserts in the broadest conclusory terms that all of the Officers and Directors, the Corridor Entities, and the SPB Entities were alter egos of TrashMasters *and each other* and *each acted as an agent for one another. See* Complaint ¶ 647. The Trustee fails to sufficiently plead an alter-ego claim under the applicable law of Hawaii, much less that of Delaware or Nevada, because the claim rests entirely on conclusory allegations regarding the general existence of alter ego without specific facts. *See Twombly,* 550 U.S. at 555 (court need not accept conclusory legal allegations; entitlement to relief requires more than labels and conclusions). The conclusory allegations fail to adequately allege a unity of

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 76 of 95

interest and ownership among the variously positioned defendants to plausibly deem them all alter egos of each other.

In Hawaii, an alter-ego claim requires that the corporation is not only influenced and governed by the person alleged to be an alter ego, but that there is such a "unity of interest . . . that the individuality, or separateness, of such person and corporation has ceased." *Robert's Haw. School Bus, Inc. v. Laupahoehoe,* 91 Haw. 224, 242 (1999), *superceded by statute*, 2002 Haw. Sess. Laws Act 229, § 2 at 916-17 (quoting *Associated Vendors, Inc. v. Oakland Meat Co., Inc.,* 210 Cal. App. 2d 825, 837 (1962)). The facts must also demonstrate that adherence to the fiction of separateness would sanction a fraud or promote injustice. *Id.* Furthermore, under Hawaii law, an alter-ego claim is only viable where the individual owns shares in the entity. *See*, *e.g.*, *Estate of Daily v. Title Guar. Escrow Servs.,* 178 B.R. 837, 841 (D. Haw. 1995) (motion to dismiss granted); *Evanston Ins. Co. v. Luko,* 7 Haw. App. 520, 525, 783 P. 2d 293, 297 (1989) (piercing corporate veil not applicable where no evidence that directors and officers were shareholders).

The Trustee contends that the Complaint adequately pleads unity of interest and ownership among the Defendants—but the paragraphs to which he cites contain no information regarding either. *See* Complaint ¶¶ 36-38, 89-90. That the Corridor Entities and SPB Entities are private equity firms managed by

certain individuals, some of whom had management roles at the Debtor and TrashMasters, does not support an alter-ego finding, particularly across all of the entities and individuals. *See Complaint* ¶¶ 36-38. Likewise, the fact that Corridor Capital is alleged to be an affiliate of Corridor TrashMasters and the other Corridor Entities does not support a finding that the Corridor Entities are, for example, an alter ego of the SPB Entities or of the Officers and Directors. *Id.* ¶ 89. Similarly, the fact that the SPB Entities are alleged to be affiliated does not support a finding that they are alter egos of the Corridor Entities or of the Officers and Directors. *Id.* ¶ 90. There are no facts alleged that enable the Court or any of the Defendants to determine which Officers and Directors are alleged to be alter egos of which SPB Entity or which Corridor Entity, or on what basis.

The Trustee cannot allege that there is a unity of ownership among the individuals and entities because the face of the Complaint demonstrates that only Corridor TrashMasters and SPB Waste owned equity in TrashMasters (43.3% and 21.7%, respectively). Defendants Greulich, Monnier, Davis, Bulloch and Pressberg are not alleged to have an ownership interest in any of the Debtor, TrashMasters, the Corridor Entities or SPB Entities. *Id*. ¶¶ 48, 50. The Complaint does not state, or even plausibly suggest, that there is a unity of interest such that the "separateness of each of the Defendants has ceased to exist" as required by *Robert's Haw. School Bus, Inc.* Further, there are no allegations that the Corridor

Entities or SPB Entities failed to observe corporate formalities or that their formation was to circumvent public policy or statutes, there are no allegations regarding concealment or misrepresentation of the ownership or management by the Defendants, and there are no allegations of commingling or syphoning of assets by or among the Defendants that would support an alleged alter ego theory of recovery. *See*, *e.g.*, *Robert's Haw. School Bus, Inc.*, 91 Haw. at 242 (listing factors considered to determine alter-ego liability).

Even assuming, as the Trustee incorrectly argues (see below), that the Court must ignore Hawaii law and instead apply the law of Delaware or Nevada, the Complaint fails to meet the requisite pleading standards.

Delaware law creates a high bar for the Trustee. Delaware courts applying Delaware law are extremely reluctant to disregard the corporate form to impose alter-ego liability. *See Wallace v. Wood,* 752 A.2d 1175, 1183-84 (Del. Ch. 1999) ("'Persuading a Delaware court to disregard the corporate entity is a difficult task.'" (quoting *Harco Nat'l Ins. Co. v. Green Farms*, No. 1131, 1989 Del. Ch. LEXIS 114, at *10 (Sept. 19, 1989)). An alter-ego claim under Delaware law requires (1) "exclusive domination and control" to the point that the separateness of entity and defendant no longer exists and (2) that the corporate structure must be a sham "and exist for no other purpose than as a vehicle for fraud." *Id.* at 1184 (motion to dismiss alter-ego claim granted); *see also Mason v. Network of*

*Wilmington, Inc.*, No. 19434, 2005 Del. Ch. LEXIS 99, at **9-17 (July 1, 2005)

(same). The Complaint fails to allege a unity of interest, much less anything

amounting to exclusive domination and control between the Defendants, and the

Complaint fails to allege that the corporate structure among the Defendants

existed for the sole purpose of fraud. The interests of the Defendants in each

other and TrashMasters were not unified, and the fact that TrashMasters was

owned in part by Corridor TrashMasters and SPB Waste (with the remaining 35%

ownership unspecified) is not reflective of a sham corporate structure and there is

no basis for that inference. The most that the Complaint alleges is, "As alter egos,

TrashMasters, the Officers and Directors, the Corridor Entities, and the SPB

Entities engaged in fraudulent conveyances and transfers and breaches of their

fiduciary duties." Complaint ¶ 648. The allegation does not come close to

pleading that a corporate structure existed for no other purpose than as a vehicle

for fraud.

Under Nevada law, an alter-ego claim requires (1) the corporation must be

influenced and governed by the person asserted to be the alter ego, (2) there must

be such a unity of interest and ownership that one is inseparable from the other,

and (3) the facts must be such that adherence to the corporate fiction of a separate

entity would sanction a fraud or promote injustice. *See LFC Mktg. Group, Inc. v.*

*Loomis,* 116 Nev. 896, 904, 8 P.3d 841, 846 (2000) (cited by the Trustee); *see*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 80 of 95

*also* Nev. Rev. Stat. Ann. § 78.747 (liability of stockholder, director or office for debt or liability of corporation) (codifying common law). Again, the Trustee has not, and cannot, allege that there is a unity of interest and ownership between the Defendants such that all Defendants are inseparable from each other. Ownership of corporate shares is a strong factor favoring the second element, but it is not dispositive. *See LFC Mktg. Group,* 116 Nev. at 905, 8 P.3d at 847. Other factors to determine whether a unity of interest exists between the individual and a corporate entity under Nevada law include: commingling and unauthorized diversion of funds, treatment of corporate assets as personal assets, and failure to observe corporate formalities. *See Polaris Indus. Corp. v. Kaplan,* 103 Nev. 598, 601-02, 747 P.2d 884, 887-88 (1987) (officers treated corporate funds as their own while corporate debts were not being paid). The Trustee fails to allege specific facts regarding any of the foregoing factors that would plausibly establish a unity of interest between and among *each of the Defendants*. None of these facts are alleged among the various entities and individuals the Trustee alleges are all alter egos of each other.

In sum, the Complaint makes conclusory statements regarding alter-ego liability among the diverse Defendants (Complaint ¶¶ 644-651) without specifying critical facts that would support findings under Hawaii, Delaware, or Nevada law that each Defendant should be liable for the actions of the other

without regard to separateness, or that the separateness of the Defendants is a sham and treating them as separate would promote fraud or injustice.

      **b.**   **Hawaii Does Not Recognize a Reverse Alter-Ego Claim and, Even Assuming That Delaware or Nevada Law Applies, the Trustee Fails to State Sufficient Facts to Support a Plausible Claim for Reverse Alter-Ego Liability.**

The Trustee argues that the law of the state of incorporation determines issues relating to a corporation's internal affairs such that Delaware or Nevada law should govern the alter-ego claim, and that Delaware and Nevada, unlike Hawaii, permit a reverse alter-ego claim. *See* Opposition at 89.[52]

Defendants dispute that the internal-affairs doctrine governs alter-ego liability as it relates to the fraudulent-transfer and tort claims in this case. Even if the internal-affairs doctrine is applied, it requires application of Hawaii law to the alter-ego claims and allegations because Hawaii has the most significant relationship to the claims. Therefore, the reverse alter-ego claim must be dismissed. However, even if Delaware or Nevada law does apply, the Complaint

---

[52] As a preliminary matter, the Trustee fails to cite any authority for the proposition that the internal-affairs doctrine applies to alter-ego claims where, as here, the alter-ego claim is not a matter of collection, but of joint and several liability based on alleged avoidance and breach-of-fiduciary-duty claims. The Trustee also fails to state which state law arguably should apply to his alter-ego claim (although Delaware is the logical assumption because TrashMasters is a Delaware LLC and the Delaware Corridor Entities held a greater ownership in the entity than did the Nevada SPD Entities).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 82 of 95

fails to allege a viable claim for reverse alter-ego liability among each of the Defendants under the applicable law of these states.

The Ninth Circuit applies federal choice-of-law rules in bankruptcy cases. *See Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1069 (9th Cir. 2002) . Federal choice-of-law rules follow the approach of the Restatement (Second) of Conflict of Laws. *Id.*; *see also PNC Bank v. Sterba (In re Sterba),* 852 F. 3d 1175, 1179 (9th Cir. 2017) (federal choice of law applied to bankruptcy analysis of statute-of-limitations provision in promissory note); *Official Comm. v. Nilson (In re Woodside Group, LLC),* 427 B.R. 817, 837 (Bankr. C.D. Cal. 2010) (federal choice of law applied to bankruptcy dispute concerning equitable restitution and preliminary injunction).

The Restatement (Second) of Conflict of Laws sets forth the internal-affairs doctrine and directs that the local law of the state of incorporation applies to determine the extent of a director or officer's liability to the corporation and its creditors "except where, with respect to the particular issue, some other state has a more significant relationship . . . to the parties and the transaction, in which event the local law of the other state will be applied." Restatement (Second) Conflict of Laws § 309 (Directors' or Officers' Liability); *see also* Restatement (Second) Conflict of Laws § 302 (other issues with respect to powers and liabilities of corporation) (substantively identical language). Thus, there is a

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 83 of 95

presumption that the law of the state of incorporation applies that may be rebutted by a showing that the forum state has a more significant relationship. *See*, *e.g.*, *Deangelis v. Corzine (In re MF Global Holdings Inv. Litig.),* 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014) ("[I]f there is a state with 'a more significant relationship with the parties and the dispute at issue,' the court should apply that state's law;" applying internal-affairs doctrine under the Restatement approach and holding that state law of the state with the most significant relationship governed breach-of-fiduciary-duty claims, not the law of the state of incorporation); *In re Fitness Holdings Int'l*, No. 14-cv-1059, 2014 U.S. Dist. LEXIS 196754, at **10-11 (C.D. Cal. Oct. 9, 2014) (matters falling under the internal-affairs doctrine limited to steps taken in the course of incorporation; applying California forum law to claims for equitable recharacterization of debt); *FDIC v. Van Dellen*, No. 10-4915, 2012 U.S. Dist. LEXIS 146648 at **7-16 (C.D. Cal. Oct. 5, 2012) (reviewing internal-affairs doctrine and federal choice-of-law rules; applying California forum law to claims for breach of fiduciary duties by former directors and officers).

The only cases cited by the Trustee to support his argument that Delaware or Nevada law should apply are *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 382 (4th Cir. 2018), and *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 613-14 (1983) *superceded by statute*, 28 U.S.C.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 84 of 95

§ 1610(g). Neither of these cases requires application of Delaware or Nevada law to determine the alter-ego standards to be applied by this Court.

Most importantly, the Trustee misstates the key holding of the Supreme Court on the choice-of-law issue by taking the quoted language out of context. When the quote is read in the context of the language on either side of it, it is clear the Supreme Court *is refusing to adhere to the maxim that the state of incorporation determines the applicable alter ego standards*:

> We must next decide which body of law determines the effect to be given to Bancec's separate juridical status. Bancec contends that internationally recognized conflict-of-law principles require the application of the law of the state that establishes a government instrumentality—here Cuba—to determine whether the instrumentality may be held liable for actions taken by the sovereign.
>
> *We cannot agree*. As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation. Different conflicts principles apply, however, where the rights of third parties external to the corporation are at issue. To give conclusive effect to the law of the chartering state in determining whether the separate juridical status of its instrumentality should be respected would permit the state to violate with impunity the rights of third parties under international law while effectively insulating itself from liability in foreign courts. *We decline to permit such a result.*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 85 of 95

*First Nat'l City Bank,* 462 U.S. at 621-22 (emphasis added; citations and footnotes omitted). Instead of applying the law of the state of organization, the Supreme Court applied "internationally recognized equitable principles to avoid the injustice that would result from permitting a foreign state to reap the benefits of our courts while avoiding the obligations of international law." *Id.* at 634.

*Sky Cable* did not involve a matter before the court pursuant to bankruptcy jurisdiction under 28 U.S.C. section 1344 and there is no discussion of the application of federal common-law choice-of-law rules.

In this case, applying federal choice-of-law rules, Hawaii has a more significant relationship to the parties and transactions at issue than either Delaware or Nevada. The Trustee has not alleged otherwise. The Trustee seeks to impose alter-ego liability on behalf of the estate of a debtor organized in Hawaii, against the Officers and Directors, Corridor Entities, and SPB Entities, in connection with alleged fraudulent conveyances and alleged breach-of-fiduciary duties alleged to have occurred in Hawaii. The transactions at issue do not arise from the formation or structure of Delaware or Nevada companies (e.g., relating to the issuance of membership or stock, dividends, or bylaws of the Corridor Entities or SPB Entities). The transactions and alleged wrongful conduct all took place in Hawaii. *See* Complaint ¶ 3. Hawaii has the most significant interest with respect to the Debtor's estate and business transactions in the state, as well as

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 86 of 95

with the uniform application and predictability of the alter-ego remedy if and when an underlying claim exists.

Hawaii does not recognize the Trustee's reverse alter-ego claim, whereby he seeks to impose liability upon the various individuals and entities based on the liability of a shareholder. The Trustee resorts to the impermissible reverse alter-ego theory in an effort to impose liability down the ownership chain of the SPB Entities and the Corridor Entities. *See* Motion to Dismiss at 101, n.61; *Kauai Scuba Center, Inc., v. Lexington Ins. Co.*, No. 11-00573, 2012 U.S. Dist. LEXIS 19668, at *5 (D. Haw. Feb. 16, 2012) (dismissing reverse veil piercing and stating "Hawaii Supreme Court has not adopted the theory of reverse piercing the corporate veil"). Thus, the alter-ego claim as it relates to the Corridor Entities, the SPB Entities, and any of the individuals affiliated with them must be dismissed. It appears that the only Defendants for whom the Trustee is not seeking to impose reverse veil piercing are Corridor TrashMasters and SPB Waste because they are alleged to be equity holders of TrashMasters.

Even assuming that Hawaii does not have a more significant relationship to the parties and transactions at issue, the Complaint fails to allege a viable claim for reverse alter ego under either Delaware or Nevada law. The Trustee acknowledges that Delaware has not definitively adopted the theory of reverse veil piercing; there are only predictions of willingness to recognize such a claim

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 87 of 95

under certain circumstances. *See* Opposition at 89-90. The fact remains that piercing the corporate veil in Delaware, as in all states, is an exception to the rule that the owners of limited liability company are distinct from the entity and cannot be held liable for the corporate debts. Even if reverse veil piercing "down" is permissible to impose liability on the various entity Defendants based on the debt of the owner, the Trustee has not pleaded facts demonstrating a plausible claim for reverse alter-ego liability under Delaware law. More specifically, the Complaint does not allege exclusive domination and control by and among each of the Defendants, and does not allege facts showing that any of the entity Defendants are sham entities. *See Wallace v. Wood,* 752 A.2d at 1184.

Nevada recognizes that reverse veil piercing may be appropriate when "'the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party.'" *LFC Mktg. Group, Inc.,* 8 P.3d at 903. The same court cautions, "However, it should be emphasized that the 'corporate cloak is not lightly thrown aside' and that the alter ego doctrine is an exception to the general rule recognizing corporate independence." *Id.* (quoting *Baer v. Amos J. Walker, Inc.*, 85 Nev. 219, 220 (1969)). The Trustee has not come close to alleging facts to demonstrate that any Defendant used or controlled another Defendant to hide assets, secretly conduct business, or avoid pre-existing liability. Moreover, the Trustee fails to allege the

core elements required of an alter-ego claim against the Defendants, including underlying facts to demonstrate that "there is such unity of interest and ownership that [the Defendants] are inseparable from each other." Nev. Rev. Stat. Ann. § 78.747(2)(b) (director and officer alter-ego liability). The Defendants consist of separate individuals and entities, and the Trustee has not pleaded facts to plausibly show that they were ever inseparable.

### 6. Trustee Fails to Sufficiently Plead an Unjust-Enrichment Claim (Count LXI).

The Trustee attempts to sidestep the inherent limitations of a claim for unjust enrichment by arguing that "there has been no actual determination that the legal remedies sought in the Complaint are adequate, or inadequate." Opposition at 91. Looking beyond the conclusory assertions in the Complaint (¶¶ 653-54), it is clear that the Trustee asserts claims for which legal remedies preclude equitable relief; beyond that, it is impossible to determine what unjust enrichment the Trustee seeks and from whom.

### a. The Unjust Enrichment Claims Must Be Dismissed as to Defendants Against Whom the Trustee Has Adequate Legal Remedies.

An equitable remedy is only available when a plaintiff's legal remedies are inadequate. *See Porter v. Hu,* 116 Haw. 42, 55, 159 P.3d 994, 1007 (Haw. App. 2007) (absence of an adequate remedy at law is a "necessary prerequisite" to an equitable claim; unjust enrichment awarded to remedy lost books of business).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 89 of 95

Where the Complaint demonstrates that the plaintiff has an adequate remedy at law, the unjust enrichment claim should be dismissed. *See Soule v. Hilton Worldwide, Inc.,* 1 F. Supp. 3d 1084, 1102-03 (D. Haw. 2014) (adequate remedy under Unfair and Deceptive Trade Practices Act; unjust enrichment dismissed).

In *Soule v. Hilton Worldwide, Inc.,* the district court held that a class plaintiff who sued a hotel chain for unfair business practices and unjust enrichment in connection with a $25 add-on fee had an adequate legal remedy under Hawaii's unfair practices statute, and accordingly dismissed the unjust enrichment claim. Citing to *Porter v. Hu*, the court explained that under long-standing principles, Hawaii will only invoke equity when legal remedies are inadequate. *See Soule*, 1 F. Supp. 3d at 1102. Like the Trustee, the plaintiff only pleaded conclusory allegations that the hotel received a benefit and was unjustly enriched thereby, and the claim was dismissed. *Id.* at 1102-03 ("Here, the Court finds that Plaintiff has an adequate remedy at law in the form of a claim under Hawaii's Unfair and Deceptive Trade Practices Act . . . . Plaintiff does not explain how its H.R.S. §480-2(a) claim does not 'fully address the injustice' it allegedly suffered at the hands of Hilton."). The *Soule* court specifically rejected the plaintiff's argument that the unjust enrichment claim should be allowed as an alternative pleading. *Id.* at 1103 ("Plaintiff cannot assert an unjust enrichment claim, even in the alternative, because Hawaii law makes clear that the absence of an adequate remedy at law is a

necessary prerequisite to maintaining an unjust enrichment claim.") Under this reasoning, an unjust enrichment claim is only available to "fill a gap in the law" where legal remedies are inadequate. *Id.* at 1104.

To the extent that the Complaint seeks recovery for unjust enrichment against certain of the Defendants based on alleged fraudulent transfers (Corridor Capital and SPB Management as purported recipients of advisory fees under the Advisory Agreement and TrashMasters as the entity for whose benefit transfers were made in connection with the Union Bank Payments, the ROHI Note, the KNG Note and the Colbeck Payments), the Trustee has adequate legal remedies under HUFTA or FDCPA. Additionally, as to the payments made to Corridor Capital and SPB Management under the Advisory Agreement, the theory of unjust enrichment does not apply where, as here, adequate remedies exist under fraudulent transfer statues and a contract governs the relationship between the parties and provides a remedy for breach. *See Paracor Fin., Inc. v GE Capital Corp.*, 96 F.3d 1151,1167 (9th Cir 1996); Motion to Dismiss at 104.

> **b. The Unjust Enrichment Claim Must Be Dismissed Based on Insufficient Facts.**

The unjust enrichment claim is subject to the same analysis under *Twombly* as other claims in terms of a cognizable legal theory and sufficient facts to state a plausible claim. *See Twombly,* 550 U.S. at 555 (entitlement to relief requires more than labels and conclusions). The unjust enrichment claim should be dismissed

80

because the Complaint fails to adequately allege what benefit was unjustly conferred upon whom. *See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.,* 780 F. Supp. 2d 1061, 1073 (D. Haw. 2011) (unjust enrichment claim dismissed for lack of facts); *Philadelphia Indemn. Ins. Co. v. Ohana Control Sys.,* 289 F. Supp. 3d 1141, 1151-52 (D. Haw. 2018) (same).

The remedy of unjust enrichment is only available where a defendant receives an actual benefit and unjustly retains it. The benefit required must be tangible, such as an interest in money, land, or chattels of choses in action, and of a nature that would justify restitution:

> "[a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or cho[]ses in action, . . ., or in any way adds to the other's security or advantage." Restatement of Restitution § 1 comment b (1937). One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust. Id. § 1 comment a. And it is axiomatic that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id*. § 1. We realize unjust enrichment is a broad and imprecise term defying definition. But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice. *See* A. Denning, *The Changing Law* 65 (1953).

*Durette v. Aloha Plastic Recycling, Inc.*, 105 Haw. 490, 502-03 (2004) (quoting *Small v. Badenhop*, 67 Haw. 626, 635-36 (1985)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 92 of 95

The Complaint contains only bare legal conclusions regarding alleged unjust enrichment against all Defendants. The Complaint fails to identify any benefit conferred on the "Non-Recipient Defendants," including each of the Officers and Directors (other than Colbeck), Corridor Capital Advisors, Corridor TrashMasters, SPB Waste, SPB Capital, SPB Capital GP, LLC SPB Capital Partners, L.P. and SPB Partners. The Complaint fails to allege that these Defendants received a benefit without adequate legal basis. There are no allegations that they received possession of or some other interest in money, land, chattels, or choses in action or anything of tangible, quantifiable value from the debtor. None of them are alleged to be the recipients of fraudulent transfers or entities for whose benefit the alleged fraudulent transfers were made. Contrary to the Trustee's statement in his Opposition at 92, the demand for recovery of the alleged "value of the transfer(s) and/or obligation(s) by which they benefitted" (Complaint ¶ 654) does not set forth the benefit or amount received by each Defendant named in the Unjust Enrichment Count or set forth any basis upon which the Non-Recipient Defendants can be found liable for unjust enrichment. *See*, *e.g.*, *BlueEarth Biofuels,* 780 F. Supp. 2d at 1073 (unjust enrichment dismissed; "Plaintiffs have not stated what precisely it conferred upon the . . . Defendants which they unlawfully retained."). The Complaint broadly alleges an unjust enrichment claim against all Defendants without stating who received what benefit or why it would be unjust for the

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 37   Filed  04/05/19   Page 93 of 95

recipient to retain such benefit. Under these circumstances, the unjust enrichment claim must be dismissed.

*Porter v. Hu,* 116 Haw. 42, 55 (2007), the sole authority relied upon by the Trustee to support his unjust enrichment claims, is of no help to the Trustee on the issue of "benefit" conferred. In *Porter*, the defendants were expressly found to have actually received approximately $714,000 in the form of insurance commissions from books of business lost by plaintiffs, which the defendants did not purchase and for which the contracts at issue did not provide recovery. *Id*. at 52. *Porter* reinforces the fundamental principal that some tangible benefit must be received by the defendant for which restitution would be appropriate in order for an unjust enrichment claim to survive.

## III.

## <u>CONCLUSION</u>

WHEREFORE, based upon the foregoing, Defendants respectfully request that the Complaint be dismissed for the reasons set forth herein.

DATED: Honolulu, Hawaii April 5, 2019

/s/ Chuck C. Choi
Kenneth H. Brown (CA State Bar No. 100396)
Cia Mackle (FL State Bar. No. 26471)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Phone: (415) 263-7000
Fax: (415) 263-7010
Email: kbrown@pszjlaw.com

-and-

Chuck C. Choi
Allison A. Ito
CHOI & ITO
Topa Financial Center
700 Bishop Street, Suite 1107
Honolulu, HI 96813
Phone: (808) 533-1877
Fax: (808) 566-6900

Attorneys for TrashMasters, LLC, Corridor Capital, LLC, Corridor Capital Advisors, LLC, Corridor TrashMasters, L.P., SPB Management, LLC, SPB Waste, LLC, SPB Capital GP, LLC, SPB Capital Partners, L.P., SPB Partners, LLC, Craig Enenstein, L. Geoffrey Greulich, Edward A. Monnier, Jessamyn Davis, Ari D. Bass, Scott R. Bulloch, and Kenneth M. Pressberg