

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 16-01294 |
| | Chapter 7 |
| ROLLOFFS HAWAII, LLC, | |
| Debtor. | |
| | |
| DANE S. FIELD, Chapter 7 Trustee of the Estate of Rolloffs Hawaii, LLC, | Adv. Pro. No. 18-90035 |
| | Dkt. 19, 25, 29 |
| Plaintiff, | |
| vs. | |
| TRASHMASTERS, LLC, et al., | |
| Defendants. | |

# MEMORANDUM OF DECISION ON
# <u>MOTION TO DISMISS COMPLAINT</u>

In this adversary proceeding, the chapter 7 trustee of Rolloffs Hawaii, LLC (the "Debtor") asserts fraudulent transfer and other claims against the Debtor's sole member, Trashmasters LLC, and related parties. In essence, the trustee argues that the defendants failed adequately to capitalize the Debtor, stripped it of funds and assets for their benefit, and left it unable to pay its creditors. In contrast, the defendants essentially contend that all of the challenged transactions were normal for private equity deals, that it was proper to make the Debtor liable for the debt incurred to acquire the assets that the Debtor ended up owning, and that the defendants are not legally responsible for the Debtor's failure. Some of the defendants have moved to dismiss the complaint[1] and other defendants have joined in the motion.[2]

For the reasons that follow, I will grant the motion in part and grant the trustee leave to file an amended complaint.

A.  **Attachments to Motion and Responses**

In addition to a 106 page memorandum, the moving defendants filed with their motion two declarations and thirteen exhibits. In response, the trustee filed a 96 page memorandum, one declaration, and sixteen exhibits. The defendants' reply memorandum is 84 pages long and accompanied by

---

[1] Dkt. 19.

[2] Dkt. 25, 29.

2

another declaration and five more exhibits.

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[3]

The court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to a motion for summary judgment], or to reject it or simply not consider it."[4]

Considering the volume of the proferred material and the fact that discovery has barely begun, I choose not to consider any materials outside the pleadings.[5]

---

[3] Fed. R. Civ. P. 12(d).

[4] 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366, at 159 (3d ed. 2004).

[5] The defendants argued at the hearing that the complaint refers to many of the additional documents they offer. This is not true of all of those documents and it is also not true of many of the declarations. I will exclude all of the documents and declarations from consideration at this time because I have no way of knowing whether they present a complete picture of the relevant transactions.

3

**B.      Particularity of Allegations**

**1.      Intentional fraudulent transfer claims**

The complaint states claims[6] for intentional fraudulent transfers under Haw. Rev. Stat. § 651C-4(a)(1):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Section 544(b)(1) of the Bankruptcy Code permits the trustee to assert claims under this provision. That section provides that, subject to an exception that is not applicable here, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowable] unsecured claim . . . ." In effect, section 544(b) allows the creditor to step into the shoes of an actual creditor of the debtor and assert

---

[6] Counts I, IV, VII, X, XI, XV, XVII, XVIII, XXII, XXIV, XXV, XXIX, XXXI, XXXII, XXXVI, XXXVIII, XXXIX, XLIII, XLV, XLVI, L, and LII. The numbering of the counts in the complaint conclusively demonstrates why Arabic numerals largely replaced Roman numerals centuries ago. I encourage (but do not require) the trustee to use Arabic numerals throughout the complaint. This would mean that the counts and the paragraphs would have similar numbers, but any confusion would be minor and a price well worth paying.

4

avoidance claims that the creditor could bring.[7]

"In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity."[8] The particularity requirement applies to intentional fraudulent transfer claims.[9]

> In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; mere conclusory allegations of fraud are insufficient to satisfy this requirement. However, malice, intent, knowledge, and other condition of mind of a person may be averred generally.[10]

The defendants argue that the complaint does not satisfy the particularity requirement because it does not specifically identify each challenged transfer by date, amount, name of transferor and transferee, and consideration (if any). I agree. The trustee must amend the complaint to add these facts, to the extent known.

The defendants also argue that the complaint does not allege

---

[7] In most cases, trustees utilize § 544(b) to assert claims under state law. In this case, the trustee employs it to assert claims, not only under state law, but also under nonbankruptcy federal laws that permit the Internal Revenue Service to collect taxes from a taxpayer's transferees. *See*, *e.g.*, count I of the complaint, citing 26 U.S.C. §§ 6901(a)(1)(A) and 6502(a)(1). The motion does not challenge the trustee's right to assert these claims.

[8] Fed R. Civ. P. 9(b).

[9] *Valvanis v. Milgroom*, 529 F.Supp. 2d 1190, 1195 (D. Haw. 2007).

[10] *Id.* (internal citations and quotation marks omitted).

5

fraudulent intent with sufficient particularity. I disagree. Rule 9(b) states explicitly that "intent . . . and other condition of a person's mind may be alleged generally," and the complaint has enough information to satisfy the rule. The complaint makes the gist of the trustee's position clear: he alleges that the Debtor was deliberately structured and financed in a way that left it insolvent and exposed its creditors to risk, while allowing the defendants to extract all of the benefits of the Debtor's operations. Contrary to the defendants' argument, the particularity requirement does not require that the complaint include an analysis of each of the badges of fraud or lay out all of the circumstantial evidence that might support a finding of fraudulent intent. (I analyze the plausibility of these allegations in section C.1 below.)

The defendants argue that the complaint does not allege the Debtor's insolvency or the insider status of certain defendants with the requisite particularity. But insolvency and insider status are not independent elements of an intentional fraudulent transfer claim. Insolvency and insider status are among the "badges of fraud," meaning that they are pieces of circumstantial evidence that may be probative of fraudulent intent, but that the trustee need not include all such evidence in the complaint.

## 2. Constructive fraudulent transfer claims

The complaint also states claims for "constructive" fraudulent

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed 06/25/19   Page 6 of 23

transfers,[11] meaning (in summary) transfers that are avoidable based largely on the objective circumstances and effects of the transfers, and without proof of actual intent to hinder, delay, or defraud creditors.

Specifically, Haw. Rev. Stat. § 651C-4(b) provides that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Haw. Rev. Stat. § 651C-5 creates two additional constructive

---

[11] Counts II, III, V, VI, VIII, IX, XII, XIII, XIV, XVI, XIX, XX, XXI, XXIII, XXVI, XXVII, XXVIII, XXX, XXXIII, XXXIV, XXXV, XXXVII, XL, XLI, XLII, XLIV, XLVII, XLVIII, XLIX, LI, and LII.

7

fraudulent transfer claims:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation.

> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The defendants argue that the particularity requirement of rule 9(b) applies to these claims, and that the complaint must specifically identify each challenged transfer. The trustee cites cases holding that the particularity requirement does not apply to such claims. The defendants do not respond to this argument in their reply memorandum. I agree with the trustee, and with many other courts,[12] that the particularity requirement

_____

[12] *See, e.g.,* Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research & Mgmt., Inc.), No. 2:12-47718-BR, 2015 WL 8483728, at *5 (B.A.P. 9th Cir. Dec. 10, 2015); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 11 Misc. 337, 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012). I respectfully disagree with the decisions of our district court holding that the particularity requirement does apply to these claims. *Isuzu Motors America, LLC v. Jackson*, Civil No. 13-00306-DKW-KSC, 2014 WL 4216287 at *3 (D. Haw.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed   06/25/19   Page 8 of 23

does not apply to these claims.

## C.    Plausibility of Allegations

The defendants argue that most of the claims asserted in the complaint fail the test of plausibility. This standard cannot be stated concisely and is hard to apply in practice.

> Following *Iqbal* and *Twombly*, we have attempted to reconcile the plausibility standard as set out in those rulings with the more lenient pleading standard the Court has also, at times, applied. While recognizing some tension among the Court's pleading-standards cases, we have settled on a two-step process for evaluating pleadings:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

---

Aug. 25, 2014); *Valvanis v. Milgroom*, 529 F.Supp. 2d 1190, 1198 (D. Haw. 2007). Both of these decisions assume without discussion that rule 9(b) applies. The rule requires particularity because an accusation of fraud carries opprobrium, is often made for an improper purpose, and can be hard to defend against. 5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1296 (4th ed. 2018). None of these considerations apply to constructive fraudulent transfer claims, mostly because they do not involve any allegation of moral turpitude. In any event, because there is no binding authority on this point, I will grant the trustee leave to supply the details of the transfers, if he thinks it prudent to do so.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed 06/25/19   Page 9 of 23

In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on . . . judicial experience and common sense.[13]

## 1.    Intent

Many of the claims stated in the complaint require the trustee to prove the defendants' intent or other state of mind. The defendants argue that these allegations are not plausible. I disagree. Reading the complaint as a whole, the trustee's basic story is that the defendants deliberately organized the Debtor in a way that left the Debtor in a precarious financial condition and put all of the risk of loss on the Debtor's creditors, while reserving for the defendants all of the upside potential if the risks did not come home to roost. The Defendants say that the structure was typical for private equity deals and that the Debtor's failure is not their fault. Viewing the pleadings alone, the trustee's version of the story seems at least as likely to be true as the defendants' version. Therefore, the allegations of mental state are plausible.

## 2.    Insolvency

In order to prevail under section 651C-5, the trustee must establish that the Debtor was insolvent at the relevant times. HUFTA employs a "balance sheet" test for insolvency: a "debtor is insolvent if the sum of the

---

[13] *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134–35 (9th Cir. 2014) (internal citations omitted).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 10 of 23

debtor's debts is greater than all of the debtor's assets, at a fair valuation."[14] But a "debtor who is generally not paying his or her debts as they become due is presumed to be insolvent."[15]

The defendants argue that the complaint's allegations of insolvency are implausible. I disagree. The allegations, particularly paragraphs 130-36 and 183-97, meet the test of plausibility. The Debtor's solvency at the relevant times will undoubtedly be a hotly contested issue, but the allegations are sufficient.

### 3. Transfer of Debtor's property

The moving defendants correctly point out that only a transfer of the debtor's interest in property is avoidable as a fraudulent transfer.[16] The moving defendants contend that the ROHI payoff[17] does not meet this criterion. The ROHI payoff was made with the proceeds of the 2012 Convergent Loan. Both the Debtor and its sole members, Trashmasters

---

[14] Haw. Rev. Stat. § 651C-2(a). Fraudulently transferred assets, and debts secured by liens on such assets, are excluded for purposes of the "balance sheet" test. *Id.* § 651C-2(d), (e).

[15] *Id.* § 651C-2(b).

[16] "A transfer of the debtor's property that otherwise would have been property of the estate is a prerequisite for a fraudulent transfer action under either § 544 or § 548." *Leslie v. Mihranian (In re Mihranian)*, No. 2:13-BK-39026-BR, 2017 WL 2775044, at *5 (B.A.P. 9th Cir. June 26, 2017).

[17] Counts XXXVIII, XXXIX, XLII, XL, XLI, XLII, and XLIV.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 11 of 23

LLC, were borrowers under that loan. Therefore, the defendants argue, the loan proceeds were joint property of the Debtor and Trashmasters.

The trustee seeks leave to add allegations and counts to the complaint asserting that the trustee can avoid the Debtor's obligation on the ROHI loan and the 2012 Convergent Loan. I will grant this request. The sufficiency of the claims relating to the ROHI payoff should be evaluated in view of the new allegations and claims.

### 4.   Insider status

The defendants argue that the complaint does not adequately allege the insider status of some of them. But insider status is not an element of the intentional fraudulent transfer claims under Haw. Rev. Stat. § 651C-4(a)(1); rather, as I have explained above, it may be a piece of circumstantial evidence supporting a finding of fraudulent intent. Therefore, the trustee need not allege insider status in his intentional fraudulent transfer claims. Similarly, insider status is not an element of the constructive fraudulent transfer claims under Haw. Rev. Stat. § 651C-4(a)(2) and (5)(a).[18] I will not dismiss or require an amendment on this basis.

---

[18] Insider status is an element of a claim under Haw. Rev. Stat. § 651C-5(b), but the complaint asserts no such claims.

12

### 5.    Conspiracy

The defendants argue that the conspiracy claims[19] are insufficient because they do not specify when, where, and among whom the conspiracy was made or that a conspiratorial agreement was reached. In the seminal *Twombly* case, the Supreme Court stated that, "if the complaint had not explained that the claim of agreement rested on the parallel conduct described, we doubt that" the complaint would have been sufficient, because it "mentioned no specific time, place, or person involved in the alleged conspiracies."[20] This is not a holding, and it is hard to see how plaintiffs could make these allegations, given that most conspiracies are secret. In any event, the trustee should amend the complaint to provide the information that *Twombly* arguably requires.

### D.    Other Claimed Pleading Deficiencies

### 1.    Group pleading

The defendants argue that the complaint violates the rule against "group pleading" by failing adequately to describe each of their respective roles in the alleged fraud.

The "group pleading" rule means that a plaintiff may not "merely lump multiple defendants together" but instead must "inform each

---

[19] Counts LIII and LIV.

[20] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n. 10 (2007).

13

defendant separately of the allegations surrounding his alleged participation in the fraud."[21] This rule does not apply, however, when the defendants are accused of exactly the same conduct. "There is no flaw in a pleading, however, where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct."[22]

The trustee should amend the complaint to include more detail about the participation of each defendant in the alleged wrongdoing and to specifically identify those defendants who the trustee claims engaged in "precisely the same [wrongful] conduct."

## E.    Failure of Allegations to State a Claim

### 1.    Reasonably equivalent value as a matter of law

In order to prevail on the constructive fraudulent transfer claims, the trustee must plead and prove that the Debtor did not receive "reasonably equivalent value" in exchange for the transfers.[23]

---

[21] *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citations and quotation marks omitted).

[22] *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

[23] The lack of "reasonably equivalent value" is not an element of a intentional fraudulent transfer claim. Instead, it is an element of a potential affirmative defense. Haw. Rev. Stat. § 651C-8 ("A transfer or obligation is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."); *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528 (9th Cir. 1990)

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 14 of 23

The defendants argue that the debtor received reasonably equivalent value, as a matter of law, in exchange for those of the challenged transfers that were payments on debts for which the Debtor was liable.[24] The Hawaii Uniform Fraudulent Transfers Act ("HUFTA") provides that "value is given for a transfer . . . if in exchange for the transfer . . . an antecedent debt is . . . satisfied . . . ." The defendants' argument is correct, but, as the moving defendants' counsel conceded at the hearing on the motion, value is not given if the relevant debt were invalid or avoidable. Therefore, these claims should be dismissed and the trustee should be granted leave to amend the complaint to allege that the debts were invalid, unenforceable against the Debtor, or avoidable, as the case may be.

The defendants also argue that the Debtor received reasonably equivalent value in exchange for its payment of the Colbeck fees (Count LII). The defendants acknowledge that the Debtor was not liable for those fees (Trashmasters LLC, not the Debtor, contracted to retain Colbeck), but

---

(defendants have the burden of establishing their good faith under § 651C-8(a).). The trustee's intentional fraudulent transfer claims therefore need not address the issue of value, because a complaint need not anticipate or negate affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (holding that the plaintiff "is not required to plead on the subject of an anticipated affirmative defense.").

[24] These are the Union Bank Payments (Counts II and III), the Advisory Fees (Counts V, VI, VIII, IX, XII - XIV, XVI, XIX-XXI, XXIII, XXVI - XXVIII, XXX, XXXIII, XXXIV, XXXV, and XXXVII), the KNG Payoff (XLVII-LXIX and LI), and the ROHI Payoff (Counts XL, XLI, XLII, and XLIV). The defendants acknowledge that this argument does not apply to the Colbeck payments (Count LII) because the Debtor was not indebted to Colbeck.

15

they claim that the Debtor received reasonably equivalent value since Colbeck served as the Debtor's chief operating officer. This argument presents a factual question of the actual value that the Debtor received from the Colbeck services. The complaint adequately alleges the trustee's claim.

### 2. Conspiracy and Aiding and Abetting Claims

#### a. In pari delicto and standing

The defendants argue that all of the conspiracy and aiding and abetting claims[25] must be dismissed because the Debtor was a participant in the conduct, so the trustee lacks standing to assert those claims and the claims are barred by the *in pari delicto* doctrine. The trustee points out, however, that the complaint alleges that the Debtor was a victim of, and not a participant in, the alleged scheme. For purposes of this motion, I must assume that these allegations are true, and they meet the standard of plausibility.

#### b. Viability of legal theory

The defendants argue that there is no such thing as a claim for conspiracy to commit, or aiding and abetting, fraudulent transfers. They also argue that, even if a creditor could assert such a claim under applicable state law, the trustee may not assert such a claim on behalf of the estate, because section 544(b) permits the trustee to assert only

---

[25] Counts LIII, LIV, LVIII, and LVIX.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 16 of 23

avoidance claims of creditors and the alleged conspirators and aiders and abettors did not receive or benefit from any transfers. Finally, they contend that section 550 provides an exclusive list of the remedies available to a bankruptcy trustee in a fraudulent transfer case, and that, because section 550 does not impose liability on co-conspirators or aiders and abettors, no claim lies against such parties. I disagree.

It is true that section 544(b) permits a trustee to bring only avoidance claims belonging to creditors, and that section 550 spells out the remedies that are available when the trustee proceeds under section 544(b). But fraudulent transfer claims differ in a key respect from claims for conspiracy to commit, or aiding or abetting, fraudulent transfers. The fraudulent transfer statutes permit creditors (or bankruptcy trustees) to recover the transferred property (or its value) from the transferee. In contrast, the conspiracy claims run against the parties who caused the Debtor to make fraudulent transfers. They are not claims to recover the transferred property; rather, they are claims for damages based on alleged breaches of a duty owed to the Debtor to manage the Debtor's assets properly. Therefore, sections 544(b) and 550 do not limit the trustee's remedies. The complaint should be amended, however, to state with clarity which defendants owed such duties to the Debtor with respect to the various categories of challenged transfers and in what respect they breached those

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 17 of 23

duties.[26]

### 3. No duties owed by certain defendants

The defendants argue that only the Debtor's managing member, Trashmasters LLC, owed fiduciary duties to the Debtor, and that the breach of fiduciary duty claims[27] against all other defendants must therefore be dismissed.

The complaint alleges that the Debtor is a limited liability company organized under the law of Hawaii, and that the Debtor has only one member, Trashmasters LLC.[28] It appears that the Debtor is a manager-managed LLC and Trashmasters LLC is its manager as well as its sole member.

The defendants correctly point out that the LLC statute imposes fiduciary duties only on the manager of an LLC.[29] Thus, individuals who are designated as officers or directors of an LLC do not incur fiduciary

---

[26] The defendants also argue that the conspiracy and aiding and abetting claims should be dismissed if any of the underlying fraudulent transfer claims are dismissed. I need not address this argument because I will grant leave to amend the underlying claims.

[27] Counts LV, LVI, and LVII.

[28] Dkt. 1 at 2-3.

[29] Haw. Rev. Stat. § 428-409.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 18 of 23

duties simply by virtue of their titles.[30] Nevertheless, in sufficiently egregious circumstances, individuals who dominate and control an LLC may be held liable to the LLC even though they were not members or managers of the LLC.[31]

The complaint alleges that the individual defendants owe fiduciary duties based largely, if not entirely, on the titles they held with the various companies. At least as far as the LLCs are concerned, the titles are not a sufficient basis for the imposition of fiduciary duties. The individuals' conduct (as opposed to their positions) may give rise to fiduciary duties, but the complaint does not so allege with clarity. These claims are dismissed with leave to amend.

### 4. Ratification

The defendants argue that Trashmasters LLC ratified all of the challenged transactions, and that this ratification bars all of the breach of duty claims. The defendants acknowledge that this alleged ratification would be effective only if Trashmasters LLC were solvent at the time of the ratifications, and they contend that Trashmasters LLC was solvent at least until 2012. But the complaint alleges that Trashmasters LLC and the Debtor

---

[30] *800 S. Wells Commercial LLC v. Cadden*, 103 N.E.3d 875, 887, appeal denied, 108 N.E.3d 848 (Ill. 2018) ("[I]t is obvious that plaintiff's claim that defendant owed it fiduciary duties by virtue of his title as vice president inherently fails and, thus, summary judgment in favor of defendant was appropriate.").

[31] *Tully v. McLean*, 948 N.E.2d 714, 739-40 (Ill. App. 2011).

19

were insolvent from their inception, and I have previously noted that these allegations are plausible. Therefore, I will not dismiss the complaint on this basis.

### 5. Alter ego claims

Count LX alleges that the defendants are all alter egos of each other. The defendants attack this claim on various grounds.

First, they point out that alter ego is a remedy, not a claim for relief. The defendants are correct, but requiring the trustee to replead for this reason alone would elevate form over substance and serve no useful purpose.

Second, they contend that the allegations are formulaic and do not pass the plausibility test. They are right that Count LX, standing alone, does little more than restate the elements of the alter ego theory. But the complaint taken as a whole provides enough information to permit the defendants to formulate an answer and begin to prepare their defense.

Third, the defendants point out that the complaint implicitly seeks "reverse veil piercing," and that Hawaii law does not recognize that doctrine. Normally, "piercing the corporate veil" holds one or more shareholders liable for the corporation's obligation. "Reverse veil piercing" means that the corporation is held liable for the shareholder's debts. The Hawaii appellate courts have never squarely decided whether reverse

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed   06/25/19   Page 20 of 23

piercing is permissible.[32] The Ninth Circuit, the federal district court for this district, and my predecessor bankruptcy judge have all predicted that the Hawaii Supreme Court would not adopt the theory of reverse piercing.[33] I have my doubts,[34] but I will accept the consensus view and dismiss any reverse piercing claims. The trustee must amend the complaint

_____

[32] In one case, the Hawaii intermediate court of appeals referred to "the unwillingness to reverse-pierce the corporate veil . . . ." *Suzuki v. Castle & Cooke Resorts*, 124 Haw. 230, 234 (2010). It is not clear that this was a holding rather than dicta; the ICA went on to analyze whether the alter ego test for veil piercing was met, which suggests that reverse piercing might be available in some circumstances. The court also noted that the appellee "has put itself in the unusual position of a parent corporation arguing that its subsidiary's separate status should be disregarded" for the purpose of defeating a worker's compensation claim; this raises the question whether the availability of reverse piercing might depend on who seeks the piercing. *Id.* at 233. In another case, the ICA was able to avoid deciding the issue because the defendants were not shareholders of the corporation. *Evanston Ins. Co. v. Luko*, 7 Haw. App. 520, 525, 783 P.2d 293, 297 (1989) (citations and quotation marks omitted).

[33] *Daily v. Title Guaranty Escrow Service, Inc.*, 178 B.R. 837, 844 (D. Haw. 1995), *aff'd*, 81 F.3d 167 (9th Cir. 1996) (unpublished); *Kauai Scuba Ctr., Inc. v. Lexington Ins. Co.*, No. CIV. 11-00573 BMK, 2012 WL 527845, at *2 (D. Haw. Feb. 16, 2012).

[34] Speaking metaphorically, the prohibition on reverse piercing means that a court can punch holes in the veil separating the corporation from its shareholders, but must install a one-way valve that allows liabilities to flow only from the corporation to one or more shareholders, but not in the opposite direction. Few cases explain why the one-way valve should always be required, or (in other words) why a court could not ever let liabilities flow in the opposite direction or simply tear down the veil altogether. The only explanation I have seen states that reverse piercing could force nonculpable shareholders of a corporation to bear the cost of the culpable shareholder's wrongdoing. But this does not explain why reverse piercing should be prohibited even where there is only one shareholder, or all shareholders are culpable, or the court could fashion a remedy that would protect the nonculpable shareholders.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 21 of 23

to eliminate any "reverse piercing" claims.

### 6. Unjust enrichment claim

The defendants argue that the unjust enrichment claim (Count LXI) should be dismissed for four reasons. I reject each of these arguments.

First, they argue that unjust enrichment does not lie when there is a valid and enforceable contract. This is true as a general proposition, but the trustee will be granted leave to file an amended complaint asserting that some or all of those contracts are avoidable, invalid, or not enforceable against the Debtor, so the amended complaint may negate this argument in whole or in part.

Second, they argue that an unjust enrichment claim will not lie if the plaintiff has adequate remedies at law, and they point out that the trustee has asserted sixty other claims. But this argument presupposes that the trustee will prevail on some or all of those claims, a proposition with which the defendants surely disagree.

Third, they argue that HUFTA supplants any unjust enrichment claims. This is false. HUFTA expressly supplements, and does not supplant, "the principles of law and equity."[35]

Fourth, they argue that an unjust enrichment claim will lie only against someone who has received a benefit from the plaintiff. They cite no authority for the proposition that indirect benefits, such as benefits to a

---

[35] Haw. Rev. Stat. § 651C-10.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 22 of 23

company that one owns, cannot serve as the basis for an unjust enrichment claim.

**F.      Conclusion**

The motion is granted in part and denied in part as set forth above. The trustee may file an amended complaint within fourteen days after entry of this order.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 63   Filed  06/25/19   Page 23 of 23