KLEVANSKY PIPER, LLP
A Limited Liability Law Partnership

SIMON KLEVANSKY          3217-0
ALIKA L. PIPER            6949-0
CARISA LIMA KA'ALA DUFFY  7372-0
841 Bishop Street, Suite 1707
Honolulu, Hawaii 96813
Telephone:  (808) 536-0200
Facsimile:   (808) 237-5759
E-Mail: sklevansky@kplawhawaii.com
        apiper@kplawhawaii.com
        kduffy@kplawhawaii.com

Attorneys for Trustee Dane S. Field

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ROLLOFFS HAWAII, LLC,<br><br>    Debtor. | Case No. 16-01294<br>(Chapter 7) |
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>    Plaintiff,<br><br>    v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY | Adversary Proceeding No. 18-90035<br><br>**PLAINTIFF TRUSTEE DANE S. FIELD'S NOTICE OF ISSUANCE OF A SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS; EXHIBIT "1"**<br><br>(Custodian of Records of Fifth Third Bank) |

GREULICH; EDWARD A.
MONNIER; JESSAMYN DAVIS; ARI
D. BASS; SCOTT R. BULLOCH;
KENNETH M. PRESSBERG;
KRISTIAN GOURLAY; DOUGLAS
L. ASAY; DOUGLAS D. ASAY;
CHARLES E. LEONARD; BRIAN
COLBECK [ESTATE OF BRIAN
COLBECK]; ROLLOFFS HAWAII,
INC.; THE KNG GROUP, LLC;
COLBECK CONSULTING LLC;
JOHN DOES 1-50; JANE DOES 1-50;
DOE CORPORATIONS 1-50; DOE
PARTNERSHIPS 1-50; DOE
ENTITIES 1-50,

                  Defendants.

## PLAINTIFF TRUSTEE DANE S. FIELD'S NOTICE OF ISSUANCE OF A SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS

        PLEASE TAKE NOTICE that on behalf of Plaintiff Trustee Dane S.

Field, chapter 7 trustee of the bankruptcy estate of Rolloffs Hawaii, LLC

("Plaintiff"), a Subpoena to Produce Documents, Information or Objects will be

served on the following person:

        <u>Name/Address</u>:

        Custodian of Records of Fifth Third Bank
        38 Fountain Square Plaza
        Cincinnati, OH  45263

120286.docx

- 2 -

By October 11, 2019 at 11:00 a.m. HST (5:00 p.m. EST), Fifth Third Bank is to produce all responsive documents listed in Exhibit "A" to the Subpoena to Produce Documents, Information or Objects to Carisa Lima Ka'ala Duffy, Esq., Klevansky Piper, LLP, 841 Bishop Street, Suite 1707, Honolulu, Hawaii 96813. A copy of the Subpoena to Produce Documents, Information or Objects is attached hereto as Exhibit "1".

This Notice is made pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure, made applicable by Rule 9016 of the Federal Rules of Bankruptcy Procedure.

DATED:  Honolulu, Hawaii, September 4, 2019.

/s/ Carisa Lima Ka'ala Duffy
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA DUFFY

Attorneys for Plaintiff
Trustee Elizabeth A. Kane

Dane S. Field, Bankruptcy Trustee v. TrashMasters, LLC, et al., Adversary Proceeding No. 18-90035, United States Bankruptcy Court, District of Hawaii; PLAINTIFF TRUSTEE DANE S. FIELD'S NOTICE OF ISSUANCE OF A SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 3 of 33

# EXHIBIT "1"

# UNITED STATES BANKRUPTCY COURT

District of _____ **Hawaii** _____

In re **Rolloffs Hawaii LLC** _____
_____
Debtor

Case No. _____ **16-01294** _____

*(Complete if issued in an adversary proceeding)*
**Dane S. Field, Chapter 7 Trustee for the**
**the Estate of Rolloffs Hawaii, LLC** _____
Plaintiff

Chapter _____ **7** _____

v.

**TrashMasters LLC, et al.** _____
_____
Defendant

Adv. Proc. No. _____ **18-90035** _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Custodian of Records of Fifth Third Bank, 38 Fountain Square Plaza, Cincinnati, OH 45263** _____
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See attached Exhibit "A" for description of documents to be produced. Please have your records custodian review and sign the attached Declaration, and return it with the requested documents.**

| PLACE Klevansky Piper, LLP, 841 Bishop Street, Suite 1707, Honolulu, Hawaii 96813 | DATE AND TIME October 11, 2019 11:00 a.m. HST/ 5:00 p.m. EST |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **9/3/19**

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

*Ka'ala Duffy*
_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**Dane S. Field, Chapter 7 Trustee** , who issues or requests this subpoena, are:
**Carisa Lima Ka'ala Duffy, 841 Bishop St, #1707, Honolulu, HI 96813 / Email: kduffy@kplawhawaii.com / Phone: 808-536-0200**

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

1200249.pdf

**Exhibit "1"**

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT "A"
## (FIFTH THIRD BANK)

This is a request for the production of documents (including electronically stored information). Documents responsive to the requests below are to be delivered in digital/electronic format either (i) electronically via email or file transfer, or (ii) on a flash drive (or a suitable equivalent) via courier to the Trustee's counsel, Klevansky Piper, LLP, located at 841 Bishop Street, Suite 1707, Honolulu, Hawaii 96813. If you desire to send documents to Klevansky Piper, LLP electronically, you must contact us directly, and in advance, to arrange for such electronic delivery.

## DEFINITIONS

As used herein:

1.      "Document" means any tangible thing upon which is recorded any form of communication or representation, including letters, words, pictures, sounds, or symbols, or any combination thereof, by means of handwriting, typewriting, stenography, printing, photostating, photographing, sound recording, magnetic recording, punching, or any other method of recording. This definition includes, but is not limited to, records, reports, papers, correspondence, books, pamphlets, letters, notes, memoranda, minutes, statements, tape recordings, phonograph recordings, checks, account statements, deposit slips, debit or credit memoranda, microtapes, microfiles, photographs, movies, videotapes, computer

disks, computer tapes, diaries, appointment books, telephone billing statements, drawings, blueprints, sketches, charts, contracts, agreements, deeds, leases, mortgages, assignments, bills of sale, financial statements, balance sheets, profit and loss statements, statements of financial condition, income tax returns, accounting worksheets, reports, projections, schedules, ledgers, journals, vouchers, receipts, invoices, bills, investigation or incident reports, and notes or summaries of conferences, meetings, discussions, interviews, or telephone conversations or messages. This definition also includes all electronic data, including but not limited to all text files (including word processing documents), presentation files (such as PowerPoint documents), spreadsheets (such as Excel spreadsheets), PDF files, TIFF files, JPEG files, e-mail files and information concerning e-mail files (including logs of e-mail history and usage, header information, and deleted files), instant messaging files, text messages, Internet history files and preferences, graphical files (in any format), databases, software and programs, calendar and scheduling information, task lists, telephone logs, voice message files, contact managers, computer system activity logs, and all file fragments and storage and backup files containing electronic data (referred to collectively herein as "Electronic Data"). Electronic Data also includes not only information that can be perceived and read by your computer systems and mobile devices, information within programs and applications installed thereon, and data,

programs, and applications stored in the cloud and offsite, but also includes all Electronic Data resident on relevant electronic media that cannot be perceived by your computer system but that can be recovered and analyzed using computer forensic techniques. Electronic Data that cannot be perceived by your operating system includes deleted, hidden, and orphaned data as well as artifacts and residual data created in the normal course of using a computer system.

2. Any comment, notation, or marking appearing on any document which is not on the original document or another copy of the document is to be considered as creating a separate document and the document containing such comment, notation or making must be produced as such. Any draft or preliminary or superseded version of any document is also to be considered a separate document and must be produced as such.

3. "And" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which might otherwise be construed to be outside its scope. Whenever the context may so require, the masculine gender shall be deemed to refer to and include the feminine and neuter, and the singular number to refer to and include the plural, and vice versa.

4. The terms "relate to," "relates to," "related to," "relating to," "refer to," "refers to," "referred to," or "referring to," mean, without limitation,

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 10 of 33

embodying, mentioning, concerning, connected with, or commenting on, directly or indirectly, reflecting, having a relationship to or with, pertaining to, identifying, containing, pertinent to, compromising, setting forth, showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally, or logically connected to the subject matter identified in the document request.

5.      "You" or "your" or "Fifth Third Bank" means and refers to Fifth Third Bank, and all representatives, agents, and other authorized persons acting on its behalf.

6.      "Debtor" means and refers to Rolloffs Hawaii, LLC, and all representatives, agents, and other authorized persons acting on its behalf.

7.      "TrashMasters" means and refers to TrashMasters, LLC, and all representatives, agents, and other authorized persons acting on its behalf.

8.      "Corridor Entities" means and refers collectively to Corridor Capital, LLC, Corridor Advisors, LLC, Corridor TrashMasters, L.P., and all representatives, agents, and other authorized persons acting on each of their behalf.

9.      "SPB Entities" means and refers collectively to SPB Management, LLC, SPB Waste, LLC, SPB Capital GP, LLC, SPB Capital

Partners, L.P., SPB Partners, LLC, and all representatives, agents, and other authorized persons acting on each of their behalf.

## INSTRUCTIONS

1.      You must produce the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody, or control, or in the possession, custody, or control of any of your agents, attorneys, accountants, employees, or representatives.  If the original of any such document or thing is not in the possession, custody, or control of you or any of your agents, attorneys, accountants, employees, or representatives, you must produce a full, clear, and legible copy thereof.  An otherwise identical copy of any such document which is located in a different file folder than the original of the document is also to be considered a separate document and must be produced as such.  To the extent applicable, furnish executed versions of each Document requested.

2.      You must produce all exhibits, schedules, annexes, appendices, or any ancillary Documents related to each Document produced.

3.      You must translate through detection devices into reasonably usable form all of the requested documents requiring such translation.

4.     If any of the requested documents are derived from or contained in files, you must produce the documents within their original file folders, together with each and every other document found in those file folders.

5.     If any of the requested documents or things cannot be produced in full, produce them to the extent possible, specifying your reasons for your inability to produce the remainder and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

6.     If any requested document or thing has ceased to exist in the last three (3) years, identify (a) the type of document or thing, (b) the date upon which it ceased to exist, (c) the circumstances under which it ceased to exist, (d) the identity of all persons having knowledge of the circumstances under which it ceased to exist, and (e) the identity of all persons having knowledge or who had knowledge of the contents thereof.

7.     If you contend that you are excused from producing one or more documents based upon any statute, rule, or doctrine which creates a privilege, or based upon the work product doctrine, you must state in your response to this request that you are invoking a privilege and specify which privilege or doctrine you are invoking.

8.     If you contend that you are excused from producing one or more documents based on the attorney-client privilege, you must also state in your

response, to the extent that providing this information will not destroy the privilege, the following information for each document you do not produce:

    a.  the name and job title or capacity of the author(s) or originator(s);

    b.  the name and job title or capacity of every person who received the document as an addressee;

    c.  the name and job title or capacity of every additional person who received the document or a copy of it;

    d.  the relationship between the author(s)/originator(s) and each person who received the document or a copy of it;

    e.  the purposes for which the document was prepared;

    f.  the date of the document;

    g.  the subject matter(s) addressed in the document;

    h.  whether the document was transmitted in confidence, and if so, what indicia on the document shows that to be the case; and

    i.  a brief statement as to why, under the law, the document is protected by the attorney-client privilege.

       9.     If you contend that you are excused from producing one or more documents based upon the work-product doctrine, or a privilege other than the attorney-client privilege, you must also state in your response, to the extent that providing this information will not destroy the privilege, the following information for each document you do not produce:

    a.    which doctrine or privilege you are relying on;

b.     whether federal or state law of privilege applies to the documents in question, and, if state law applies, which state;

c.     a list of every requirement or element that must be satisfied in order to assert successfully the privilege or doctrine; and

d.     with respect to each document for which the doctrine or privilege is invoked, information that shows that each element of the doctrine or privilege is satisfied.

10.     When produced, Documents maintained in paper or hard copy format shall be scanned to *searchable* PDF at 300 dpi and bates stamped with your abbreviated name preceding the number and the number zero padded (e.g. ABC0000001).

11.     Electronic Data shall be produced in *native* file format and in such a manner as to identify the location (i.e., the network file, hard drive, backup tape, or other location) where the Electronic Data is stored and, where applicable, the person in whose possession they were found, or on whose hardware device they reside or are stored.  If the storage location was a local file share or work group folder, or with a hosted or cloud service (e.g., Dropbox, Sharefile, OneDrive, etc.) that information should be identified as well, and any hosted or cloud service maintained until the case is closed.  All tracked changes, author comments, hidden columns and rows, and/or presenter notes shall be retained in the manner in which they existed when the file was collected.  Each Outlook mailbox together with the

emails contained in the folders therein (i.e., inbox, sent, drafts, deleted, and any subfolders) shall be produced in a separate *PST* file. If Electronic Data resides in a location you view as inaccessible or difficult to access for purposes of production (e.g., accounting programs or proprietary software), you must disclose the location, as well as a description of the data, and the reason(s) you contend the data is inaccessible, and we may request access to, or a virtual copy of, the program or server and/or excerpts of the data.

12.    Document productions may be produced through a file share program, or on an external hard drive (data encrypted and the password to decrypt produced separately).

13.    This request is a continuing one. If, after producing the requested documents and things, you obtain or become aware of any further documents or things responsive to this request, you are required to produce them to the parties making this request.

## DOCUMENTS TO BE PRODUCED

1.    The complete loan file(s) and/or credit file(s) reflecting any and all loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including but not limited to the proposed loan, the terms for which are attached hereto as Exhibit "1" (the "Proposed Loan").

2. Any and all other Documents referring or relating to any and all loans, potential loans, and/or financing made or anticipated to be made to the Debtor or TrashMasters, including but not limited to the Proposed Loan.

3. Any and all correspondence, including without limitation e-mails, you received from or sent to the Corridor Entities referring or relating to any loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including the Proposed Loan.

4. Any and all correspondence, including without limitation e-mails, you received from or sent to the SPB Entities (including without limitation, Ari Bass, Scott Bulloch, and Kenneth Pressberg) referring or relating to any loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including the Proposed Loan.

5. Any and all correspondence, including without limitation e-mails, you received from or sent to the Debtor (including without limitation, Charlie Leonard, Douglas Asay, and Mike VanDyken) referring or relating to any loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including the Proposed Loan.

6. Any and all correspondence, including without limitation e-mails, you received from or sent to TrashMasters (including without limitation, Charlie Leonard, Douglas Asay, and Mike VanDyken) referring or relating to any

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 17 of 33

loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including the Proposed Loan.

7.      Any and all Documents referring or relating to any payments you received from the Debtor or TrashMasters, including any payments related to the Proposed Loan, or any and all other loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters.

8.      Any and all other Documents, including without limitation e-mails and other correspondence, referring or relating to any loans, potential loans and/or financing made or anticipated to be made to the Debtor or TrashMasters, including the Proposed Loan.

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 77  Filed  09/04/19  Page 18 of 33

# EXHIBIT "1"



March 6, 2012

Mr. Eddie Monnier
Mr. Cameron Reilly
Corridor Capital, LLC
12400 Wilshire Boulevard, Suite 645
Los Angeles, CA 90025

**RE: Up to $7,250,000 in Senior Secured Financing for the refinancing of TrashMasters**

Eddie & Cameron,

Pursuant to certain discussions that we have had with you and after the review of certain financial information provided to us, Fifth Third Bank (hereafter "FTB" or "Bank"), or any of its affiliates, is pleased to present for your review, the attached Proposal Letter. This Proposal Letter will set forth the general terms and conditions on which FTB will consider providing up to $7,250,000 of Senior Secured Facilities ("Facility") to TrashMasters, LLC ("Borrower", or "Company"). Additionally, FTB's Mezzanine Finance Group is currently presenting to you a term sheet for an additional $2,250,000 in Mezzanine Debt.

A Proposal Letter is not a commitment to lend and is intended as an outline for discussion purposes only and does not purport to summarize all of the terms, conditions, covenants, etc, that would be contained in the legal documents governing the Facility. In addition, the proposed terms and conditions will be subject to satisfactory completion of the Bank's due diligence, including but not limited to formal FTB credit approval, and satisfactory legal documentation.

If the proposed terms and conditions are acceptable, please sign below and return this letter.

FTB looks forward to working with you on this transaction and is pleased to have this opportunity.

Sincerely,


*Cameron Murg*
*Officer*
*Fifth Third Bank Structured Finance Group*


Accepted and agreed to this _____ day of March, 2012

TrashMasters, LLC


By: _Edward A Monnier_____
          Edward A. Monnier
          Manager

cc:     Loren G. Willet, *Fifth Third Bank Structured Finance Group* and David Williams, *Fifth Third Bank Mezzanine Finance Group*

1

**Exhibit "1"**


# Summary of Indicative Terms and Conditions

**Borrower:**          TrashMasters, LLC ("Company," or "Borrower")

**Obligors:**          Borrower and all domestic subsidiaries

**Lender:**            Fifth Third Bank ("Bank" or "FTB")

**Facility:**          Up to $7,250,000 in Senior Secured Debt Facilities

**Term:**              Five (5) years

**Purpose:**           Proceeds under the Facility are to be used (i) to refinance the Company's existing debt, and (ii) to provide for the general working capital and corporate purposes of the Company.

| Uses ($000) | | | |
|---|---:|---|---:|
| Revolver | $ 250 | Equipment Lease Refinance | $ 606 |
| Term Loan | 4,750 | RLOC Refi | 500 |
| FTB Subordinated Debt | 2,250 | Senior Term Refinance | 3,000 |
| | | Junior Debt Repayment | 2,220 |
| | | Accrued Sponsor Fees | 259 |
| | | Working Capital | 365 |
| | | Transaction Fees | 300 |
| Total | $ 7,250 | | $ 7,250 |

**Security:**          The Facility shall be secured by a valid, perfected, first priority security interest in all of Obligors' now owned or hereafter acquired tangible and intangible assets, including, but not limited to: accounts receivable, inventory, machinery and equipment, real estate, contract rights, documents, instruments, trade names and general intangibles, subject to customary permitted liens. All facilities shall be cross-collateralized and cross-defaulted.

In addition, FTB shall be secured by a pledge of 100% of the stock or membership interests of Obligors.

**<u>Facility 1:</u>**          **<u>REVOLVING LINE OF CREDIT ("RLOC" or "Revolving Line")</u>**

**Total Credit & Structure:**          Up to a $1,000,000 secured Revolving Line of Credit; availability of funds shall be based upon the Borrowing Base outlined below.

**Projected Draw at Close:**          $250,000

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 21 of 33


| | |
|---|---|
| **Term:** | Five (5) years |
| **Borrowing Base:** | Up to 85% of Eligible Accounts Receivables |

> **Eligible Accounts Receivable** will exclude accounts over 90 days from invoice date, accounts that fail a 25% cross-age test, accounts from related entities or persons, accounts which represent more than 20% of the total aging, foreign accounts (excluding Canada) for which an irrevocable letter of credit has not been supplied, contra accounts, and other accounts as reasonably determined by FTB.

Eligible Accounts and advance rates shall be finalized during FTB's Field Exam/Initial Due Diligence, prior to the Closing Date. Eligible Accounts Receivable to be specified by FTB's Permitted Discretion. Ineligibles shall be based on monthly receivables agings reports as calculated by Obligors and as confirmed and accepted by FTB. Under FTB's permitted discretion, if unused availability falls below an amount to be determined, receivable aging and Borrowing Base frequency may be enhanced to weekly.

| | |
|---|---|
| **Letter of Credit Sub-Facility:** | The Revolver will include a $500,000 sub-facility to be used for the issuance of letters of credit. |
| **Minimum Availability:** | On the Closing Date the Obligors will be required to have minimum excess availability of $250,000. This amount may be revised after due diligence. |
| <u>**Facility 2:**</u> | <u>**TERM LOAN CREDIT FACILITY ("Term Loan")**</u> |
| **Total Credit & Structure:** | Up to a $4,750,000 secured Term Loan Credit Facility |
| **Term:** | Five (5) years from the Closing Date or the termination of the RLOC whichever comes first. |
| **Amortization:** | Outstandings under the Term Loan will amortize based on the following schedule, principal plus interest payments will be due monthly: |

- Year 1 – 10.0% of principal amount
- Year 2 – 10.0% of principal amount
- Year 3 – 12.5% of principal amount
- Year 4 – 12.5% of principal amount
- Year 5 – 15.0% of principal amount

The first monthly interest payment will be due on the 1st day after the first full month after closing.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 22 of 33


| **Facility 3:** | **CAPITAL EXPENDITURES LINE ("CapEx Line")** |
|---|---|
| **Amount:** | $1,500,000 |
| **Draws** | Advances shall be limited to 80% of the hard acquisition cost of new and used tangible machinery & equipment. Draws under the CapEx Line may be requested by Borrower during the first four years following the closing. |
| **Term:** | Five (5) Years |
| **Amortization:** | At the end of each twelve (12) month draw period (starting with the first anniversary of the closing), the balance of the CapEx Line drawn by Borrower during such period will be converted to a term loan and will thereafter amortize in monthly principal payments of 1/60th of the amount then drawn plus interest, with all remaining principal and interest due at final facility maturity. The first monthly principal payment for each converted term loan of the CapEx Line will be due on the 1st day after the first full month following each such conversion. Until converted into a term loan, all drawings will bear interest which will be payable monthly in arrears. |
| **Mandatory Prepayments:** | In addition to the scheduled repayments of the Facilities, the Obligors shall make the following Mandatory Prepayments: |

1. Excess Cash Flow Recapture: In addition to scheduled principal payments, the Term Loan Facility will also include an Excess Cash Flow Recapture (ECFR) provision, in which 75% of Excess Cash Flow in each Fiscal Year will automatically be used to prepay the principal balance of the Term Loan. There will be one annual ECFR payment each year and will be based upon the full fiscal year (except with respect to the fiscal year ending 12-31-12 which would be a stub-year from closing). The ECFR payment will be due 5 days after receipt of the audited annual financial statements; *provided* that, if after giving effect to any such ECFR payment, the Company's operating cash plus availability under the RLOC would be less than $500,000, then such ECFR payment will not be due until such date on which the Company's operating cash plus availability under the RLOC would be equal to or exceed $500,000 after giving effect to such ECFR payment. The Excess Cash Flow payments shall be applied in inverse order of maturity, with the first payment to be applied after receipt of the 12/31/12 Audited Financial Statements. The ECFR will be applied to the Term Loan facility, then at the option of FTB, to the CapEx Line, and finally the Revolving Line of Credit.

   The Annual ECFR will be shared with Fifth Third's Mezzanine Finance Group, the breakdown of the payment is as follows:

   - 75% of the ECFR used to repay the Senior Debt
   - 25% of the ECFR used to repay the Mezzanine Debt

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 23 of 33


For purposes of calculating the Excess Cash Flow Recapture, "Excess Cash Flow" shall mean for any period the difference between: (a) Obligors' earnings before interest, taxes, depreciation and amortization (EBITDA), minus actual tax payments, management/advisory fees, and unfinanced capital expenditures (i.e., capital expenditures funded out of cash flow), and (b) interest and scheduled principal payments for such period.

2. <u>Equity Sale or Disposition</u>: Proceeds from the sale of all assets, issuance of equity membership interest (other than the issuance of additional equity membership interests to Borrower's existing members or to any affiliate of Corridor Capital, LLC that is (a) in existence as of closing and (b) controlled by Corridor Capital, LLC as of closing), and insurance proceeds will be applied first to the Term Loan in inverse order of maturity until fully paid, second to any loans outstanding under the CapEx Line in inverse order of maturity until finally paid, and then to the RLOC, subject to Borrower's right to utilize the proceeds of asset sales and insurance proceeds to purchase replacement assets within 120 days after Borrower's receipt of such sales or insurance proceeds.

**Interest Rate Hedge:** Within 90 days after the Closing Date, Obligors shall execute an interest rate hedge agreement with respect to the Term Loan acceptable to Borrower and FTB with a minimum notional amount of $3,000,000, and a minimum of 3 years. The hedge may take the form, at Company option, of a swap, cap or rate ceiling.

**<u>Pricing & Fees:</u>**

**Interest Rate:** Direct borrowings under the Facilities shall bear interest at London InterBank Offered Rate (LIBOR) as defined and publicly announced from time to time by FTB plus the spread outlined below:

| | |
|---|---|
| **RLOC LIBOR Spread** | **3.75%** |
| **Term Loan LIBOR Spread\*** | **4.25%** |
| **CapEx Line LIBOR Spread\*** | **4.25%** |
| **LIBOR Floor** | **0.50%** |

RLOC borrowings shall be, at borrower's option, either floating LIBOR or fixed rate LIBOR advances with maturities of 30, 60, or 90-day increments.

\*For floating LIBOR, interest will be based upon 30-day LIBOR as announced at the beginning of each month and pricing for floating LIBOR will be 50 bps higher than fixed rate LIBOR advances.

The RLOC shall be subject to a monthly unused line fee equal to 0.25% per

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 77  Filed  09/04/19  Page 24 of 33

annum <u>times</u> the average daily unused portion of the RLOC for the immediately preceding month, which shall be payable monthly in arrears.

The term loan will be priced using fixed rate LIBOR advances with maturities of 60, or 90 days, at Borrower's election.

Interest will be computed on the basis of a 360-day year and actual days elapsed, in arrears.

The Fee on any Letter of Credit issued will be 3.75% of the amount available to be drawn under a standby Letter of Credit and the face amount of any commercial Letter of Credit, plus usual and customary fees for Letters of Credit.

**Closing Fee:**          Obligors shall pay FTB the following Closing Fee:

**0.75% of the Total Credit Facilities**

The Closing Fee shall be fully earned and payable to FTB on the Closing Date. If a Commitment Letter is requested and subsequently issued, one fourth of the Closing Fee would be payable as a Commitment Fee upon issuance of the Commitment Letter; this Commitment Fee would be credited towards the Closing Fee at closing.

**Other Fees and Expenses:**          Obligors shall pay all due diligence expenses incurred by Bank associated with the closing of this transaction including all reasonable and documented out-of-pocket expenses for attorneys' and paralegals' fees (whether such attorneys and paralegals are employees of Bank or separately engaged by Bank) and costs that may be incurred by Bank in connection with the field exams, travel expenses incurred by Bank associates, background checks, appraisals, negotiation, documentation and closing of the secured financing transaction contemplated by this letter are payable by the Obligors upon Bank's demand. All other out-of-pocket expenses incurred by Bank in connection with the perfection of Bank's security interest and liens in and against all collateral requested by Bank, including, without limitation, fees and expenses for title and lien searches, title commitment and insurance fees, filing and recording fees and taxes, duplication costs, and corporate search fees, are payable by Obligors upon Bank's demand. The obligations of Obligors described in this section are independent of all other obligations of Obligors hereunder and under the Loan Agreements, shall survive the expiration or termination of this proposal, and shall be payable whether or not the secured financing transaction contemplated by this letter shall close.

<u>**Covenants & Other Provisions:**</u>

**Financial Covenants:**          The following financial covenants, tested quarterly, will apply to the facilities:

Minimum Fixed Charge Coverage Ratio – 1.25x

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 25 of 33


Maximum Total Leverage Ratio – Please see attached worksheet
Maximum Capital Expenditures – $750,000 per year

**Other Covenants:**        Usual covenants for facilities of this type, including, but not limited to:

restrictions on dividends, distributions other than the management/advisory fees paid to and shared by Corridor Capital and SPB Partners, and stock repurchases, asset sales, investments, loans, advances, guarantees, liens, indebtedness, capital and operating leases, capital expenditures, and change of control/ownership.

**Reporting Requirements:**  At a minimum, the Obligors shall be required to provide the following information to FTB:

- Annual audited consolidated financial statements within one hundred twenty (120) days after fiscal year end by an accounting firm acceptable to FTB, with the understanding that Green Hasson & Janks is acceptable to FTB.
- Quarterly Covenant Compliance Certificate within forty-five (45) days after quarter-end.
- Monthly company-prepared financial statements within thirty (30) days after month-end.
- Monthly Borrowing Base Certificates to be submitted within thirty (30) days after the end of each month or more frequently as may be needed, depending upon the amount of excess availability under the RLOC.
- Monthly Accounts Receivable Aging and Accounts Payable Summary to be submitted within thirty (30) days after the end of each month.
- Annual Business Plan including monthly projections submitted within sixty (60) days after the prior FYE.

**Depository Accounts:**     FTB will act as the principal depository and disbursement bank for Obligors. Borrower shall retain the right to maintain a modest deposit account with a local bank for purposes, and in a maximum aggregate amount, mutually acceptable to Borrower and FTB.   Borrower will establish a lockbox with FTB. All remittances will flow from the lockbox or blocked account to a cash-collateral account maintained with FTB. Proceeds of checks collected will be applied to the outstanding borrowings as funds become collected and available in accordance with FTB's designated funds availability policies from time to time in effect.   Cash collected is also reflected as a reduction in receivables. Borrower shall maintain a minimum collected, positive (*i.e.,* "peg") balance, in an amount mutually acceptable to Borrower and FTB, in the operating/funding account maintained with FTB.   Should FTB's operating costs exceed the earnings credit associated with the available account balances in any one month, the deficiency will be charged to the Borrower's account.

**Field Exams:**            Up to two Field Exams annually (pre-default) as deemed necessary will be conducted by FTB. Field exams (performed by internal staff of FTB) will be charged at a rate of $850 per person-day plus out of pocket expenses or with respect to third party firms, at the cost thereof charged to Fifth Third.

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 77  Filed  09/04/19  Page 26 of 33

| | |
|---|---|
| **Events of Default:** | Usual and customary for transactions of this nature, including, but not limited to, failure to pay any interest, principal or fees when due, failure to meet any covenant or agreement (subject to customary cure periods), inaccurate or false representation or warranties, cross default, change of control, insolvency, bankruptcy, ERISA, and judgment defaults. |
| **Participations/Assignment:** | FTB retains the right to (i) sell participations in the Facility, subject to retaining a controlling interest and (ii) assign all right, title and interest in the Facility. |
| **Other Terms & Conditions Precedent:** | On or before the Closing Date of the secured financing transactions being provided by FTB on the terms set forth in this letter, the following conditions precedent will have been satisfied in a manner satisfactory to FTB. |

1. <u>No Material Adverse Change:</u> No material adverse change, as determined by FTB, in the condition or operations, financial or otherwise, of Borrower shall have occurred during the period commencing on 01/01/11 and ending on the Closing Date ("Interim Period").

2. <u>Litigation:</u> There shall not have been instituted or threatened, during the Interim Period, any material, as determined by FTB, litigation or proceedings in any court or administrative forum to which any Obligor is, or is threatened to be, a party.

3. <u>Liquidity:</u> On the Closing Date, all of the assets supporting FTB's advances under the Loan Agreements with Borrower shall be sufficient in value and provide Obligors with sufficient working capital to enable it to profitably operate its business.

4. <u>Documentation Filing & Recording:</u> All financing statements and mortgages (if any) relating to the collateral described above shall have been filed or recorded.

5. <u>Solvency:</u> On the Closing Date, the Obligors shall be solvent – <u>i.e.</u>, the assets of the Obligors at a fair valuation and at their then present fair saleable value, determined in a manner and based on assumptions satisfactory to FTB, shall be materially greater than the total liabilities of Obligors, and FTB shall be satisfied that Obligors' assets at a fair valuation and at their fair saleable value will continue to be materially greater than the total liabilities of Obligor thereafter.

6. <u>Legal Documentation:</u> Obligor shall have executed and caused to be delivered to FTB, such credit agreements, instruments, documents, agreements, assignments, mortgages, waivers, security agreements, financing statements, intercreditor agreements, subordination agreements, guarantees, certificates, opinions, endorsements and assurances (the "Loan Agreements") as FTB and FTB's counsel



might reasonably request in connection with the funding of the secured transaction contemplated by this letter on the basis outlined herein. The Loan Agreements shall contain such representations, warranties, affirmative, negative, and financial covenants, events of default and conditions precedent to advances as are acceptable to FTB and normally contained in documents relating to transactions entered into by FTB which are similar to those contemplated herein.

7. <u>Interim Financial Statements:</u> Obligor shall have delivered to FTB company prepared financial statements through January 31, 2012.

8. <u>EBITDA:</u> As of the month immediately prior to the month of the Closing Date, TrashMasters shall have an adjusted trailing twelve-month EBITDA of not less than $2,000,000.

9. <u>Ownership Structure:</u> The equity owners and ownership structure of the Obligors shall be satisfactory to FTB. Corridor Capital shall provide additional due diligence materials about the other equity owners as requested by FTB. Such requests may include, but not be limited to, meetings with the other equity owners.

10. <u>Senior Management Employment:</u> The employment, consultation and compensation agreements (including equity compensation and ownership) for key management employees shall be reviewed by and satisfactory to FTB.

11. <u>Field Exam/Initial Due Diligence:</u> FTB or its representatives shall have completed a Field Exam of the Company and shall conduct background investigations as FTB deems prudent, at Company's expense.

**Indemnification:**   FTB will be indemnified against all losses, liabilities, claims, damages, or expenses relating to the Borrower's use of loan proceeds or the commitments or environmental problems including but not limited to reasonable attorney's fees and settlement costs, except to the extend caused by FTB's gross negligence or willful misconduct.

**FTB's Legal Counsel:**   TBD

**Governing Law:**   Subject to the laws of the State of Ohio

**Deposit:**   $30,000, payable upon the execution of this Proposal Letter, towards costs and expenses for due diligence relating to the financing contemplated herein (including without limitation costs and expenses relating to the initial field examination, appraisals from appraiser(s) acceptable to FTB of equipment, in-house and outside counsel, and related expenses.) If the financing is not approved by FTB, any unused portion of the deposit will be credited against the

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 28 of 33

Closing Fee or repaid to Borrower should transaction not close.

> *This proposal letter should be viewed as an outline intended for discussion purposes only. It should not in any way be viewed as a commitment by Fifth Third Bank to extend further credit to Borrower or any of its subsidiaries or affiliates. The information provided in this proposal letter is for the confidential use of Borrower and Corridor Capital and may not be disclosed to any other party without the expressed written consent of Fifth Third Bank. The terms of this proposal are not in final, valid form. This proposal also assumes there is no material disruption of the financial markets which in the Bank's opinion impacts pricing or availability of credit in a material way. This proposal will be deemed null and void upon the sooner of: (i) notice from Fifth Third Bank, or (ii) 10 Business Days from the date of the letter.*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 29 of 33

KLEVANSKY PIPER, LLP
A Limited Liability Law Partnership

SIMON KLEVANSKY              3217-0
ALIKA L. PIPER               6949-0
ELAINE T. CHOW              10377-0
CARISA LIMA KA'ALA DUFFY     7372-0
841 Bishop Street, Suite 1707
Honolulu, Hawaii 96813
Telephone: (808) 536-0200
Facsimile: (808) 237-5759
E-Mail: sklevansky@kplawhawaii.com
        apiper@kplawhawaii.com
        echow@kplawhawaii.com
        kduffy@kplawhawaii.com

Attorneys for Plaintiff Elizabeth A. Kane

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 16-01294 |
| ROLLOFFS HAWAII, LLC, | (Chapter 7) |
| Debtor. | |
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC | Adversary Proceeding No. 18-90035 |
| Plaintiff, | **DECLARATION OF** |
| v. | _____ |
| TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG | **[CUSTODIAN OF RECORDS OF FIFTH THIRD BANK]** |

120256.docx

ENENSTEIN; L. GEOFFREY
GREULICH; EDWARD A.
MONNIER; JESSAMYN DAVIS; ARI
D. BASS; SCOTT R. BULLOCH;
KENNETH M. PRESSBERG;
KRISTIAN GOURLAY; DOUGLAS
L. ASAY; DOUGLAS D. ASAY;
CHARLES E. LEONARD; BRIAN
COLBECK; ROLLOFFS HAWAII,
INC.; THE KNG GROUP, LLC;
COLBECK CONSULTING LLC;
JOHN DOES 1-50; JANE DOES 1-50;
DOE CORPORATIONS 1-50; DOE
PARTNERSHIPS 1-50; DOE
ENTITIES 1-50,

              Defendants.

## DECLARATION OF _____
### [CUSTODIAN OF RECORDS OF FIFTH THIRD BANK]

I, _____, declare under penalty
of perjury that:

1.    I am employed by Fifth Third Bank (the "Company") as
_____, and by my position I am authorized and
qualified to make this declaration.

2.    The following statements are based on my personal knowledge,
except as otherwise stated.

3.    The Company has been served with a Subpoena to Produce
Documents, Information, or Objects (the "Subpoena"), dated _____.

4.     Based upon a diligent search and to my knowledge, I certify that the relevant records (the "Produced Documents"), which were furnished by _____ to counsel for the Trustee on _____, are copies of all documents, information, and things that:

      a.     were made at or near the time by – or from information transmitted by – someone with knowledge;

      b.     were kept in the course of regularly conducted activity of a business; and

      c.     making the records was a regular practice of that activity.

5.     To the best of my knowledge, information, and belief, the Produced Documents have not been altered during the time they were under my care, custody, and control, and no documents described in the Subpoena were discarded or destroyed from the time the Company was served with it.

6.     To the best of my knowledge, information, and belief, there are no other documents described in the Subpoena under my care, custody, and control, which were not included in the Produced Documents.

I declare under penalty of perjury that the foregoing is true and correct.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 77   Filed  09/04/19   Page 32 of 33

DATED: _____, _____, 2019.

By: _____

Title: _____

_____
Dane S. Field, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC, v. Trashmasters, LLC, et al., Adversary Proceeding No. 18-90035, United States Bankruptcy Court, District of Hawaii; DECLARATION OF _____ [CUSTODIAN OF RECORDS OF FIFTH THIRD BANK]