CASE LOMBARDI & PETTIT
A LAW CORPORATION

TED N. PETTIT                    4287-0
Email:  tnp@caselombardi.com
ELLEN A. SWICK                10514-0
Email: eas@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii  96813
Tel. No.: (808) 547-5400  |  Fax No.:  (808) 523-1888

Attorneys for Defendants
**KRISTIAN GOURLAY and**
**THE KNG GROUP, LLC**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>ROLLOFFS HAWAII, LLC,<br><br>Debtor. | Case No. 16-01294<br>(Chapter 7) |
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>Plaintiff,<br><br>vs.<br><br>TRASHMASTERS, LLC;<br>CORRIDOR CAPITAL LLC;<br>CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR<br>TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB | Adversary Proceeding No. 18-90035<br><br>**DEFENDANT KRISTIAN GOURLAY AND THE KNG GROUP, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Hearing**<br>Judge:  Hon. Robert J. Faris<br>Date:  November 15, 2019<br>Time:  10:00 a.m.<br><br>[Related Dkt. No. 71]<br><br>*(Caption continued to the following page)* |

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND..................................................................3

    A.    Overview .......................................................................................3

    B.    The Debtor's Acquisition of the KNG Assets.......................................5

II.   ARGUMENT...............................................................................7

    A.    Legal Standard for a Motion for Judgment on the Pleadings ..............7

    B.    Defendants are Entitled to Judgment on Counts 25-28 Concerning
          the Secured KNG Guaranty................................................8

    C.    Judgment Must be Entered as to Counts 29-32 (KNG Payoff) ..........11

          1.    The KNG Payoff Was Made With Earmarked Funds Not
                Property of the Debtor.. ..........................................11

          2.    Judgment as to Counts 25-28 Mandates Judgment as to
                Counts 29-32 Based on Payments on Account of an
                Antecedent Debt........................................13

    D.    Defendants are entitled to Judgment on Causes of Action
          Derivative of Fraudulent Transfers (Counts 34-43)..........................14

          1.    Counts 34-35 (Civilian Conspiracy to Commit Fraudulent
                Conveyances and Transfers). ....................................14

           2.    Defendants are entitled to Judgment as to Counts 36-38
                (Breaches of Fiduciary Duty)....................................15

               a.    The Trustee Fails to Plead Conduct Giving Rise to
                    Fiduciary Duties. ......................................16

               b.    Count 36 (Breach of Fiduciary Duty – Fraudulent
                    Conveyance and Transfers) Must Be Dismissed...........20

c.     Defendants are Entitled to Judgment as to Count 37 (Breach of Duty of Loyalty) ...........................................21

d.     Count 39 (Civil Conspiracy to Breach Fiduciary Duties).............................................................................22

e.     Count 40 (Aiding and Abetting Breach of Fiduciary Duty) ...............................................................................23

f.     Defendants are Entitled to Judgment as to Counts 41-43 ......................................................................................25

**III.    CONCLUSION** ...........................................................................**26**

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 112   Filed  10/11/19   Page 3 of 31

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Aalfs v. Wirum (In re Straightline Invs.),
    525 F.3d 870, 877-78 (9th Cir. 2008)). ..........................................................12

Adams v. Anderson (In re Superior Stamp & Coin Co.),
    223 F.3d 1004, 1008 (9th Cir. 2000) ......................................................12, 13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544, 565 n.10 (2007) ......................................................14, 20, 21

Beskrone v. OpenGate Cap. Grp. (In re Pennysaver USA Publ'g, LLC),
    587 B.R. 445, 463 (Bankr. D. Del. 2018).........................................17, 18, 19

Bridgepoint Constr. Servs. v. Lassetter,
    No. 16-00078, 2016 U.S. Dist. LEXIS 93895, at *8 (D. Ariz. July 19,
    2016) ...............................................................................................22

Buchwald Cap. Adv. V. JP Morgan Chase Bank
(In re M. Fabrikant & Sons), 447 B.R. 170, 187 (Bankr. S.D.N.Y.
2011) *aff'd*, 541 F.App'x 555 (2d Cir. 2013) ..........................................9

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,
    637 F.3d 1047, n.4 (9th Cir. 2011) ...................................................7

In re Conex,
    514 B.R. 405, 414 (Bankr. D. Del. 2014)........................................19

Cooper v. Centar Invs. (Asia) Ltd. (In re TriGem Am. Corp.),
    431 B.R. 855, 863 (Bankr. C.D. Cal. 2010) ...................................12

Espinoza v. Bank of Am.,
    No. 10-6, 2010 U.S. Dist. LEXIS 49048, at *10 (S.D. Cal. May 17, 2010).23

Frontier Bank v. Brown (In re Northern Merch.),
    371 F.3d 1056 (9th Cir. 2004) .......................................................8

In Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings),
    491 B.R. 747, 781 (Bankr. W.D. La. 2013) ...................................................24

Hal Roach Studios, Inc. v. Richard Feiner and Co.
    896 F.2d 1542, 1550 (9th Cir. 1989) ...............................................................7

Kaler v. Community First Nat'l Bank (In re Heitkamp),
    137 F.3d 1087, 1089 (8th Cir. 1998). ............................................................12

Lewis v. AimCo Properties, L.P.,
    2015 Del. Ch. LEXIS 33, at *17 (Del. Ch. 2015) .........................................18

Mann v. GTCR Golder Rauner, L.L.C.,
    483 F. Supp. 2d 884, 916 (D. Ariz. 2007) .....................................................24

McCuskey v. National Bank (In re Bohlen Enter.),
    859 F.2d 561, 564 (8th Cir. 1988) .................................................................12

In re Old CarCo LLC.
    435 B.R. 169 (Bankr. S.D. N. Y. 2010) ....................................................9, 10

Tully v. McLean,
    948 N.E.2d 714, 739-40 (III. App. 2011)) ...............................................15, 16

Vineyard v. Vineyard (In re Vineyard),
    2011 WL 306068 (D. Ore. 2011). ...................................................................8

**STATE CASES**

Combs v. Case Bigelow & Lombardi,
    No. 28773, 2010 Haw. App. LEXIS 25, at *21 (Jan. 27,
    2010) ..............................................................................................................23

Molokai Servs. v. Hodgins,
    142 Haw. 150 (App. 2018) .............................................................................23

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 112   Filed  10/11/19   Page 5 of 31

## FEDERAL RULES

F.R.Civ.P. 12(c) ............................................................................2, 7
Fed.R.Bankr.P 7012(b) ...............................................................2, 8

## STATE STATUTES

HRS § 428-409...............................................................15, 16, 20, 21
HRS § 428-409(b)...................................................................22
HRS § 651C-4(a)(1) ..................................................................8
HRS § 651C-4(a)(2) ..................................................................8

HUFTA § 651C-4(a)(1) .............................................................11
HUFTA § 651C-4(a)(2) .............................................................11
HUFTA § 651C-5(a) ...................................................................8
HUFTA § 651C-5(a)(1) .............................................................11

WASTE, LLC; SPB CAPITAL GP,
LLC; SPB CAPITAL PARTNERS,
L.P.; SPB PARTNERS, LLC; CRAIG
ENENSTEIN; L. GEOFFREY
GREULICH; EDWARD A.
MONNIER; JESSAMYN DAVIS;
ARI D. BASS; SCOTT R.
BULLOCH; KENNETH M.
PRESSBERG; KRISTIAN
GOURLAY; DOUGLAS L. ASAY;
DOUGLAS D. ASAY; CHARLES E.
LEONARD; BRIAN COLBECK;
ROLLOFFS HAWAll, INC.; THE
KNG GROUP, LLC; COLBECK
CONSULTING LLC; JOHN DOES 1-
50; JANE DOES 1-50; DOE
CORPORATIONS 1-50; DOE
PARTNERSHIPS 1-50; DOE
ENTITIES 1-50,

                    Defendants.

## DEFENDANT KRISTIAN GOURLAY AND THE KNG GROUP, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

DEFENDANTS KRISTIAN GOURLAY ("Gourlay") and THE KNG GROUP, LLC ("KNG") (together "Defendants") hereby file their Motion for Judgment on the Pleadings (the "Motion"), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("F.R.Civ.P.") made applicable by Rule 7012(b) of the Bankruptcy Rules of Civil Procedure, with respect to the First Amended Complaint ("FAC") filed on July 31, 2019 by the trustee for the bankruptcy estate of Rolloffs Hawaii, LLC ("Plaintiff" of "Trustee"). Defendants move for judgment on the

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 112  Filed  10/11/19  Page 7 of 31

pleadings in favor of Defendants as to Counts 21 through 43 of the FAC. These are the only Counts that implicate Defendants. See Exhibit A to Motion to Dismiss Counts 1-42 filed by other defendants (Dkt #96) incorporated herein by this reference.

## I. FACTUAL BACKGROUND

### A. Overview

This Motion adopts much of the factual background and many of the arguments and legal authorities contained in the second Motion to Dismiss filed on September 19, 2019 [Dkt # 96], as applicable to Defendants.

The Court is familiar with the factual background of this litigation. As of this filing, approximately 3500 pages have been filed herein. Docket numbers [Dkt.] #1 through #111. The Court's Memorandum of Decision on Motion to Dismiss Complaint [Dkt #63] ("Decision"), allowed the Trustee to amend the Original Complaint [Dkt #1] to address deficiencies identified in the defendants' motion to dismiss the Original Complaint [Dkt. #19]. The Trustee has failed to do so in filing the FAC. The Trustee seeks to avoid obligations to Union Bank (without joining it as a defendant) and KNG of over $6.5 million, and transfers to Union Bank, ROHI and KNG totaling approximately $14.5 million. Mr. Gourlay was not a party to the challenged transactions, nor did he directly receive any payments.

As an overview of this Motion, the Court should focus on the following

deficient allegations that permeate the FAC: (1) impermissible lumping of defendants and group pleading, (2) segmented pleading that ignores the totality of the subject transactions, and (3) refusal to acknowledge the valuable assets were acquired by the Debtor. These deficiencies are described in more detail in this Motion.

First, the FAC asserts blanket liability as to Counts 21 to 43 on behalf of the Defendants and other defendants for all of the challenged obligations and transfers under a variety of derivative theories such as conspiracy, aiding and abetting, breach of fiduciary duties, alter ego, and single enterprise. None of these derivative causes of action, all of which are based on impermissible group pleading, are adequately pled and judgment should be entered in favor of Defendants.

Second, the allegations are based on segregated components of the challenged transactions rather than considering the totality of the integrated contemporaneous transactions, as required by applicable law. The Trustee's dissection of the transactions is purposeful to eliminate or obfuscate the valuable consideration the Debtor actually received. The facts admitted in the FAC and appearing on the face of the Exhibits attached thereto show those transactions were commercial, arm's length transactions with unrelated third parties for reasonably equivalent value.

Third, in challenging transactions as part of a fraudulent scheme from inception, the FAC ignores the economic reality of the transactions, the

consideration received by the Debtor, and the Debtor acquisition of its assets from unrelated third parties in arm's length deals.

Several challenged transactions (or components thereof) in particular are alleged to be fraudulent transfers for which the Debtor received no value. The facts admitted in the FAC and appearing on the face of the attached Exhibits, however, show those transactions to be nothing more than arm's length transactions for reasonably equivalent value with third parties, when the transactions are collapsed and viewed as part of the overall transaction.

### B.    The Debtor's Acquisition of the KNG Assets.

On August 13, 2010, the Debtor acquired the assets of KNG as part of an integrated transaction between KNG, TrashMasters and the Debtor. The constituent (4) four components of this August 13, 2010 integrated transaction were (1) the KNG Asset Purchase Agreement by which TrashMasters acquired the assets of KNG for a purchase price of $6,300,000; (FAC ¶¶ 231 and 234; Ex. 32) (2) the Seller Note made by TrashMasters to KNG in the principal amount of $1,500,000 ("KNG Note") (FAC ¶ 235, Ex. 33); (3) the Secured Guaranty ("KNG Guaranty"), by which the Debtor guaranteed TrashMasters's payment of the KNG Note and granted KNG a security interest in its equipment (FAC ¶ 239; Ex. 34); and (4) the 2010 Contribution Agreement by which the assets acquired by TrashMasters from KNG were transferred to the Debtor by TrashMasters (FAC ¶ 243; Ex. 35). The

transaction between TrashMasters and KNG was an arm's length asset acquisition between unrelated parties.

The FAC does not allege facts showing that the purchase price was unfair, or that Mr. Gourlay or KNG knew or should have known the transaction was part of a fraudulent scheme. The FAC does not allege insolvency of the Debtor at the time the transaction closed on August 13, 2010. These four components of the Debtor's acquisition of KNG's assets are alleged in the FAC and the transaction documents attached as Exhibits. The four components are clearly integrated parts of the larger asset purchase.

For example, the KNG Guaranty provides:

- It is expressly understood among the Borrower [TrashMasters], Guarantor (Debtor) and Lender that the execution and delivery of this Guaranty is a condition precedent to Lender's obligation to make loans or extend credit under the Note and is an integral part of the transactions contemplated thereby.

  [T]he value of the consideration and benefit received and to be received by Guarantor (Debtor) . . . is a substantial and direct benefit to Guarantor. (FAC Ex. 34 at 1)

The parties' acknowledgement that each component part of the transaction was a component part of a larger transaction is evidenced by the cross referencing in the transaction documents. There is overlap among some of the signatories. The Debtor and TrashMasters were parties to the 2010 Contribution Agreement; TrashMasters and KNG were parties to the KNG APA; and the KNG Note and the Debtor and

KNG were parties to the KNG Guaranty. Each document to which Debtor and TrashMasters were parties was executed by defendant Edward A. Monnier. The KNG APA and the KNG Note cross reference each other, and the 2010 Contribution Agreement references the KNG APA. The four components are not stand-alone transactions.

## II. __ARGUMENT__

### A. __Legal Standard for a Motion for Judgment on the Pleadings__

The legal standard for review of a motion for judgment on the pleadings under Rule 12(c), F.R.Civ.P., assumes, for purposes of the motion, that the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1989). Defendants have denied all material allegations in the FAC. Defendants' Answer. Dkt #99. Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Id. at 1550. Rule 12(c) is "functionally identical" to Rule 12(b)(6) and the same standard of review applies to motions brought under either rule. Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, n.4 (9th Cir. 2011). Rule 12(c), F.R.Civ.P., is made applicable

by Fed.R.Bankr.P. 7012(b).   <u>Vineyard v. Vineyard</u> (<u>In re Vineyard</u>), 2011 WL 306068 (D. Ore. 2011).

**B.    Defendants are Entitled to Judgment on Counts 25-28 Concerning the Secured KNG Guaranty**

Counts 25-28 seek to avoid the KNG Guaranty on the grounds that the Debtor's incurrence of the obligation was actually and constructively fraudulent pursuant to H.R.S. §§ 651C-4(a)(1) and (2) and 651C-5(a) of Hawaii's Uniform Fraudulent Transfer Act ("HUFTA") based on the Trustee's patently false allegation that the "Debtor received no value on account of its furnishing KNG the KNG Guaranty."  FAC ¶¶ 692. The Trustee again ignores the economic reality of the entire transaction of which the KNG Guaranty was an essential component part. This is evidenced by the transactional documents attached as FAC Exhibits and the Trustee's contrary admissions in the FAC. The proper focus is on the entirety of the transaction. TrashMasters acquired assets from KNG and simultaneously contributed the same assets to the Debtor with the closing of the acquisition.

The Ninth Circuit requires the court to credit consideration that ultimately went to the Debtor. <u>Frontier Bank v. Brown</u> (<u>In re Northern Merch.</u>), 371 F.3d 1056 (9th Cir. 2004)( the "<u>Northern Merchandise case</u>"). The over-riding principle of <u>Northern Merchandise</u> is that "the primary focus of section 548 is on the net effect of the truncation on the debtor's estate and the funds available to the unsecured

creditors." 371 F.3d at 1059. In that case, the Ninth Circuit rejected the trustee's argument that because the transfer was a "capital contribution" to the debtor it cannot constitute reasonable equivalent value.

In the alternative, the same result of crediting consideration that was received by the Debtor is by the collapsing doctrine. Under In re Old CarCo LLC, 435 B.R. 169 (Bankr. S.D. N. Y. 2010), the collapsing analysis must be applied at the pleading stage where the "deal documents themselves make clear that the entire transaction is linked." Old CarCo, 435 B.R. at 185. See also Buchwald Cap. Adv. V. JP Morgan Chase Bank (In re M. Fabrikant & Sons), 447 B.R. 170, 187 (Bankr. S.D.N.Y. 2011) aff'd, 541 F.App'x 555 (2d Cir. 2013)("In assessing a collapsing claim, a court must focus on the interdependence of the multiple transactions and whether the participants knew or should have known that no transaction would occur unless all of the other transactions occurred.")

There are compelling reasons for "collapsing" the Trustee's claims. The KNG Guaranty explicitly states it was an *integral and required* part of the acquisition of the KNG asset acquisition, and the KNG Guaranty itself makes clear it is part of the larger KNG asset acquisition. As stated in the KNG Guaranty:

- It is expressly understood among the Borrower (TrashMasters), Guarantor (Debtor) and Lender *that the execution and delivery of this Guaranty is a condition precedent to Lender's obligation to make loans or extend credit under the Note and is an integral part of the transactions contemplated thereby*.

FAC Ex. 34 at 1 (KNG Guaranty)(emphasis added).

The Trustee's admission that the Debtor received the assets acquired from KNG and the 2010 Contribution Agreement (FAC, Ex. 35) conclusively establishes the Debtor received the KNG assets and that the Trustee's allegations that the Debtor received no value for incurring KNG Guaranty are false. Without the KNG Guaranty, KNG would not have sold the $6,300,000 of assets to TrashMasters and TrashMasters could not have immediately transferred the assets to the Debtor. The Debtor was required to furnish the $1,500,000 KNG Guaranty to obtain title to the KNG assets because the $1,500,000 was part of the purchase price.

The transactions underlying the Debtor's acquisition of the KNG assets must be considered (1) based on the Ninth Circuit's mandate in Northern Merchandise, or (2) based on the Old CarCo analysis and collapsing doctrine. First, because the Debtor, as pled in the FAC, received reasonably equivalent value, Counts 27 and 28 seeking to avoid the KNG Guaranty as a constructive fraudulent transfer must be dismissed. Second, because reasonably equivalent value is established for the overall transaction, the Trustee's allegations of actual fraud are fatally defective by relying on the premise that the Debtor received no value on account of the KNG Guaranty. That allegation is admittedly is false. Accordingly, Defendants are entitled to judgment on Counts 25 and 26 seeking to avoid the KNG Guaranty as an actual fraudulent transfer.

### C. Judgment Must be Entered as to Counts 29-32 (KNG Payoff)

The Trustee alleges that on June 27, 2012, the Debtor paid KNG $1,525,127.49 (the "KNG Payoff") to satisfy the KNG Note. The Trustee ignores the existence of the KNG Guaranty, and seeks to avoid the KNG Payoff (1) as an actually fraudulent transfer pursuant to HUFTA § 651C-4(a)(1) in Counts 29 and 30, and (2) as a constructively fraudulent transfer in Counts 31 and 32 pursuant to §§ 651C-4(a)(2) and 651C-5(a)(1). The Court need not look beyond the allegations in the FAC to enter judgment in favor of the Defendants on Counts 29 through 32.

#### 1. The KNG Payoff Was Made With Earmarked Funds Not Property of the Debtor.

The Trustee admits that the KNG Payoff was made with the proceeds of the 2012 ASB Credit Agreement (FAC ¶ 732), on which both the Debtor and TrashMasters were the borrowers (FAC ¶ 256). Consequently, the *net effect* of the KNG Payoff on the Debtor's balance sheet was that an existing $1,500,000 joint secured obligation of the Debtor and TrashMasters (TrashMasters was obligated on the KNG Note, and the Debtor on the KNG Guaranty) was paid by a new lender, ASB, and ASB replaced KNG as the secured obligee of both the Debtor and TrashMasters. Accordingly, there was no estate depletion and no reduction of assets available to satisfy the Debtor's creditors.

The "earmarking" doctrine governs this transaction. Where a third party provides necessary funds to satisfy a specific obligation a debtor owes to an existing

creditor, the payment to the existing creditor is not a transfer involving the debtor's property and, therefore, cannot be avoided. Adams v. Anderson (In re Superior Stamp & Coin Co.), 223 F.3d 1004, 1008 (9th Cir. 2000); Cooper v. Centar Invs. (Asia) Ltd. (In re TriGem Am. Corp.), 431 B.R. 855, 863 (Bankr. C.D. Cal. 2010) (applying earmarking doctrine to fraudulent transfers and citing Aalfs v. Wirum (In re Straightline Invs.), 525 F.3d 870, 877-78 (9th Cir. 2008)). The doctrine governs a situation, where a third party "earmarks" funds to pay a pre-existing creditor, the transfer does not harm the debtor's bankruptcy estate because the third-party "merely steps into the shoes of an old creditor." Kaler v. Community First Nat'l Bank (In re Heitkamp), 137 F.3d 1087, 1089 (8th Cir. 1998). Importantly, these earmarked funds "*never become the debtor's property because they are not within the debtor's 'control.*'" Superior Stamp & Coin, 223 F.3d at 1008 (emphasis added). The FAC allegations of fraudulently transferred property is a threshold issue. McCuskey v. National Bank (In re Bohlen Enter.), 859 F.2d 561, 564 (8th Cir. 1988).  Where, as here, the Debtor had no property interest in the earmarked funds so there was no fraudulent transfer.

The earmarking doctrine requires analysis of the circumstances: (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement; and (3) the transaction viewed as a whole does not result in any diminution of the

estate. <u>Superior Stamp & Coin</u>, 223 F.3d at 1008 (citing <u>Bohlen</u>, <u>supra</u> at 565).

None of these factors are in dispute in the FAC allegations. The refinancing via the 2012 ASB Credit Agreement clearly required the payoff of the Debtor's and TrashMasters's existing loan facilities, and the FAC admits performance of the payoffs. Finally, the KNG Payoff did not result in any diminution of the estate as described above.

The earmarking doctrine governs the KNG Payoff. The Debtor did not have an interest in the funds designated and used to make the KNG Payoff. Accordingly, Counts 29-32 must be dismissed.

> **2. Judgment as to Counts 25-28 Mandates Judgment as to Counts 29-32 Based on Payments on Account of an Antecedent Debt.**

Even if the earmarking doctrine is not applied, Counts 29-32 must be dismissed if Counts 25-28 are dismissed because the KNG Payment was made on account of an unavoidable secured antecedent debt (the KNG Guaranty) and was therefore made for reasonably equivalent value. Counts 31 and 32 seek avoidance of the KNG Payment as constructively fraudulent transfers. Citing HUFTA, the Court has already found that payments on account of an unavoidable antecedent debt are supported by reasonably equivalent value and must be dismissed. Decision, Dkt #15, at 15. Accordingly, Counts 29 to 32 must be dismissed if Counts 25-28 are dismissed.

### D. Defendants are entitled to Judgment on Causes of Action Derivative of Fraudulent Transfers (Counts 34-43)

#### 1. Counts 34-35 (Civilian Conspiracy to Commit Fraudulent Conveyances and Transfers)

Counts 34 to 43 of the FAC do not comport with the Court's Decision which ruled that:

1. "the trustee should amend the complaint to provide the information that *Twombly* arguably requires;" Decision at 13 (referring to <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 565 n.10 (2007);

2. "the trustee should amend the complaint to include more detail about the participation of each defendant" in the conspiracy; Decision at 14, and

3. The trustee should "state with clarity which of the defendants owed [duties to manage the Debtor's assets properly] and in what respect they breached those duties." Decision at 17-18.

The FAC does not allege that either of the Defendants "caused" the Debtor to make the alleged fraudulent transfers; rather, they are alleged *as a group* to have been "integral participants and/or had knowledge of the [transfer], variously initiating, negotiating, directing, approving, and agreeing to said [transfer]." <u>See, e.g.</u>, FAC ¶ 793-795. No facts are alleged showing that either of the Defendants is alleged to have owed any duties to the Debtor, nor does that the FAC allege actual facts

showing either of the Defendants engaged in conduct that would establish they had such duties to the Debtor.

The Trustee has not alleged facts showing that either of the Defendants: (1) had a legal duty, (2) caused the Debtor to make the subject transfers, (3) conspired together or with any of the other parties or (4) was involved in that conspiracy. In addition, the FAC once again impermissibly groups Defendants with all other defendants into a single artificial entity and alleges no specific individual action on the part of either of the Defendants. Counts 34 and 35 must be dismissed.

### 2. Defendants are entitled to Judgment as to Counts 36-38 (Breaches of Fiduciary Duty)

The Motion to Dismiss [Dkt #63] filed by other defendants sought dismissal of the breach of fiduciary duty counts on the grounds that HRS § 428-409 imposes fiduciary duties only on the manager of a Hawaii LLC. By statutory law, one's status as an officer of an LLC is not enough to impose fiduciary duties. In the Decision, the Court agreed, but observed "in sufficiently egregious circumstances, individuals who dominate and control an LLC may be held liable to the LLC even though they were not members or managers of the LLC." Decision at 19 (citing _Tully v. McLean_, 948 N.E.2d 714, 739-40 (Ill. App. 2011)). The Court dismissed the fiduciary duty counts with leave to amend to state facts "with clarity" showing which individual defendants' conduct gave rise to fiduciary duties based on their alleged control of the Debtor.

The "new" allegations in the FAC do not state facts "with clarity" showing conduct by either of the Defendants that gave rise to fiduciary duties on their part, nor does the FAC allege facts establishing that the limited fiduciary duties imposed by § 428-409 were breached.

   a. **The Trustee Fails to Plead Conduct Giving Rise to Fiduciary Duties.**

The FAC allegations of control are virtually identical to the insufficient allegations in the original Complaint. <u>Tully v. McLean</u>, 948 N.E.2d 714, 739-40 (Ill. App. 2011) requires the alleged nonmember/manager fiduciary to exercise a significant degree of dominance and control over the LLC. In <u>Tully</u>, the defendant was the sole manager of the LLC's sole asset. The defendant was the "*exclusive agent for the day-to-day operations*" and exercised that control by misappropriating millions of dollars of the LLC's funds and diverting the money to unrelated entities. <u>Tully</u> at 740. No specific conduct of this nature is alleged against either Defendant. In fact, beyond the individuals' titles within various entities and bare conclusory allegations of control, no facts regarding control or diversion of funds are alleged.

In a 2018 Delaware bankruptcy case, a motion to dismiss was granted with regard to a chapter 7 trustee's claims for breach of fiduciary duties of good faith and fair dealing, loyalty, and care allegedly owed to debtor LLCs by nonmember/managers for knowingly causing the debtors to make a series of allegedly fraudulent transfers to the nondebtor parent of the debtors. The claims

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 112   Filed 10/11/19   Page 21 of 31

were dismissed because the trustee had not alleged *actual facts* showing (1) defendants owed fiduciary duties to the LLC or (2) defendants breached those duties if they did owe them, notwithstanding that court found that the fraudulent-transfer allegations had been adequately pleaded. Beskrone v. OpenGate Cap. Grp. (In re Pennysaver USA Publ'g, LLC), 587 B.R. 445, 463 (Bankr. D. Del. 2018). Defendants urge this Court to follow the reasoning of Beskrone on the type of allegations of control by non-member/ managers that are required to survive a motion to dismiss.

In Beskrone, the court held that the trustee's allegations that each of the defendants exercised control over the debtor's management, without identifying each defendant by name, concerning the direction or authorization of allegedly fraudulent transfers (except as recipients of salary payments) was defective for the following reasons: there were no individualized allegations of which defendants personally authorized any of the allegedly fraudulent transfers. The complaint alleged that the defendants owed fiduciary duties to the LLC debtors and breached those duties by facilitating alleged fraudulent transfers. But the complaint failed to provide the defendants' positions within the debtor LLCs or facts showing how defendants facilitated the transfers. The trustee made no allegations that defendants were members or managers of the debtor LLCs or that defendant owed fiduciary duties to the debtors under the debtor's LLC agreements. The trustee simply alleged that the

defendants controlled the debtor's LLCs because they allegedly helped to facilitate the fraudulent transfers and benefited specifically from the certain of the transfers.

In dismissing the trustee's claims, the court observed that even where fiduciary duties to a LLC do not arise from the defendant's status as a member-manager or the LLC agreement, "in rare and highly fact-specific instances, a fiduciary duty of loyalty has been found if the defendant had actual control over an LLC which control was not granted under the LLC agreement." "'[T]he bare conclusory allegation that a [defendant] possessed control is insufficient. Rather, the Complaint must contain well-pled facts showing that the alleged controller 'exercised actual domination and control' over the subject entity or its directors. . . .'" Id. at 464 (quoting Lewis v. AimCo Properties, L.P., 2015 Del. Ch. LEXIS 33, at *17 (Del. Ch. 2015)).

Conclusory allegations that defendants facilitated fraudulent transfers and benefited from one of the transfers are insufficient to show that they exercised sufficient control over any of the debtors' LLCs. Beskrone at 465.

This Court should adhere to the Beskrone holding.

> [T]he well-pled facts that a Trustee must set forth to show that the Defendants caused the Fraudulent Transfers include (1) "the specific facts as to which transactions a particular defendant authorized . . . .
> (2) what authority a particular defendant had to approve such transactions" and (3) the Trustee must not lump defendants together "without supplying specific facts as to each defendant's wrongdoings." The failure to plead any one of these

elements will result in the dismissal of the claim.

Id. at 466-67 (quoting *In re Conex*, 514 B.R. 405, 414 (Bankr. D. Del. 2014).

The <u>Beskrone</u> rationale supports judgment in favor of Defendants. The Trustee has not alleged that either of the Defendants was a member or manager of the Debtor or alleged any duties imposed on Defendants based on the Debtor's LLC agreement or any other Agreement. The sole basis for the breach-of-duty claims is the alleged control exercised over the alleged fraudulent transfers by all of the defendants as a group. The control allegations in the FAC against all defendants lumped together suffer from identical defects as the complaint in Beskrone. Defendants are entitled to judgment as to the breach of duty claims.

The Trustee does not allege facts even arguably showing that either of the Defendants controlled the Debtor.

In addition, the FAC contains no facts showing that Mr. Gourlay or KNG controlled the Debtor. The FAC relies solely on their alleged relationship as "Debtor O/Ds".

At most, the allegations related to the Individual Defendants state some version of the following:

- the Debtor O/Ds, TrashMasters O/Ds [etc.] . . . were familiar with, had knowledge of, controlled, participated in, were responsible for, and directed the Debtor's affairs, including the Debtor's financial affairs at all relevant times.

Complaint ¶¶ 30, 786, 829. Neither of the Defendants is alleged to have engaged in

29492/5/3205323.3

any specific conduct that could give rise to fiduciary duties. The FAC makes only bare conclusory statements that the Defendants managed or quasi-managed and controlled the Debtor. Allegations that "certain of the Debtor O/Ds" were involved does not pass the "no lumping" rule. Twombly, 550 U.S. at 556-558. The Decision found that alleging a defendant's title rather than conduct was insufficient. Decision at 19. Conclusory allegations of attendance at meetings and "conducting transactions" cannot possibly rise to the level of control sufficient to give rise to fiduciary duties.

Defendants are entitled to judgment as to Counts 36-38.

**b.    Count 36 (Breach of Fiduciary Duty – Fraudulent Conveyance and Transfers) Must Be Dismissed.**

Section 428-409, HRS, limits the scope of fiduciary duties owed to an LLC to the traditional duties of loyalty and care owed to a corporation. Counts 37 and 38 are for breaches of the duties of loyalty and care.  Count 36 is entitled "Breach of Fiduciary Duty – Fraudulent Conveyances and Transfers."

Count 36 does not set forth claims for breaches of duties imposed by § 428-409 beyond what is set forth in Counts 37 and 38. The FAC alleges that the "duties" of Mr. Gourlay are contained in his employment agreement, during his employment. ¶ 834. Count 36 alleges that "the Applicable Debtor O/Ds" and other lumped groups "preferred themselves and their creditors" over other creditors of the Debtor. ¶ 834. Nowhere are the "applicable O/Ds" identified. Those alleged persons are unnamed

and lumped together. It is illogical to assert that the lumped together defendants are all accused of "exactly the same conduct" when they are not similarly situated or orchestrated. <u>Twombly</u> at 556-558.   The following paragraphs do not assist in identifying Mr. Gourlay or KNG as one of the "applicable O/Ds." ¶¶ 836, 838, 839, 840, 841, 842, 844. Count 36 of the FAC violates the Court's mandate to "include more detail about the participation of each defendant in the alleged wrongdoing and to specifically identify those defendants who the trustee claims engaged in "precisely the same [wrongful] conduct." Decision at 14. The Trustee's failure to abide by this Court's directive requires judgment in favor of Defendants.

The FAC allegations neither modify the statutory duties nor impose additional *fiduciary* duties on Defendants regarding the allegedly fraudulent transfers, and in no way imposes duties on either Defendant. Count 36 must therefore be dismissed.

### c.   Defendants are Entitled to Judgment as to Count 37 (Breach of Duty of Loyalty)

Section 428-409, H.R.S., limits the duty of loyalty:

> (1)   To account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;
> (2)   To refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and
> (3)   To refrain from competing with the company in the conduct of the company's business before the dissolution of the company

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 112   Filed  10/11/19   Page 26 of 31

H.R.S. § 428-409(b).

The Complaint does not allege that Defendants engaged in conduct that breached these enumerated duties. The alleged conduct constituting the breach of loyalty is contained in ¶ 852:

> By sitting on all sides of the Advisory Agreement transaction and also authorizing and directing the Debtor's payment of fees under the Advisory Agreement to Corridor Capital and SPB Management, TrashMasters, the Corridor O/Ds, SPB O/Ds, Corridor Entities, and SPB Entities, engaged in self-dealing to the Debtor's detriment, and breached their duty of loyalty to the Debtor.

Defendants are not identified in ¶ 852. Importantly, Defendants had nothing to do with the Advisory Agreement. Also, "sitting on all sides of the Advisory Agreement" and making payment under the Advisory Agreement are not breaches of the § 428-409(b) duty of loyalty. The Complaint does not allege Defendants' violation of the § 428-409 duty of loyalty. Judgment must be entered in favor of Defendants as to Count 37.

### d. Count 39 (Civil Conspiracy to Breach Fiduciary Duties)

A claim for conspiracy to breach fiduciary duties fails as a matter of law unless the alleged co-conspirators owe fiduciary duties. Bridgepoint Constr. Servs. v. Lassetter, No. 16-00078, 2016 U.S. Dist. LEXIS 93895, at *8 (D. Ariz. July 19, 2016) (applying California law and stating: "Liability arising from conspiracy assumes that the co-conspirator is legally capable of committing the underlying tort

or that he or she owes a duty to plaintiff recognized by law. A non-fiduciary cannot conspire to breach a duty owed only by a fiduciary.")(citations omitted); <u>Espinoza v. Bank of Am.</u>, No. 10-6, 2010 U.S. Dist. LEXIS 49048, at *10 (S.D. Cal. May 17, 2010)(nonfiduciary cannot conspire to breach a duty only owned by a fiduciary). As set forth above, the Complaint does not contain facts showing how the Defendants engaged in controlling conduct that would give rise to fiduciary duties to the Debtor. Accordingly, judgment should be entered in favor of Defendants as to Count 39.

>   **e.** **Count 40 (Aiding and Abetting Breach of Fiduciary Duty)**

Hawaii law is clear on the elements required for aiding and abetting a breach of fiduciary duty. Count 40 of the FAC fails the test which requires: (1) a breach by a fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that plaintiff suffered damage as a result of the breach.'" <u>Molokai Servs. v. Hodgins,</u> 142 Haw. 150 (App. 2018) (quoting <u>Combs v. Case Bigelow & Lombardi,</u> No. 28773, 2010 Haw. App. LEXIS 25, at *21 (Jan. 27, 2010)).

The Trustee does not allege facts showing that the Defendants knowingly induced or participated in a fiduciary's breach of fiduciary duties. Rather, the FAC states:

> Defendants in participating in the management of the Debtor and/or TrashMasters aided and abetted the other Defendants in breaching their fiduciaries duties to the Debtor as set forth in Counts 36, 37, and/or 38.

FAC ¶ 876. A person who owes a fiduciary duty with respect to a transaction or course of conduct cannot be liable for aiding and abetting a breach of that same fiduciary duty by another because the same facts that would otherwise constitute aiding and abetting would constitute a primary breach of fiduciary duty. *Mann v. GTCR Golder Rauner, L.L.C.,* 483 F. Supp. 2d 884, 916 (D. Ariz. 2007). Because the identity of the fiduciaries and non-fiduciaries is grouped, Defendants are entitled to judgment in their favor as to Count 40.

The Defendants, as related to Mr. Gourlay and KNG and alleged in ¶ 876, "are any of the applicable Defendants in Counts, 36 37 and or/38." Again by lumping the defendants together the FAC impermissibly fails to provide precise and specific allegations against Mr. Gourlay and KNG. The Defendants are entitled to judgment as a matter of law.

These allegations are insufficient because the FAC does not even allege "knowing participation" in a breach of fiduciary duty, let alone plead facts supporting such an allegation.

In Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings), 491 B.R. 747, 781 (Bankr. W.D. La. 2013), the court dismissed a cause of action for aiding and abetting a breach of fiduciary duty where the trustee's allegations were similar to those in the FAC. An adequately pleaded breach of fiduciary duty claim is a prerequisite to a viable claim. The court found that the trustee's collective mode of

29492/5/3205323.3

pleading breach of fiduciary duty claims resulted in a lack of clarity regarding which defendants were fiduciaries and which were not. The court held that defendants were "entitled to pleadings that clearly delineate which claim applies to which defendant." Defendants are entitled to judgment in their favor.

### f. Defendants are Entitled to Judgment as to Counts 41-43

Count 41 seeks to impose reverse veil piercing and joint and several liability among various defendants (Corridor Entities, the Corridor O/Ds and Trash Masters and among all the SPB Entities, the SPB O/Ds and TrashMasters). The allegations do not include Mr. Gourlay and KNG. ¶ 880. In addition, the requested relief violates the Court's instruction to "eliminate any reverse 'veil piercing' claims." Decision at 22. The FAC's prayer for imposing joint and several liabilities on each and every defendant clearly demonstrates that the Trustee has not followed the Court's instruction to eliminate the reverse veil piercing claims. Defendants are entitled to judgment as to Count 41.

Count 42 alleges liability under a single enterprise claim that does not involve Defendants.

Count 43 alleges liability under a claim of unjust enrichment in such a lumped, vague and ambiguous manner that it is fatally defective and judgment must be rendered in favor of Defendants.

## III. <u>CONCLUSION</u>

Based on the foregoing arguments, supported by the cited points and authorities, the Defendants request that this Motion be granted in its entirety and judgment be entered in favor of Defendants as to Counts 21 through 43.

DATED:     Honolulu, Hawaii, October 11, 2019.

 /s/ *Ted N. Pettit*
TED N. PETTIT
ELLEN A. SWICK
Attorneys for Defendants
**KRISTIAN GOURLAY and**
**KNG GROUP, LLC**