Kenneth H. Brown (CA State Bar No. 100396)
Cia Mackle (FL State Bar No. 26471)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Phone: (415) 263-7000
Fax: (415) 263-7010
Email: kbrown@pszjlaw.com

- and -

Chuck C. Choi
Allison A. Ito
CHOI & ITO
Topa Financial Center
700 Bishop Street, Suite 1107
Honolulu, HI 96813
Phone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com

Attorneys for TrashMasters, LLC; Corridor
Capital, LLC; Corridor Capital Advisors, LLC;
Corridor TrashMasters, L.P.; SPB Management,
LLC; SPB Waste, LLC; SPB Capital GP, LLC;
SPB Capital Partners, L.P.; SPB Partners, LLC;
Craig Enenstein; L. Geoffrey Greulich; Edward A.
Monnier; Jessamyn Davis; Ari D. Bass; Scott R.
Bulloch; Kenneth M. Pressberg

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| In re: | No. 16-01294 |
|---|---|
| | (Chapter 7) |
| ROLLOFFS HAWAII, LLC, | |
| Debtor. | |

| | |
|---|---|
| DANE S. FIELD, Chapter 7 Trustee for the Estate of Rolloffs Hawaii, LLC<br><br>        Plaintiff,<br><br>    v.<br><br>TRASHMASTERS, LLC; CORRIDOR CAPITAL LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH; KENNETH M. PRESSBERG; KRISTIAN GOURLAY; DOUGLAS L. ASAY; DOUGLAS D. ASAY; CHARLES E. LEONARD; BRIAN COLBECK [ESTATE OF BRIAN COLBECK]; ROLLOFFS HAWAII, INC.; THE KNG GROUP, LLC; COLBECK CONSULTING LLC; JOHN DOES 1-50; JANE DOES 1-50; DOE CORPORATIONS 1-50; DOE PARTNERSHIPS 1-50; DOE ENTITIES 1-50,<br><br>        Defendants. | Adv. Pro. No. 18-90035<br><br>**REPLY OF DEFENDANTS TRASHMASTERS, LLC; CORRIDOR CAPITAL, LLC; CORRIDOR CAPITAL ADVISORS, LLC; CORRIDOR TRASHMASTERS, L.P.; SPB MANAGEMENT, LLC; SPB WASTE, LLC; SPB CAPITAL GP, LLC; SPB CAPITAL PARTNERS, L.P.; SPB PARTNERS, LLC; CRAIG ENENSTEIN; L. GEOFFREY GREULICH; EDWARD A. MONNIER; JESSAMYN DAVIS; ARI D. BASS; SCOTT R. BULLOCH AND KENNETH M. PRESSBERG TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>**[Related Docket Nos. 71, 96, 129]**<br><br><u>Hearing:</u><br><br>Date:     November 15, 2019<br>Time:     10:00 a.m.<br>Judge:    Hon. Robert J. Faris |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................1

II.  ARGUMENT.........................................................................2

    A.   Dismissal Against Improper Defendants .............................2

        1.   Counts 1-4 ..............................................................2

        2.   Counts 1-33 Name Improper Defendants or Seek
            Improper Remedies .................................................6

    B.   Substantive Reasons for Dismissal of Fraudulent Transfer
       Counts...................................................................13

        1.   Counts 1-4 and Counts 5-8 Are Contradictory ........13

        2.   Counts 5-8 (2009 ROHI Payments) Must Be Dismissed ........14

        3.   Counts 21-24 (ROHI Payoff) Must Be Dismissed .................16

        4.   Counts 25-28 (KNG Guaranty) Must Be Dismissed .............17

        5.   Counts 29-32 (KNG Payoff) Must Be Dismissed ..................17

    C.   Causes of Action Derivative of Fraudulent Transfers
       (Counts 34-43) ....................................................18

        1.   Counts 34-35 (Civil Conspiracy to Commit Fraudulent
            Conveyances and Transfers) ...................................18

        2.   Counts 36-38 (Breaches of Fiduciary Duty)............................19

        3.   Count 39 (Civil Conspiracy to Breach Fiduciary Duties) .......24

        4.   Count 40 (Aiding and Abetting Breach of Fiduciary
            Duty) ...................................................................24

        5.   Count 41 Seeks Reverse Veil Piercing and Fails to Allege
            Facts Supporting Alter-Ego Liability .......................25

        6.   Count 42 Must Be Dismissed Because the Single-
            Enterprise Theory Has Not Been Adopted in Hawaii ............27

III. CONCLUSION............................................................33

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Argyle Online, LLC v. Nielson (In re GGW Brands, LLC),*
504 B.R. 577 (Bankr. C.D. Cal. 2013) ................................................................30

*Ass'n of Mexican-American Educators v. California,*
231 F.3d 572 (9th Cir. 2000) ..............................................................................30

*Bailey v. Assil (In re Bailey),*
No. 09-1277, 2010 Bankr. LEXIS 5084,
*19, 2010 WL 6451891 (BAP 9th April 9, 2010)..................................................8

*Beskrone v. OpenGate Cap. Grp. (In re Pennysaver USA Publ'g),*
587 B.R. 445 (Bankr. D. Del. 2018).............................................................. 21, 22

*Danning v. Miller (In re Bullion Reserve),*
922 F.2d 544 (9th Cir. 1991) ................................................................................9

*Frontier Bank v. Brown (In re Northern Merch., Inc.),* /
371 F.3d 1056 (9th Cir. 2004) .................................................................. 14, 15, 17

*Gugino v. Greater Rome Bank (In re Payroll Am.),*
609 F. App'x 367 (9th Cir. 2015)...........................................................................8

*Hansen v. MacDonald Meat Co. (In re Kemp Pacific Fisheries),*
16 F.3d 313 (9th Cir. 1994) .................................................................................17

*Henry v. Official Comm. (In re Walldesign, Inc.),*
872 F.3d 954 (9th Cir. 2017) ................................................................................9

*Kosmala v. Imhof (In re Hessco Indus.),*
295 B.R. 372 (BAP 9th Cir. 2003) ........................................................................9

*Lacey Marketplace Assocs. v. United Farmers of Alberta,*
2015 U.S. Dist. LEXIS 99870, *46 (W.D. Wash. July 29, 2015)..........................8

*Mastro v. Rigby (In re Mastro),*
No. 10-1099, 2011 Bankr. LEXIS 891,
*29, 2011 WL 3300370 (BAP 9th Cir. March 1, 2011)........................... 8, 11, 12

*Mellon Bank N.A. v. Metro Commc'ns,*
945 F.2d 635 (3d Cir. 1991) ...............................................................................16

*NLRB v. Deena Artware, Inc.,*
361 U.S. 398 (1960) ............................................................................... 27, 28, 29

*Reily v. Kapila (In re Int'l Mgmt. Ass'n),*
399 F.3d 1288 (11th Cir. 2005) ............................................................................8

*Rodriguez v. Daimlerchrysler Fin. Servs. (In re Bremer),*
408 B.R. 355 (BAP 10th Cir. 2009) ......................................................................7

*Scholes v. Lehman,*
56 F. 3d 750, 758 (7th Cir. 1995) ................................................................ 25, 26

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 131  Filed 11/08/19  Page 4 of 39

*Trout v. Drive Fin. Servs. (In re Trout)*,
609 F.3d 1106 (10th Cir. 2010) ............................................................7
*Uecker v. Wells Fargo Cap. Fin. (In re Mortgage Fund '08 LLC)*,
527 B.R. 351 (N.D. Cal. 2015) ..............................................................8
*United States EEOC v. Global Horizons, Inc.*,
860 F. Supp. 2d 1172 (D. Haw. 2012) ........................................ 27, 29
*USAA Fed. Sav. Bank v. Thacker (In re Taylor)*,
599 F.3d 880 (9th Cir. 2010) .................................................................7
*Watson v. Gulf & Western Indus.*,
650 F.2d 990 (9th Cir. 19981) .............................................................30

## STATE CASES

*Cargill, Inc. v. JWH Special Circumstance LLC*,
959 A.2d 1096 (Del. Ch. 2008) ..................................................... 21, 22
*Curci Investments LLC v. Baldwin*,
14 Cal. App. 5th 214 (2017) ...............................................................30
*Las Palmas Assoc. v. Las Palmas Center Assoc.*,
235 Cal. App. 3d 1220 (1991) ............................................................30
*Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*,
91 Haw. 224, 982 P.2d 853 (1999).....................................................26
*Schmidt v. HSC, Inc.*,
136 Haw. 158, 358 P.3d 727 (App. 2015) ..........................................14
*Southern Union Co. v. City of Edinburg*,
129 S.W.3d 74 (Tex. 2003) ................................................................31
*SSP Partners v. Gladstrong Invs. Corp.*,
275 S.W.3d 444 (Tex. 2008) ..............................................................31
*Tully v. McLean*,
948 N.E.2d 714 (Ill. App. 2011).........................................................19

## FEDERAL STATUTES AND RULES

11 U.S.C. § 550(a) ...................................................................... passim
Fed. R. Civ. P. 19(A)(2)................................................................ 3, 5, 6

## STATE STATUTES

Tex. Bus. Corp. Act § 2.21 ...................................................................43
Tex. Bus. Orgs. Code § 21.223 .............................................................43

## TREATISES

4 *Moore's Federal Practice* ¶ 19.04 (3d ed. 2019) ....................................................3

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed  11/08/19   Page 6 of 39

Defendants,[1] by and through their undersigned counsel, file this reply (the "Reply") to the *Opposition to Motion to Dismiss* [Docket No. 129] (the "Opposition") filed by the Trustee in response to the Motion. In support of the Reply, Defendants respectfully state as follows:

## I.
## INTRODUCTION

The Trustee labels the Debtor's acquisition of the ROHI and KNG assets "LBOs" and contends that, based on this label, the transactions must have been detrimental to creditors without regard to what actually occurred. The transactions bear no resemblance to typical LBOs that potentially harm creditors, in which an acquirer invests little or no equity and the debtor receives no assets in consideration for incurring secured debt to pay shareholders of the target company.

In a conventional LBO, an investor buys stock with loan proceeds secured by the target's assets, *but the target receives neither the proceeds from the acquisition loans, nor any hard assets or other direct benefits* in consideration for granting liens to the lenders and to offset the greater risk of now operating as a highly leveraged entity. This Court is not faced with those circumstances. The Debtor received the assets acquired in the ROHI and KNG transactions and the Trustee admits Corridor TrashMasters, LP and SPB Waste LLC invested

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss [Docket No. 71] (the "Motion").

approximately $4 million cash in connection with the acquisition of ROHI and Maricopa.[2]

The Trustee further argues that keeping TrashMasters out of bankruptcy is evidence of a fraudulent scheme, but does not explain why or how this prejudiced creditors. TrashMasters was a holding company with no assets other than its equity in the Debtor, so filing bankruptcy would not have impacted creditor recoveries.

## II.
## ARGUMENT

A.   **Dismissal Against Improper Defendants**

  1.   **Counts 1-4**

  a.   **Conflation of Obligations and Transfers**

In Counts 1-4, the Trustee combines and conflates avoidance of *obligations* with avoidance and recovery of *transfers* made on account thereof. This is improper as a matter of law, Motion at 16 n.24, and appears to be an effort to mask the pleading deficiencies that are obvious when the claims are untangled.

  (1)   **Union Bank Is a Required (Necessary) Party**

Defendants only seek dismissal under Rule 19 of the Trustee's UB Credit Facility avoidance counts if the Trustee establishes that Union Bank is not subject to joinder. Because the Trustee has not even argued (let alone shown) that Union

---

[2] Only $300,000 in cash was required to the sellers was required for the Maricopa acquisition. Complaint Exh. 20.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed  11/08/19   Page 8 of 39

Bank cannot be joined, the Court should order the Trustee to join Union Bank and dismiss the Counts seeking to avoid its obligations if the Trustee fails to do so.[3]

Defendants have cited binding authority that all parties to a contract are indispensable to an action to avoid the contract or the obligations thereunder, even where affirmative relief is not sought against a party to the contract. Motion at 20-21. The Trustee has not cited contrary authority.

The Trustee also cites no authority permitting a plaintiff to avoid an *obligation* without suing the obligor. Instead, the Trustee argues that under section 550(a), applicable to avoidable *transfers but not obligations,* he has discretion to sue an initial *transferee,* a subsequent *transferee*, or an entity for whose benefit the *transfer* was made. Similarly, the Trustee relies on authorities stating that in an action to avoid and recover a fraudulent *transfer*, an earlier transferee who no longer has an interest in the transferred property is not a necessary party in an action against a subsequent transferee. Because these cases address the remedies for an avoidable *transfer* only, they are irrelevant. *Id.* at 10-11.

---

[3] "If the court finds an absentee is needed for a just adjudication (that is, a necessary or 'required' party), and if court also finds that joinder of the absentee is feasible, it will usually give the plaintiff an opportunity to add the absentee. If the plaintiff fails to do so, the court may dismiss the action. If it does not, the court itself 'must order that the person be made a party.' The Rule gives no discretion on this point." 4 *Moore's Federal Practice* ¶ 19.04 (3d ed. 2019) (footnotes omitted; quoting Fed. R. Civ. P. 19(A)(2)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed  11/08/19   Page 9 of 39

In light of the Ninth Circuit's consistent determinations that all parties to a contract are indispensable parties to an action to avoid the contract, and the absence of authority to the contrary, the Court's analysis need not proceed further. Nevertheless, the formal analysis under Rule 19 yields the same result.

Union Bank is a necessary party if, in its absence, (i) complete relief cannot be afforded, (ii) Union Bank's ability to protect its interests may be impaired or impeded, or (iii) a decision may subject Defendants to substantial risk of incurring double, multiple or inconsistent obligations. The Trustee only addresses (ii) and (iii) above. With respect to (ii), the Trustee argues that that (a) Union Bank has fully performed under the UB Credit Agreement and no longer has an interest in the Debtor's property or the UB Credit Facility and (b) any impairment of Union Bank's interest will be minimal because its interests will be adequately represented by Defendants.[4] The Trustee ignores the real-world implications to Union Bank of voiding obligations pursuant to which it received over $5 million. Because the payments would no longer be on account of an enforceable debt obligation, their receipt would constitute income or capital gains. Tax consequences would ensue. TMAZ (or its successors), the other borrower under the UB Credit Facility, would also have claims against Union Bank for payments made on a void obligation.

---

[4] Opposition at 15, identifying applicable factors to determine adequate representation.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 10 of 39

Union Bank is uniquely situated to establish that the UB Credit Facility was made in good faith and that the bank gave value to the Debtor, which would provide a complete defense to avoidance of the obligation. Defendants do not have the same ability to prove Union Bank's good faith. Union Bank is also uniquely situated to address the Trustee's contention that the Debtor never had dominion over the loan proceeds. Union Bank's ability to show its own good faith and how it directed the loan proceeds adds a crucial element that Defendants do not have the same ability to provide.

With respect to (iii) (substantial risk of incurring multiple obligations), the Trustee only argues that Defendants cannot incur multiple obligations because section 550(d) "limits the Trustee's recovery to a single satisfaction." However, as set forth in the Motion, section 550 has no application to *obligations*. Moreover, the Trustee ignores that Defendants will be put at a substantial risk of incurring *inconsistent* obligations and does not contest that they will be. Motion at 20.

### (2) The Trustee's Rule 19(b) Argument Is Premature

Rule 19(b) provides: "If a person who is required to be joined if feasible, cannot be joined, the court must determine whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. R. 19(b). Thus, this last step of the analysis is required only if Union Bank cannot be joined. The Trustee has not even argued, let alone shown, that

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 11 of 39

Union Bank cannot be joined. Therefore, this step of the analysis is premature[5]

until and unless the Trustee establishes that Union Bank cannot be joined.

> **b.** **Avoidance of UB Credit Facility *Transfers* Cannot Be Brought Against Any Named Defendant**

Union Bank was the only transferee and the Debtor and TMAZ were co-

borrowers under the UB Credit Facility and are the only parties that can

legitimately be alleged to have received a benefit from payments to Union Bank.

> **2.** **Counts 1-33 Name Improper Defendants or Seek Improper Remedies**

> **a.** **The Obligee Is the Only Proper Defendant to Counts 1-4, 9-12 and 25-28 Seeking Avoidance of Obligations**

The *only* proper Defendant to each Obligations Count is the obligee. Motion

§ II.B.1. The Opposition cites no authority to the contrary. Counts 1-4, 9-12, and

25-28 must be dismissed with prejudice as to Defendants who are not obligees,

leaving only the following Defendants on the Obligations Counts:

| Counts | Challenged Obligation | Obligee |
|--------|----------------------|---------|
| 1-4 | UB Credit Facility (obligation) | N/A |
| 9-12 | Advisory Agreement | Corridor Capital, SPB Waste |
| 25-28 | KNG Guaranty | KNG |

---

[5] The Trustee has not complied with Rule 19(c), which requires that when asserting a claim for relief "a party must state (i) the name, if known, of any person who is required to be joined if feasible but is not joined; and (ii) the reasons for not joining that person." Fed. R. Civ. P. R. 19(c).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 12 of 39

### b. Obligations Cannot Be "Recovered"

Settled authority holds that section 550 remedies are inapplicable to avoidable *obligations*. Motion at 10-11. The Trustee argues this principle is inapplicable because he also seeks to avoid and recover transfers related to each obligation, Opposition at 27, relying on *USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 890 (9th Cir. 2010); *Rodriguez v. Daimlerchrysler Fin. Servs. (In re Bremer)*, 408 B.R. 355, 359 (BAP 10th Cir. 2009); and *Trout v. Drive Fin. Servs. (In re Trout)*, 609 F.3d 1106 (10th Cir. 2010). However, each of these cases addresses liens (which are property transferred) as avoidable *transfers*, rather than obligations. *Trout*, 609 F.3d at 1111 ("A lien interest is 'property' . . . and §550 permits recovery of transferred 'property' or its value."); *Taylor*, 599 F.3d at 884 (avoidance of a *transfer* of security interest) ; *In re Bremer*, 408 B.R. at 359 (avoidance of a "*transfer* of a lien interest"). None of these cases, nor any reported decision, suggests that section 550 permits a recovery on an obligation.

Counts 1-4 (as to the UB Credit Facility obligation), 9-12, and 25-28 must be dismissed because Trustee seeks remedies under section 550.

### c. Insufficient Allegations of Benefit

The Trustee argues that the "direct, ascertainable, and quantifiable benefit" standard does not apply in the Ninth Circuit. This is untrue:

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 13 of 39

> That Appellees enjoyed some indirect, unquantifiable benefit upon VFI's acquisition of Debtor's shares and contract rights is not sufficient to establish their liability under section 550(a).

*Bailey v. Assil (In re Bailey)*, No. 09-1277, 2010 Bankr. LEXIS 5084, *19, 2010 WL 6451891 (BAP 9th Cir. April 9, 2010) (citing *Reily v. Kapila (In re Int'l Mgmt. Ass'n)*, 399 F.3d 1288, 1292-93 (11th Cir. 2005)).

> *The benefit must derive directly from the transfer*, not from the use to which it is put by the transferee. "Someone who receives the money later on is not an 'entity for whose benefit such transfer was made.'"

*Mastro v. Rigby (In re Mastro)*, No. 10-1099, 2011 Bankr. LEXIS 891, *29, 2011 WL 3300370 (BAP 9th Cir. March 1, 2011) (emphasis added); *Lacey Marketplace Assocs. v. United Farmers of Alberta*, 2015 U.S. Dist. LEXIS 99870, *46 (W.D. Wash. July 29, 2015) ("benefit received must be 'direct, ascertainable and quantifiable' and must bear a 'necessary correspondence to the value of the property transferred.'"), *aff'd in part and rev'd in part*, 720 F. App'x 828 (9th Cir. 2017); *Uecker v. Wells Fargo Cap. Fin. (In re Mortgage Fund '08 LLC)*, 527 B.R. 351, 361 (N.D. Cal. 2015) (standing to gain from subsequent transfers "does not support the inference that the initial transfers . . . were made for Wells Fargo's benefit."); *Gugino v. Greater Rome Bank (In re Payroll Am.)*, 609 F. App'x 367, 369 (9th Cir. 2015) (entity not a party for whose benefit transfers were made because the funds were transfers for the transferee, not on account of a debt the debtor owed a to third party). The Trustee has not cited a case where a party was

8

found to be an entity for whose benefit a transfer was made where the benefit was not direct, ascertainable, and quantifiable.

*Danning v. Miller (In re Bullion Reserve)*, 922 F.2d 544 (9th Cir. 1991), does not hold or even suggest that actual benefit is irrelevant and that only intent matters as suggested by the Trustee.[6] *Henry v. Official Comm. (In re Walldesign, Inc.)*, 872 F.3d 954 (9th Cir. 2017), held a debtor's principal was an entity for whose benefit the transfer was made where he diverted corporate funds to a secret account for his personal use. Thus, it cannot be read to impose liability where no direct, ascertainable, and quantifiable benefit is received.

The Trustee's conclusory allegations that each transfer was for the benefit of Defendants because they furthered Defendants' fraudulent scheme, Opposition at 21 n.8, are precisely the indirect, unquantifiable, and unascertainable allegations of benefits that are impermissible under any standard.

### (1) Counts 1-4 (UB Credit Facility Payments)

The Trustee argues that the "Syndicator Defendants" were entities for whose benefit the Debtor's payments on the UB Credit Facility were made because the

---

[6] In *Kosmala v. Imhof (In re Hessco Indus.)*, 295 B.R. 372, 387 (BAP 9th Cir. 2003), the defendant was the trustee, trustor, and income beneficiary of the trust that received the transfer at issue and therefore was both an actual and intended beneficiary of the transfer.

9

underlying *obligation* was made to benefit the Syndicator Defendants.[7] However, the Debtor's *transfers* to pay down *its own* debt on the UB Credit Facility solely benefitted the Debtor and its co-borrower, TMAZ, whose debt was reduced in exchange for each transfer. No Defendant's debt was paid down or exposure on an obligation reduced as a result of any transfer and no Defendant can be an entity for whose benefit any payment on the UB Credit Facility was made.

### (2) Counts 5-8 (2009 Payments to ROHI)

The Trustee claims the Debtor's 2009 payments to ROHI reduced the liabilities of TrashMasters, and the "the exposure of equity holders, officers and directors, and Corridor/SPB." Opposition at 21 n.8. The Motion concedes that TrashMasters is alleged to be an entity for whose benefit the 2009 Payments to ROHI were made because it was liable on the debt to ROHI. However, there are no factual allegations that any other Defendant was open to any "exposure" that was reduced by 2009 Payments to ROHI.

---

[7] While the beneficiary of the obligation is irrelevant, the Trustee's suggestion that any Defendant (let alone all the Defendants) was the beneficiary of the UB Credit Facility is absurd. The beneficiary is the party who received the proceeds of the UB Credit Facility, i.e., the Debtor and its co-borrower, TMAZ. The Trustee's logic would mean any corporate owner or officer was the intended beneficiary of any corporate loan for purposes of section 550.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 16 of 39

### (3) Counts 13-16 (Corridor Advisory Fees) and Counts 17-20 (SPB Advisory Fees)

The Trustee claims the Debtor's payment of Corridor Advisory Fees were made for the benefit of the "other Corridor entities and/or officers and directors." The counterparty to the Advisory Agreement was Corridor Capital (the transferee), and the payment of the Corridor Advisory Fees did not reduce the debt of any "other Corridor entities and/or officers and directors." Further, those Defendants conceivably could have benefitted only as subsequent transferees,[8] i.e., "from the use to which [the payment] was put by the transferee," rather than from the transfer itself. *Mastro*, 2011 Bankr. LEXIS 891, at *29. The same applies to Counts 17-20, with respect to the SPB Advisory Fees.

### (4) Counts 21-24 (ROHI Payoff)

The Trustee claims the Debtor's ROHI Payoff was made "for the benefit of TrashMasters' equity holders and the TrashMasters, Corridor and SPB officers and directors as they caused the Debtor to pay the debts of TrashMasters." Opposition at 21-22 n.8. The Trustee also alleges the ROHI Payoff benefited these parties through "the lessening of the defendants' liability and exposure." *Id.*

The Motion concedes TrashMasters is alleged to be a party for whose benefit the ROHI Payoff was made because its debt was paid. Incidental benefit to

---

[8] A party cannot be an entity for whose benefit a transfer was made as well as a subsequent transferee. Opposition at 39. No Defendant is alleged to be a subsequent transferee.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 17 of 39

an LLC's equity holder or its officers and directors is not a cognizable benefit under *Mastro*. There is no allegation that any Defendant was open to any "exposure" that was reduced by ROHI Payoff.

### (5) Counts 29-32 (KNG Payoff)

The Trustee claims the Debtor's KNG Payoff was made for the benefit of Defendants in that it "lessen[ed] Defendants' liability and exposure." Opposition at 22 n.8. There is no allegation that any Defendant (other than TrashMasters) was open to any "exposure" that was reduced by KNG Payoff.

### (6) Count 33 (Colbeck Payments)

The Trustee claims the Colbeck Payments were made for the benefit of Defendants in that they "served the private equity interests of Corridor/SPB." *Id*. No Defendant (except TrashMasters) is alleged to have had debt paid down as a result of the Colbeck Payments.

Counts 1-4, 5-8, 13-16, 17-20, 21-24, 29-32, and 33-36 must be dismissed as to any Defendants not listed below:

| Counts | Challenged Transaction | Transferee | Beneficiary |
|--------|------------------------|------------|-------------|
| 1-4 | UB Credit Facility (Payments) | Union Bank | N/A |
| 5-8 | 2009 Payments to ROHI | ROHI | TrashMasters |
| 13-16 | Corridor Advisory Fees | Corridor Capital | N/A |
| 17-20 | SPB Mgmt. Advisory Fees | SPB Mgmt. | N/A |
| 21-24 | ROHI Payoff | ROHI | TrashMasters |
| 29-32 | KNG Payoff | KNG | TrashMasters |
| 33-36 | Colbeck Payments | Colbeck, Colbeck Consulting | TrashMasters |

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 18 of 39

**B.**    **Substantive Reasons for Dismissal of Fraudulent Transfer Counts**

**1.**    **Counts 1-4 and Counts 5-8 Are Contradictory**

Counts 1-4 and 5-8 are based on impermissible contradictory factual assertions, Motion at 23, not "alternative theories." Opposition at 25. The Trustee claims the "ambiguity" is whether the proceeds of the UB Credit Facility were "in the Debtor's dominion, and therefore property of the Debtor's estate." Counts 1-4 are based on the premise that the Debtor had no dominion over the $4.5 million UB Term Loan proceeds so its incurrence of the UB Credit Facility was not supported by reasonably equivalent value, and Counts 5-8 allege the $4.5M UB Term Loan proceeds were property of the Debtor, who improperly used those proceeds to pay the debts of TrashMasters. *Id*. at 25-26. Although the Trustee states "these are not conflicting positions," they cannot be reconciled or pleaded together. Accordingly, only one set of counts can be pleaded. Counts 1-4 are based on the demonstrably false allegation that the Debtor did not receive the Union Bank loan proceeds and must be dismissed.

13

### 2. Counts 5-8 (2009 ROHI Payments) Must Be Dismissed

#### a. Entire Transaction Must Be Considered

The Trustee suggests crediting the ROHI assets received by the Debtor as part of the ROHI transaction from would "elevate [Defendants] their equity investment . . . over and above the Debtor's creditors."[9] Opposition at 23 (citing *Schmidt v. HSC, Inc.*, 136 Haw. 158, 168, 358 P.3d 727, 737 (App. 2015)).

*Schmidt* unremarkably held that upstreaming funds to a parent company solely for the purpose of repaying a capital contribution is not a transfer supported by reasonably equivalent value because capital contributions do not create antecedent debt. *Schmidt* has no bearing on the issue before this Court: Whether consideration received by the Debtor as part of the transaction must be credited as value *even if it is characterized as a capital contribution.* The Ninth Circuit has ruled on this issue. *Frontier Bank v. Brown (In re Northern Merch., Inc.),* 371 F.3d 1056, 1059 (9th Cir. 2004).

The Trustee fails to address the "collapsing" cases cited by Defendants.

---

[9] It is undisputed that no Defendant received any payment or distribution from either TrashMasters or the Debtor on account of an equity interest and the Trustee does allege that they did.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 20 of 39

### (1) Lack of Reasonably Equivalent Value Not Plausibly Alleged When Entire Transaction Considered

Under *Northern Merchandise,*[10] the Debtor's receipt of the ROHI assets must be considered in evaluating the value received by the Debtor in consideration of the 2009 ROHI Payments, irrespective of Trustee's allegation that the assets were a capital contribution.

In consideration for the $3,180,722.87 that the Debtor paid to ROHI from the proceeds of the UB Credit Facility,[11] the Debtor received the "Contributed Hawaii Assets," identified in the Rolloffs APA.[12] The assets included:

> (a) all Inventory; (b) all Equipment . . . ; (c) certain Contracts . . . ; (d) all Books and Records . . . ; (e) all claims, causes of action, choses of action, rights of recovery . . . ; (f) all prepaid expenses and deposits . . . ; (g) all rights of the Seller to the name "Rolloffs Hawaii" . . . ; (h) all Intellectual Property ; (i) all goodwill of the Business as a going concern; and (j) any Authorization required to operate the Business . . .

Complaint Exh. 18 (Rolloffs APA § 2.1).

---

[10] There is no principled basis to distinguish *Northern Merchandise*. The Trustee's argument that the case differs because the debtor received the benefit of the loan in *Northern Merchandise* but not in the ROHI and KNG acquisitions is specious; the loans in both transactions provided direct benefit to the Debtor because the proceeds were used to acquire the assets for the Debtor. The Trustee's argument that in order for *Northern Merchandise* to apply, the Debtor had to receive the assets for free and without incurring any debt, Opposition at 38, is nonsensical.

[11] The additional $3,980,269 of consideration was admittedly not paid by the Debtor. Opposition at 24 n.9.

[12] Complaint Exh. 31 (Contribution Agreement ¶ 2(b)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 21 of 39

The Trustee asserts that the Debtor did not receive reasonably equivalent value for its $3,180,722.87 in 2009 ROHI Payments because the assets it received were valued at $2.7M. Opposition at 35 (citing Complaint Exhibit 46). Exhibit 46 (an unaudited preclosing forecast) shows this allegation is false; the ROHI assets acquired by the Debtor were valued at almost $13 million even if $765,748 in cash and almost $2 million in accounts receivable are not included.[13] Accordingly, the Trustee has not plausibly alleged lack of reasonably equivalent.

### 3.    Counts 21-24 (ROHI Payoff) Must Be Dismissed

In the Original Motion to Dismiss, Defendants argued that the Trustee had not sufficiently alleged that the ROHI Payoff was made with the Debtor's property because the payment was made with the proceeds of the 2012 Convergent Loan on which both the Debtor and TrashMasters were borrowers. The Court's Decision on the Original Motion to Dismiss found the 2012 Convergent Loan was an obligation of both *TrashMasters* and the Debtor. Decision at 11-12. The Trustee sought, and the Court granted, leave to amend to permit the Trustee to avoid the Debtor's obligations under the 2012 Convergent Loan.

---

[13] Complaint Exhibit 46 lists assets as Cash ($765,748), Accounts Receivable ($1,954,737), Inventory ($150,866), Other Current Assets ($177,731), Net Property and Equipment ($2,404,393), Goodwill/Other Intangible Assets ($10,114,894). While goodwill is arguably excluded in an insolvency analysis, it is a required component in assessing reasonably equivalent value when the entity is a going concern. *Mellon Bank N.A. v. Metro Commc'ns*, 945 F.2d 635, 647 (3d Cir. 1991).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 22 of 39

The Trustee admits that he has not sought to avoid the Debtor's obligation under the 2012 Convergent Loan, and only seeks to avoid the "Debtor's use of those proceeds to pay TrashMasters' debt." Opposition at 48.[14] However, because the 2012 Convergent Loan obligation is not avoidable and the Trustee has again failed to allege that the ROHI Payoff was made from the Debtor's property rather than joint loan proceeds, these counts must be dismissed.

### 4. Counts 25-28 (KNG Guaranty) Must Be Dismissed

The Ninth Circuit requires the Court to credit consideration the Debtor received in assessing whether the Debtor received reasonably equivalent value for making the KNG Guaranty. Motion §§ II.C.3.b, II.B.2.a. Because the Debtor received the KNG assets in consideration for making the KNG Guaranty, *Northern Merchandise* compels dismissal of Counts 25-28. So does application of the "collapsing doctrine."

### 5. Counts 29-32 (KNG Payoff) Must Be Dismissed

The KNG Guaranty is not avoidable for reasons set forth above. Even if it were, the earmarking doctrine applies because third-party lender funds were specifically provided to retire the existing loan obligations of both the Debtor and

---

[14] The Trustee reiterates that the proceeds were the Debtor's property, but the Court has already recognized that the proceeds were jointly borrowed proceeds. *Hansen v. MacDonald Meat Co. (In re Kemp Pacific Fisheries)*, 16 F.3d 313 (9th Cir. 1994), cited for the proposition that loaned funds are property of the debtor, is irrelevant because it does not involve loan proceeds of multiple borrowers.

17

TrashMasters, including the KNG Guaranty. The disagreement over whether ASB required and controlled the application of the loan proceeds to pay off KNG is resolved by the 2012 ASB Credit Agreement: "The Term Loan proceeds will be used to re-finance [TrashMasters' and the Debtor's] existing lease and loan facilities." Complaint Exh. 36, § 1.05.[15]

ASB required that the loan proceeds refinance TrashMasters's debt to KNG, releasing the Debtor from the KNG Guaranty. Because earmarking applies, the loan proceeds never became a part of the Debtor's estate, and there was no diminution of value. Regardless of the disposition of Counts 25-28 (avoidance of the KNG Guaranty), Counts 29-32 must be dismissed.

## C. Causes of Action Derivative of Fraudulent Transfers (Counts 34-43)

### 1. Counts 34-35 (Civil Conspiracy to Commit Fraudulent Conveyances and Transfers)

There are no factual allegations that any Defendants (other than TrashMasters) "caused" the Debtor to make the alleged fraudulent transfers; rather, they are alleged *as a group* to have been "integral participants and/or had knowledge of the [transfer], variously initiating, negotiating, directing, approving, and agreeing to said [transfer]." *See*, *e.g*., Complaint ¶ 791-99.

---

[15] The Trustee's contention that "KNG was likely undersecured" is not alleged in the Complaint, nor are any facts to support this contention.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 24 of 39

The Trustee's claim that he has alleged the specific management role of each Defendant and detailed the entities that form each of the Corridor and SPB Entities does not establish duties to the Debtor. The mere incantation that a conspiracy existed is insufficient. Counts 34 and 35 must be dismissed.

## 2. Counts 36-38 (Breaches of Fiduciary Duty)

The Original Motion to Dismiss sought dismissal of the breach of fiduciary counts on the grounds that section 428-409 of the Hawaii Revised Statutes imposes fiduciary duties only on the manager of a Hawaii LLC; one's status as an officer of an LLC is not enough to impose fiduciary duties. The Court agreed, but observed "in sufficiently egregious circumstances, individuals who dominate and control an LLC may be held liable to the LLC even though they were not members or managers of the LLC." Decision at 19 (citing *Tully v. McLean*, 948 N.E.2d 714, 739-40 (Ill. App. 2011)). The Court dismissed the fiduciary-duty counts with leave to amend to state facts "with clarity" showing which Individual Defendant's conduct gave rise to fiduciary duties based on their alleged control of the Debtor.

The "new" allegations do not state facts showing conduct by any Individual or Entity Defendant that give rise to fiduciary duties on the part of such Defendant, nor does the Trustee allege facts establishing that the limited fiduciary duties imposed by sections 428-409 were breached.

U.S. Bankruptcy Court - Hawaii  #18-90035  Dkt # 131  Filed 11/08/19  Page 25 of 39

### a. Trustee Fails to Plead Conduct Imposing Fiduciary Duties

The Opposition claims that paragraphs 834 and 835 of the Complaint, along with Exhibits 1-17 to the Complaint, provide details of the "duties of the defendants in the various employment agreements and operating agreements." Opposition at 53. The purported "duties" are not conduct and paragraph 834 of the Complaint does not concern *any* of the Defendants. Paragraph 835 states conclusions not facts:

> Further, the applicable Corridor O/Ds and SPB O/Ds not only exercised dominion and control of the Corridor Enterprise and SPB Enterprise, respectively, the Corridor Enterprise and SPB Enterprise in managing and controlling the Debtor and TrashMasters also owed the Debtor a fiduciary duty.

*Id.* Exhibits 1-12 are employment, severance, and consulting agreements to which none of the Defendants are parties. Exhibits 13-17 are LLC operating agreements of the Debtor and TrashMasters. Only TrashMasters is a party to the Debtor's operating agreement.

The Court has already determined that the status of Individual Defendants as purported officers and directors does not give rise to fiduciary duties to a LLC. Decision at 18-19. Therefore, the Trustee's argument that "each defendant's position(s) with the Debtor" has been alleged does not establish fiduciary duties.[16]

---

[16] The Trustee's argument that signing a document demonstrates control is another way of saying that a fiduciary duty arises out of one's status as an officer or director. The Court has rejected this argument. Moreover, only a few Defendants

Further, the corporate structure and operating agreements at most provide that

TrashMasters was in control of the Debtor (which is not disputed by Defendants);

no alleged fact or Exhibit supports the Trustee's bare conclusion of the "complete

control the applicable Syndicator Defendants had over the Debtor."

The Trustee's reliance on the following quote from *Beskrone* is misplaced:

"Control over LLC was found where the parent LLC had made a binding

contractual decision for LLC, preventing it from protecting itself against

unacceptable risk." Opposition at 56. The entire quote is:

> The Court of Chancery addressed what it means to control an
> LLC in *Cargill, Inc. v. JWH Special Circumstance LLC*. Control over
> LLC1 was found where the parent LLC2 had made a binding
> contractual decision for LLC1, preventing it from protecting itself
> against unacceptable risks. To further support the finding of control,
> the Court showed that there was employee overlap between the LLCs
> and that the employees of LLC1 were compensated by LLC2.

*Beskrone v. OpenGate Cap. Grp. (In re Pennysaver USA Publ'g)*, 587 B.R. 445,

465 (Bankr. D. Del. 2018) (footnotes omitted).

---

signed documents and the Trustee makes no distinction between those that did and
those that did not. Rolloffs is not a party to Exhibits 2, 3, 5, 6, 7, 9, 10, and 11, so
the signer is irrelevant to show control of the Debtor. TrashMasters signed Exhibits
22-25 (UB Credit Agreement), 36-38 and 43-44 (2015 ASB Loan) as manager of
the Debtor (with Monnier or Davis signing on behalf of TrashMasters). Monnier
signed Exhibits 1, 34, 35 (Gourlay Employment Agreement, KNG Guaranty and
Contribution Agreement), 39, and 40 (Convergent Loan) on behalf of the Debtor as
either the Secretary or Manager (although TrashMasters was the only Manager),
Bass signed Exhibit 45 (2015 ASB Commitment Letter) on behalf of the Debtor as
Manager (although TrashMasters was the only Manager), and Enenstein signed
Exhibit 4, on behalf of the Debtor as an "authorized signatory."

In *Cargill, Inc. v. JWH Special Circumstance LLC, 959 A.2d 1096, 1121-22 (Del. Ch. 2008)*, the corporate parent and grandparent of a Delaware statutory trust[17] received benefits from a sale of the trust that the trust itself did not obtain, and ultimately suffered significant losses as a result of the transfer of certain of its assets. The *Cargill* decision (and the Trustee's reliance on the quote from *Beskrone* describing it) has no application here. *Cargill* dealt with only corporate defendants with direct upstream ownership of the entity that owed the duty, and a sale that benefitted upstream entities at a cost to the trust. In contrast, the Trustee seeks to impose fiduciary duties upon: (i) employees and officers of both the Debtor and TrashMasters based upon their titles or status within the LLCs' structure and (ii) all of the SBP Entities and all of the Corridor Entities without alleging actual facts (rather than bald conclusions) showing how they controlled the Debtor.[18] Because status as an officer or director of a *corporation* does give rise to fiduciary duties to the corporations, but such status does not give rise to such duties to an LLC,

---

[17] The plaintiff was an LLC that was the sole member of the Trust.

[18] With respect to all defendants except for TrashMasters, Corridor TrashMasters, LP and SPB Waste, LLC, the Trustee has failed to allege any facts showing that Defendants owned a controlling interest in TrashMasters or that they exercised any control. At the very least, all other Defendants must be dismissed. With respect to the Entity Defendants, the Trustee has not alleged that Corridor Capital Advisors, LLC SPB Capital GP, LLC SPB Capital Partners, LP or SPB Partners, LLC had any relationship whatsoever with either the Debtor or TrashMasters. Corridor TrashMasters, L.P. and SPB Waste, LLC are alleged to own controlling interests in TrashMasters. Complaint ¶142, 144. Corridor Capital LLC and SPB Management, LLC are alleged to be parties to the Advisory Agreement.

22

Decision at 18-19, the Trustee's *corporate* cases (Opposition at 53-54) on who owes fiduciary duties and the nature of those duties are irrelevant.

### b. Count 36 (Breach of Fiduciary Duty – Fraudulent Conveyances and Transfers) Must Be Dismissed

The Trustee has not identified language in the either the Operating Agreement of the Debtor or TrashMasters that modifies the statutory fiduciary duties of any Defendant. Instead, the Trustee restates his argument that TrashMasters's ability to appoint officers and agents means that fiduciary duties to the Debtor are imposed on those officers and agents. The Court has already rejected an individual's title as the basis for fiduciary duties to an LLC. The Trustee's argument that additional duties arose out of Exhibits 1-12 fails because none of the Individual Defendants or Entity Defendants (other than TrashMasters) were parties to these employment and related agreements.

### c. Count 37 (Breach of Duty of Loyalty) Must Be Dismissed

Section 428-409 limits the duty of loyalty. *See* Haw. Rev. Stat. § 428-409. The Opposition ignores the statutory limitations on the fiduciary duties to an LLC and argues:

> the Advisory Agreement and the defendants' conduct were both contrary and detrimental to the Debtor's interests and the Advisory Agreement and the corporate structure the defendants utilized to benefit themselves and insulate them from liability was not made in good faith. The Advisory Agreement was unfair, overcompensated Corridor Capital and SPB Management, and also purportedly relieved them of any liability for their alleged "advice," which caused the

> Debtor to become insolvent and make the fraudulent transfers to pay
> the debts of TrashMasters and others.

Opposition at 59. These actions, even if true, do not violate the limited duties of

section 428-409(e).

### 3. Count 39 (Civil Conspiracy to Breach Fiduciary Duties)

A claim for conspiracy to breach fiduciary duties fails as a matter of law

unless the alleged co-conspirators owe fiduciary duties. The Opposition cites no

contrary authority. Count 39 must be dismissed as to any party for whom a

fiduciary relationship is not adequately alleged.

### 4. Count 40 (Aiding and Abetting Breach of Fiduciary Duty)

The Motion seeks dismissal of Count 40 because the Trustee does not allege

facts showing that any of the Defendants knowingly induced or participated in a

fiduciary's breach of fiduciary duties.[19] The Trustee does not even attempt to show

how this factor has been adequately pleaded and instead repeats his argument that

participation in management is aiding and abetting. This is not the standard and

---

[19] The aiding-and-abetting count in the Original Complaint was vague and consisted of nothing more than a bare-bones conclusion of aiding and abetting. Accordingly, Defendants could not have possibly identified every flaw in the pleading of such a claim. Indeed, the Trustee *amended* his aiding-and-abetting count, and Defendants have responded accordingly. Contrary to the Trustee's assertions, the Motion should not be stricken. Because the Trustee amended the count, Defendants are entitled to raise new issues, and judicial economy will not be served by forcing Defendants to file a motion for judgment on the pleadings rather than addressing the issue in a motion to dismiss when other issues have been raised.

U.S. Bankruptcy Court - Hawaii    #18-90035    Dkt # 131    Filed 11/08/19    Page 30 of 39

Count 40 must be dismissed.

### 5. Count 41 Seeks Reverse Veil Piercing and Fails to Allege Facts Supporting Alter-Ego Liability

The Trustee fails to eliminate reverse veil piercing. The Trustee alleges that Corridor TM, SPB Waste, and TrashMasters are the *controlled* entities, Complaint ¶¶ 831-833, and 889,[20] and requests that the Court find them to be the alter-ego of their *controllers*. Complaint ¶¶ 885-887. This is the paradigm of reverse veil piercing. Motion at 53-55. The Trustee's Opposition fails to address this. In fact, the Trustee admits it ("[Corridor TM, SPB Waste, and TrashMasters] being the 'instrumentalities' are thus the alter-egos of their respective 'controlling' entities;" Opposition at 63, and argues that the Court should apply the alter-ego doctrine interchangeably to both the controlling company and the controlled company. The Trustee cites no applicable authority for this position.

In *Scholes v. Lehman,* 56 F. 3d 750, 758 (7th Cir. 1995), the Seventh Circuit explained that corporations controlled by a shareholder can only be liable for the shareholder's obligations under the doctrine of reverse veil-piercing, which is only imposed "in the absence of other shareholders—an important qualification." *Id.*

---

[20] Count 36 of the Complaint seeks to impose fiduciary duties on all Defendants by alleging that Corridor TM and SPB Waste controlled TrashMasters, the Corridor Individuals and Entities controlled Corridor TM, and the SBP Individuals and Entities controlled SBP Waste. The Trustee restates these allegations in Count 41, including at paragraph 889. The Trustee cannot have it both ways. The controlled entities cannot be alter-egos of the controlling entities except by reverse veil-piercing.

The Trustee's reliance on *Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 982 P.2d 853 (1999), to support his contention that courts consider the controller and controlled interchangeable under traditional alter-ego doctrine is mystifying. The Hawaii Supreme Court, in finding that the controllers were the alter-egos of the controlled (but not the other way around), makes clear that it is only addressing the imposition of alter-ego liability on the controllers. *Id.*, 91 Hawaii at 245-46, 982 P.2d at 874-875. The controller and controlled entities are not interchanged by the Court.

Additionally, the alter-ego claims must be dismissed because the Trustee seeks to impose liability among sixteen Defendants without alleging actual facts to demonstrate the requisite elements of alter-ego. For example, the Trustee fails to allege facts demonstrating that the Individual Defendants owned or controlled all the entities on a particularized basis, or influenced and governed those entities to such an extent that the Individual Defendant and entities ceased to have a separate existence.[21] Complaint ¶¶ 880-884. Likewise, the Complaint contains no allegations that any funds or assets were syphoned or upstreamed by TrashMasters or the Debtor to any Defendants, or among them, or that the Defendants disregarded corporate formalities. The only transfers the Debtor is alleged to have made are to Corridor Capital and SPB Management pursuant to the Advisory

---

[21] See notes 186 and 18.

Agreement, Complaint ¶¶ 210-222, and the Trustee has asserted direct claims against them to recover those amounts. To survive a motion to dismiss, the Trustee must allege facts (rather than conclusions) with respect to each member of the corporate group. Motion at 55-56.

Count 41 should be dismissed because the Trustee fails to eliminate reverse veil-piercing, as instructed by the Court, and fails to allege sufficient facts to plausibly find alter-ego liability by and among all Defendants. At the very least, the Trustee should be ordered to clearly state which way "control" flows for both the alter-ego and breach of duty Counts.

### 6. Count 42 Must Be Dismissed Because the Single-Enterprise Theory Has Not Been Adopted in Hawaii

The Trustee acknowledges that Hawaii has not adopted the single-enterprise theory. He argues that three cases enable the Court to predict that the Hawaii Supreme Court will adopt the theory. Opposition at 65-70. None of the cases applies Hawaii law or has any bearing on whether Hawaii will adopt the theory.

Two of the cases, *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 399 (1960), and *United States EEOC v. Global Horizons, Inc.,* 860 F. Supp. 2d 1172, 1183-86 (D. Haw. 2012), deal with the enforcement by a federal agency of federal labor and civil rights law, respectively, not the enforcement of private rights among individuals; the cases are distinguishable on this basis alone.

*Deena Artware* involved a determination by the NLRB that Artware violated

27

the National Labor Relations Act by discharging and refusing to reinstate employees who had engaged in a strike.[22] The Supreme Court expressly cautioned it was not ruling on the merits of the single-enterprise theory and that it was not considering "what would be a proper formulation of a rule of law governing liability in contempt for frustration of a decree." *Deena Artware*, 361 U.S. at 402, 405. The discussion of the single-enterprise doctrine was, at most, dictum because there were other available grounds for the ruling.[23] *Id.* at 415 (concurring opinion).

---

[22] In *Deanna Artware*, the NLRB ordered Artware, its officers, agents, and successors to make employees whole for loss of pay, but ultimately Artware closed its plant and never made the required payments. The NLRB petitioned the Sixth Circuit to hold Artware's corporate parent, the parent's other wholly owned subsidiaries, and the individual owner of the corporate parent in civil contempt for failure to pay the amounts due. The petition contained detailed allegations of a plan to avoid enforcement of the decree by the individual shareholder of the parent through his control of the parent and all its subsidiaries by, among other things, the transfer of assets to the parent without consideration and controlling the accrual of profits and losses to avoid collection from Artware. 361 U.S. at 407-09. It was undisputed that the individual shareholder owned and controlled the parent that, in turn, controlled the subsidiaries, including Artware. *Id.* at 405.

The Sixth Circuit denied the contempt petition and a related motion to conduct discovery on the grounds that while the enforcement order was entered in 1952, it was not made specific as to amounts until 1955; therefore, the decree was not sufficiently definite to serve as the basis of contempt proceedings. *Id.* at 401. The Supreme Court reversed and ordered the petition to be reinstated insofar as it charged the existence of a single enterprise and granted discovery.

[23] There were ample grounds to find contempt without considering single enterprise in *Deanna Artware*. The concurring opinion explained that the primary function of the NLRB with respect to unfair labor practices is to make remedial orders to effectuate its policies. *Id.* at 412. The NLRB's specific allegations of a deliberate scheme to frustrate enforcement of the 1952 decree among the shareholder, parent,

28

*United States EEOC v. Global Horizons, Inc.,* 860 F. Supp. 2d 1172, 1183-86 (D. Haw. 2012), was an employment discrimination action brought by the EEOC under, inter alia, Title VII of the Civil Rights Acts of 1964. The Trustee's claim that the district court adopted the single-enterprise theory without calling it that, (Opposition at 69) is false. Rather, the court applied traditional veil-piecing principles under federal labor law and found sufficient facts were alleged to pierce the veil up and hold a parent liable for the debts of its subsidiary.[24]

*Global Horizons* leaves no doubt that the court was applying traditional veil-piercing principles under federal labor law (rather than Hawaii state law) and not reverse veil-piercing or the single-enterprise doctrine. *Id.* at 1184-85 ("'In the absence of special circumstances, a parent is not liable for the Title VII violations of its wholly owned subsidiary.' Special circumstances include instances where

_____

and subsidiaries were sufficient to sustain the contempt petition and permit discovery, irrespective of the single-enterprise theory. 361 U.S. at 414-15.

[24] The EEOC alleged that MZB was liable as a successor to Kauai Coffee because it had purchased its assets and continued its business, held itself out to be the purchaser of Kauai Coffee and the new employer of Kauai Coffee's former employees in public press releases (notwithstanding the existence of a separate acquiring LLC), and represented to the public that it "now owns the Kauai Coffee Brand name and will oversee the operations and marketing of the company's coffee." 860 F. Supp. 2d at 1185. The district court concluded that sufficient facts had been alleged to infer that MZB did not respect corporate formalities and possessed a fraudulent intent to avoid Title VII liability in connection with acquiring Kauai Coffee's assets. *Id.* Accordingly, the district court allowed the EEOC to proceed with its claim to "pierce up" and hold MZB liable for the debts of is subsidiary under applicable federal labor law.

'the parent-subsidiary relationship is a "sham"' or where 'circumstances exist that would render the parent liable for the debts of its subsidiary'" (quoting *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 582 (9th Cir. 2000); *Watson v. Gulf & Western Indus.*, 650 F.2d 990, 993 (9th Cir. 19981)).

In *Argyle Online, LLC v. Nielson (In re GGW Brands, LLC),* 504 B.R. 577 (Bankr. C.D. Cal. 2013), the court applied California law because courts of appeal in California have recognized the single-enterprise doctrine. *Id.* at 621 ("California law recognizes the 'single business enterprise' doctrine;" citing *Las Palmas Assoc. v. Las Palmas Center Assoc.,* 235 Cal. App. 3d 1220 (1991)). A bankruptcy court in California, applying California law adopting the single-enterprise doctrine, is not indicative that the Hawaii Supreme Court will do the same. The case provides no basis for this court to adopt the single-enterprise doctrine.

Moreover, California also permits reverse veil-piercing. *See Curci Investments LLC v. Baldwin,* 14 Cal. App. 5th 214, 220-24 (2017) (reverse veil-piercing to add LLC to judgment against principal). The single-enterprise doctrine and reverse veil-piercing both permit a plaintiff to impose alter-ego liability on an entity that is neither an owner nor controller of the primarily liable defendant. Reverse alter-ego allows a plaintiff to pierce down to impose liability on the owned or controlled entity and single-enterprise allows the plaintiff to pierce sideways to hold affiliated or sister entities liable irrespective of whether they are owned or

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed  11/08/19   Page 36 of 39

controlled by the primary defendant. In Hawaii, neither is permitted and only entities that are owners or controllers of the primary defendant are subject to liability based on alter-ego/veil-piercing.

The Trustee attempts to obfuscate the outright rejection of the single-enterprise theory by the Texas Supreme Court in *SSP Partners v. Gladstrong Invs. Corp.,* 275 S.W.3d 444 (Tex. 2008), arguing the court did not apply the doctrine only because the plaintiff failed to allege injustice or wrongdoing. Opposition at 72-73. The language of the decision leaves no doubt that the Single Enterprise theory was rejected:

> We have never approved of imposing joint liability on separate entities merely because they were part of a single business enterprise, and we have pointed out that an issue exists "whether a theory of 'single business enterprise' is a necessary addition to Texas law regarding the theory of alter-ego for disregarding corporate structure."
> . . .
>
> Importantly, in this Court's [prior opinion], we comprehensively reviewed the bases for imposing liability despite the corporate structure and did not include single business enterprise among them.
>
> The single business enterprise theory is fundamentally inconsistent with the approach taken by the Legislature. . . .
>
> Accordingly, we hold that the single business enterprise liability theory set out in *Paramount Petroleum* will not support the imposition of one corporation's obligation on another.

*Id.* at 452, 454, 456 (quoting *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex. 2003) (footnotes omitted).

Moreover, the Trustee's contention that he meets the standard enunciated by the Texas Supreme Court for pleading single-enterprise liability is without merit. Opposition at 73 (citing Complaint ¶¶ 897, 901). The Texas Supreme Court makes clear that the Texas legislature takes a "stricter approach" to disregarding the corporate veil and requires more than "injustice" or an allegation of inequity to prevail because the legislature codified a requirement of actual fraud. *Id.* at 455 (discussing Tex. Bus. Corp. Act § 2.21, recodified at Tex. Bus. Orgs. Code §§ 21.223 *et seq.*). The Trustee has not pleaded actual fraud among the SPB and Corridor Entities, including their respective O/Ds, to warrant piercing the corporate veils, particularly where the generic allegations of inequity stem only from the fact that the Debtor's creditors will not be paid in full.

Hawaii courts apply the alter-ego doctrine "with great caution and reluctance." *Robert's Hawaii,* 91 Haw. at 241, 982 P.2d at 870, and n.12 (citing Hawaii cases refusing to pierce corporate veil). None of Trustee's cases enable this Court to disregard the Hawaii Supreme Court's requirement that alter-ego/veil-piercing liability can only be imposed upon an owner or controller ("the question is one of control, not merely paper ownership."). *Id*. at 91 Haw. at 243, 982 P.2d at 872.

Count 42 should be dismissed because the single-enterprise theory has not been adopted in Hawaii, the cases cited by the Trustee provide no basis for this

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 131   Filed 11/08/19   Page 38 of 39

Court to predict that the Hawaii Supreme Court would adopt the theory, and the facts alleged do not satisfy the criteria for a traditional alter-ego claim under Hawaii law.

## III.
## CONCLUSION

WHEREFORE, based upon the foregoing, Defendants respectfully request that the Complaint be dismissed as set forth in the Motion.

DATED: November 8, 2019   /s/ Chuck C. Choi
           Kenneth H. Brown (CA State Bar No. 100396)
           Cia Mackle (FL State Bar No. 26471)
           PACHULSKI STANG ZIEHL & JONES LLP
           150 California Street, 15th Floor
           San Francisco, CA 94111
           Phone: (415) 263-7000/Fax: (415) 263-7010
           Email: kbrown@pszjlaw.com

           -and-

           Chuck C. Choi
           Allison A. Ito
           CHOI & ITO
           Topa Financial Center
           700 Bishop Street, Suite 1107
           Honolulu, HI 96813
           Phone: (808) 533-1877/Fax: (808) 566-6900

           Attorneys for TrashMasters, LLC, Corridor
           Capital, LLC, Corridor Capital Advisors,
           LLC, Corridor TrashMasters, L.P., SPB
           Management, LLC, SPB Waste, LLC, SPB
           Capital GP, LLC, SPB Capital Partners,
           L.P., SPB Partners, LLC, Craig Enenstein,
           L. Geoffrey Greulich, Edward A. Monnier,
           Jessamyn Davis, Ari D. Bass, Scott R.
           Bulloch, and Kenneth M. Pressberg