

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ROLLOFFS HAWAII, LLC,<br><br>        Debtor. | Case No. 16-01294<br>Chapter 7 |
| DANE S. FIELD, Chapter 7 Trustee<br>of the Estate of Rolloffs Hawaii, LLC,<br><br>        Plaintiff,<br><br>   vs.<br><br>TRASHMASTERS, LLC, et al.,<br><br>        Defendant. | Adv. Pro. No. 18-90035<br><br>Dkt. 96 |

## ORDER DENYING CORRIDOR/SPB DEFENDANTS' MOTION TO DISMISS COUNTS 1-42 OF TRUSTEE'S FIRST AMENDED COMPLAINT

The trustee alleges that the defendants received fraudulent transfers, breached

fiduciary duties, and committed other actionable wrongs in connection with the

acquisition, financing, and operation of the debtor. The Corridor/SPB defendants[1]

---

[1] TrashMastersLLC; Corridor Capital, LLC, Corridor Capital, LLC; Corridor Capital
Advisors, LLC; Corridor TrashMasters, L.P.; SPB Management, LLC; SPB Waste, LLC; SPB

move to dismiss counts 1-42 of the trustee's First Amended Complaint ("FAC") for failure to state claims under rule 12(b)(6) and counts 1-4 for failure to name an indispensable party under rule 7. Defendants Rolloffs Hawaii, Inc.[2] and Charles E. Leonard[3] joined in the motion. For the following reasons, the Motion is DENIED in all respects.

## A. Standard

When considering a rule 12(b)(6) motion, the court first "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[4] Second, it determines whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief.[5]

Determining whether a complaint states a plausible claim for relief is "a context-specific task" requiring the court to "draw on its judicial experience and common sense."[6] "[T]he determinative question is whether there is any set of 'facts

---

Capital GP, LLC; SPB Capital Partners, L.P.; SPB Partners, LLC, Craig Enenstein; L. Geoffrey Greulich; Edward A. Monnier; Jessamyn Davis; Ari D. Bass; Scott R. Bulloch; and Kenneth M. Pressberg.

[2] Dkt. 125.

[3] Dkt. 127.

[4] *Bello v. Chase Home Fin., LLC (In re Bello)*, BAP No. SC-11-1541-JuBaPa, 2013 Bankr. LEXIS 4641, at *8 (B.A.P. 9th Cir. May 30, 2013) (citing *Movsesian v. Victoria Versicherung AG*, 629 F.3d 901, 905 (9th Cir. 2010), *reh'g en banc*, 670 F.3d 1067 (9th Cir. 2012)).

[5] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[6] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

2

that could be proved consistent with the allegations of the complaint' that would entitle the plaintiff to some relief."[7] With respect to the legal elements of a claim, the court is not bound to accept legal conclusions even when "couched as [] factual allegation[s]."[8]

## B. Fraudulent Transfer Claims

### 1. Union Bank

#### a. Joinder of Union Bank is Not Appropriate (Counts 1-4, 9-12, 25-28)

These counts allege that certain payments by the Debtor on debts claimed by Union Bank are avoidable fraudulent transfers. A transfer is not avoidable if the debtor received "reasonably equivalent value" in exchange,[9] and the satisfaction of a debt owed by the debtor constitutes "value."[10] The trustee claims that the Debtor did not receive reasonably equivalent value because (among other reasons) the Debtor's obligation to Union Bank was itself avoidable.[11]

---

[7] *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

[8] *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[9] Haw. Rev. Stat. § 651C-8(a) ("A transfer or obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value[.]"); Haw. Rev. Stat. § 651C-4(a)(2); Haw. Rev. Stat. § 651C-5.

[10] Haw. Rev. Stat. § 651C-3(a).

[11] Haw. Rev. Stat. § 651C-4(a)(2) (describing when "[a] transfer made *or obligation incurred by a debtor* is fraudulent[.]") (emphasis added); Haw. Rev. Stat. § 651C-5(a); Haw. Rev. Stat. § 651C-7(a)(1) ("Avoidance of the transfer or obligation" is available as "relief against a transfer or obligation under this chapter[.]").

3

The Corridor/SPB defendants argue that the obligee, Union Bank, is the only proper defendant to the fraudulent transfer counts. This argument incorrectly characterizes the FAC. The Trustee does not seek any relief against Union Bank. He argues that the debtor's obligations to Union Bank were avoidable solely as a means to establish that the debtor did not receive value in return for the payments to Union Bank, and in support of his claims for relief against the named defendants.

The Corridor/SPB defendants allege that Union Bank is a necessary party under rule 19(a)(1)(A) because complete relief cannot be granted in its absence. To determine if a party is necessary to the suit, the court must first determine if complete relief is possible among those already parties to the suit.[12] This inquiry is independent of whether relief is available to the absent party.[13] Next, the court must determine whether the absent party has a legally protected interest in the suit.[14] This interest "must be more than a financial stake" or "speculation about a future event."[15] If the court finds a legally protected interest, it must further determine whether it will be impaired or impeded by the suit.[16]

---

[12] *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed 01/09/20   Page 4 of 22

Significantly, the Corridor/SPB defendants do not contend that the first prong of this test is met; in other words, they do not deny that complete relief is possible among the parties who have already been joined. Instead, they focus on the effect of nonjoinder on Union Bank.

The Corridor/SPB defendants allege that Union Bank may suffer from some future liability as a result of its voided obligations; but that is merely speculation and not enough to allege a "legally protected interest." Union Bank has already received full satisfaction of the loan and no longer has a claim against the Debtor. As such, it is not a necessary party.

The Corridor/SPB defendants contend that Union Bank is indispensable under rule 19(b) because "parties who may be affected by the determination of the action are indispensable."[17] In a typical case, the Trustee cannot void a contractual obligation without naming all parties to the contract.[18] Here, however, the Trustee seeks to avoid an obligation only so he can recover payments on that obligation that benefitted the defendants. He seeks no relief against Union Bank, the obligee. The Trustee does not allege that Union Bank itself acted in bad faith or failed to provide reasonably equivalent value. Therefore, in this unusual case, Union Bank is not an indispensable

---

[17] *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).

[18] *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 5 of 22

party.

The rule 19 inquiry is meant to be "a practical, fact-specific one, designed to avoid the harsh results of rigid application."[19] Practicality and the facts of this case weigh in the Trustee's favor. Rigid application of the *Dawavendewa* rule and dismissal of this action would be precisely the harsh result that *Dawavendewa* states the rule 19 inquiry is designed to avoid.[20]

### b. Receipt of the Union Bank Proceeds

The defendants allege that the Trustee has plead contradictory facts as to whether or not the Debtor received the full amount of the funds from the $4.5 million Union Bank loan.[21] The defendants' argument is without merit. The Trustee is entitled to plead alternative versions of facts, as long as both meet the plausibility standard set forth in *Iqbal*.[22]

### 2. "Direct, Ascertainable, and Quantifiable" Benefits Not Required

Bankruptcy Code section 544(b)(1) enables the bankruptcy trustee to avoid transactions that could be avoided by an unsecured creditor under state law, such as

---

[19] *Id.* at 1155 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

[20] *See* 276 F.3d at 1157.

[21] *See* dkt. 96 at 22-23.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); Fed. R. Civ. P. 8(d)(2).

6

the Hawaii Uniform Fraudulent Transfers Act.[23] If the Trustee avoids a transfer under section 544(b)(1), he can recover the property transferred or its value from "the initial transferee of such transfer *or the entity for whose benefit such transfer was made.*"[24]

The Corridor/SPB defendants seek to dismiss counts 1-8, 13-24, and 29-36 because the FAC fails to allege a "direct, ascertainable, and quantifiable benefit" to the subject defendants. But the New York bankruptcy case on which they rely, *In re Dreier*,[25] is not the law of this circuit. The applicable Ninth Circuit decision, *Bullion Reserve*, permits recovery from anyone who was intended to benefit as a result of the initial transfer from the debtor.[26]

Because the Corridor/SPB defendants allegedly caused the Debtor to make the transfers, they are "the entity for whose benefit such transfer was made."[27] This allegation is sufficient under Ninth Circuit law.

---

[23] 11 U.S.C. § 544(b)(1).

[24] 11 U.S.C. § 550(a)(1) (emphasis added).

[25] *Gowan v. Novator Credit Management* (*In re Dreier LLP*), 452 B.R. 467 (Bankr. S.D.N.Y. 2011).

[26] *See Danning v. Miller (In Bullion Reserve of North America*), 922 F.2d 544, 547 (9th Cir. 1991).

[27] *Henry v. Official Committee of Unsecured Creditors (In re Walldesign, Inc.)*, 872 F.3d 954, 964 (9th Cir. 2017) ("The party who forces a debtor to make a transfer is almost always 'the entity for whose benefit such transfer was made,' and thus is generally always subject to strict liability.") (quoting *General Electric Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 809-10 (B.A.P. 9th Cir. 1995)).

7

### 3. Elements of Claims

The FAC states claims for both intentional fraudulent transfers and constructive fraudulent transfers under Hawaii law. In my ruling on the defendants' motion to dismiss the Trustee's original complaint, I determined that the Trustee had adequately pled that the defendants possessed the requisite fraudulent intent, but gave leave to amend the complaint to identify each challenged transfer by date, amount, name of transferor and transferee, and consideration, to the extent known. The Trustee has alleged these details, where available, with sufficient particularity to satisfy rule 9(b).[28]

The remaining claims are for constructive fraudulent transfers under Haw. Rev. Stat. §§ 651C-4(b) and 651C-5. Section 651C-4(b) requires that the debtor (A) was engaged or about to engage in business for which its remaining assets were unreasonably small, or (B) intended to incur or believe or reasonably should have believed that it would incur debts beyond its ability to pay as they came due. Section 651C-5 requires that either (A) the debtor was insolvent at the time or became insolvent as a result of the transfer, or (B) the transfer was made to an insider, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent. Both sections require proof that the debtor made a transfer

---

[28] Fed. R. Civ. P. 9(b) ("In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity.").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 8 of 22

or incurred an obligation without receiving reasonably equivalent value in exchange.

The Trustee has adequately alleged the requisite elements of both statutes, i.e., that the Debtor's assets were unreasonably small in relation to the business it planned to engage in or that the Debtor believed that it would incur debts beyond its ability to pay as they came due, and further that the Debtor was insolvent at the time of the challenged transfers or became insolvent as a result. The only remaining inquiry is whether the Debtor received reasonably equivalent value in exchange for the transfers it made and obligations it incurred.

### a. "Collapsing the Transactions"

In counts 5 through 8, the Trustee challenges over $6 million in payments allegedly made by the Debtor to Rolloffs Hawaii, Inc. ("ROHI") under the ROHI Asset Purchase Agreement ("ROHI APA") and another roughly $1 million in payments allegedly made to ROHI's creditors, lien holders, and ROHI itself ("2009 ROHI Payments"). Similarly, counts 21 through 24 seek to recover $752,448.96 paid to ROHI by the Debtor in satisfaction of the ROHI Note ("ROHI Payoff"). The Debtor was neither a borrower nor a guarantor on the ROHI Note,[29] and the terms of the ROHI and Maricopa Asset Contribution Agreement clearly state that the ROHI

---

[29] Dkt. 71, Exh. 19; see dkt. 96 at 35 n.60 ("TrashMasters (not the Debtor) was the obligee on the ROHI Note[.]").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 9 of 22

assets were given to the Debtor as a capital contribution.[30]

Likewise, counts 25 through 28 seek to avoid the KNG Guaranty as an actually and constructively fraudulent transfer. TrashMasters acquired certain assets from KNG and incurred debt to finance the acquisition. TrashMasters contributed the KNG Assets to the Debtor as a capital contribution.[31] The Debtor guaranteed TrashMasters' obligation to KNG.

A capital contribution does not create an antecedent debt for purposes of a fraudulent transfer analysis under Hawaii law because "the return of a capital contribution to or for the benefit of an investor is <u>not</u> the same as the repayment of indebtedness to a creditor."[32]

The Corridor/SPB defendants contend that the court should disregard the manner in which they chose to document these transactions. They claim that the Debtor's payments and the KNG Guaranty were components of larger transactions which included TrashMasters' simultaneous contribution of assets to the Debtor. According to the Corridor/SPB defendants, when the entirety of the transactions is considered, the Debtor received reasonably equivalent value.

---

[30] Dkt. 71, Exh. 31.

[31] Dkt. 71, Exh. 35.

[32] *Schmidt v. HSC, Inc.*, 358 P.3d 727, 737 (Haw. App. 2015). Although *Schmidt* considered limited partner distributions rather than capital contributions, the same concept is applicable to corporations and LLCs. *See id.* at 738-39.

10

The Corridor/SPB defendants rely on *Northern Merchandise*, where the debtor company granted a security interest to a lender to secure a $150,000 loan made not to the debtor, but to its shareholders.[33] However, because the shareholders borrowed the money on behalf of the debtor and immediately deposited the proceeds of the loan into the Debtor's account, the court found that the Debtor's grant of a $150,000 security interest to secure its shareholders' indebtedness on a $150,000 loan "resulted in no net loss to Debtor's estate nor the funds available to the unsecured creditors."[34] But *Northern Merchandise* is different from this case in two important respects.

First, in this case, the defendants expressly agreed that the debtor would receive the assets as a capital contribution. Holding the debtor effectively liable for the acquisition debt thus would explicitly contradict the parties' agreement. In *Northern Merchandise*, the debtor did not expressly assume the debt, but the parties had no agreement that was inconsistent with that result.

Second, the *Northern Merchandise* court stated that the value of the benefit received by the debtor must "approximate[] the value of the property or obligation he has given up."[35] While it is obvious that exchanging a $150,000 security interest for a $150,000 loan results in no loss to the estate or creditors, the same is not necessarily

---

[33] *Frontier Bank v. Brown (In re N. Merch, Inc.)*, 371 F.3d 1056, 1057-58 (9th Cir. 2004).

[34] *Id.* at 1059.

[35] *Id.* (quoting *Rubin v. Manufacturers Hanover Tr. Co.*, 661 F.2d 979, 991-92 (2d Cir. 1981)).

11

true of the ROHI Payments and KNG Guaranty that the Trustee challenges. In this case, there are factual disputes about what the ROHI Assets and KNG Assets were actually worth; the Trustee suggests that the Corridor/SPB defendants deliberately structured the transaction so that the Debtor overpaid for the assets. As the value of the ROHI and KNG Assets is a question of fact, disposition would be inappropriate on a motion to dismiss, even if I applied the collapsing doctrine.

### b. Transfer Not of Debtor's Property

Counts 21 through 24 allege that the ROHI Payoff was a fraudulent transfer. The ROHI Payoff was made with the proceeds of the 2012 Convergent Loan, under which both the Debtor and TrashMasters were borrowers. The Corridor/SPB defendants argue that the transfer cannot be avoided as fraudulent because the ROHI Payoff was made with loan proceeds that were not the Debtor's property.

In response, the Trustee alleges that the proceeds of the loan "were in fact deposited into the Debtor's bank account," that the Debtor had exclusive dominion of the 2012 Convergent Loan proceeds, and that they were therefore property of the Debtor.[36] These allegations are plausible and sufficient to forestall dismissal of these claims.

---

[36] Dkt. 129 at 48-49. *See Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors (In re Incomnet, Inc.)*, 463 F.3d 1064, 1071 (9th Cir. 2006) ("The dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit.").

U.S. Bankruptcy Court - Hawaii    #18-90035    Dkt # 151    Filed  01/09/20    Page 12 of 22

### c. Earmarking

Counts 29 through 32 claim that the Debtor's payment to KNG of about $1.5 million to satisfy the KNG Note (the "KNG Payoff") was an actually or constructively fraudulent transfer. In response, the Corridor/SPB defendants argue that the KNG Payoff had no net effect on the Debtor's balance sheet because of the earmarking doctrine; therefore, the payment was not a transfer involving the debtor's property and was not subject to avoidance.

"Generally, property belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which would otherwise be used to satisfy the claims of creditors."[37] But if the debtor transfers money that was lent to the debtor for the specific purpose of paying a particular creditor, the earmarking doctrine provides that the money is not property of the debtor for purposes of section 547. "[T]he 'earmarking doctrine[]' is justified by the fact that in such a case the funds neither are controlled by, nor belong to, the debtor."[38] "The money never becomes part of the debtor's assets; rather, the transaction merely substitutes one creditor for another without diminishing the value of the bankruptcy estate."[39]

---

[37] *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1217 (9th Cir. 1988).

[38] *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)*, 16 F.3d 313, 316 (9th Cir. 1994) (citing *Grubb v. Gen. Contract Purchase Corp.*, 94 F.2d 70, 72–73 (2d Cir. 1938)).

[39] *Id.*

13

The Corridor/SPB defendants argue that the KNG Payoff was made with funds obtained in 2012, when the Debtor refinanced its existing loans through American Savings Bank ("ASB"). Specifically, because the 2012 ASB Credit Agreement required proceeds of the loan to be used to pay the Debtor's existing loan facilities, the defendants contend that the funds were earmarked for payoff of the KNG Note.[40] According to the defendants, ASB merely stepped "into the shoes of an old creditor"[41] when the Debtor used the ASB loan proceeds to pay off the KNG Note.

However, this argument ignores that the KNG Payoff was made on the KNG Note, a debt which, the Trustee argues in counts 25 through 28, the Debtor should not have owed. If true, this would mean that the KNG Payoff transaction resulted in diminution of the estate because it was not made on a valid antecedent debt.[42] To use the *Heitkamp* court's analogy, ASB stepped into shoes of a party to whom, the Trustee alleges, the Debtor never should have owed money in the first place. In that event, every payment the Debtor made to ASB diminished the funds available to the

---

[40] The Debtor also used the 2012 ASB proceeds to refinance its credit facility obligations to Union Bank. Dkt. 71 at ¶¶ 265-68.

[41] *Kaler v. Community First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087, 1089 (8th Cir. 1998).

[42] *Adams v. Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1008 (9th Cir. 2000) ("[T]he earmarking doctrine requires: '(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction viewed as a whole . . . does not result in any diminution of the estate.'") (quoting *McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 566 (8th Cir. 1988)).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 14 of 22

Debtor's other creditors.

## C. Fiduciary Duties and Related Claims

### 1. Breaches of Fiduciary Duties (Counts 36-38)

The Trustee asserts that various defendants owed the Debtor fiduciary duties due to their control over the Debtor, and that the fraudulent transfers and conveyances alleged above constitute breaches of those duties.

"To claim breach of fiduciary duty, a plaintiff must show that a fiduciary relationship existed between the parties, the defendant breached a fiduciary duty to the plaintiff, and the breach proximately caused injury to the plaintiff."[43] "The existence and extent of an agent's duties to the principal are determined by the terms of the parties' agreement."[44] Fiduciary duties in LLCs are primarily governed by the limited liability company agreement.[45] Under the law of Hawaii LLCs, the fiduciary duties of LLC members are strictly limited.[46]

The Corridor/SPB defendants argue that the FAC does not allege specific

---

[43] *Molokai Servs. Inc. v. Hodgins*, No. CAAP-15-0000464, 414 P.3d 202, 2018 WL 1083050, at *7 (Haw. App. Feb. 28, 2018) (internal citations omitted), *cert. granted sub nom. Molokai Serv.'s Inc. v. Hodgins*, No. SCWC-15-000464, 2018 WL 3974568 (Haw. Aug. 20, 2018), *and cert. dismissed sub nom. Molokai Servs.'s Inc. v. Hodgins*, No. SCWC-15-0000464, 2018 WL 6825142 (Haw. Dec. 28, 2018).

[44] *Kaiser v. First Hawaiian Bank*, 30 F. Supp. 2d 1255, 1265-66 (D. Haw. 1997).

[45] *See Beskrone v. OpenGate Capital Group (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 464 (Bankr. D. Del. 2018).

[46] Haw. Rev. Stat. § 428-409(a-c).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed   01/09/20   Page 15 of 22

conduct or facts regarding control or diversion of funds as would give rise to fiduciary duties. I disagree. The Trustee has adequately and plausibly alleged that the Corridor/SPB defendants had sufficient control over the Debtor to force it to make transfers on various loans and obligations, including one loan to which it was not a party. These allegations, in addition to the other allegations of control in the FAC, state a plausible claim that the Corridor/SPB defendants had sufficient control and domination of the Debtor to give rise to fiduciary duties.

### 2. Civil Conspiracy to Breach Fiduciary Duties (Count 39)

The Corridor/SPB defendants argue that the claim for conspiracy to breach fiduciary duties must fail because it requires a showing that the alleged co-conspirators also owed fiduciary duties, and the FAC does not contain facts showing how the Corridor/SPB defendants engaged in conduct that would give rise to fiduciary duties to the Debtor.

Because I have determined that the FAC's allegations state a plausible claim that the Corridor/SPB defendants owed fiduciary duties to the Debtor based on their control over its operations, the motion to dismiss count 39 is denied.

### 3. Conspiracy to Commit Fraudulent Transfers (Counts 34-35)

 The Trustee alleges that a conspiracy or agreement existed between various defendants to cause the Debtor to make the fraudulent transfers set forth in the FAC. Counts 34 and 35 are claims for damages based on the Corridor/SPB defendants'

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 16 of 22

alleged breaches of a duty to manage the Debtor's assets properly.[47] The Corridor/SPB defendants seek to dismiss this claim, arguing that the FAC does not allege that any Corridor/SPB defendants "caused" the Debtor to make the alleged fraudulent transfers, and that the FAC contains no facts demonstrating that any Defendant owed any duties to the Debtor or engaged in conduct that would establish such duties.

Because I am not dismissing the Trustee's claims for breach of fiduciary duties, I will not dismiss the counts for conspiracy to commit fraudulent transfers. Though the Corridor/SPB defendants argue that the Trustee still has not alleged facts with sufficient specificity, the particulars of such a transaction are difficult to uncover for one who was not in the room when it took place. For purposes of the present motion to dismiss, the Trustee has alleged sufficient facts to state a plausible claim that the Corridor/SPB defendants caused the Debtor to make the challenged transfers and conveyances.

### 4. Aiding and Abetting Breach of Fiduciary Duty (Count 40)

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."[48] Here, the Trustee has alleged breaches of several fiduciary duties to

---

[47] Dkt. 63 at 17.

[48] *Molokai Servs.*, 2018 WL 1083050, at *9.

17

the Debtor, that the Corridor/SPB defendants knowingly induced or participated in the breach, and that the Debtor suffered damages as a result. These allegations are sufficient and plausible.

## D. Piercing the Corporate Veil

### 1. Alter Ego (Count 41)

Count 41 claims that certain of the Corridor/SPB defendants are alter egos of one another and are therefore jointly and severally liable for each other's wrongs. The alter ego doctrine "furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation."[49] "When a corporation is merely the instrumentality or business conduit of another corporation or person, the corporate form may be disregarded."[50]

Claims of alter ego, or "piercing the corporate veil," come in two varieties. Alter ego claims are usually used to hold a parent corporation responsible for the misconduct of its subsidiary.[51] Holding a subsidiary liable for the parent's wrongs is sometimes called "reverse piercing."[52]

On the first motion to dismiss, I dismissed the Trustee's alter ego claim with

---

[49] *Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 241(1999).

[50] *Id.*

[51] 1 FLETCHER CYC. CORP. § 43.

[52] *See Suzuki v. Castle & Cooke Resorts*, 239 P.3d 1280, 1283 (Haw. App. 2010).

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 18 of 22

leave to amend the complaint to eliminate any reverse piercing claims.[53] I predicted

that the Hawaii Supreme Court would not adopt the theory of reverse veil piercing.[54]

In their second motion to dismiss, the Corridor/SPB defendants mount two

attacks on the alter ego claims.

First, they argue that the Trustee's alter ego claims still seek reverse veil

piercing.[55] The trustee denies that the FAC makes such claims, and I will construe the

FAC in that manner. Fairly read, the FAC alleges that liability should flow "up" the

chain of ownership and control, making controlling entities liable for the entities they

controlled, and not in the reverse direction.

Second, the Corridor/SPB defendants argue that the trustee must allege facts

supporting the alter ego claims at all layers of the parent's corporate group, such as

evidence that the Corridor or SPB Entities disregarded proper formalities, siphoned

assets from one another, or otherwise did not maintain separateness. With regard to

the individual officers and directors of the entities, the defendants also argue that the

Trustee must allege particularized facts showing that the individuals owned or

controlled the entities.

---

[53] Dkt. 63 at 20-22.

[54] *Id.* at 21; *Estate of Daily v. Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 844 (D. Haw. 1995), *aff'd sub nom. Estate of Daily v. Lilipuna Assocs.*, No. 95-16370, 81 F.3d 167 (9th Cir. Apr. 4, 1996); *Kauai Scuba Ctr., Inc. v. Lexington Ins. Co.,* No. CIV 11-00573 BMK, 2012 WL 527845, at *2 (D. Haw. Feb. 16, 2012).

[55] Dkt. 96 at 55 ("The allegations seek to reverse pierce by making alleged *controlled* entities alter egos of alleged *controlling* entities.)"

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 19 of 22

As this is a motion to dismiss, I will accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the Trustee before determining whether he has made a plausible claim for relief.[56] Here, the Trustee's allegations describe the structure, ownership, and relationships of the Corridor/SPB defendants with more than sufficient detail to meet the requirements of the rules and to allow the defendants to formulate an answer. The application of the alter ego and veil piercing doctrines is a factual endeavor[57] that a court generally should not decide on the pleadings.[58] I will deny the motion to dismiss count 41.

## 2. Single Enterprise (Count 42)

"[U]nder the single-enterprise rule, liability can be found between sister companies."[59] Where it is imposed, "the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it."[60] Courts search for "such unity of interest and ownership that the separateness of the two corporations [has] in effect ceased and an

---

[56] *In re Bello*, 2013 Bankr. LEXIS 4641, at *8.

[57] *Television Events & Mktg, Inc. v. AMCON Distrib. Co.*, 484 F. Supp. 2d 1124, 1143 (D. Haw. 2006).

[58] *Id.* at 1142 (quoting *Robert's Hawaii*, 982 P.2d at 868) (denying defendants' motion for summary judgment on plaintiff's alter ego claim).

[59] *Las Palmas Assocs. v. Las Palmas Ctr Assocs.*, 235 Cal. App. 3d 1220, 1250 (1991).

[60] *Id.*

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed 01/09/20   Page 20 of 22

adherence to the fiction of a separate existence of the two corporations

would . . . promote injustice[.]"[61]

The Corridor/SPB defendants assert that Hawaii has not adopted the single enterprise doctrine, and "it is far from universally accepted."[62] The first part of this statement is true, but it is also true that our supreme court has never disapproved of the single enterprise theory. The second part of the statement may be literally true, but it is unpersuasive. The doctrine has been recognized by the United States Supreme Court[63] and California courts in various cases.[64] The cases cited by the Corridor/SPB defendants are less convincing than their briefs make them appear. One of the cited cases dismissed an alter ego claim for failure to plead facts sufficient to allege that the parties were "a single economic entity."[65] The court did not reject the single business enterprise doctrine. Though the other case that the Corridor/SPB defendants cite outright rejected the single business enterprise theory, it did so based on Texas

---

[61] *Id.* (quoting *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal. App. 2d 652, 658-59 (1958)).

[62] Dkt. 96 at 58.

[63] *N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 402-03 (1960).

[64] *See, e.g., Las Palmas Associates*, 235 Cal. App. 3d at 1250; *Argyle Online LLC v. Nielson (In re GGW Brands, LLC)*, 504 B.R. 577 (Bankr. C.D. Cal. 2013).

[65] *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 789 (Bankr. W.D. La. 2013) (applying Delaware law); *id.* at 783-86.

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed   01/09/20   Page 21 of 22

statutory law.[66]

Based on its acceptance of the alter ego doctrine and its general predilection to make remedies available for wrongdoing, I am reasonably certain that the Hawaii Supreme Court would accept the single enterprise doctrine. Therefore, I will not dismiss count 42.

## END OF ORDER

---

[66] *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008) ("The single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in article 2.21 [of the Texas Business Corporation Act].").

U.S. Bankruptcy Court - Hawaii   #18-90035   Dkt # 151   Filed  01/09/20   Page 22 of 22